IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ERIC WELLINGTON,

                    Plaintiff,

                                                Civil Action No.
          v.                                    9:12-CV-1019 (FJS/DEP)

B. LANGENDORF, Corrections
Officer, *et al.,*

                    Defendants.

_____

APPEARANCES:                                    OF COUNSEL:

FOR PLAINTIFF:

ERIC WELLINGTON, *Pro Se*
09-A-0622
Attica Correctional Facility
P.O. Box 149
Attica, NY 13118

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN                        ROGER W. KINSEY, ESQ.
Office of the Attorney General                   Assistant Attorney General
State of New York
Department of Law
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT, RECOMMENDATION, AND ORDER

*Pro se* plaintiff Eric Wellington, a New York State prison inmate, has commenced this action, pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights. In general terms, plaintiff's amended complaint alleges that he was sexually and verbally harassed by defendant B. Langendorf, a corrections officer, while confined in the Shawangunk Correctional Facility. The amended complaint also alleges that defendant Nelson, a corrections sergeant at the facility, failed to protect him from defendant Langendorf's harassment.

In response to plaintiff's amended complaint, defendants have moved to dismiss plaintiff's claims based on several grounds, including his failure to exhaust available administrative remedies before commencing suit, and that plaintiff's amended complaint fails to state a cognizable claim against either defendant. For the reasons set forth below, I recommend that defendants' motion be granted, in part, and that all of plaintiff's claims be dismissed, with the exception of the retaliation claim asserted against defendant Langendorf.

I.    BACKGROUND[1]

At the times relevant to this action, plaintiff was an inmate confined in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at the Shawangunk Correctional Facility ("Shawangunk"), located in Wallkill, New York.   *See generally* Am. Compl. (Dkt. No. 12).   On April 5, 2011, plaintiff asked defendant B. Langendorf, a corrections officer employed at the facility, why the guards had not released his cell door to permit him to attend a daily meal and programming.   *Id.* at 3.   In response, defendant Langendorf stated, "The reason [w]hy I didn't let you go out for porter's and gang is because I wanted too [sic] see your[] Black Snake," which is an apparent reference to plaintiff's penis.   *Id.*   Later on that same day, plaintiff submitted a written complaint concerning the incident to Vernon Fonda, the DOCCS Chief of Investigations.   *Id.* at 4; *see also* Compl. Exh. B (Dkt. No. 1) at 16-17.[2]   That complaint was referred back to the superintendent at

_____

[1]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion.   *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).

[2]    Plaintiff's original complaint included several attached exhibits.   Compl. (Dkt. No. 2) at 11-25.   On July 2, 2012, Senior District Judge Frederick J. Scullin ordered plaintiff to file an amended complaint curing deficiencies identified in the original complaint if he wished to pursue claims against certain defendants.   Decision and Order (Dkt. No. 8) at 10.

Shawangunk for investigation. Compl. Exh. B-1 (Dkt. No. 2) at 18.

Two weeks later, on April 19, 2011, as plaintiff was exiting the prison barber shop, defendant Langendorf ordered him to stand against the wall and submit to a pat frisk. Am. Compl. (Dkt. No. 12) at 2, 8. While plaintiff stood facing toward the wall, defendant Langendorf rubbed the front of his body against plaintiff's buttocks, making a grinding motion, while whispering in plaintiff's ear that he wanted to "see [plaintiff's] black snake." *Id.* On that same day, plaintiff filed a written complaint against defendant Langendorf with Richard Roy, Deputy Commissioner and Inspector General of the DOCCS. Am. Compl. (Dkt. No. 12) at 2; Compl. Exh. A (Dkt. No. 2) at 12-13. Plaintiff also filed a written complaint regarding the incident with John Maly, Deputy Superintendent for Security for the DOCCS.[3] *Id.*

As a result of the encounter between defendant Langendorf and plaintiff

_____

That order notified plaintiff that any amended complaint "shall supersede and replace in its entirety the prior complaint[.]" *Id.* at 9. Plaintiff's amended complaint, which was timely filed and accepted for filing, incorporates by reference the same exhibits attached to his original complaint, but fails to actually attach them. Am. Compl. (Dkt. No. 12). Although it is well settled that an amended complaint supersedes a prior complaint in its entirety, it is clear to the court that plaintiff intended to attach the exhibits to his amended complaint. For the sake of efficiency, I have not required plaintiff to resubmit those exhibits, and have considered them incorporated into plaintiff's amended complaint.

[3]    Plaintiff's amended complaint alleges that he filed a third written complaint against defendant Langendorf regarding this incident to J.T. Smith, the Superintendent at Shawangunk, and that this complaint is attached as Exhibit A-2. Am. Compl. (Dkt. No. 12) at 2-3. Neither the original nor the amended complaint, however, have an Exhibit A-2 attached. *See generally* Compl. (Dkt. No. 2); Am. Compl. (Dkt. No. 12).

4

outside of the barber shop, defendant Langendorf issued a misbehavior report accusing plaintiff of creating a disturbance and harassing an employee. Am. Compl. (Dkt. No. 12) at 4; Compl. Exh. C (Dkt. No. 2) at 19.

During the evening of April 19, 2011, plaintiff verbally reported the alleged sexual harassment by defendant Langendorf that had occurred earlier in the day to defendant Nelson, a corrections sergeant employed at Shawangunk, while she was rounding in plaintiff's unit. Am. Compl. (Dkt. No. 12) at 4-5. In response, defendant Nelson advised the plaintiff to "zip [it] or else," and that she "better not hear anything" about the incident again. *Id.* at 5. Plaintiff filed a written complaint against defendant Nelson to Superintendent Smith regarding this incident. Compl. Exh. D (Dkt. No. 2) at 20. On May 4, 2011, Deputy Superintendent for Security Maly responded in writing to plaintiff's complaints by indicating that, following an investigation that included interviewing witnesses and defendant Nelson, "the allegations could not be substantiated." Compl. Exh. D-1 (Dkt. No. 2) at 21.

II.     PROCEDURAL HISTORY

Plaintiff commenced this action in the United States District Court for the Southern District of New York by filing a complaint, accompanied by a request for leave to proceed *in forma pauperis,* on or about August 10, 2011. Dkt. Nos.

1, 2.  The original complaint named five defendants, all of whom were alleged to be employed at Shawangunk, including B. Langendorf, Sergeant Nelson, Sergeant Keane, Lieutenant Gardner, and Superintendent Smith.  Compl. (Dkt. No. 2) at 1-2.  Following the transfer of the action to this district on September 21, 2011, Judge Scullin reviewed plaintiff's complaint and determined that a response was required from defendants Langendorf and Nelson, but that plaintiff was required to file an amended complaint that would supersede the original in its entirety if he wished to pursue any claims against the remaining three defendants.  *See generally* Decision and Order (Dkt. No. 8).  Upon review of plaintiff's amended complaint, Judge Scullin determined that, because it named only defendants Langendorf and Nelson, it was accepted for filing only to the extent that it asserted claims against those two defendants, and dismissed defendants Keane, Gardner, and Smith from the action without prejudice.  Order (Dkt. No. 16).

Liberally construed, plaintiff's amended complaint, which is now the operative pleading in this action, asserts five claims, including: (1) sexual harassment, against defendant Langendorf; (2) retaliation against, defendant Langendorf; (3) failure to intervene, against defendant Nelson; (4) failure to investigate, against defendant Nelson; and (5) threatening plaintiff, against

defendant Nelson.  *See generally* Am. Compl. (Dkt. No. 12).  Plaintiff's claims

are asserted against defendants in both their individual and official capacities.

*Id.* at 1.  As relief, plaintiff seeks $5 million in compensatory damages, and $5

million in punitive damages as against each defendant.  *Id.* at 10-11, 12.

Plaintiff also seeks an injunction requiring defendant Langendorf to "seek

counseling, therapy and psychiatric care for his [p]redatory sexual behavior[ ]

and . . . [directing him] to never confront Plaintiff Eric Wellington[.]" *Id.* at 10.

In lieu of answering plaintiff's amended complaint, defendants filed a

motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil

Procedure on December 10, 2012.  Dkt. No. 21.  In their motion, defendants

argue that plaintiff's amended complaint is subject to dismissal for twelve

reasons, including: (1) any claims asserted against defendant Gardner are

barred by collateral estoppel and res judicata; (2) the amended complaint fails

to allege personal involvement on the part of defendants Nelson and Gardner;

(3) plaintiff's sexual harassment cause of action asserted against defendant

Langendorf fails to state a claim under the Eighth Amendment; (4) plaintiff's

retaliation claim asserted against defendant Langendorf for allegedly filing a

false misbehavior report fails because, as a condition for pursuing that claim,

plaintiff must first succeed in having his disciplinary conviction overturned; (5)

plaintiff failed to exhaust his available administrative remedies; (6) the Eleventh

Amendment bars any claims asserted against defendants in their official

capacities; (7) plaintiff had no constitutional right to an investigation by

defendant Nelson; (8) plaintiff cannot recover compensatory damages because

the amended complaint does not allege physical injury; (9) plaintiff had no

constitutional right to be free from threats; (10) defendants are entitled to

qualified immunity; (11) the court should decline to exercise supplemental

jurisdiction over any state law claims asserted in plaintiff's complaint; and (12)

plaintiff is not entitled to injunctive relief because he has been transferred from

Shawangunk to another facility.  *See generally* Defs.' Memo. of Law (Dkt. No.

21-1).  Defendants' motion also seeks a protective order precluding plaintiff

from engaging in pretrial discovery pending disposition of the instant motion

pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.  *Id.*  Plaintiff has

not responded in opposition to defendants' motion, which is now ripe for

determination and has been referred to me for the issuance of a report and

recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and rule 72.3(c) of the

local rules of practice for this court.  *See also* Fed. R. Civ. P. 72(b).

## III. DISCUSSION

### A. Legal Standard

A motion to dismiss a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure calls upon a court to gauge the facial sufficiency of that pleading using a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546

(1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (internal quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

### B.   Exhaustion of Administrative Remedies

As a threshold matter, defendants argue that plaintiff's claims in this action are barred based upon his failure to exhaust available administrative remedies.  Defs.' Memo. of Law (Dkt. No. 21-1) at 12-13.

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Woodford v. Ngo,* 548 U.S. 81, 84 (2006) ("Exhaustion is . . . mandatory.  Prisoners must now exhaust all

'available' remedies[.]"); *Hargrove v. Riley,* No. 04-CV-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007) ("The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983.").[4] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The requirement that inmates exhaust administrative remedies before filing a lawsuit, however, is not a jurisdictional requirement. *Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir. 2003). Instead, failure to exhaust is an affirmative defense under the PLRA, and "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). For that reason, the exhaustion defense is one that is not particularly well-suited for resolution for a motion to dismiss, absent the clearest indication in a plaintiff's complaint that a failure to exhaust has occurred. *See*, *e.g.*, *Laporte v. Fisher*, No. 11-CV-9458, 2012 WL 5278543, at *5 (S.D.N.Y. Oct. 24, 2012) ("Dismissal pursuant to Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent

---

[4]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

from the face of the complaint." (citing *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003)).

In this case, defendants simply argue that plaintiff's complaint "fails to allege or demonstrate that he appealed the disciplinary process." Defs.' Memo. of Law (Dkt. No. 21-1) at 13. Plaintiff's amended complaint does, however, allege that he filed several complaints against defendants Langendorf and Nelson regarding the incidents giving rise to this action, and plaintiff has submitted letters from Deputy Superintendent of Security Maly and Superintendent Smith that dismiss or deny those complaints. Although it is true that plaintiff's amended complaint does not allege that he necessarily exhausted the grievance procedures available at Shawgangunk, it is also not clear that plaintiff failed to do so. As was noted above, whether a complaint alleges complete exhaustion is not dispositive on a motion to dismiss. *See Jones*, 549 U.S. at 216 ("[I]nmates are not required to specifically plead or demonstrate exhaustion in their complaints.").[5]

At this early procedural juncture, it is unclear whether plaintiff has satisfied his obligation to exhaust available administrative remedies before

---

[5]     Additionally, I note that defendants' motion to dismiss does not affirmatively argue that plaintiff failed to appeal any of his grievances, nor have defendants submitted any evidence purporting to show that plaintiff neglected to do so. *See generally* Dkt. No. 21.

bringing this action, or, even assuming plaintiff did not satisfy this obligation, whether he may be excused from doing so under the applicable Second Circuit exhaustion analysis. *See*, *e.g.*, *Macias v. Zenk*, 495 F.3d 37, 41 (2d Cir. 2007); *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). Accordingly, I recommend that this part of defendants' motion be denied, and that the issue be deferred to a time when it can be examined based upon a more fully developed record.

C.    Claims Asserted Against Defendant Langendorf

Plaintiff's amended complaint asserts two claims against defendant Langendorf, including sexual harassment and retaliation. Am. Compl. (Dkt. No. 12) at 2-3, 4. In their motion, defendants argue that the allegations supporting plaintiff's sexual harassment claim fail to state a claim, and that plaintiff is required to first have his disciplinary conviction overturned before asserting a retaliation claim. Defs.' Memo. of Law (Dkt. No. 21-1) at 8-12.

1.    Sexual Harassment

Claims of sexual abuse by a prison inmate against a corrections officer are cognizable under 42 U.S.C. § 1983, and are analyzed under the Eighth Amendment. *Boddie v. Schneider*, 105 F.3d 857, 860-61 (2d Cir. 1997). The Eighth Amendment governs "the constitutional boundaries on the conditions of

14

imprisonment," *Boddie*, 105 F.3d at 861, and prohibits punishments that "are incompatible with the evolving standards of decency that mark the progress of a maturing society," *Estelle v. Gamble,* 429 U.S. 97, 102 (1976). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers,* 475 U.S. 312, 319 (1986) (internal quotation marks and alterations omitted). While the Constitution does not mandate comfortable prisons, neither does it tolerate the inhumane treatment of those in confinement. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

Claims arising under the Eighth Amendment must satisfy two requirements. *Boddie*, 105 F.3d at 861. First, the alleged punishment must be "objectively, sufficiently serious." *Farmer*, 511 U.S. at 834; *accord*, *Boddie*, 105 F.3d at 861. Second, the defendant corrections officer must have acted with a "sufficiently culpable state of mind." *Id.* Because claims of sexual abuse in the prison context are governed by the Eighth Amendment, a plaintiff asserting the claim must satisfy both the objective and subjective elements of the constitutional test. *Boddie*, 105 F.3d at 861.

In analyzing the objective element, the Second Circuit has said that

"severe or repetitive" sexual abuse of a prisoner by a corrections officer "has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* "Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)).

In this case, plaintiff's amended complaint alleges that two separate incidents justify a finding that his rights under the Eighth Amendment have been violated by defendant Langendorf's sexual abuse. First, on April 5, 2011, defendant Langendorf did not allow him to participate in his daily programming because plaintiff refused to show defendant Langendorf his penis. Am. Compl. (Dkt. No. 12) at 3. Second, on April 19, 2011, defendant Langendorf pushed the front of his body into plaintiff's buttocks during a pat frisk while whispering a request that plaintiff show him his penis. *Id.* at 2.

Even assuming that these allegations are true, they are insufficient to give rise to a constitutional violation. Indeed, plaintiff's allegations in this case are less severe than those presented in *Boddie*, in which the Second Circuit concluded that the plaintiff's allegations were insufficient to support a claim of

sexual harassment under the Eighth Amendment.  *Boddie*, 105 F.3d at 861.  In

that case, the plaintiff had alleged that, on one occasion, a female corrections

officer squeezed his hand and touched his penis, and stated, "[Y]ou know your

[sic] sexy black devil, I like you."  *Id.* at 860.  On a second occasion, while the

plaintiff attempted to pass the same corrections officer as he walked towards

his cellblock, she bumped her breasts into plaintiff's chest and then "bumped

into him . . . with her whole body vagina[,] vagina against penis[,] pinning [the

plaintiff] to the door."  *Id.* (internal quotation marks omitted).  The Second

Circuit held that, although the "isolated episodes of harassment and touching

alleged . . . are despicable," considered either in isolation or cumulatively, the

allegations were not sufficiently "egregious" to give rise to a constitutional claim.

*Id.* at 861.

Similarly, here, plaintiff's allegations are neither sufficiently serious nor

repetitive to be "objectively, sufficiently serious" under the relevant

constitutional standard.  *See Silvagnoli v. Fischer*, No. 07-CV-0561, 2010 WL

1063849, at *14 (N.D.N.Y. Mar. 1, 2010) (Baxter, M.J.), *report and*

*recommendation adopted by* 2010 WL 1063840 (N.D.N.Y. Mar. 22, 2010)

(Mordue, J.), (finding the allegations that a corrections officer came up behind

the plaintiff, massaged his shoulders, and tried to grab the front of his groin

area were insufficient to give rise to an Eighth Amendment violation); *Holton v. Moore*, No. 96-CV-0077, 1997 WL 642530, at *2 (N.D.N.Y. Oct. 15, 1997) (Pooler, J.) (finding the allegations that a corrections officer touched the plaintiff's bare chest, put his hands down the plaintiff's pants "trying to part his cheeks coming in touch with [the plaintiff's] anal," and unzipped the plaintiff's pants and touched his penis were not objectively, sufficiently serious and did not "inflict harm of constitutional proportions"). Accordingly, I recommend that plaintiff's sexual harassment claims asserted against defendant Langendorf be dismissed.

2.      Retaliation[6]

A cognizable section 1983 retaliation claim lies when prison officials take adverse action against an inmate that is motivated by the inmate's exercise of a constitutional right, including the free speech provisions of the First Amendment. *See Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the

_____

[6]      To the extent that defendants' motion to dismiss construes this claim as one asserting a due process violation, I disagree with that construction and therefore find defendants' arguments related to a due process claim inapplicable. Defs.' Memo. Law (Dkt. No. 21-1) at 10-12. Out of an abundance of caution, however, and in the event that defendants intended to move for dismissal of plaintiff's retaliation cause of action based on a failure to state a claim upon which relief may be granted, I have addressed the merits of the claim below.

Constitution or federal laws.").  However, "[b]ecause of the relative ease with which claims of retaliation can be invoked, courts should examine such claims 'with skepticism and particular care.'" *Brobston v. Schult*, No. 10-CV-0242, 2011 WL 5325715, at *9 (N.D.N.Y. Sept. 28, 2011) (Treece, M.J.), *report and recommendation adopted by* 2011 WL 5325778 (N.D.N.Y Nov. 3, 2011) (Sharpe, J.), (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

To state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that (1) the conduct at issue was protected, (2) the defendants took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 99-CV-2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.).  "[P]rison officials' conduct constitutes an 'adverse action' when it 'would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."  *Alicea v. Howell*, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d

Cir. 2001)).

In this case, plaintiff's amended complaint alleges that, as a result of the alleged sexual harassment by defendant Langendorf at his cell on April 5, 2011, and outside the barber shop on April 19, 2011, he filed complaints to DOCCS Chief of Investigations Fonda, Deputy Superintendent of Security Maly, and Deputy Commissioner and Inspector General Roy.  Am. Compl. (Dkt. No. 12) at 4; Compl. Exh. B (Dkt. No. 2) at 16-17.  Plaintiff further alleges that "as soon as [he] file[d] a complaint against [defendant] Langendorf[,] [he] received a false misbehavior report" from defendant Langendorf.  Am. Compl. (Dkt. No. 12) at 4; Compl. Exh. C (Dkt. No. 2) at 19.

It is well-settled that filing a grievance is constitutionally protected conduct. *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996).  It is also clearly established that, where a corrections officer has filed a false misbehavior report against a prisoner in retaliation for the prisoner filing a complaint against that same corrections officer, such conduct can satisfy the "adverse action" prong of the relevant test.  *See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) ("[The plaintiff] has sufficiently alleged . . . adverse action on the part of the defendants–the filing of false misbehavior reports[.]").  As it relates to the third

element, given the temporal proximity between the issuance of misbehavior report and when plaintiff filed his written complaints, as well as the similarity between the April 5 and 19 incidents, I find that the allegations in the amended complaint plausibly suggest that defendant Langendorf was motivated to issue the misbehavior report by plaintiff's written complaints against him. *See* Am. Compl. (Dkt. No. 12) at 4 ("But, as soon as I file[d] a complaint against [defendant] Langendorf I received a false misbehavior report by the very same correctional officer whom I had written up for sexual harassment[.]"); *Espinal v. Goord*, 554 F.3d 216, 227 (2d Cir. 2009) ("A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action."). For all of these reasons, I find that plaintiff has stated a claim for retaliation against defendant Langendorf. Accordingly, I recommend that defendants' motion to dismiss this claim be denied.

### D. Claims Asserted Against Defendant Nelson

Plaintiff's amended complaint appears to assert three causes of action against Defendant Nelson, including: (1) failure to intervene and protect plaintiff from defendant Langendorf's conduct; (2) failure to investigate plaintiff's complaints concerning defendant Langendorf's actions; and (3) threatening plaintiff. Am. Compl. (Dkt. No. 12) (at 4-5. In their motion to dismiss,

defendants generally argue that plaintiff's amended complaint fails to sufficiently allege the personal involvement of defendant Nelson as it relates to any of plaintiff's claims. Defs.' Memo. of Law (Dkt. No. 21-1) at 6-8.

### 1. Failure to Intervene

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *accord*, *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *see also Mowry v. Noone,* No. 02-CV-6257, 2004 WL 2202645, at *4 (W.D.N.Y. Sept. 30, 2004) ("Failure to intercede results in liability where an officer observes the use of excessive force or has reason to know that it will be used."). To establish liability on the part of a defendant under this theory, "the plaintiff must adduce evidence establishing that the officer had (1) a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene." *Henry v. Dinelle*, No. 10-CV-0456, 2011 WL 5975027, at *4 (N.D.N.Y. Nov. 29, 2011) (Suddaby, J.) (citing *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008)).

In this case, plaintiff's amended complaint does not allege that defendant Nelson was present on either of the two occasions when defendant Langendorf allegedly sexually harassed him, nor does it allege that defendant Nelson had knowledge of defendant Langendorf's alleged sexual propensities prior to the two incidents giving rise to this action.  *See generally* Am. Compl. (Dkt. No. 12).  Instead, plaintiff only allegedly complained to defendant Nelson after the second incident, specifically in the evening of April 19, 2011.  *Id*. at 4.  Accordingly, plaintiff has not alleged facts that plausibly suggest that defendant Nelson had a realistic opportunity to intervene and protect plaintiff from defendant Langendorf's conduct.[7]  *See Cicio v. Lamora*, No. 08-CV-0431, 2010 WL 1063875, *8 n.6 (N.D.N.Y. Feb. 24, 2010) (Peebles, M.J.), *report and recommendation adopted by* 2010 WL 1063864 (N.D.N.Y. Mar. 24, 2010) (Sharpe, J.), (dismissing one of the defendants based on the fact that he was not present during the course of the incident giving rise to the action).  Accordingly, I recommend that this claim be dismissed.

---

[7]     Even if plaintiff's amended complaint established the elements necessary to support a claim of failure to intervene, that cause of action would fail in this case based upon the court's finding that the alleged sexual harassment by defendant Langendorf does not constitute a constitutional deprivation.

## 2.    Failure to Investigate

As Judge Scullin held in his decision dated July 2, 2012, no constitutional claim lies based solely upon the allegations that a defendant failed to conduct an investigation into a plaintiff's claims.  Decision and Order (Dkt. No. 8) at 6 (citing *Pine v. Seally*, No. 09-CV-1198, 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) (Baxter, M.J.), *report and recommendation adopted in pertinent part by* 2011 WL 856421 (N.D.N.Y. Mar. 9, 2011) (Hurd, J.); *see also Silvagnoli,* 2010 WL 1063849, at *9 ("[T]he law is clear. . . that inmates do not enjoy a constitutional of right to an investigation of any kind by government officials.").  Accordingly, I recommend that this claim asserted against defendant Nelson also be dismissed.

## 3.    Threatening Plaintiff

It is well-established that mere verbal threats, without more, do not rise to a constitutional claim under 42 U.S.C. § 1983.  *See*, *e.g.*, *Jermosen v. Coughlin*, 878 F. Supp. 444, 449 (N.D.N.Y. 1995) (McAvoy, J.) ("Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under [section] 1983.").

To the extent that plaintiff's amended complaint asserts that defendant Nelson's threat constitutes an "adverse action" in the retaliation analysis

discussed above,[8] the court disagrees. Whether a prison official's conduct constitutes adverse action presents a contextual inquiry. *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003). Although it is true that some verbal threats may constitute adverse action, generally, "[t]he less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights."[9] *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010) (collecting cases).

Here, plaintiff's amended complaint specifically alleges that defendant Nelson "told [him] to zip [it] or else and that she better not hear anything about [defendant Langendorf's] freaky act again, if [he knows] what[']s good for him." Am. Compl. (Dkt. No. 12) at 5. It is not alleged, however, that defendant Nelson repeated the threat, or took any affirmative action to suggest that she would do anything to act on this vague threat. Nor are there are any allegations that she had threatened plaintiff in the past, making it more likely that plaintiff might lend credence to the threat. Instead, the allegations in plaintiff's complaint suggest that this was an isolated, vague threat made in passing while defendant Nelson conducted rounds in plaintiff's cell block. Accordingly, the alleged threat uttered

---

[8]    *See* Part III.C.2., *ante.*

[9]    However, as one court in this district observed, "Based on the contextual nature of the adverse-action inquiry, . . . courts within the Second Circuit appear to have reached different results when examining . . . fact patter[n]s [involving verbal threats]." *Ford v. Smith*, No. 11-CV-0212, 2012 WL 4492181, at *7 (N.D.N.Y. Sept. 28, 2012) (Suddaby, J.) (collecting cases).

by defendant Nelson fails to constitute an adverse action under the retaliation analysis, and I recommend that this claim be dismissed. *Compare Gill v. Tuttle*, 93 F. App'x 301, 303-04 (2d Cir. 2004) (finding that the threat to "keep filing misbehavior reports" against an inmate for filing could constitute adverse action, *where the threat was preceded by both the filing of such a misbehavior report and the placement of the inmate in disciplinary confinement*) and *Pierce v. Monell*, No. 06-CV-1290, 2007 WL 2847317, at *8 (N.D.N.Y Sept. 26, 2007) (Kahn, J.) *adopting report and recommendation by* Lowe, M.J. (finding that a threat to file criminal charges against inmate, and kill him, for filing a grievance was sufficient adverse action) *with Mateo*, 682 F. Supp. 2d at 434 (finding that the threats "wait till [I] put [my] hands on [you]" and "one day [you] and I will party" in response to filing grievances were not sufficient for adverse action) and *Kemp v. LeClaire*, No. 03-CV-0844, 2007 WL 776416, at *15 (W.D.N.Y. Mar. 12, 2007) (finding that the threats "your day is coming," "you'll be sent to your mother in a black box," and "you'll get your black ass kicked" in response to filing grievances were not sufficient adverse action).

4.    <u>Supervisor Liability</u>

To the extent that plaintiff asserts a claim against defendant Nelson based only on her position as a sergeant, alleging that she was under a duty to properly train and supervise the staff under her supervision, that claim fails.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered."  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  It is well-established, however, that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on *respondeat superior*."  *Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501.  To establish responsibility on the part of a supervisory official such as defendant Nelson for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under

27

which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Richardson*, 347 F.3d at 435; *Colon,* 58 F.3d at 873; *Wright*, 21 F.3d at 501.

In this instance, plaintiff's amended complaint fails to allege facts plausibly suggesting that defendant Nelson is liable solely in her capacity as a supervisor at Shawgangunk.  Specifically, plaintiff's complaint fails to allege that she directly participated in any of the alleged sexual harassment by defendant Langendorf; there are no allegations regarding a custom or practice instituted or perpetuated at Shawgangunk that would result in the sexual harassment alleged by plaintiff; and plaintiff's amended complaint does not allege that defendant Nelson was negligent in managing her subordinates.  As to the allegations that defendant Nelson advised plaintiff never to discuss the sexual harassment allegations again, it is insufficient to give rise to supervisor liability because plaintiff had already filed two complaints against defendant Langendorf, and defendant Nelson was under no obligation to intervene during the investigations of those complaints.  *See Colon*, 58 F.3d at 873 ("We see no

reason why [defendant] Senkowski should have interevened in advance of an established procedure in which [the plaintiff] was to be given the opportunity to substantiate the claim that he made in his [complaint].").

For all of these reasons, I recommend dismissal of all claims asserted against defendant Nelson.

E.     Other Grounds for Dismissal

1.     Eleventh Amendment

In his amended complaint, plaintiff seeks damages against the defendants in both their individual and official capacities. Am. Compl. (Dkt. No. 12) at 1. In their motion, defendants seek dismissal of any damage claims asserted against them in their officials capacities. Defs.' Memo. of Law (Dkt. No. 21-1) at 13-14.

The Eleventh Amendment protects a state against suits brought in federal court by "private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Cory v. White*, 457 U.S. 85, 90-91 (1982); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). This absolute immunity, which states enjoy under the Eleventh Amendment, extends to both state agencies and state officials sued for damages in their official capacities when the essence of the

plaintiff's claim seeks recovery from the state as the real party in interest.[10]

*See, e.g., Daisernia v. State of New York*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.) ("[A] suit which seeks a money judgment 'which must be paid from the state treasury is barred by the Eleventh Amendment,' even though it is nominally asserted against an individual official." (quoting *Edelman*, 415 U.S. at 663)); *see also Richards v. State of New York App. Div., Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (citing, *inter alia*, *Cory v. White*, 457 U.S. 85, 89-91, (1982)). "To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."[11] *Ying Jing Gan*, 996 F.2d at 529; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Plaintiff's damage claims in this action against the named-defendants in

---

[10]    In a broader sense, this portion of defendants' motion implicates the sovereign immunity enjoyed by the State. As the Supreme Court has reaffirmed, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment. *Northern Ins. Co. of New York v. Chatham Cnty.*, 547 U.S. 189, 193 (2006).

[11]    By contrast, the Eleventh Amendment does not preclude lawsuits seeking to impose individual or personal liability on state officials under section 1983. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).

their official capacities are, in reality, claims against the State of New York, and therefore are subject to dismissal. *Daisernia*, 582 F. Supp. at 798-99. They are therefore subject to dismissal. Accordingly, I recommend that plaintiff's damage claims asserted against both defendants Langendorf and Nelson be dismissed with prejudice.

### 2.    Recovery of Compensatory Damages

Plaintiff's amended complaint seeks compensatory damages in the amount of $5 million against each of the two defendants for mental anguish and emotional distress. Am. Compl. (Dkt. No. 12) at 10, 12. In their motion, defendants argue that plaintiff cannot be awarded compensatory damages because his amended complaint fails to allege a physical injury as a result of defendants' conduct. Defs.' Memo. of Law (Dkt. No. 21-1) at 15-16.

Pursuant to 42 U.S.C. § 1997e, "No Federal civil action may be brought by a prisoner confined in a . . . correctional facility[] for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Second Circuit has held that section 1997e(e) applies to all federal civil actions, including those pursuant to 42 U.S.C. § 1983. *Thompson v. Carter,* 284 F.3d 411, 417-18 (2d Cir. 2002). Accordingly "[c]laims brought by prisoners pursuant to [section] 1983 for emotional damages unrelated to any

physical injuries are subject to dismissal." *Shariff v. Coombe*, No. 96-CV-3001, 2002 WL 1392164, at *4 (S.D.N.Y. June 26, 2002). The absence of physical injury does not totally bar civil rights claims by inmates, however, because section 1997e(e) does not preclude claims for nominal damages, punitive damages, or declaratory, or injunctive relief. *Shariff*, 2002 WL 1392164, at *5.

Plaintiff's amended complaint is devoid of any allegation that he experienced physical injury as a result of either defendants' conduct. *See generally* Am. Compl. (Dkt. No. 12). Accordingly, I recommend dismissal of plaintiff's claims to the extent that they seek compensatory damages.

F. Defendants' Remaining Arguments

In addition to the arguments already addressed in this report, defendants argue that plaintiff's amended complaint should be dismissed because (1) res judicata or collateral estoppel bars any claims asserted against defendant Gardner, (2) defendants are entitled to qualified immunity, (3) the exercise of pendent jurisdiction is not warranted in this case, and (4) plaintiff's request for injunctive relief against defendant Langendorf is rendered moot by plaintiff's transfer out of Shawangunk. *See generally* Defs.' Memo. of Law (Dkt. No. 21-1).

### 1.     Res Judicata/Collateral Estoppel

This argument is academic because, as was discussed above, defendant Gardner was dismissed from the action by Judge Scullin's order dated November 9, 2012.  Order (Dkt. No. 16).

### 2.     Qualified Immunity

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Sudler v. City of New York*, 689 F.3d 159, 174 (2d Cir. 2012).  The law of qualified immunity seeks to strike a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson*, 555 U.S. at 231.  Government officials are shielded from liability by qualified immunity when making "reasonable mistakes" concerning the lawfulness of their conduct.  *Sudler*, 689 F.3d at 174 (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001), *abrogated on other grounds by Pearson*, 555 U.S. 223)).

Because qualified immunity is "an immunity from suit rather than a mere

defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in the litigation," *Pearson*, 555 U.S. at 231 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

The determination of whether a government official is immune from suit is informed by two factors. *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011). Specifically, the inquiry turns on whether the facts alleged, taken in a light most favorable to the plaintiff, show that the conduct at issue violated a constitutional right, and if so, "whether that right was 'clearly established' at the time of the events at issue." *Nagle v. Marron*, 663 F.3d 100, 114 (2d Cir. 2011) (citing *Saucier*, 533 U.S. at 194, 201, 202); *accord*, *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004). The Supreme Court has said that an officer's "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (internal quotation marks and alterations omitted). However, "[e]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the

34

challenged action to believe his acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007) (citations omitted). This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of the defendant's actions]." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Here, defendants argue that they "are entitled qualified immunity in regard to the monetary claims against them in their individual capacity since no reasonable person could know that filing a misbehavior report for misbehavior violated any right enjoyed by Plaintiff." Defs.' Memo. of Law (Dkt. No. 21-1) at 18. Because plaintiff's amended complaint asserts a claim against only defendant Langendorf based on allegations involving a misbehavior report, I will analyze defendants' qualified immunity as it relates to that claim only.

After careful consideration, at this stage in the litigation, I am unable to conclude that defendant Langendorf is entitled to qualified immunity based on the record before the court. As already noted, for the purposes of a motion to dismiss, I am required to consider the allegations in plaintiff's amended complaint as true. Accordingly, assuming it is true that defendant Langendorf filed the misbehavior reported dated April 19, 2011, in retaliation to plaintiff filing a written complaint against him for the alleged sexual harassment on April 5 and

19, 2011, this is sufficient to defeat a qualified immunity argument. A prisoner's right to be free from unlawful retaliation, including through the issuance of a false misbehavior report, for exercising a constitutional right was well-established at the time defendant Langendorf issued the misbehavior report in this case. *Gill*, 389 F.3d at 380, 384. Whether defendant Langendorf maintained a good faith belief that his conduct did not violate this clearly established right is not an inquiry appropriate on a motion to dismiss, especially considering that, in this case, defendants failed to submit any evidence in support of a finding that defendant Langendorf issued the misbehavior report only because plaintiff violated prison rules.

### 3. Supplemental Jurisdiction

Defendants fail to identify the state claims that have been asserted in plaintiff's amended complaint and may be subject to pendent jurisdiction. Defs.' Memo of Law (Dkt. No. 21-1) at 18-19. Because the court has not construed plaintiff's amended complaint to assert any state law claims, I will not address this argument.

### 4. Injunctive Relief

Even assuming that plaintiff's sexual harassment claim against defendant Langendorf survives the pending dismissal motion, plaintiff's request for injunctive relief would be moot in light of his transfer out of Shawangunk. *See Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prisoner facility moots an action for injunctive relief against the transferring facility. On the other hand, the transfer does not moot an action for damages." (internal citations omitted)).

### G. Defendants' Motion for a Protective Order

In their motion, defendants also seek a stay of discovery, pending final disposition of this motion, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. Defs.' Memo. of Law (Dkt. No. 21-1) at 19-20.

A court may stay discovery during the pendency of a motion to dismiss for "good cause shown." *Moore v. Painewebber, Inc.*, No. 96-CV-6820, 1997 WL 12805, at *1 (S.D.N.Y. Jan. 14, 1998). In light of the procedural posture of this case, and the fact that the court has not yet issued its standard pretrial order directing that the parties exchange certain mandatory disclosures and establishing a deadline for completion of discovery, and further based upon plaintiff's failure to object, this request is granted. *Phipps v. Gillani*, No. 10-CV-

1588, No. 2012 WL 265727, at *6, n.15 (N.D.N.Y. Jan. 5, 2012) (Peebles, M.J.), *report and recommendation adopted by* 2012 WL 264414 (N.D.N.Y. Jan. 30, 2012) (McAvoy, J.).

### H.   Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead granted where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). Here, given the procedural history of this action, the court must determine whether plaintiff is entitled to the benefit of this general rule.

Most of the deficiencies identified in plaintiff's complaint could feasibly be cured through the inclusion of greater factual detail in his pleading.  With the exception of his damage claims against all of defendants in their official capacities, which I recommend be dismissed with prejudice, I recommend that plaintiff be permitted to amend his complaint, if desired, to address the

deficiencies identified in this report.

In the event plaintiff chooses to file an amended complaint, he is advised that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in his second amended complaint, plaintiff must clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass*, 790 F.2d at 263. Finally, plaintiff is informed that any such amended complaint will replace the existing amended complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust*

*Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

IV.    SUMMARY AND RECOMMENDATION

Defendants have sought dismissal of plaintiff's claims against them on several grounds, both procedural and substantive.  Addressing first defendants' procedural argument, because it is not clear from the face of the complaint that plaintiff failed to exhaust his administrative remedies, I recommend that defendants' motion, based on that ground, be denied as premature.

Turning to plaintiff's claims against defendant Langendorf for sexual harassment, and against defendant Nelson for failing to intervene and investigate, as well as making threats against plaintiff, I conclude that plaintiff's amended complaint fails to allege facts plausibly suggesting the necessary elements of each of those claims.  Plaintiff's cause of action against defendant Langendorf for retaliation, based upon the issuance of a false misbehavior report, however, is plausibly stated, and therefore should survive the pending dismissal motion.  Although plaintiff is granted leave to amend, all claims asserted against defendants in their official capacities should be dismissed with prejudice, as further amendment of those claims would be futile.  Accordingly, it

is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 21) be GRANTED, in part, and that all claims in this action, with the exception of plaintiff's retaliation cause of action asserted against defendant Langendorf in his individual capacity seeking punitive damages, be DISMISSED; and it is further

RECOMMENDED that, if plaintiff fails to file a second amended complaint curing the deficiencies identified in this report within thirty days of any order adopting this report, the action proceed against defendant Langendorf only for retaliation.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby further

ORDERED that, pending final disposition of this motion by the assigned district judge, all discovery in this action is hereby STAYED pursuant to Rule

26(c) of the Federal Rules of Civil Procedure; and it is further hereby

ORDERED that the clerk of the court serve a copy of this report and

recommendation upon the parties in accordance with this court's local rules.

Dated:     June 12, 2013
             Syracuse, New York

David E. Peebles
U.S. Magistrate Judge


Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Wayne HARGROVE, Plaintiff,
v.
Sheriff Edward RILEY; Nassau County Correctional
Facility, et al; Nassau County University Medical Staff
and Nassau County Correctional Facility, Defendants.
**Civil Action No. CV-04-4587 (DGT).**

Jan. 31, 2007.

Wayne Hargrove, Ossining, NY, pro se.

Alexander V. Sansone, Troy & Troy, Lake Ronkonkoma,
NY, Joseph Carney, Mineola, NY, for Defendants.

*MEMORANDUM AND ORDER*

TRAGER, J.

**\*1** Inmate Wayne Hargrove ("Hargrove" or "plaintiff")
brings this *pro se* action pursuant to 42 U.S.C. § 1983
against the Nassau County Sheriff, Nassau County
Correctional Facility ("NCCF") and NCCF's medical staff,
(collectively, "defendants"), seeking damages for injuries
allegedly caused by defendants while he was incarcerated
at NCCF. Defendants now move for summary judgment
pursuant to Fed.R.Civ.P. 56 arguing, *inter alia,* that
Hargrove's claims should be dismissed because he failed
to exhaust administrative remedies, as required by the
Prison Litigation Reform Act of 1995 ("PLRA"), 42
U.S.C. § 1997e. For the following reasons, defendants'
motions for summary judgment are granted.

**Background**

On August 27, 2004,[FN1] Hargrove filed a complaint,
alleging that defendants violated his civil rights when they
forcibly administered purified protein derivative skin tests
("PPD test") to test for latent tuberculosis ("TB") in April
2002, 2003 and 2004 while he was incarcerated at NCCF.
Complaint, Ex. C; Aff. in Opp. at 1-4, Ex. A. Hargrove
named Nassau County Sheriff Edward Reilly ("Reilly"),
NCCF and Nassau County University Medical Staff [FN2] as
defendants.[FN3] On November 22, 2004, after discovery,
County Defendants and NHCC Defendants filed separate
motions for summary judgment pursuant to Fed.R.Civ.P.
56. Both defendants properly filed a Local Rule 56.1
Statement and served Hargrove a Notice to *Pro Se* Litigant
Opposing Motion for Summary Judgment, pursuant to
Local Civil Rule 56.2.

> FN1. Hargrove signed the complaint August 27,
> 2004. The *pro se* clerk's office received and filed
> the complaint on September 20, 2004. Under the
> prison mail-box rule, a *pro se* prisoner's
> complaint is deemed filed when it is delivered to
> prison authorities. *See, e.g., Walker v.
> Jastremski,* 430 F.3d 560, 562 (2d
> Cir.2005)(deeming *pro* se prisoner's § 1983
> action filed on date complaint was handed to
> prison officials). There is no evidence in the
> record as to when Hargrove handed the
> complaint to prison officials. However, it is clear
> the operative date is between August 27, 2004
> and September 20, 2004. As discussed, *infra,*
> both of these dates occur before Hargrove
> properly exhausted the administrative remedies
> available to him at NCCF.

> FN2. The Nassau County University Medical
> Staff are employed by the Nassau Health Care
> Corporation ("NHCC"). Pursuant to the
> Correctional Center Health Services Agreement
> between the County of Nassau and NHCC, dated
> September 24, 1999, NHCC provides medical
> services for inmates at NCCF. County Defs.'s

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

Not. of Motion, Decl., at 1.

FN3. Reilly and NCCF are represented separately from NHCC. Accordingly, when a distinction is necessary, Reilly and NCCF will be referred to as "County Defendants" and Nassau County University Medical Staff and NHCC will be referred to as "NHCC Defendants."

**(1)**

**Tuberculosis Testing at NCCF**

Upon entering NCCF, new prisoners must first go through medical intake. Aff. of Kim Edwards, ("Edwards Aff.") ¶ 3. This standard process usually takes seventy-two hours. Edwards Aff. ¶ 4. During medical intake, NCCF tests inmates for TB. Aff. of Getachew Feleke ("Feleke Aff.") ¶ 3. NCCF generally uses a PPD test to detect latent TB. Feleke Aff. ¶ 3. However, if an inmate has previously tested positive for TB, it is NCCF's policy to test for TB using an x-ray instead.[FN4] Feleke Aff. ¶ 3. As part of its Infectious Disease Program, NCCF re-tests inmates for TB each year, beginning after they have been housed in that facility for one year. Edwards Aff. ¶ 5.

FN4. According to WebMD, "[a] tuberculin skin test should not be done for people who have a(1) Known TB infection [or a] (2) Positive tuberculin skin test in the past. A second test may cause a more severe reaction to the TB antigens." Jan Nissl, RN, BS, *Tuberculin Skin Tests,* W E B M D , h t t p : / / www.webmd.com/hw/lab_tests/hw203560.asp (last visited Jan. 31, 2007).

**(2)**

**Hargrove's Tuberculosis Testing at NCCF**

On March 15, 2002, Hargrove was incarcerated at NCCF.

NHCC Defs.' 56.1 Statement ¶ 1. Before entering the general population, Hargrove was processed through medical intake. NHCC Defs.' 56.1 Statement ¶ 2. The NCCF Medical Intake Chart for Hargrove, dated March 15, 2002 ("3/15/02 Chart"), shows that Hargrove informed medical staff that he had previously been exposed to tuberculosis. NHCC Defs.' Notice of Mot., Ex. C, at 1; NHCC Defs.' 56.1 Statement ¶ 2. The 3/15/02 Chart also shows that Hargrove reported testing positive to a prior PPD test and that he had been treated for TB in 2000. NHCC Defs.' Notice of Mot., Ex. C, at 1. Hargrove alleges that he was exposed to and treated for TB in 1997. Hargrove's Aff. in Opp. to Mot. for Summary Judgment, ("Aff. in Opp."), Ex. A at 1-2. Defendants contend that Hargrove was given an x-ray during the medical intake process because of his reported positive PPD test, and that the x-ray was negative, showing no active TB infection. NHCC Defs.' 56.1 Statement ¶ 2; Edwards Aff. ¶ 3. Without specifying a date, Hargrove generally states that his "request to be x-rayed was denied." Aff. in Opp. at 3.

*2 Pursuant to NCCF's Infectious Disease Program, after being incarcerated in NCCF for a year, Hargrove was scheduled to be re-tested for TB. Edwards Aff. ¶ 5; NHCC Defs.' 56.1 Statement ¶ 4. On May 24, 2003, Hargrove was given a PPD skin test. Edwards Aff. ¶ 5; NHCC Defs.' 56.1 Statement ¶ 4. This test was negative. Edwards Aff. ¶ 5; NHCC Defs.' 56.1 Statement ¶ 4. According to Hargrove, he requested an x-ray instead of a PPD test because of his previous exposure to TB, but was forced to submit to the PPD test. He also alleges that defendants threatened to put him in "keep lock" or "lock up" unless he submitted to the PPD test.[FN5] Complaint, Ex. C; Aff. in Opp. at 1-4, Ex. A.

FN5. Hargrove has made contradictory statements about being placed in "keep lock" or "lock up". It is unclear whether he is alleging that defendants threatened to place him in "lock up" unless he submitted to the PPD test or whether he was actually placed in "lock up" until such time that he agreed to submit to the PPD tests. For example, in his complaint, Hargrove states that when he "refused to submit to another [PPD] test, the Correctional Authorities were brought in and placed [him] in lock up." Complaint ¶ 4. In a hearing before Magistrate Judge Bloom on

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

January 31, 2005, Hargrove stated that he took the PPD tests because he was told that he would be placed in "lock up" until he submitted to the test. Hr'g Tr. 6:1-18; 9:5-10:10. In Exhibit B to his complaint, Hargrove alleges both that he was given an unwarranted TB shot and that when he refused the same shot he was placed in "keep lock." Complaint, Ex. B. There is no evidence in the record that Hargrove was ever segregated from the general population while housed at NCCF, outside of the seventy-two hour initial medical intake period. Aff. of Sgt. Neumann ("Neumann Aff.") at 1-2 (referring to prison records showing Hargrove's holding locations which demonstrate that he was never placed in "lock up"); NCCF 56.1 Statement ¶ E. Whether or not Hargrove was actually placed in "lock up" is not a material fact for purposes of this motion; as explained in detail, *infra,* Hargrove's failure to exhaust administrative remedies under the PLRA precludes a consideration of the merits of his Section 1983 claim.

The following year, in June of 2004, Hargrove was scheduled to be retested. Edwards Aff. ¶ 6; NHCC Defs.' 56.1 Statement ¶ 5. Because of the contradiction between the negative May 2003 PPD test and his reported positive history, NCCF contacted the Infectious Disease Department of the Nassau County Medical Center. Edwards Aff. ¶ 6. It was suggested that Hargrove be given a two-step PPD test, administered fifteen days apart. Feleke Aff. ¶ 4; Edwards Aff. ¶ 6. Hargrove was given these two PPD skin tests in June 2004. Edwards Aff. ¶ 6; NHCC Defs.' 56.1 Statement ¶ 5. Again, Hargrove alleges that these tests were administered against his will and under threat of being placed in quarantine. Complaint, Exs. A, B; Aff. in Opp., Ex. A.

On December 3, 2004, Hargrove was seen by a physician's assistant. NHCC Defs.' 56.1 Statement ¶ 6. During this meeting, Hargrove complained of a dry cough and that the site on his forearm where the June 2004 PPD tests had been administered was red and swollen. NHCC Defs.' 56.1 Statement ¶ 6; 11/28/04 Sick Call Request.

Hargrove's December 18, 2004 chart notes a positive PPD

test and an order was placed in the chart that Hargrove not be submitted for future PPD tests. Edwards Aff. ¶ 7; NHCC Defs.' 56.1 Statement ¶ 8. *See also* 11/19/2004 Grievance.

Hargrove alleges that the following physical ailments were caused by the PPD tests: chronic coughing, high blood pressure, chronic back pain, lung infection, dizzy spells, blurred vision and a permanent scar on both his forearms. Complaint, Ex. C; Aff. in Opp. at 3-4.

(3)

**NCCF's Inmate Grievance Procedure**

NCCF has had an inmate grievance program ("IGP") in place since 2001. Aff. of Kenneth Williams, ("Williams Aff."), at 2. NCCF's IGP is carried out in conformance with the New York State Commission of Corrections Minimum Standards and Regulations for Management of County Jails and Penitentiaries ("Minimum Standards"). *Id.*

The IGP is designed to resolve complaints and grievances that an inmate may have regarding the inmate's care and treatment while incarcerated at NCCF. Williams Aff. at 2. Upon entering NCCF, all inmates receive a copy of the NCCF inmate handbook, which outlines the IGP. *Id.*

**\*3** The record does not include an actual copy of NCCF's IGP, but the NCCF's IGP is detailed in the affidavit of NCCF Investigator Kenneth Williams. [FN6] The IGP encourages inmates to resolve their grievances informally with the staff member assigned to the inmate housing unit first. *Id.* If an acceptable resolution cannot be reached, inmates must then proceed through the formal three-step process set out in the IGP. *Id.* at 3.

FN6. Hargrove does dispute any statements made by Investigator Williams regarding the inmate grievance procedure, time limits or its availability to him. Furthermore, Hargrove does

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

not dispute that he received a handbook outlining the IGP.

The first step requires an inmate to submit his grievance form [FN7] to the Inmate Grievance Unit by placing it in a locked box located in each housing area, "within five days of the date of the act or occurrence giving rise to the grievance." [FN8]*Id.* at 2-3. NCCF indexes all grievance forms filed by inmates in a log book and in a computer system. *Id.* at 1, 3. Once a grievance form is received by the Inmate Grievance Unit, the grievance is investigated and the inmate will receive a written determination of the outcome from the Inmate Grievance Coordinator in Section II of the grievance form. [FN9]*Id.* at 3. The inmate is then given a choice to accept or appeal the decision by checking the desired selection and signing his name in Section III of the grievance form. *See, e.g.,* 11/19/2004 Grievance form. If the inmate is not satisfied with the decision of the Inmate Grievance Coordinator, the inmate may appeal the determination to the Chief Administrative Officer. Williams Aff. at 3. Finally, if the inmate is not satisfied with the Chief Administrative Officer's determination, the inmate may appeal to the New York State Commission of Correction Citizen's Policy and Complaint Review Council ("Council"). *Id.* at 3. The Council will then render a final determination. *Id.* at 3.

> FN7. The grievance forms contain four sections to be utilized throughout all three steps of the IGP. Section I provides space for the inmate to explain his complaint and the actions he requests as relief. Section II is for the decision of the Inmate Grievance Coordinator. Section III is titled "Acceptance/Appeal of Grievance Coordinator's decision" and contains two mutually exclusive options in which the inmate must choose one or the other: "I have read and accept the Grievance Coordinator's decision," or "I have read and appeal the Grievance Coordinator's decision." Section IV provides space for the decision of the Chief Administrative Officer.

> FN8. Hargrove has not argued that he was unaware of this five-day deadline.

> FN9. There is no evidence in the record specifying the how long an inmate has to appeal inaction by the Inmate Grievance Unit.

(4)

**Authenticity of the Grievance Forms and Other Documents Submitted by Hargrove**

In support of his allegations that he continuously informed defendants that he had been exposed to TB and, therefore, should not have been given PPD tests, Hargrove submitted three letters with his complaint, two of which were addressed to the Inmate Grievance Committee and one of which was addressed to "To whom this may concern." Complaint, Exs. A-C. He also submitted five complaint letters written to Sheriff Reilly, seventeen sick call requests and nine grievance forms during discovery and with his Affidavit in Opposition to Defendants' Motion for Summary Judgment, explaining that some of the medical records and notarized letters were "missing." Aff. in Opp, Ex. A at 2. Defendants call the authenticity of most of these documents into question, contending that Hargrove never submitted any grievance form or complaint letter before he filed his complaint. County Defs.' Mem. of Law at 16-21; County Defs.' 56.1 Statement at ¶¶ B2, C3, D3.

Kenneth Williams, an investigator at NCCF in the Inmate Grievance Unit, testified that he reviewed all of the grievance forms, complaint letters and sick call requests annexed to Hargrove's Complaint and to Hargrove's Affidavit in Opposition to Defendants' Motion for Summary Judgment. Williams Aff. at 2. Williams testified that he examined the grievance records at NCCF and searched "for any grievances by plaintiff/inmate Hargrove" and found "only two." [FN10] Williams Aff. at 1. The first grievance, dated November 19, 2004, complained that the medical staff continued "forcing [Hargrove] to take a T.B. shot while [he] keep[s] telling them that [he] has been exposed to T.B." 11/19/2004 Grievance; Williams Aff. at 1. In response to this grievance, Hargrove's "positive" TB status was noted in his medical records and an order was placed in Hargrove's medical chart, stating that Hargrove not be subjected to future PPD tests. 11/19/2004 Grievance, Section II;

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

Williams Aff. at 1; NHCC Defs.' 56.1 Statement ¶ 8; Edwards Aff. ¶ 7. In Section III of the 11/19/2004 Grievance, Hargrove acknowledged that he had read the Grievance Coordinator's decision, and that he chose to accept the decision instead of appealing it. 11/19/2004 Grievance. The other grievance received by the Grievance Unit, dated May 11, 2005, complained of an unrelated matter. 5/11/2005 Grievance (complaining of back problems and requesting the return of his medical shoes); Williams Aff. at 1. Thus, Williams concluded that, beside the 11/19/2004 and 5/11/2005 Grievance Forms, none of the other documents were "received by the grievance unit, and, given the locked box system, the grievance-forms were never submitted by plaintiff/inmate." Williams Aff. at 2.

> FN10. It is NCCF's procedure to forward to the attention of the Grievance Unit all official grievance forms and complaint letters-even ones not specifically addressed to the Grievance Unit. Williams Aff. at 3.

**\*4** A visual examination of the grievance forms Hargrove submitted in support of his claims suggests forgery. Five of the nine grievance forms were requests to stop PPD testing. *See* April 19, 2002 grievance; April 28, 2002 grievance; April 20, 2003 grievance; April 28, 2003 grievance; November 19, 2004 grievance. The remaining grievance forms concerned Hargrove's requests for medical shoes. *See* March 18, 2002 grievance; July 6, 2002 grievance; February 20, 2003 grievance; May 11, 2005 grievance. Of the grievance forms complaining of unwanted PPD tests, the April 28, 2002 grievance form is a patent photocopy of the April 19, 2002 grievance form, and the April 28, 2003 grievance form is a patent photocopy of the April 20, 2003 grievance form, with only the handwritten dates changed. The only potentially authentic grievance forms relating to Hargrove's complaint about the PPD testing are dated April 19, 2002, April 20, 2003, and November 19, 2004. Of these grievance forms, only the November 19, 2004 has been authenticated by NCCF personnel. *See generally* Williams Aff. at 1-4.

Turning to the complaint letters addressed to Reilly, many contain notary stamps cut from the bottom of unrelated

documents and photocopied onto the bottom of the complaint letters. *See* County Defs.' Mem. of Law at 18-21. C.O. Thomas McDevitt and C.O. Paul Klein, both of whom perform notary services for prisoners at NCCF, have submitted sworn affidavits, stating that they kept individual Notary Log Books covering all dates relevant to this litigation. Aff. of C.O. Klein, ("Klein Aff."), at 1; Aff. of C.O. McDevitt, ("McDevitt Aff."), at 1. McDevitt's Notary Log Book shows that he notarized only one document for Hargrove. This document, dated May 13, 2002, was a motion related to Hargrove's criminal trial. McDevitt Aff. at 1-2. Hargrove signed the Notary Log Book acknowledging receipt of that notarized motion. McDevitt Aff. at 2. McDevitt states that he never notarized any other documents for Hargrove. McDevitt Aff. at 2. However, McDevitt's stamp and signature dated May 13, 2002 (the date of the legitimate notarization) appear on Hargrove's letter to Sheriff Reilly dated May 10, 2002. County Defs.' Not. of Motion, Ex. A.

These facts repeat themselves in regard to the documents bearing the notary stamp and signature of Klein. Klein had performed several legitimate notarizations for Hargrove in connection to Hargrove's criminal trial. Klein Aff. at 1-2. Hargrove signed Klein's Notary Log Book acknowledging receipt of those notarized documents. Klein Aff. at 2. However, Klein states that he never notarized any of Hargrove's letters addressed to Sheriff Reilly that bear Klein's stamp and signature. Klein Aff. at 2. On all of the documents that Hargrove submitted bearing Klein's stamp and signature, the dates and signatures of Klein match identically to the dates on which he had performed legitimate notarizations for Hargrove in connection with his criminal trial. Defendants argue it is clear that the documents bearing the stamps and signatures of McDevitt and Klein were not actually notarized by these notaries. County Defs.' Mem. of Law at 17-22.

**\*5** Hargrove does not deny these allegations. Instead, he resubmits the documents that McDevitt and Klein testify they did not notarize with his Affidavit in Opposition and insists that the documents "refute[ ] the assertions put forth by the defendants." Aff. in Opp. at 2.

**Discussion**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

**(1)**

**Summary Judgment Standard**

A motion for summary judgment is granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A court ruling on a summary judgment motion must construe the facts in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Williams v. Metropolitan Detention Center,* 418 F.Supp.2d 96, 100 (E.D.N.Y.2005). Defendants, the moving party in this action, bear the burden of demonstrating the absence of a genuine issue of material fact. *Baisch v. Gallina,* 346 F.3d 366, 371 (2d Cir.2003).

As Hargrove is proceeding *pro se,* his complaint must be reviewed carefully and liberally, and be interpreted to "raise the strongest argument it suggests," *Green v. United States,* 260 F.3d 78, 83 (2d Cir.2001), particularly when civil rights violations are alleged, *see, e.g., McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004). Plaintiff's complaint does not specify the legal theories upon which it relies, but, in construing his complaint to raise its strongest argument, it will be interpreted to raise claims under 42 U.S.C. § 1983. *See, e.g., Dufort v. Burgos,* No. 04-CV-4940, 2005 WL 2660384, at *2 (E.D.N.Y. Oct. 18, 2005) (liberally construing plaintiff's complaint, which failed to specify the legal theory or theories upon which it rested, as, *inter alia,* a claim under 42 U.S.C. § 1983); *Williams,* 418 F.Supp.2d at 100 (same).

**(2)**

**Prison Litigation Reform Act**

**a. Purpose of the Prison Litigation Reform Act**

The PLRA was intended to "reduce the quantity and improve the quality of prisoner suits." *Woodford v. Ngo,*

--- U.S. ----, 126 S.Ct. 2378, 2387 (2006) (quoting *Porter v. Nussle,* 534 U.S. 516, 524 (2002)). It seeks to eliminate unwarranted interference with the administration of prisons by federal courts, and thus " 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " *Woodford,* 126 S.Ct. at 2387 (quoting *Porter,* 534 U.S. at 525).*See also Booth v. Churner,* 532 U.S. 731, 739 (2001). Formal grievance procedures allow prison officials to reconsider their policies, implement the necessary corrections and discipline prison officials who fail to follow existing policy. *See Ruggiero v. County of Orange,* 467 F.3d 170, 177-78 (2d Cir.2006).

**b. The Exhaustion Requirement**

The PLRA's "invigorated" exhaustion provision, 42 U.S.C. § 1997e(a), provides the mechanism to reduce the quantity and improve the quality of prisoners' suits by requiring that prison officials have the opportunity to address prisoner complaints through internal processes before allowing a case to proceed in federal court. *Woodford,* 126 S.Ct. at 2382 (citing *Porter,* 534 U.S. at 524).Section 1997e(a) provides that:

**\*6** [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983. *Woodford,* 126 S.Ct. at 2383;*Ruggiero,* 467 F.3d at 174;*Williams,* 418 F.Supp.2d at 100-01. The exhaustion provision is applicable to suits seeking relief, such as money damages, that may not be available in prison administrative proceedings, as long as other forms of relief are obtainable through administrative channels. *Giano v. Goord,* 380 F.3d 670, 675 (2d Cir.2004); *see also Woodford,* 126 S.Ct. at 2382-83 ("[A] prisoner must now exhaust

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.") (citing *Booth,* 532 U.S. at 734).

In June 2006, the Supreme Court held that the PLRA requires "proper exhaustion" before a case may proceed in federal court. *Woodford,* 126 S.Ct. at 2387. "Proper exhaustion" requires a prisoner to use " 'all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).' " *Ruggiero,* 467 F.3d at 176 (citing *Woodford,* 126 S.Ct. at 2385 (emphasis in original)). Although the level of detail necessary to properly exhaust a prison's grievance process will vary from system to system, *Jones v. Bock,* 127 S.Ct. 910, 2007 WL 135890, at *12 (Jan. 22, 2007), "proper exhaustion" under the PLRA " 'demands compliance with [that] agency's deadlines and other critical procedural rules.' " *Ruggiero,* 467 F.3d at 176 (quoting *Woodford,* 126 S.Ct. at 2386). Thus, the PLRA's exhaustion requirement is not satisfied by "untimely or otherwise procedurally defective attempts to secure administrative remedies." *Ruggiero,* 467 F.3d at 176 (citing *Woodford,* 126 S.Ct. at 2382).

**(3)**

**Exhaustion Analysis: Hargrove did not Exhaust the Administrative Remedies Made Available by NCCF prior to Bringing Suit**

Section 1997e(a) of the PLRA applies to Hargrove's complaint; Hargrove was and continues to be confined in a correctional facility, *see Berry v. Kerik,* 366 F.3d 85, 87 (2d Cir.2004), and Hargrove's claim is about a "prison condition" within the meaning of the PLRA, *see Williams,* 418 F.Supp.2d at 101. *See also Sloane v. W. Mazzuca,* No. 04-CV-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) (recognizing PLRA's application to complaint alleging retaliation by prison officials for plaintiff's refusal to consent to a PPD test). Accordingly, the merits of Hargrove's Section 1983 claims can only be addressed if it is first determined that Hargrove properly exhausted each claim under Section 1997e(a) of the PLRA before filing his complaint in federal court.

**\*7** Hargrove has submitted both forged [FN11] and authentic grievance forms in opposing defendants' motions for summary judgment. Excluding, for the moment, the forged documents, NCCF's records reflect that Hargrove did not submit his first grievance until after he filed the instant complaint. Williams Aff. at 1. Hargrove's first grievance complaining of unwanted PPD testing is dated November 19, 2004, Williams Aff. at 1, two to three months after Hargrove filed his complaint. Additionally, this first grievance, dated November 19, 2004, was submitted five months after the last PPD test was administered to him in June 2004. NHCC Defs.' 56.1 Statement ¶¶ 5,6. This five-month period far exceeds the five-day window provided by NCCF's IGP. Since Hargrove failed to comply with the IGP's deadlines, he did not properly exhaust the available administrative remedies. *Ruggiero,* 467 F.3d at 176 (" 'untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement.' ") (quoting *Woodford,* 126 S.Ct. at 2382).

> FN11. Based on an examination of the documents themselves, as well as the uncontradicted testimony of the notaries performing services for prisoners at NCCF, *see generally* Klein Aff.; McDevitt Aff., and of the investigator in the Inmate Grievance Unit, *see generally* Williams Aff., it appears that many of the documents submitted by Hargrove are forgeries. However, in order to view the facts in the light most favorable to Hargrove, and so as to avoid making findings of fact in a summary judgment motion, for the purposes of the exhaustion analysis, all of the documents will be considered to be authentic. However, for purposes of the sanctions analysis, the documents will be explored and the consequences of Hargrove's misrepresentations will be addressed.

Furthermore, even if the falsified grievance forms Hargrove submitted in support of his claim are considered authentic, they are still untimely. The diagnostic TB tests (whether x-ray or PPD tests) were given to Hargrove on March 15, 2002, May 24, 2003 and in June of 2004, but the grievance forms Hargrove submitted complaining of unwanted PPD tests are dated April 19, 2002, April 28, 2002, April 20, 2003, April 28, 2003 and November 19,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

2004. None of these grievances were filed "within five days of the of the date of the act or occurrence giving rise to the grievance." Williams Aff. at 3. There is no evidence in the record suggesting that NCCF's IGP allows for a tolling of the five-day time limit in which to file a grievance.[FN12]

> FN12. Even if the submitted grievances had been filed within the proscribed time period, they only show that Hargrove's grievances reached an Inmate Grievance Coordinator, the first formal step of NCCF's three-step administrative grievance process; Hargrove never appealed to the Chief Administrative Officer. By failing to take the next available step in NCCF's IGP, Hargrove failed to satisfy the mandatory exhaustion requirement. *See, e.g., Williams, 418 F.Supp.2d at 101, 102* (dismissing *pro se* complaint where plaintiff could only show he exhausted two of the four-step process mandated by prison's administrative process).

While the letters to Reilly and sick call requests show that Hargrove attempted to bring his complaints about the PPD testing to the attention of the prison staff, *see, e.g.,* Aff. in Opp., Exs. A-D, NCCF's IGP requires use of formal grievance forms. Thus, writing complaint letters and submitting sick call requests did not properly exhaust NCCF's available administrative remedies. *See, e .g., Hernandez v. Coffey,* No. 99-CV-11615, 2006 WL 2109465, at *4 (S.D.N.Y. July 26, 2006) (holding letters did not satisfy plaintiff's exhaustion obligation); *Williams, 418 F.Supp.2d at 101* (holding that because plaintiff's efforts to convey his medical condition through letters and conversations with the warden and medical staff did "not include the required steps of the PLRA's administrative remedy process," plaintiff failed to exhaust); *Mills v. Garvin,* No. 99-CV-6032, 2001 U.S. Dist. LEXIS 3333, at *8 (S.D.N.Y. Mar. 2, 2001) ("letter writing is not the equivalent of an exhaustion of administrative remedies under the PLRA").

As Hargrove failed to properly exhaust his administrative remedies, this action is precluded by 42 U.S.C. § 1997e(a) unless Hargrove can establish excuse for his failure to exhaust.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(4)**

**No Grounds to Excuse Plaintiff's Failure to Exhaust**

*\*8* Exhaustion is an affirmative defense that defendants have the duty to raise. *Jones, 2007 WL 135890, at * 8-11;Sloane, 2006 WL 3096031, at *4;Williams, 418 F.Supp.2d at 101.* Once argued by the defendants, a plaintiff has an opportunity to show why the exhaustion requirement should be excused or why his failure to exhaust is justified. *See Ruggiero, 467 F.3d at 175;Collins v. Goord, 438 F.Supp.2d 399, 411 (S.D.N.Y.2006)* ("[T]he Second Circuit has cautioned that 'while the PLRA's exhaustion requirement is 'mandatory,' certain caveats apply.' ")(internal citations omitted). Thus, before concluding that a prisoner failed to exhaust available administrative remedies as required by Section 1997e(a) of the PLRA, the following three factors must be considered: (1) whether administrative remedies were actually available to the prisoner; (2) whether defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; and (3) whether special circumstances, such as a reasonable misunderstanding of the grievance procedures, exist justifying the prisoner's failure to comply with the exhaustion requirement. *Ruggiero,* 467 F.3d at 175 (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)).[FN13]

> FN13. Courts in the Second Circuit have questioned what effect, if any, the Supreme Court's recent decision in *Woodford* requiring "proper exhaustion" may have on the three-step *Hemphill* inquiry. The Second Circuit has yet to address this issue. *See Ruggiero, 467 F.3d at 175-76* (declining to "determine what effect *Woodford* has on our case law in this area ... because [plaintiff] could not have prevailed even under our pre-*Woodford* case law"). To date, district courts have acknowledged the tension, but resolved to apply *Hemphill* to exhaustion claims until instructed otherwise by the Second Circuit. *See, e.g., Larkins v. Selsky,* 04-CV-5900, 2006 WL 3548959, at *9, n. 4 (S.D.N.Y. Dec. 6,

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

2006) (applying the current law of the Second Circuit to exhaustion claims); *Sloane,* 2006 WL 3096031, at *5 ("Until such time as the Court of Appeals considers the impact of *Woodford,* if any, on its prior rulings, this Court must follow the law of the Second Circuit. The Court will therefore apply the current law of this circuit to the exhaustion claims."); *Collins v. Goord,* 438 F.Supp.2d at 411 n. 13 (acknowledging that *Woodford* and *Hemphill* may be in tension, but deciding exhaustion claims under *Hemphill* inquiry); *Hernandez v. Coffey,* No. 99-CV11615, 2006 WL 2109465, at *3 (S.D.N.Y. July 26, 2006) (same). Here, Hargrove does not prevail under *Hemphill;* therefore, there is no occasion to address the potential effect *Woodford* may have had in his case.

**a. Whether administrative remedies were "available" to Hargrove**

The first step in the *Hemphill* inquiry requires a court to determine whether administrative remedies were available to the prisoner. *Hemphill,* 380 F.3d at 686. The test for assessing availability is an "objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Id.* at 688 (internal quotation marks omitted). In making this determination, "courts should be careful to look at the applicable set of grievance procedures." *Abney v. McGinnis,* 380 F.3d 663, 668 (2d Cir.2004). Exhaustion may be considered unavailable in situations where plaintiff is unaware of the grievance procedures or did not understand it, *Ruggiero,* 467 F.3d at 179, or where defendants' behavior prevents plaintiff from seeking administrative remedies,[FN14]*Hemphill v. State of New York,* 380 F.3d 680, 686 (2d Cir.2004).

FN14. Case law does not clearly distinguish between situations in which defendants' behavior renders administrative remedies "unavailable" to the plaintiff and cases in which defendants are estopped from asserting non-exhaustion as an affirmative defense because of their behavior. As such, there will be some overlap in the analyses.

Here, Hargrove has not claimed that NCCF's administrative grievance procedure was unavailable to him. In fact, Hargrove demonstrated his access to and knowledge of NCCF's IGP by filing proper grievances on November 19, 2004 and on May 10, 2005. Hargrove did not dispute any part of Investigator Williams's affidavit detailing the IGP and its availability to inmates since 2001. Specifically, Hargrove did not dispute, upon entering the facility, that he received a copy of the inmate handbook outlining the IGP. He has not claimed that he is unfamiliar with or unaware of NCCF's IGP. Hargrove has not alleged that prison officials failed to advance his grievances [FN15] or that they threatened him or took any other action which effectively rendered the administrative process unavailable.

FN15. Although not specifically alleged, interpreting the evidence to "raise the strongest argument," Hargrove may be arguing that NCCF's IGP was not available to him because the Grievance Coordinator failed to respond to his grievances. In the single grievance regarding PPD tests that defendants concede is authentic, Hargrove writes, "[n]ow for the third time your office refused to answer my grievances so please look into this matter because the T.B. shot is [sic] effecting my health." 11/19/04 Grievance. This language implies that Hargrove filed grievances in the past and received no response from the Inmate Grievance Coordinator. Furthermore, Hargrove wrote on one of the submitted copies of the November 19, 2004 grievance that "[t]his is the only accepte[sic] that Plaintiff got back from all grievances and letters that the Plaintiff sent to Sheriff Riley and his medical staffs about his staff making [sic] take T.B. test for 3 year[s]." County Defs.' Not. of Motion, Ex. A, 11/19/2004 grievance.

First, it must be reiterated that filing of the initial grievances was untimely. However, even assuming *arguendo* that the original grievances had been timely filed, district courts in the Second Circuit have held that the "lack of a response from the [Inmate Grievance Review Committee] does not excuse an inmate's obligation to exhaust his

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

remedies through available appeals." *Hernandez v. Coffey,* 2006 WL 2109465, at *3-5. *See also Hemphill,* 380 F.3d at 686 ("Threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system"); *Acosta v. Corr. Officer Dawkins,* No. 04-CV-6678, 2005 WL 1668627, at *3 (S.D.N.Y. July 14, 2005) (inmate required to appeal lack of response to exhaust administrative remedies); *Mendoza v. Goord,* No. 00-CV-0146, 2002 U.S. Dist. LEXIS 22573, at *6 (S.D.N.Y. Nov. 21, 2002) ("If, as a result of a negligent error by prison officials-or even their deliberate attempt to sabotage a prisoner's grievance-the prisoner [does not receive a response] on his complaint, he is not thereby forestalled from appealing"). Hargrove did not assert or offer evidence suggesting that he appealed the unresponsiveness or that those appeals were not advanced.

**\*9** Additionally, Hargrove's transfer from NCCF to Sing Sing Correctional Facility ("Sing Sing") in July 2005 did not excuse his previous failure to properly exhaust. *See, e.g., Sims v. Blot,* No. 00-CV-2524, 2003 WL 21738766, at *4 (S.D.N.Y. July 25, 2003) (determining that failure to exhaust administrative remedies is not excused by transfer to another facility); *Santiago v. Meinsen,* 89 F.Supp.2d 435, 440-41 (S.D.N.Y.2000) (determining that plaintiff should not be "rewarded" for failing to participate in grievance procedure before being transferred). Hargrove had ample opportunity to properly file his grievances and to appeal their results as required by NCCF's procedures while he was imprisoned at NCCF. The last PPD test Hargrove complains of was given in 2004; therefore, Hargrove had until June or July of 2004 to timely file his grievance in accordance with NCCF's IGP. Hargrove was not transferred to Sing Sing until July 2005. County Defs.' Mem. of Law at 2. Thus, Hargrove's transfer cannot excuse his previous failure to properly exhaust.

**b. Estoppel**

The second step of the inquiry asks whether defendants are estopped from raising exhaustion as a defense. Specifically, "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill,* 380 F.3d at 686 (internal citations omitted).

Here, Hargrove has not made any statements that would permit a finding that defendants should be estopped from raising the affirmative defense of exhaustion or that defendants waived the right to raise the defense. Defendants first raised the PLRA's exhaustion requirement as an affirmative defense in their respective answers. *See* County Defs.' Am. Answer at 3; NHCC Defs.' Answer at 1. County Defendants raised it again in their motion for summary judgment. *See* County Defs.' Mem of Law at 15-23. Thus, defendants are not estopped from raising the affirmative defense now. *See, e.g., Sloane,* 2006 WL 3096031, at *8 (exhaustion defense not waived where defendants first raised it in their motion to dismiss).

Additionally, defendants have not threatened Hargrove or engaged in other conduct preventing him from exhausting the available administrative remedies. *Cf. Ziemba v. Wezner,* 366 F.3d 161, 162 (2d Cir.2004) (holding defendants were estopped from asserting non-exhaustion because of prison officials' beatings, threats and other conduct inhibiting the inmate from filing proper grievances); *Feliciano v. Goord,* No. 97-CV-263, 1998 WL 436358, at *2 (S.D.N.Y. July 27, 1998) (holding defendants were estopped from asserting non-exhaustion where prison officials refused to provide inmate with grievance forms, assured him that the incidents would be investigated by staff as a prerequisite to filing a grievance, and provided prisoner with no information about results of investigation). Hargrove has not argued otherwise. *See Ruggiero,* 467 F.3d at 178 (holding defendants were not estopped from asserting a failure to exhaust defense where plaintiff pointed to no affirmative act by prison officials that would have prevented him from pursing administrative remedies); *Sloane,* 2006 WL 3096031, at *8 (finding no estoppel where plaintiff did not argue that defendants prevented him from pursuing the available administrative remedies); *Hernandez,* 2006 WL 2109465,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

at *4 (finding no estoppel where plaintiff did not argue that any threats or intimidation prevented him from pursuing his appeals). Thus, for the same reasons that administrative remedies were not deemed unavailable to Hargrove, defendants are not estopped from raising a failure to exhaust defense.

### c. Special circumstances

**\*10** Even where administrative remedies are available and the defendants are not estopped from arguing exhaustion, the court must "consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.' " *Hemphill,* 380 F.3d at 688 (quoting *Giano,* 380 F.3d at 676). For example, plaintiff's reasonable interpretation of regulations differing from prison official's interpretation has been held to constitute a "special circumstance." *Giano,* 380 F.3d at 676-77. No special circumstances have been alleged that would excuse Hargrove from availing himself of administrative remedies. *See Sloane,* 2006 WL 3096031, at *8; *Freeman v. Goord,* No. 02-CV-9033, 2004 U .S. Dist. LEXIS 23873, at * 9-10 (S.D.N.Y.2004) (granting motion to dismiss where "there is no evidence in the record ••• of any 'special circumstances' in this action.")

**(5)**

### Hargrove's Failure to Exhaust, in Addition to his Fraud on the Court, Warrants Dismissal with Prejudice

Hargrove has not sufficiently rebutted the defendants' assertion of failure to exhaust, and a liberal reading of his submissions does not reveal any grounds to excuse that failure.

Because Hargrove filed a complaint in federal court before filing a grievance, permitting his unexhausted and unexcused claim to proceed would undercut one of the goals of the exhaustion doctrine by allowing NCCF to be haled into federal court without the "opportunity to correct its own mistakes with respect to the programs it administers." *Woodford,* 126 S.Ct. at 2385. *See also Ruggiero,* 467 F.3d at 178 (citing *Porter,* 534 U.S. at 525). Thus, his complaint must be dismissed.

In general, dismissal without prejudice is appropriate where plaintiff has failed to exhaust but the time permitted for pursuing administrative remedies has not expired. *Berry v. Kerik,* 366 F.3d 85, 87 (2d Cir.2004). Dismissal with prejudice is appropriate where "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Berry,* 366 F.3d at 88. Here, Hargrove's administrative remedies were available to him during his entire period of confinement at NCCF. He remained incarcerated in NCCF throughout the time period in which he alleges the PPD tests were given. He could have exhausted remedies for his grievances at any time. Therefore, Hargrove had ample opportunity to seek administrative remedies but failed to do so. Because there is no evidence in the record that administrative remedies are still available to Hargrove, as the five-day time period had run, and because Hargrove has alleged no special circumstances justifying his failure to exhaust, his complaint is accordingly dismissed with prejudice. *Berry,* 366 F.3d at 88 (upholding dismissal with prejudice where plaintiff had no justification for his failure to pursue administrative remedies while they were available.)

**\*11** Additionally, defendants' have moved for sanctions based on Hargrove's alleged submission of falsified evidence. If a party commits a fraud on the court, the court has the inherent power to do whatever is reasonably necessary to deter abuse of the judicial process. *Shangold v. The Walt Disney Co.,* No. 03-CV-9522, 2006 WL 71672, at *4 (S.D.N.Y. January 12, 2006) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991)). Fraud upon the court has been defined as "fraud which seriously affects the integrity of the normal process of adjudication." *Gleason v. Jandrucko,* 860 F.2d 556, 559 (2d Cir.1988); *McMunn v. Mem'l Sloan-Kettering Cancer Center,* 191 F.Supp.2d 440, 445 (S.D.N.Y.2002). In order for a court to grant sanctions based upon fraud, it must be established by clear and convincing evidence that a party has "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by ... unfairly hampering

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

the presentation of the opposing party's claim or defense." *McMunn*, 191 F.Supp.2d at 455 (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir.1989).

After carefully reviewing the allegedly fraudulent documents, it must be concluded that Hargrove consciously falsified these documents. *See, e.g., Shangold*, 2006 WL 71672, at *1, *3 (finding clear and convincing evidence of fraud where plaintiffs fabricated a timeline and plot outlines to advance their claims); *McMunn*, 191 F.Supp.2d at 446 (finding clear and convincing evidence of fraud where plaintiff edited audio tapes and represented that they were unedited during discovery). The notaries performing services for prisoners at NCCF testify that they never notarized many of the documents supplied by Hargrove. *See* Klein Aff.; McDevitt Aff. Furthermore, a visual examination of the documents themselves makes it clear that many of the documents submitted by Hargrove are forgeries.

In considering what sanction to impose, courts consider the following five factors: (i) whether the misconduct was the product of intentional bad faith; (ii) whether and to what extent the misconduct prejudiced the plaintiffs; (iii) whether there was a pattern of misbehavior rather than an isolated instance; (iv) whether and when the misconduct was corrected; and (v) whether further misconduct is likely to occur in the future. *Scholastic, Inc. v. Stouffer,* 221 F.Supp.2d 425, 444 (S.D.N.Y.2002) (citing *McMunn,* 191 F.Supp.2d at 461).

Here, Hargrove's deception was not an isolated instance; he fabricated the dates on many grievance forms, in addition to improperly duplicating notary stamps on complaint letters to make them look authentic. Klein Aff. at 2; McDevitt Aff. at 2; County Defs.' 56.1 Statement ¶¶ C3, D3. He submitted these forgeries to defendants during discovery and again as exhibits to his Affidavit in Opposition to Defendant's Motion for Summary Judgment. A severe sanction is warranted as Hargrove's forgeries were intentional, he never corrected them once their authenticity was challenged and he continues to insist on their veracity. Aff. in Opp. at 1-4. Given that there is clear and convincing evidence that Hargrove has continuously and consciously perpetrated a fraud on the court through his submission of fraudulent documents and sworn

affirmations of those documents' authenticity, dismissal with prejudice is especially appropriate. *See, e.g., Shangold,* 2006 WL 71672, at *5 (dismissing with prejudice where plaintiffs fabricated evidence to advance their claims); *Scholastic,* 221 F.Supp.2d at 439-444 (dismissing with prejudice where plaintiff produced seven pieces of falsified evidence); *McMunn,* 191 F.Supp.2d at 445 (dismissing with prejudice where plaintiff "lie[d] to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process").

### Conclusion

**\*12** Because Hargrove did not satisfy the exhaustion requirement under the PLRA, defendants' motions for summary judgment are granted. Further, considering the fraud Hargrove perpetrated on the court, the claims are dismissed against all defendants with prejudice. The Clerk of the Court is directed to close the case.

SO ORDERED:

E.D.N.Y.,2007.
Hargrove v. Riley
Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 5278543 (S.D.N.Y.)

(Cite as: 2012 WL 5278543 (S.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Hector LAPORTE, Plaintiff,
v.
Correction Sergeant FISHER and Correction Officer
Banks, Defendants.
No. 11 Civ. 9458(PKC)(HBP).

Oct. 24, 2012.
*MEMORANDUM AND ORDER*

P. KEVIN CASTEL, District Judge.

**\*1** Plaintiff Hector Laporte, proceeding *pro se,* brings this action pursuant to 18 U.S.C. § 1983 against Correction Sergeant Fisher and Correction Officer Banks in their individual and official capacities. Plaintiff asserts that defendants used excessive force against him in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Defendants Fisher and Banks move to dismiss the claims against them to the extent they are sued in their official capacities, as these claims are barred by the Eleventh Amendment. Defendant Banks further moves to dismiss all claims against him on the grounds of failure to state a claim upon which relief can be granted, qualified immunity, and failure to comply with the administrative exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e (the "PLRA"). For the reasons stated below, defendants' motion to dismiss all claims against them in their official capacities on the grounds of Eleventh Amendment immunity is granted. Defendant Banks' motion to dismiss on the grounds of failure to state a claim and qualified immunity is denied, and his motion to dismiss for failure to exhaust is converted into a motion for summary judgment, and denied.

## BACKGROUND

Plaintiff is an inmate at Sing Sing Correctional Facility ("Sing Sing"). (Compl.¶ I–A.) Plaintiff alleges that while incarcerated at Sing Sing, he was assaulted on April 24, 2011 by defendant Banks, and on July 4, 2011 by defendant Fisher. (*Id.* ¶ II–D.)

According to the Complaint, on April 24, 2011 plaintiff was attempting to go to the chapel when he was stopped by defendant Banks. (*Id.* ¶ II–D, Ex. B "Banks Grievance.") Defendant Banks allegedly accused plaintiff of "playing games with [defendant Banks] and the facility" by "using the chapel as a way just to come out of [plaintiff's] cell." (*Id.* Ex. B.) Defendant Banks then asked plaintiff for his identification card. Upon production of the identification card, plaintiff alleges that defendant Banks "became aggressive, and started pushing, shoving, and eventually punched [plaintiff] in the stomach." (*Id.*) The impact of the punch allegedly caused plaintiff to lose his breath. (*Id.*) Plaintiff asserts that defendant Banks continued to threaten and harass him for a period of time following this incident, such that plaintiff has been afraid to come out of his cell "for fear that CO. Banks will assault [plaintiff], set [plaintiff] up, or have [plaintiff] beaten by other officers." (*Id.*)

Plaintiff further alleges that he was assaulted by defendant Fisher on July 4, 2011. (*Id.* ¶ II–D, Ex. A "Fisher Grievance .") According to the Complaint, plaintiff approached defendant Fisher in his office regarding a problem with a disbursement form for plaintiff's legal mail. Upon bringing the problem to defendant Fisher's attention, plaintiff asserts that defendant Fisher became "very aggressive" and shouted expletives at plaintiff. (*Id.* Ex. A) As plaintiff attempted to leave defendant Fisher's office, Fisher allegedly pulled plaintiff back into the office and "repeatedly punched [plaintiff's] face until [plaintiff] was unconscious." (*Id.*) Plaintiff allegedly regained consciousness later in his cell "with swollen [sic] and bruised [sic] on [plaintiff's] face and body." (*Id.*) Plaintiff asserts that when he awoke, "Sergeant Fisher was shaking me awake and he spit on my face." (*Id.*) Defendant Fisher then allegedly handcuffed plaintiff and told plaintiff he was going to take him to the hospital. (*Id.*) Because plaintiff "couldn't barely walk at this point," plaintiff asserts that he "was literally dragged out the gallery," "thrown down the stairs," then dragged

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 5278543 (S.D.N.Y.)

(Cite as: 2012 WL 5278543 (S.D.N.Y.))

"down 32 flights of stairs on [plaintiff's] back," at which point defendant Fisher took plaintiff to the hospital. (*Id.* ¶ II–D, Ex. A.) In addition to a swollen and bruised face, plaintiff claims he suffered "cervical and lumbar spinal injuries" and "was hospitalized for one month." (*Id.* ¶ III.)

**\*2** Plaintiff filed this Complaint on December 21, 2011, alleging that defendants' assaults violated the Eighth Amendment prohibition against cruel and unusual punishment. (Docket # 1.) Plaintiff seeks $2 million in compensatory and punitive damages. (Compl.¶ V.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). " 'Labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' " rather, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 555).

In considering a Rule 12(b)(6) motion to dismiss, all non-conclusory factual allegations are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *See In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (per curiam). Moreover, plaintiff's pro se pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp,* 521 F .3d 202, 214 (2d Cir.2008) (internal quotations omitted). The plaintiff's pleadings are thus given a liberal and generous construction and are read "to raise the strongest arguments that they suggest." *Triestman v. Fed–Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (internal citation omitted).

In assessing the complaint, a court may consider documents incorporated by reference or attached to the complaint as exhibits, documents the plaintiff knew of or possessed and relied upon in framing the complaint, and items of which judicial notice maybe taken. *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 15 (2d Cir.1993). Here, plaintiff has attached relevant documents to the complaint, and these materials are properly considered on the motion.

## DISCUSSION

I. *Defendants' Motion to Dismiss All Claims Against Them in Their Official Capacities is Granted.*

Plaintiff sues the defendants in both their official and individual capacities. Absent a waiver or valid congressional override, the Eleventh Amendment has been construed to bar an action for damages by a private plaintiff against the state. *Seminole Tribe v. Florida,* 517 U.S. 44, 54 (1996). This immunity extends to state officials acting in their official capacity. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985). Section 1983 does not abrogate Eleventh Amendment immunity. *See Edelman v. Jordan,* 415 U.S. 651, 675–77 (1974). Damages are thus not recoverable in a section 1983 action against state officials acting in their official capacities. *See, e.g., Davis v. New York,* 316 F.3d 93, 101–02 (2d Cir.2002).

**\*3** Since plaintiff exclusively seeks monetary damages, not prospective injunctive relief, *see Ex Parte Young,* 209 U.S. 123 (1908), defendants' motion to dismiss all claims against them in their official capacities is granted. Eleventh Amendment immunity has no bearing on claims asserted against defendants in their individual capacities.

II. *Defendant Banks' Motion to Dismiss For Failure to State a Claim is Denied.*

Defendant Banks asserts that plaintiff has failed to state a claim for relief. There is no dispute that Banks was acting under color of state law at all times alleged in the complaint. Nor is it contested that the right to be free from excessive force is protected under the Eighth Amendment. *See Graham v. Connor,* 490 U.S. 386, 395 n. 10 (1989) ("After conviction, the Eighth Amendment 'serves as the primary source of substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified.' ") (quoting *Whitley v. Albers,* 475 U.S. 312, 327 (1986)). Defendant Banks argues that plaintiff has failed to allege any injuries as a result of Banks' alleged conduct, and that plaintiff's allegations are thus insufficient to state an Eighth Amendment claim. Defendant Banks relies on *Johnson v. Glick* 481 F.2d

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 5278543 (S.D.N.Y.)

(Cite as: 2012 WL 5278543 (S.D.N.Y.))

1028, 1033 (2d. Cir.1973), for the proposition that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers ...," violates the Constitution, and *Wilkins v. Gaddy,* 130 S.Ct. 1175, 1178 (2010), for the proposition that "not every malevolent touch by a prison guard gives rise to a federal cause of action."

Defendant Banks' reliance on these cases is misplaced. Plaintiff does not assert that defendant Banks "pushed" or "shoved" him. Rather, plaintiff alleges that defendant Banks "punched [plaintiff] in the stomach," causing plaintiff to "los[e][his] breath." (Compl.¶ II–D, Ex. B.) More significantly, the Supreme Court was clear in *Wilkins* that in assessing an Eighth Amendment claim, the " 'core judicial inquiry' ... was not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Wilkins,* 130 S.Ct. at 1178 (quoting *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)). As plaintiff alleges that the punch was not the result of "a good-faith effort to maintain or restore discipline," but rather a "willfully malicious" action, (Compl.¶ V), which resulted from defendant Banks "harrassing (sic)" him, (*Id.* ¶ II–D), the Court concludes that plaintiff has pled sufficient facts to state a claim of use of excessive force, for which Section 1983 provides a remedy. Defendant Banks' motion to dismiss on these grounds is therefore denied.

### III. *Defendant Banks' Motion to Dismiss on the Ground of Qualified Immunity is Denied.*

Defendant Banks asserts that he is protected by qualified immunity against any Section 1983 claims, because the alleged punch did not violate any clearly established federal law. Defendant Banks does not cite any relevant Eighth Amendment case law in support of this argument. Rather, he merely states that the alleged punch "caused no injuries and [was] de minimus," and thus "did not violate any clearly established federal law." (Def.Mem.7.)

**\*4** "The right of an individual not to be subjected to excessive force has long been clearly established." *Calamia v. City of New York,* 879 F.2d 1025, 1036 (2d Cir.1989). As discussed in the preceding section, plaintiff does not allege de minimus use of force, and there is no

indication from the pleadings that force was necessary to maintain or restore discipline. An objectively reasonable corrections officer would have understood that punching an inmate in the stomach, for no purpose other than to harass him, would constitute excessive force in violation of the Eighth Amendment. *See Wilkins,* 130 S.Ct. at 1178. Plaintiff has thus sufficiently pled a violation of a clearly established federal right, and defendant Banks is not entitled to qualified immunity.

### IV. *Defendant Banks' Motion to Dismiss For Failure to Exhaust Under the PLRA is Converted to a Motion for Summary Judgment, and Denied.*

Defendant Banks asserts that plaintiff has failed to administratively exhaust his claim, as is required by the PLRA. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any ... correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Hill v. Curcione,* 657 F.3d 116, 124 (2d Cir.2011) (quoting *Porter v. Nussle,* 534 U.S. 516, 532 (2002)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock,* 549 U.S. 199, 211 (2007).

In order to properly exhaust administrative remedies under the PLRA, inmates must complete the administrative review process in accordance with the rules of the particular institution in which they are confined. *Jones,* 549 U.S. at 218. In New York state prisons, the Department of Corrections and Community Supervision ("DOCCS") has established a three-step inmate grievance procedure. This procedure is set forth in N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5(2010).

First, an inmate must submit a grievance complaint to the clerk within twenty-one calendar days of an alleged occurrence. Id at (a). The Inmate Grievance Resolution Committee ("IGRC") then has up to sixteen calendar days to resolve the issue informally. *Id.* at (b)(1). If there is no informal resolution, the IGRC shall conduct a hearing

Slip Copy, 2012 WL 5278543 (S.D.N.Y.)

(Cite as: 2012 WL 5278543 (S.D.N.Y.))

within sixteen calendar days of receipt of the grievance, and issue a written decision within two working days of the close of the hearing. *Id.* at (b)(2). Next, an inmate must appeal an adverse decision to the facility superintendent within seven calendar days after receipt of the IGRC's written decision. *Id.* at (c)(1). The superintendent then has twenty days to render a decision. *Id.* at (c)(3). Finally, the inmate must appeal to the Central Office Review Committee ("CORC") within seven calendar days after receipt of the superintendent's written response, *id.* at (d)(1), and the CORC must render its final decision on the grievance within thirty calendar days from the time the appeal was received, *id.* at (d)(2). Only after an inmate has exhausted all three steps of this grievance process may he commence suit in federal court. *See Porter,* 534 U.S. at 524.

a. *Defendant Banks′ Motion to Dismiss on Rule 12(b)(1) Grounds is Denied.*

**\*5** Defendant Banks seeks dismissal pursuant to Rule 12(b)(1) and (6), but fails to specify the precise Rule 12(b) grounds under which he seeks dismissal for failure to exhaust. As the PLRA's exhaustion requirement is not jurisdictional in nature, *Richardson v. Goord,* 347 F.3d 431, 434 (2d Cir.2003), the Court cannot dismiss plaintiff's action for lack of subject matter jurisdiction. Thus, to the extent that the motion at bar is brought pursuant to Rule 12(b)(1), it is denied.

b. *Defendant Banks′ Motion to Dismiss on Rule 12(b)(6) Grounds is Converted To a Motion for Summary Judgment.*

Defendant Banks also seeks dismissal for failure to exhaust pursuant to Rule 12(b)(6). Failure to exhaust is an affirmative defense under the PLRA and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S. at 216. Dismissal pursuant to Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint. *See McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003) (Chin, J.). Here, plaintiff states in the Complaint that he filed a grievance with Sing Sing's grievance office, and that his claims were denied. (Compl.¶ IV.) Plaintiff further states he

appealed to the superintendent Philip D. Heath and [his] appeal was denied. [He] then appealed to Albany N.Y. CORC and received a letter from them dated November 2nd 2011 claiming they would look into the matter. However as of today [he] ha[sn't] heard back from CORC.

(Compl.¶ IV–E(3).) Nonexhaustion is thus not apparent from the face of the complaint, and dismissal pursuant to Rule 12(b)(6) is inappropriate.

However, as then-District Court Judge Chin has noted,

If nonexhaustion is not clear from the face of the complaint, a defendant's motion to dismiss should be converted, pursuant to Rule 12(b) [now codified in relevant part as Rule 12(d) ], to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused.

*McCoy,* 255 F.Supp.2d at 251. Under Rule 12(d), Fed.R.Civ.P., if "matters outside the pleadings are presented to and not excluded by the court" on a motion under Rule 12(b)(6), "the motion must be treated as one for summary judgment under Rule 56." Moreover, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* Accordingly, "a district court acts properly in converting a motion for judgment on the pleadings into a motion for summary judgment when the motion presents matters outside the pleadings," so long as "the court give [s] 'sufficient notice to an opposing party and an opportunity for that party to respond.' " *Hernandez v. Coffey,* 582 F.3d 303, 307 (2d Cir.2009) (quoting *Groden v. Random House, Inc.,* 61 F.3d 1045, 1052 (2d Cir.1995)).

**\*6** In *Hernandez v. Coffey,* the Second Circuit expounded on the notice requirement with regards to *pro se* parties. *Hernandez,* 582 F.3d at 307–09. The court began by noting that formal notice is not ordinarily required "where a party 'should reasonably have

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 5278543 (S.D.N.Y.)

(Cite as: 2012 WL 5278543 (S.D.N.Y.))

recognized the possibility that the motion might be converted into one for summary judgment [and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts outside the pleadings.' " *Id.* at 307 (alteration in original) (quoting *Villante v. Dep't of Corrections of City of New York,* 786 F.2d 516, 521 (2d Cir.1986)). However, in the case of a pro se party, " '[n]otice is particularly important' because the *pro se* litigant 'may be unaware of the consequences of his failure to offer evidence bearing on triable issues.' " *Id.* (alteration in original) (quoting *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983)). Accordingly, the court ruled that "absent a clear indication that the *pro se* litigant understands the nature and consequences of Rule 56 ... he or she must be so informed by the movant in the notice of motion or, failing that, by the district court." Id at 308 (citing *McPherson v. Coombe,* 174 F.3d 276 (2d Cir.1999)).

Here, defendant Banks provided to plaintiff precisely the kind of notice required by *Hernandez.* In accordance with S.D.N.Y. Civil Rules 12.1 and 56.2, defendant Banks served plaintiff with notice that the motion to dismiss might be converted to a summary judgment motion, explaining to plaintiff what he had to do to oppose summary judgment. ("Notice to Pro Se Litigants Opposing Motion to Dismiss or Motion for Summary Judgment," dated March 26, 2012, Docket # 19.) *See Hernandez,* 582 F.3d at 309 n. 2 (in reversing the district court, noting that two cases relied upon by the district court were "inapposite because the defendants in each case provided notice pursuant to S.D.N.Y. Civil Rule 12.1 explaining that their motions to dismiss might be converted into motions for summary judgment for purposes of determining exhaustion, and, further, explaining what the plaintiff had to do to oppose summary judgment"). Accordingly, the Court concludes that converting the motion to dismiss to a motion for summary judgment is appropriate.

c. *Defenant Banks' Motion for Summary Judgment is Denied.*

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed.R.Civ.P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.,* 687 F.3d 554, 558 (2d Cir.2012).

"[T]he burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Svcs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d. Cir.1994). In response, the nonmovant bears only a "limited burden of production," *Powell v Nat'l Bd. of Medical Examiners,* 364 F.3d 79, 84 (2d Cir.2004), and "all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought," *Gallo,* 22 F.3d at 1223. Moreover, the Second Circuit has "long recognized that summary judgment is a drastic device," *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n. Inc.,* 182 F.3d 157, 160 (2d Cir.1999), and "should not be granted when there are major factual contentions in dispute," *National Life Ins. Co. v. Solomon,* 529 F.2d 59, 61 (2d Cir.1975). "This is particularly so when, as here, one party has yet to exercise its opportunities for pretrial discovery." *Id.*

**\*7** Nonetheless, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (internal quotations omitted). If the evidence produced by the nonmovant "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted).

Here, there is a disputed issue of material fact as to whether plaintiff administratively exhausted his remedies. Defendant Banks has submitted evidence concerning the CORC computer database, which allegedly "contains a great deal of historical data with respect to appeals to CORC." (Bellamy Decl. ¶ 4, annexed to Harben Decl.) Defendant Banks submits that this database reveals that CORC never received any grievance appeals from plaintiff with respect to the incident at issue. However, plaintiff has declared under penalty of perjury: that he filed a grievance against defendant Banks, and that Sing Sing's Inmate Grievance Committee failed to respond; that he then

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 5278543 (S.D.N.Y.)

(Cite as: 2012 WL 5278543 (S.D.N.Y.))

appealed his grievance to the superintendant, and that the superintendant similarly failed to respond; and that he appealed to CORC, and was told that there was no record of his grievance. ("Opposition in Response to Defendants Motion to Dismiss" ¶ 1, Docket # 24; "Affidavit of Hector Laporte," Docket # 27.) This evidence, viewed in the light most favorable to the nonmoving party, raises a genuine dispute of material fact. Therefore, and particularly in light of the fact that plaintiff has "yet to exercise [his] opportunit[y] for pretrial discovery," *Solomon,* 529 F.2d at 61, summary judgment is denied. Defendant Banks is free to renew his motion for summary judgment at the close of discovery. If after a full and fair opportunity to conduct discovery, all that plaintiff is able to present is a conclusory assertion, unsupported by documentary evidence (where one would expect documentary support to exist), the defense of lack of exhaustion may look quite different.

## CONCLUSION

For the foregoing reasons and to the extent stated above, the defendants' motion to dismiss is GRANTED in part and DENIED in part. All claims against defendants Banks and Fisher in their official capacities are dismissed. All other claims, including all claims against the defendants in their individual capacities, remain pending.

The defendants shall provide to the plaintiff copies of all unreported cases cited herein. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED.

S.D.N.Y.,2012.

Laporte v. Fisher
Slip Copy, 2012 WL 5278543 (S.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2010 WL 1063849 (N.D.N.Y.)

(Cite as: 2010 WL 1063849 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Alex SILVAGNOLI, Plaintiff,
v.
Brian FISCHER, et al., Defendants.
No. 9:07–CV–561 (NAM/GJD).

March 1, 2010.

Alex Sil Vagnoli, pro se.

Justin Levin, Asskt Attorney General for Defendants.

**REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

**\*1** This matter has been referred to me for Report and Recommendation by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this amended civil rights complaint, plaintiff makes a variety of claims, including failure to investigate, deliberate indifference to his serious medical needs, failure to protect him from being assaulted by other inmates, retaliation for complaining about his medical needs, and sexual harassment. Amended Complaint (Dkt. No. 7) (AC). Plaintiff also appears to allege a violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. (AC at 5, 5–a).[FN1] Plaintiff seeks substantial monetary relief. (AC at 6).

> FN1. The amended complaint is written on a form-"Inmate Civil Rights Complaint under 42 U.S.C. § 1983." The pages on the form-complaint are numbered, but plaintiff has inserted unnumbered pages in between the numbered ones. For clarity, the court will cite to the form's numbered pages and will refer to the unnumbered pages with the form-page followed by letters beginning with "-a." The court will

refer to the pages of the plaintiff's attached exhibits simply by "Exs." followed by a page number.

Presently before the court is defendants' motion for summary judgment pursuant to FED.R.CIV.P. 56. (Dkt. No. 38). Plaintiff has not responded to the motion.[FN2] For the following reasons, this court finds no genuine issue of material fact regarding (1) plaintiff's claim that defendants Fischer and Wright failed to properly investigate plaintiff's letters of complaint, and their lack of personal involvement in his medical care; (2) plaintiff's separate medical care claim; (3) his claim against defendants Fischer and Pearlman for failure to protect and (4) his claim against defendant Neafach for sexual harassment and retaliation. Finally, plaintiff states no claim under the ADA. Therefore, the court will recommend granting defendants' motion for summary judgment and dismissing the amended complaint in its entirety.

> FN2. In their motion for summary judgment, defendants have included the "notice" to a pro se litigant of the possible consequences of his failure to respond to the motion. See Dkt. No. 38–5.

**DISCUSSION**

**I. Facts and Contentions**

In this amended complaint,[FN3] plaintiff names four defendants: Brian Fischer, the Commissioner of the Department of Correctional Services (DOCS); Dr. Lester Wright, DOCS Deputy Commissioner and Chief Medical Officer; Kenneth Pearlman, former [FN4] Superintendent of Mid–State Correctional Facility (Mid–State); and Susan Neafach, a correctional counselor at Mid–State.

> FN3. Plaintiff's original complaint asserted claims regarding his medical care beginning in 1994 and continuing until "present time of 2007." Compl. ¶ 6 (Dkt. No. 1). On June 11, 2007, Chief Judge Mordue ordered plaintiff to file an amended complaint, removing references to incidents occurring "no more than three years

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1063849 (N.D.N.Y.)

(Cite as: 2010 WL 1063849 (N.D.N.Y.))

prior to the date on which this action was commenced." (Dkt. No. 6 at 3). Plaintiff filed his amended complaint on June 25, 2007. (Dkt. No. 7). When plaintiff filed his amended complaint, he eliminated a great deal of information, and it now appears that he is complaining about incidents beginning in October of 2006 and continuing through 2007. (Dkt. No. 7). However, in eliminating material from the complaint, he also seems to have eliminated some documents that are relevant to his more recent claims. Chief Judge Mordue warned plaintiff in the June 11, 2007 order, that the amended complaint must "supercede and replace in its entirety the previous complaint filed by plaintiff...." (Dkt. No. 6 at 5). This court has examined some of the documents attached to the original complaint for clarity only.

FN4. Defendant Pearlman was the Superintendent of Mid–State at the time of the incidents forming the basis for plaintiff's complaint. (Pearlman Decl. ¶ 4, Dkt. No. 38–8). He is currently DOCS Deputy Commissioner of Program Services and has held that position since November 22, 2007. (*Id.* ¶ 3).

Plaintiff has organized his amended complaint with sections, containing facts that he believes relate to each defendant.[FN5] With respect to supervisory defendants Fischer, Wright, and Pearlman, the sections of plaintiff's amended complaint explain the facts that plaintiff believed required proper investigation by the defendants. (AC at 4–5–d). With respect to defendant Neafach, the amended complaint explains the conduct that plaintiff attributes to her. Plaintiff states that he has been denied constitutionally adequate medical care, he has been assaulted by another inmate on two occasions, and he has been sexually harassed and treated improperly by defendant Neafach. Plaintiff central claim appears to be that the supervisory officials, Fischer, Wright, and Pearlman have failed to properly investigate his complaints and have failed to supervise their subordinates, who allegedly engaged in the unconstitutional conduct.

FN5. Each factual recitation begins with a statement as to which defendant the facts apply. (*See* AC at 4, ¶ 6) ("Defendant number (1) Commissioner Brian Fischer....")

The amended complaint contains three causes of action. The first states that defendants Fischer and Wright failed to properly respond to plaintiff's letters of complaint about his "medical needs." (AC at 5). The second cause of action states that defendant Pearlman did not properly investigate plaintiff's complaints regarding his safety, nor did defendant Pearlman take appropriate disciplinary action against his staff. *Id.* Finally, plaintiff claims that the "defendants in this action" failed to comply with "policies, Directives, and procedures" in providing plaintiff the proper medical care.[FN6] The plaintiff does not include a separate "Cause of Action" against defendant Neafach for sexual harassment, but based upon the factual statements in the amended complaint, it is clear that plaintiff is attempting to make such a claim against her, and defendants have responded to plaintiff's allegations. (*See* AC at 5–e–5–g).

FN6. Plaintiff makes a passing reference in this cause of action the "rights of a disable [sic] person," that this court has associated with plaintiff's attempt at an ADA claim.

**\*2** Plaintiff was deposed on June 18, 2008, and the transcript of the deposition has been attached as Exhibit B to the affidavit of Justin Levin.[FN7] (Dkt. No. 38–4). In addition to plaintiff's deposition, defendants have filed medical records and disciplinary records relating to the plaintiff's complaints. In support of their motion for summary judgment, defendants have each submitted a declaration, together with supporting exhibits. Because the amended complaint is unclear,[FN8] the court has attempted to clarify the bases for plaintiff's allegations by incorporating the facts contained in the documents submitted by defendants.

FN7. The court will cite to the deposition transcript as (T)..

FN8. The court must also point out that the amended complaint contains some documents as exhibits that were created after plaintiff filed his

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1063849 (N.D.N.Y.)

(Cite as: 2010 WL 1063849 (N.D.N.Y.))

original complaint. *See e.g.* (AC Exs. at 12–14) (Letter addressed to both Brian Fischer and Lester Wright).

## A. Failure to Investigate Medical Care[FN9]

> [FN9.] The claims about plaintiff's medical care appear in the section entitled "Defendant # 2," referring to Dr. Wright. (AC at 5–a–5–c).

Plaintiff has been in a number of correctional facilities and has had various medical conditions that he states required, and still require, attention. In the amended complaint, he discusses the conditions he has, and the alleged conduct by corrections personnel that led plaintiff to writing letters to defendants Fischer and Wright. Plaintiff first states that he had a torn anterior cruciate ligament (ACL) for many years, requiring knee surgery. Plaintiff outlines the alleged lengths to which he has gone to obtain this surgery. (AC at 5–a–5–c). He states that at one point, he was the subject of a "medical hold," and that someone "uplifted" this hold in order to transfer plaintiff to another facility, causing plaintiff to lose his opportunity for an MRI and "possible surgery." (AC at 5–a). Plaintiff claims that defendant Wright is the one who authorizes medical trips or operations and was, thus, aware that the plaintiff was in need of surgery. *Id.*

In February and March 2007, while plaintiff was confined at Midstate Correctional Facility, plaintiff alleges that, on one occasion, defendant Neafach[FN10] did not take the proper action when plaintiff was having an episode of "serious high blood pressure." (AC at 5–g). He complains that instead of sending plaintiff to the infirmary, defendant Neafach sent plaintiff to the mental health unit, thus, interfering with his ability to obtain medical care.

> [FN10.] Plaintiff makes other claims against defendant Neafach that are discussed in Section II(D) below.

In late April, 2007, plaintiff was at Auburn Correctional Facility (Auburn). Plaintiff alleges that on April 19, 2007, he had an "incident" due to the weakness in his left knee, but he was simply told to submit a "sick call" request by the First Aid Department. (AC at 5–b). At some point, plaintiff also injured his right ankle. *Id.*

Plaintiff then complains about the unprofessional conduct of a nurse at Auburn and discusses a grievance that he filed against her[FN11] that plaintiff claims was not properly investigated. (AC at 5–b; AC Ex. at 5).

> [FN11.] This nurse is not a defendant in this action. However, plaintiff has attached some of the grievance documents to the amended complaint. (AC Ex. at 5–6).

Plaintiff states that he was examined by Dr. Dolan[FN12] on May 14, 2007. Dr. Dolan ordered x-rays of plaintiff's ankle, but when plaintiff was told that the x-rays were normal, he asked for a "second opinion." (AC at 5–b). Plaintiff states that, although he was put on "bed rest" on May 29, 2007 due to his ankle injury, he was denied his request for a cane. Plaintiff also claims that he was told to stop putting in sick call requests. A second x-ray, taken on June 12, 2007, confirmed that there was "no evidence for any fracture, dislocation, nor any joint effusions." (Levin Decl. Ex. C at 1–2).

> [FN12.] Dr. Dolan is not a defendant in this action.

*3 Plaintiff claims that as a result of the denial of proper medical care at various facilities, he wrote to defendants Dr. Wright and Commissioner Fischer to complain about his allegedly unconstitutional treatment. Plaintiff has attached three letters as part of the exhibits to his amended complaint. (AC Exs. at 9–14). Only two of the letters are addressed to defendants Fischer and Wright. (AC Exs. at 10–14). The first letter to these defendants was written less than one month before plaintiff's original complaint in this action was filed, and the second letter was written after the original complaint was filed. Some of plaintiff's other letters are attached to Dr. Wright's declaration. (Wright Decl. Ex. A, Dkt. No. 38–6 at 15–17)[FN13] One of these letters was sent after the amended complaint was filed. (Wright Decl. Ex. A at 7–8). The amended complaint also makes a passing reference to the lack of a "reasonable accommodation" under the ADA. (AC at 5–a).

> [FN13.] The pages of Dr. Wright's Exhibit A have not been separately marked. The court will refer to the page numbers contained in the CM/ECF

Not Reported in F.Supp.2d, 2010 WL 1063849 (N.D.N.Y.)

(Cite as: 2010 WL 1063849 (N.D.N.Y.))

header, which are simply the pages of the document as it was scanned into the CM/ECF system, counting from the first page of the declaration forward. The entire document contains 21 pages.

Plaintiff had an MRI on his left knee on June 4, 2007 [FN14] which confirmed a tear of the left ACL. (Levin Decl. Ex. D). On July 27, 2007, plaintiff was examined by Dr. Mitchell Rubinovich, an orthopedic specialist, who reviewed the MRI report, found that plaintiff had a torn ACL in his left knee, and that he had "not improved with conservative treatment." *Id.* Dr. Rubinovich stated that ACL reconstruction was "indicated," and ACL surgery was performed on the plaintiff on October 1, 2007. (*Id.* Ex. F, Operative Report). By January 18, 2008, Dr. Rubinovich reported that plaintiff was doing ***"exceptionally well."*** (*Id.* Ex. G at 2) (emphasis added).

> FN14. The MRI was done after the original complaint was filed, but prior to plaintiff's amended complaint in this action.

**B. Failure to Protect**

In the section of the amended complaint devoted to his claims against defendant Pearlman, plaintiff alleges that, due to a lack of security and supervision, he was assaulted by an unknown Mid–State inmate on February 23, 2007 and again on March 12, 2007. (AC at 5–d).[FN15] Plaintiff seems to imply that he was assaulted due to a "confrontation" between plaintiff and a member of the correctional staff. *Id.* However, plaintiff also claims that defendant Corrections Counselor, Susan Neafach may somehow have been involved in the assaults on plaintiff because he rejected her sexual advances. In an attempt to show that defendant Pearlman failed to properly supervise his staff, plaintiff claims that, in January of 2007, one of the officers at Mid–State was arrested in connection with a drug-related incident. *Id.*

> FN15. It is unclear when exactly plaintiff is alleging that he was assaulted. On one page of the amended complaint, plaintiff states that he was assaulted on "Feb. 23 & 27." (AC at 4). However, on another page, he states he was assaulted on "Feb 23 and March 12." (AC at

5–d).

**C. Sexual Harassment/Retaliation**

Plaintiff alleges that defendant Neafach was the corrections counselor in charge of teaching the chemical dependency/sex offender treatment program (CD/SOTP) in which plaintiff was enrolled while he was incarcerated at Mid–State. (AC at 5–e). Plaintiff claims that, on February 13, 2007, defendant Neafach made inappropriate sexual advances toward plaintiff. Plaintiff claims that he rejected defendant Neafach's sexual advances, and as a result, defendant Neafach began to retaliate against plaintiff in various ways. Plaintiff claims that he was removed from the CD/SOTP program for unsatisfactory performance.

**\*4** Plaintiff also claims that he tried to tell defendant Neafach that he was in danger, but that she laughed at him and threw his complaints in the garbage. (*Id.* at 5–f). Plaintiff implies that this conduct occurred prior to the February and March assaults. *Id.* Plaintiff alleges that defendant Fischer failed to properly investigate letters complaining about defendant Neafach.

**II. *Summary Judgment***

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED.R.CIV.P. 56; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1063849 (N.D.N.Y.)

(Cite as: 2010 WL 1063849 (N.D.N.Y.))

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-movant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the non-movant's claims or (2) identifying those portions of the non-movant's evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006) (citing Celotex Corp., 477 U.S. at 23). The second method requires identifying evidentiary insufficiency, not merely denying the opponent's pleadings. *Id.*

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id.* A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Additionally, while a court " 'is not required to consider what the parties fail to point out,' " the court may in its discretion opt to conduct "an assiduous view of the record" even where a party fails to respond to the moving party's statement of material facts. *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir.2001) (citations omitted).

**\*5** In their motion for summary judgment, defendants argue that defendants Fischer, Wright, and Perlman were not personally involved in any of plaintiff's alleged constitutional violations, and that his medical care, failure to protect, and sexual harassment claims all fail on the merits.

### A. *Medical Care*

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter,* 316 F.3d 178, 183–84 (2d Cir.2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing inter alia *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998)).

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin v. Goord,* 467 F.3d 263, 279 (2d Cir.2006) (citing *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Determining whether a deprivation is sufficiently serious also involves two inquiries. *Id.* The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer,* 511 U.S. at 844–47).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id .* (citing *Helling v. McKinney,* 509 U.S. 25, 32–33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). If the "unreasonable care" consists of a failure to provide *any* treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter,* 316 F.3d 178, 185–86 (2d Cir.2003)). However, in cases such as this one, where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the plaintiff is receiving ongoing treatment, and the issue is an unreasonable delay or interruption of the treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith,* 316 F.3d at 185). Thus, the court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for an Eighth Amendment claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1063849 (N.D.N.Y.)

(Cite as: 2010 WL 1063849 (N.D.N.Y.))

liability. *Id.* at 280.

**\*6** The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter,* 501 U.S. 294, 300, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care. *Id.* (citing *Farmer,* 511 U.S. at 835–37). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id.* Deliberate indifference is equivalent to subjective recklessness. *Id.* (citing *Farmer,* 511 U.S. at 839–40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance,* 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance,* 143 F.3d at 702 (quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer,* 511 U.S. at 844. Thus, the court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin,* 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services,* 151 F.Supp.2d 303, 311 (S.D.N.Y.2001). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986). The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional

violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds,* 151 F.Supp.2d at 312 (citing *Estelle,* 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id. See also Daniels v. Williams,* 474 U.S. 327, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (negligence not actionable under Section 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under Section 1983.

**\*7** In this case, plaintiff has not named any of the individuals who were actually involved in his medical care. Rather, he has focused on the Commissioner of DOCS and Dr. Wright, the DOCS Chief Medical Officer,[FN16] claiming that their failure to properly investigate his letters of complaint denied him proper medical care. Plaintiff makes one allegation directly against defendant Neafach, claiming that she denied his access to proper medical care because she sent him to mental health department rather than the medical department when plaintiff was having "an episode of serious high blood pressure." However, before the court turns to an analysis of plaintiff's medical care claim, it will discuss whether either of defendants Fischer and Wright were "personally involved" in the constitutional violations alleged by plaintiff.

> **FN16.** Plaintiff does not allege defendant Pearlman's personal involvement in plaintiff's medical care.

**1. Personal Involvement**

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability for any constitutional claim. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citation omitted); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003). In *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986), the Second

Not Reported in F.Supp.2d, 2010 WL 1063849 (N.D.N.Y.)

(Cite as: 2010 WL 1063849 (N.D.N.Y.))

Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007) (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)).

In this case, plaintiff does not allege that defendants Fischer or Wright were involved in his day-to-day medical care. Thus, plaintiff may either show personal involvement because they failed to remedy the violation after learning of it through a report or appeal or were grossly negligent in managing subordinates who caused the violation.

**a. Letters of Complaint**

During his deposition, plaintiff testified that he wrote five or six letters to defendant Fischer. (T. 15–17). Plaintiff also stated that he received one response from defendant Fischer, "but not according to what I was requesting for [sic]." (T. 15). There is no evidence that defendant Fischer, who is not a physician, had any personal involvement in plaintiff's medical care. As plaintiff conceded (T. 19), he did not speak to this defendant. Plaintiff's allegations against defendant Fischer are that he failed to properly investigate his letters, claiming unconstitutional medical treatment.

**\*8** Plaintiff also admitted during his deposition, that he never met Dr. Wright, although he stated that he wrote Dr. Wright letters and had his family write letters. (T. 24–25). Plaintiff testified that Dr. Wright forwarded one of plaintiff's complaints to a subordinate for investigation, but that "he never checked into the complaint." (T. 25). Basically, plaintiff has named these two individuals because they are "in charge." (T. 24).

It is now well-settled that the failure of a supervisory official to investigate a letter of protest written by an inmate is not sufficient to show personal involvement. *Smart v. Goord,* 441 F.Supp.2d 631, 642–643 (S.D.N.Y.2006). The same is true if the only involvement of the supervisory official is to refer the inmate's complaint to the appropriate staff for investigation. *Ortiz–Rodriguez v. N.Y. State Dep't of Corr. Servs.,* 491 F.Supp.2d 342, 347 (W.D.N.Y.2007). Some courts have held, however, that if the supervisory official acts *personally* in denying a grievance at various stages of the grievance process, he may be sufficiently involved in failing to remedy the situation. *See Atkinson v. Selsky,* 03 Civ. 7759, 2004 U.S. Dist. LEXIS 20560, 2004 WL 2319186 *2–4 (S.D.N.Y. Oct. 15, 2004) (denial of grievance sufficient for personal involvement). *See also Williams v. Smith,* 781 F.2d 319, 324 (2d Cir.1986) (finding sufficient personal involvement).

This court finds that plaintiff's letters are insufficient to confer personal involvement by either defendant Fischer or defendant Wright. Defendant Fischer is the Commissioner of DOCS, who delegates the day-to-day operations of the various correctional facilities to his staff. (Fischer Decl, ¶¶ 3, 7). Because defendant Fischer has no medical training, he delegates decisions regarding inmates' medical care to the medical professionals on his staff. (*Id.* ¶ 8). Defendant Fischer declares that he has had no involvement with, nor does he have knowledge of any of plaintiff's constitutional claims while he was incarcerated at any DOCS facility. (*Id.* ¶¶ 11–21). There is absolutely no indication from any of the letters that defendant Fischer had any personal involvement in plaintiff's medical care or in any of the complaints that plaintiff referred to vaguely in his letters, other than to forward the complaints to the appropriate officials for their review.

With respect to defendant Wright, a review of the plaintiff's letters shows that defendant Wright did not review plaintiff's records himself,[FN17] nor did he make any of the plaintiff's medical decisions. The fact that he or one of his staff responded to plaintiff's letter by *reporting* the result of an investigation that he referred to his subordinates for completion is not sufficient to confer personal responsibility. *Burns v. Trombly,* 624 F.Supp.2d 1 8 5 ,   2 0 4 – 2 0 6   ( N . D . N . Y . 2 0 0 8 )

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1063849 (N.D.N.Y.)

(Cite as: 2010 WL 1063849 (N.D.N.Y.))

(Report–Recommendation), *adopted by* 2008 U.S. Dist. LEXIS 37439, 2008 WL 2003804 (N.D.N.Y. May 7, 2008) (citing *Shabazz v. Lee,* 03–CV–1520, 2007 U.S. Dist. LEXIS 1841, 2007 WL 119429 *7 n. 4 (N.D.N.Y. Jan 10, 2007)* (Homer, M.J.).(a superintendent's adoption of a recommendation by an investigating officer cannot by itself demonstrate that he failed to remedy misconduct).

> FN17. At his deposition, plaintiff testified that defendant Wright had others respond for him and "never checked into the complaint." (T. 25).

**b. Failure to Investigate**

**\*9** Plaintiff claims that defendants Fischer and Wright failed to properly investigate his medical care complaints. The failure to investigate, as stated above, does not confer personal responsibility on the supervisory official. To the extent that plaintiff attempts to assert a separate constitutional claim of "failure to investigate," the law is clear, however, that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) (citing *Nieves v. Gonzalez,* No. 05 Civ. 17, 2006 U.S. Dist. LEXIS 24302, 2006 WL 758615 *11–13 (W.D.N.Y. Mar. 2, 2006);* *Longi v. County of Suffolk,* No. CV–02–5821, 2008 U.S. Dist. LEXIS 25468, 2008 WL 858997 *22–23 (E.D.N.Y. Mar. 27, 2008)).* In order for a constitutional violation to have occurred, the investigation itself must have resulted in a deprivation of a constitutional right. *Faison v. Hash,* 03–CV–6475P, 2004 U.S. Dist. LEXIS 29151, 2004 WL 944523 *6 (W .D.N.Y. Apr. 23, 2004)* (citing *Mallov v. City of New York,* 1996 U .S. Dist. LEXIS 16417, 1996 WL 648927 *6 (S.D.N.Y. Nov. 7, 1996)* (holding that warden's alleged failure to investigate assault by correctional officer did not give rise to constitutional violation, where plaintiff failed to show that warden could have anticipated or had other direct involvement in the assault; *Gomez v. Whitney,* 757 F.2d 1005 (9th Cir.1985)* (a claim against a police department for failure to investigate is insufficient to state a civil rights claim without another recognized constitutional right being involved)).

In any event, in this case, DOCS carried out several "investigations" of plaintiff's medical care complaints. His letters were addressed, and prison officials responded to

his concerns. At his deposition, plaintiff testified that his concerns "were responded [sic] but not accordingly [sic] to what I was requesting for [sic]." (T. 15). Plaintiff received more than was constitutionally required. In his declaration, defendant Wright states that between October 2006 and August 2007, plaintiff wrote "four rambling and conclusory complaints" to Wright's office alleging inadequate medical care. (Wright Decl. ¶ 9, Dkt. No. 38–7). Defendant Wright states that he referred plaintiff's complaints to the appropriate staff for investigation, and that his "staff" concluded that plaintiff had received appropriate medical care. (*Id.* ¶¶ 10–11). Because each investigation revealed that plaintiff was receiving appropriate care, defendant Wright's staff encouraged plaintiff to discuss his medical concerns "with his primary care provider at his next appointment." (*Id.* ¶ 12).

Plaintiff had no constitutional right to any investigation, and he certainly had no right to a particular outcome. Thus, plaintiff's medical care claims against defendants Fischer and Wright may be dismissed for lack of personal involvement, and to the extent that plaintiff attempt to assert a separate claim of failure to investigate his medical care complaints, that claim may be dismissed as well.

**2. Merits of Medical Care Claims**

**\*10** In this case, it appears that plaintiff's main complaint is that he did not receive the care that he wanted when he wanted it. At the same time that plaintiff was sending letters to these supervising officers, he was receiving care from the facility staff for his medical complaints, albeit, not in accordance with his particular desires.[FN18]

> FN18. For example, plaintiff complained about a torn ACL in his knee by letter dated October of 2006. Defendant Wright assigned Richard Lester to investigate the complaint. Lester investigated the complaint and "closed" the file on November 8, 2006. (Wright Decl ., Ex. A, Dkt. No. 38–6 at 18). Lester's comments were that plaintiff was "again scheduled to consult with an orthopedist after refusing knee operation at Gt. Meadow." *Id.*

Defendants have included parts of plaintiff's medical

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1063849 (N.D.N.Y.)

(Cite as: 2010 WL 1063849 (N.D.N.Y.))

records as exhibits to their motion for summary judgment. (*See e.g.* Levin Decl., Exhibits C–G). These exhibits show that, although plaintiff alleged that he had a broken ankle that was not treated, plaintiff had two sets of x-rays, each indicating that there was "no evidence for any fracture, dislocation, nor any joint effusions." (Levin Decl., Ex. C at 1–2). The x-rays were taken on May 15, 2007 and on June 12, 2007 by Dr. Ali Gharagozloo, who is not a party to this action. *Id.* Interestingly enough, one of plaintiff's letters, addressed to defendants Fischer and Wright is dated ***June 6, 2007*** and states that "I am walking on a fracture [sic] right ankle...." (AC Exhibits at 12). At that time, plaintiff had already had one set of x-rays indicating that there was ***no fracture.*** The second set were taken after the time of plaintiff's letter, again showing that there was no fracture.

Plaintiff had an MRI on his left knee performed by non-party, Dr. Mitchell A. Chess, on June 4, 2007. (Levin Decl. Ex. D). On July 27, 2007, plaintiff was examined by Dr. Mitchell Rubinovich, an orthopedic specialist, who reviewed the MRI report, found that plaintiff had a torn ACL in his left knee, and that he had "not improved with conservative treatment." *Id.* Dr. Rubinovich stated that ACL reconstruction was "indicated" for plaintiff, explained the risks and complications of surgery to plaintiff, and requested clearance from DOCS to perform the surgery at Rome Hospital. *Id.*

Plaintiff had his ACL surgery on October 1, 2007. (*Id.* Ex. F, Operative Report). On November 2, 2007, Dr. Rubinovich examined plaintiff and found that, four weeks after ACL reconstruction, plaintiff's knee was still significantly weakened, but had relatively good range of motion. (*Id.* Ex. G). Dr. Rubinovich prescribed physical therapy at that time. *Id.* On January 18, 2008, Dr. Rubinovich reported that plaintiff was doing ***"exceptionally well."*** (*Id.* Ex. G at 2) (emphasis added). The doctor stated that plaintiff could continue with "his own exercises for now," and that he should do any sports until April. *Id.*

Plaintiff testified that he was given physical therapy in Attica in 1998, and that he was given exercises to do on his own, although he was not completely satisfied with the therapy. (T. 28–30). Plaintiff claimed that after he was

moved to Clinton, therapy was denied; however, after the surgery he was again afforded some physical therapy. (T. 30–34).

Plaintiff testified that he obtained his MRI only after he wrote to the superintendent "quite a few times." (T. 40). At his deposition, plaintiff also complained about his treatment being delayed from March 2007 until July 2007. (T. 40). Finally, plaintiff testified that the only reason that he obtained his requested surgery was that he filed this civil rights action against the defendants. (T. 34).

**\*11** Basically, plaintiff disagrees with the type and timing of his medical treatment. He complains that he did not receive treatment, and then complains that he only received treatment after writing letters to the superintendent and other officials.[FN19] Because plaintiff did receive treatment, the "sufficiently serious" prong of the objective test for deliberate indifference considers whether the challenged delay was "sufficiently serious." *Salahuddin,* 467 F.3d at 280.

> FN19. The amended complaint also complains about someone lifting a "medical hold" placed on plaintiff by the mental health unit. (AC at 5–a). Plaintiff claims this "automatically" violates the Eighth Amendment. *Id.* Apparently, this "medical hold" is supposed to prevent plaintiff from being transferred to another facility. *Id.* It is unclear what connection, if any, the mental health department would have to plaintiff's knee, back, or ankle issues. In any event, plaintiff fails to allege how the "lifting" of a medical hold would have shown deliberate indifference by the named defendants.

When plaintiff was evaluated for and did have surgery on his knee, the doctor indicated that prior conservative treatment had not been successful and that surgery was indicated. He did not indicate that any delay had been deleterious to plaintiff's knee or that there was any emergency condition requiring immediate surgery. In fact, although plaintiff disputed the success of the surgery at his deposition, in January of 2008, Dr. Rubinovich reported that plaintiff was doing "exceptionally well." (Levin Decl. Ex. G at 2). Thus, plaintiff has not shown that any alleged

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1063849 (N.D.N.Y.)

(Cite as: 2010 WL 1063849 (N.D.N.Y.))

delay in surgery caused him any adverse affects or that the ultimate result of the surgery would have been different if the surgery was completed sooner.[FN20] Thus, this court finds that any delay was not "sufficiently serious" to establish the objective prong of the Eighth Amendment analysis. *See, e.g., Espinal v. Coughlin,* 98 Civ. 2579(RPP), 2002 WL 10450, at \*3–5 (S.D.N.Y. Jan. 3, 2002) (no deliberate indifference to a serious medical need resulted from three-year delay in surgery for ruptured ACL, in favor of more conservative treatment) (citing *Demata v. New York State Corr. Dept. of Health Servs.,* 198 F.3d 233 (table), 1999 WL 753142 (2d Cir.1999); *Culp v. Koenigsmann,* 99–CV–9557, 2000 WL 995495, at \*4 (S.D.N.Y. July 19, 2000) (no "serious injury" where plaintiff suffered from torn meniscus and knee surgery was delayed for approximately one year); *Taylor v. Kurtz,* 00–CV–700F, 2004 WL 2414847 at \* 4 (W.D.N.Y. Oct.28, 2004).

> FN20. The Second Circuit has not resolved whether actual adverse medical effects are required, as a threshold matter, to state a viable Eight Amendment claim relating to delayed medical care; but has indicated that a plaintiff must at least show that the delay significantly increased the risk for medical injury or similar serious adverse consequences. *Smith v. Carpenter,* 316 F.3d at 188–89, n. 14, n. 15.

This court also finds that plaintiff has not raised a genuine issue of material fact with respect to the subjective prong of the Eighth Amendment test. Each of plaintiff's letters of complaint was addressed, even though plaintiff testified that he never received responses to his inquiries. The supervisory defendants that have been named in this case, are entitled to rely upon the investigations completed by the facility officials and by their designated subordinates. All the documents submitted indicate that plaintiff's concerns were addressed, and that ultimately, plaintiff had his surgery, even though it was completed after this litigation was filed. The fact that conservative treatment was attempted prior to surgery does not amount to deliberate indifference. *Id.*

A review of plaintiff's papers indicates that with respect to his alleged ankle problem, defendants were more than responsive. Plaintiff had *two sets* of x-rays to determine that his ankle was not broken as he thought, and as he claimed in one of his letters to defendants Wright and Fischer.[FN21] Although plaintiff complains that he did not receive his treatment until after he filed this action, the dates on the letters written to defendants all are either shortly before or after the filing of plaintiff's complaint. Thus, this shows that when the officials were informed about plaintiff's complaints, action was taken to try to solve the problem. In any event, plaintiff's disagreement with the care he was receiving does not amount to deliberate indifference. Plaintiff has not raised a genuine issue of material fact regarding his medical care.[FN22]

> FN21. The court notes that plaintiff apparently complained of other medical impairments. The documents associated with his grievance indicate that plaintiff claimed that he hurt his back on April 25, 2007, but admitted that he did not report the injury. Plaintiff had a CT scan of his back. (Wright Decl., Dkt. No. 38–6 at 9) (A computed tomography (CT) scan uses x-rays to create cross-sectional pictures of structures in the b o d y . http://nlm.nih.gov/medlineplus/ency/article/003330.htm).

> FN22. To the extent that one of plaintiff's against defendant Neafach can be interpreted as alleging that she denied him access to the proper medical care, the claim will be discussed below.

**B. Failure to Protect**

**\*12** Plaintiff has named defendants Fischer and Pearlman in conjunction with his claim that defendants failed to protect plaintiff from assault on two occasions. An inmate has a right under the Eighth and Fourteenth Amendments to be spared "the 'unnecessary and wanton infliction of pain.' " *Hendricks v. Coughlin,* 942 F.2d 109, 112 (2d Cir.1991) (citation omitted). An inmate's allegation that a defendant was deliberately indifferent in failing to protect him from the violence of other inmates states a claim under section 1983. *Id.* at 113.

In order to state an Eighth Amendment claim for failure to protect, the plaintiff must show that he was

Not Reported in F.Supp.2d, 2010 WL 1063849 (N.D.N.Y.)

(Cite as: 2010 WL 1063849 (N.D.N.Y.))

incarcerated under conditions posing a substantial risk of serious harm, **and** prison officials acted with deliberate indifference to that risk and the inmate's safety. *Farmer v. Brennan,* 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The plaintiff must show that prison officials **actually knew of and disregarded** an excessive risk of harm to the inmate's health and safety. *Id.* at 837. The defendant must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists, and the defendant must also draw that inference. *Id.*

An isolated omission by corrections officers generally does not support a claim for deliberate indifference absent circumstances involving evil intent, recklessness, or deliberate indifference. *Coronado v. Goord,* 99 Civ. 1674, 2000 U.S. Dist. LEXIS 13876, 2000 WL 52488 *10–11 (citing *Ayers v. Coughlin,* 780 F.2d 205, 209 (2d Cir.1985)). Plaintiff may allege a constitutional claim by alleging that the substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and that the officials being sued were exposed to information concerning the risk and thus, must have known about it. *Id.* (citing *Farmer,* 511 U.S. at 842–43).

**1. Personal Involvement**

Plaintiff alleges that defendant Fischer was somehow responsible for these alleged assaults because he failed to properly investigate plaintiff's letters of complaint. As stated above, the failure to investigate letters of complaint does not establish the personal involvement of a supervisory officer. In any event, by the time that defendant Fischer received letters from plaintiff mentioning the alleged assaults, it was after the fact, and there was no action that defendant Fischer could have taken at that time to remedy any alleged violation. The letters sent by plaintiff to defendant Fischer focus mainly upon his medical care, and in no way alerted defendant Fischer to the serious danger to plaintiff's safety from other inmates that he now alleges. Thus, any failure to protect claim may be dismissed as against defendant Fischer for lack of personal involvement.

Defendant Pearlman was the Superintendent of Mid–State Correctional Facility at the times relevant to this amended complaint. (Pearlman Decl. ¶ 4, Dkt. No. 38–7). Plaintiff alleges that defendant Pearlman did not properly investigate plaintiff's complaints regarding his safety and failed to properly supervise the correctional staff, who in turn, failed to provide proper safety, resulting in the assault on plaintiff by "unknown." (AC at 5–d).

**\*13** Plaintiff attempts to assert that defendant Pearlman is responsible for a lack of supervision because "[s]ometime in January of 2007, one of the corrections officers was "conducting a drug operation under the nose of the Supt." *Id.* Clearly, even assuming the truth of plaintiff's allegation, he does not allege that the drug operation had anything to do with an alleged assault on plaintiff or assaults on inmates in general. Plaintiff cannot rely upon such "anecdotal evidence" to support his claim that this defendant was personally involved in a deprivation of this plaintiff's constitutional rights. *See Murphy v. Goord,* 445 F.Supp.2d 261, 265 (W.D.N.Y.2006) (plaintiff cannot rely on unrelated incidents to show personal involvement). Thus, plaintiff cannot show that defendant Pearlman was personally involved in any alleged constitutional violations.

**2. Merits of the Failure to Protect Claim**

In this case, there is absolutely no indication that defendant Pearlman (much less Commissioner Fischer) was aware of any substantial risk to plaintiff. Plaintiff, himself, does not know who allegedly attacked him on those two occasions. Plaintiff states that he was first assaulted on February 23, 2007. (AC at 5–d). Plaintiff states that "reports were made and not taken seriously." *Id.* The medical records indicate, however, that plaintiff did **not** report the February 23, 2007 assault to medical personnel. Plaintiff visited sick call on March 5, 2007, complaining of high blood pressure, cough, and cold symptoms. (Pearlman Decl. ¶ 14 & Ex. A at 1–Ambulatory Health Record (AHR) entry 3/5/07). The medical professional observed NAD (no acute distress) and diagnosed "dry cough [and] stuffy nose." *Id.* On March 7, 2007, plaintiff returned to sick call, complaining only about his blood pressure. (*Id.* AHR entry 3/7/07).

The first time that plaintiff reported an assault to medical personnel was on March 14, 2007, claiming that he had been hit from behind on March 13, 2007, but was

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1063849 (N.D.N.Y.)

(Cite as: 2010 WL 1063849 (N.D.N.Y.))

afraid to report it when it happened. (*Id.* Ex. A at 2–AHR entry dated 3/14/07). There was no mention of a prior assault.[FN23] He attended sick call on March 19 and on March 23, 2007, complaining of pain and injuries relating to the March 13, 2007 incident. Based on all of the evidence, including plaintiff's own allegations about the alleged assaults, there is absolutely no indication that defendant Pearlman, the Superintendent of Mid–State, would have been aware of and disregarded any substantial risk of harm to plaintiff, sufficient to render Superintendent Pearlman liable for failure to protect.

> FN23. The court must point out that the amended complaint is inconsistent with respect to these alleged assaults. *Compare* AC at 5–d *with* AC at 5–e. In the section describing his claims against defendant Pearlman, plaintiff states that he was assaulted on February 23, 2007, however, in the section of the amended complaint describing the claims against defendant Neafach, plaintiff states that on February 23, 2007, "someone" told plaintiff that "someone" was going to attack him from behind and that "the attempt was tried but unsuccessful...." (AC at 5–e). Plaintiff also claims that there was an unsuccessful attempt to assault plaintiff on February 27, 2007. *Id.*

Plaintiff's attempt to show that defendant Pearlman was somehow aware that the security level at the facility was unsatisfactory by alleging that an officer was arrested for "conducting a drug operation under the nose of the Supt." is completely speculative. Even assuming that an officer of the facility was arrested for drug-related behavior, there is no connection between such an event and a danger to plaintiff or to any other inmate. Thus, plaintiff's claim of failure to protect should be dismissed.

**D. *Sexual Harassment/Retaliation***

**\*14** Plaintiff makes various claims regarding defendant Neafach, all related to an alleged incident in which defendant Neafach touched plaintiff inappropriately and failed to comply with the employee manual. (AC at 5–e). Plaintiff alleges that defendant Neafach came up to plaintiff from behind, massaged his shoulders, and tried to grab the front of his "groin area." *Id.*

The Eighth Amendment protects an inmate from the "unnecessary and wanton infliction of pain." *Boddie v. Schnieder,* 105 F.3d 857, 861 (2d Cir.1997) (quoting *Whitely v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). In addition to providing the standard for constitutionally adequate medical care, the Eighth Amendment analysis also governs physical and sexual abuse of inmates. In order to violate the Eighth Amendment, the "punishment" must be "objectively, sufficiently serious," and the official must have had a "sufficiently culpable state of mind." *Id.* (citing *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

While allegations of sexual abuse may in some circumstances violate the Eighth Amendment, isolated incidents of harassment, involving verbal harassment and touching are not severe enough to be "objectively, sufficiently serious." *Boddie,* 105 F.3d at 861. The plaintiff in *Boddie* was also claiming an Eighth Amendment violation based upon allegations of sexual abuse. *Id.* The court held that the "isolated episodes of harassment and touching alleged by Boddie are despicable and, if true, they may potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions...." *Id.*

In this case, plaintiff alleges one instance in which defendant Neafach allegedly massaged his shoulders and "tried" to grab plaintiff's groin area. Pursuant to the analysis in *Boddie,* this one incident, even if true, cannot form the basis for an Eighth Amendment violation. The alleged conduct in this case does not even rise to the severity of the conduct alleged in *Boddie.* Thus, any Eighth Amendment claim for sexual abuse against defendant Neafach may be dismissed.

Plaintiff claims that after he rejected defendant Neafach's advances, she proceeded to retaliate against him. (AC at 5–e, 5–f). Plaintiff's statements in this regard are quite vague and confusing. Plaintiff states that he heard that defendant Neafach was going to remove plaintiff from the CD/SOP program for poor performance, but that he actually wanted to be removed from the program because plaintiff felt that his life was in danger. (*Id.* at 5–f). Plaintiff seems to claim that the alleged March

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1063849 (N.D.N.Y.)

(Cite as: 2010 WL 1063849 (N.D.N.Y.))

assault was the result of this "danger" and because defendant Neafach ignored plaintiff's complaints. *Id.* Plaintiff then concludes that defendant Neafach paid someone with drugs or sexual favors to assault plaintiff so that he would not tell anyone that she tried to seduce him. (*Id.* at 5–f, 5–g).

Finally, plaintiff states that defendant Neafach did not take the proper action when plaintiff was having an episode of "serious high blood pressure." (*Id.* at 5–g). Plaintiff complains that instead of sending plaintiff to the infirmary, defendant Neafach sent plaintiff to the mental health unit, thus, interfering with his ability to obtain medical care.

**\*15** Defendant Neafach has submitted an affidavit, stating that plaintiff attempted to "monopolize" defendant Neafach's attention during class, and when defendant Neafach refused to give him the attention he desired, he began to make false statements about her. (Neafach Decl. ¶ 9). On March 15, 2007, corrections counselor, James O'Brien informed plaintiff that he was being unsatisfactorily discharged from the program because of poor performance. (*Id.* ¶ 10). At that time, plaintiff began to complain that he was in pain from an "attempted stabbing," and told Counselor O'Brien that plaintiff had written a note to defendant Neafach about the attempted stabbing, but that defendant Neafach threw the note away. (*Id.* ¶¶ 11–13). Plaintiff also told Counselor O'Brien that defendant Neafach leaked confidential information about plaintiff to the general population and threatened plaintiff with discharge from the CD/SOTP program if he complained to Senior Corrections Counselor A. Joslyn. (*Id.* ¶¶ 14–15).

As a result, Senior Corrections Counselor Joslyn asked defendant Neafach to respond to plaintiff's accusations. (*Id.* ¶ 16). After conducting an investigation, Senior Counselor Joslyn determined that plaintiff was inventing lies about defendant Neafach and wrote a misbehavior report against plaintiff charging plaintiff with lying and harassment. (*Id.* ¶ 19 & Ex. C). Plaintiff was found guilty of the charges after a Tier II disciplinary hearing. *Id.*

Defendant Neafach denies ever harassing plaintiff,

sexually or otherwise. (*Id.* ¶¶ 27–30). Defendant further alleges that, contrary to plaintiff's allegations, she was never removed from Oneida Correctional Facility for any sexual misconduct and never paid any inmate with drugs or sexual favors to assault plaintiff. (*Id.* ¶¶ 31, 32). Finally, defendant Neafach states that because she has no medical training, when an inmate complains that he is suffering from "some malady," she simply refers the inmate to the facility's medical personnel. (*Id.* ¶¶ 36–38).

Defendant Neafach includes a note plaintiff sent to her, dated March 14, 2007, the day after plaintiff was allegedly assaulted. (Neafach Decl. Ex. A). The note asks whether defendant Neafach would sit down with plaintiff so that she could "get to know" who he was. *Id.* Plaintiff indicated that he did not trust anyone, but could start by trusting her. *Id.* A second note from plaintiff states that he was apologizing "for [his] past behavior," and that he appreciated defendant Neafach's concern for his safety because an officer told plaintiff that defendant Neafach was worried about plaintiff. (*Id.* Ex. A at 2). Defendant Neafach has also included documents from Counselor Joslyn's investigation and the resulting misbehavior report and disposition. (*Id.* Exs. B–D).

Unsupported, conclusory allegations are insufficient to sustain a claim under section 1983. *See Ciambriello v. County of Nassau,* 292 F.3d 307, 325 (2d Cir.2002) (conclusory allegations do not state a conspiracy claim under section 1983); *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987) (conclusory allegations insufficient to state a claim for violation of constitutional rights). This is particularly true when the cause of action involves allegations of retaliation, which are "easily fabricated." *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003)

**\*16** Plaintiff in this case has not responded to defendants' properly supported motion for summary judgment. Conclusory allegations or denials are insufficient to defeat a motion for summary judgment when the moving party has set forth a documentary case. *Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)). [FN24] Plaintiff's allegations that defendant Neafach paid someone to assault him are completely outrageous and unsupported by any of the evidence. Additionally, to the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1063849 (N.D.N.Y.)

(Cite as: 2010 WL 1063849 (N.D.N.Y.))

extent that plaintiff's amended complaint can be read to allege that any of the defendants "conspired" to deprive plaintiff of his constitutional rights, these allegations are also unsupported, conclusory, and may be dismissed. *Ciambriello, supra.*

FN24. In this case, although plaintiff received proper notice of his obligation to respond to defendant's motion in accordance with Local Rules, the plaintiff did not file a statement of undisputed material facts in compliance with Local Rule 7.1(a)(3). Consequently, the court may accept the properly supported facts contained in the defendant's Rule 7.1 statement as true for purposes of this motion. *See Govan v. Campbell,* 289 F.Supp.2d 289, 295–296 (N.D.N.Y.2007).

Plaintiff's allegation that defendant Neafach sent him to the *mental* health department when he was having a *medical* problem does not establish a claim for deliberate indifference to his serious medical needs. He cites no adverse consequences from defendant Neafach's mistake, nor does he rebut her claims that she simply referred him to the facility's medical personnel. Finally, any unspecified claims that defendant Neafach violated either the employee manual or some New York State regulation do not rise to the level of constitutional claims. *See Dixon v. Goord,* 224 F.Supp.2d 739, 744–45 (S.D.N.Y.2002) (Violations of state law or regulations in themselves do not state a viable section 1983 claim). *See also Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 (2d Cir.1990).

### E. *Americans with Disabilities Act*

In his amended complaint, plaintiff makes a passing reference to the ADA, stating that no accommodation was ever offered to him and that he was unable to function properly in programs or his daily activities. (AC at 5–a). There is no explanation of what disability he alleges or what accommodation he allegedly required or how he was unable to participate in programs.

The ADA is applicable to inmates in state correctional facilities. *See Allah v. Goord,* 405 F.Supp.2d 265, 274 (S.D.N.Y.2005) (both the ADA and the Rehabilitation Act are applicable to inmates). Under the ADA, the inmate must establish that he (1) is a qualified individual with a

disability; (2) is being excluded from participation in, or being denied benefits of some service, program or activity by reason of his or her disability; and (3) the entity providing the service is a public entity. *Allah v. Goord,* 405 F.Supp.2d 265, 274 (S.D.N.Y.2005).

In order to establish a claim under the ADA, the plaintiff must first show that he has a *disability. Farid v. Bouey,* 554 F.Supp.2d 301, 326 (N.D.N.Y.2008). Under the Title II of the ADA, a disability is defined as a physical or mental impairment that substantially limits one or more of the plaintiff's major life activities. *Id.* (citing *inter alia Weixel v. Bd. of Educ. of City of New York,* 287 F.3d 138, 147 (2d Cir.2002); *Doe v. Goord,* No. 04–CV–570, 2004 U.S. Dist. LEXIS 24808, 2004 WL 2829876 *62 (S.D.N.Y. Dec. 10, 2004); 42 U.S.C. § 12102(2); 29 U.S.C. § 705(20)(B)). Plaintiff must identify the activity that he claims is impaired and establish that it constitutes a "major life activity." *Weixel,* 287 F.3d at 147.

**\*17** Major life activities include, among others, caring for oneself; performing manual tasks; seeing, hearing; speaking; breathing; learning; reading; communicating; and working. 42 U.S.C. § 12101(2)(A). Major life activities also include the operation of a major bodily function such as the immune system; digestive system; neurological system; respiratory; bladder; brain; endocrine; reproductive and circulatory systems. *Id.* § 12101(2)(B). Plaintiff in this case has not specifically identified a disability, nor has he identified a "major life activity" that he claims has been "substantially limited." A substantial limitation is one that prevents or severely restricts the individual from doing activities that are of "central importance most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).FN25

FN25. The court notes that amendments to the ADA, that took effect January 1, 2009 broadened the scope of the definition of disability, partially superceding *Toyota Mfg. See Guary v. Upstate Nat'l Bank,* 618 F.Supp.2d 272, 275 n. 1 (W.D.N.Y.2009) (citing ADA Amendments Act of 2008, Pub.L. 110–325, 122 Stat. 3553 (2008)). However, it has been held that these amendments do not apply retroactively, thus,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1063849 (N.D.N.Y.)

(Cite as: 2010 WL 1063849 (N.D.N.Y.))

they do not affect this Court's recommendation.

Plaintiff in this case had a torn ACL, high blood pressure, an unspecified back problem, and an injured ankle. He failed to identify either any major life activity that was substantially limited by these impairments or any activity or program in which he could not participate, and never stated what accommodation would have allowed him to do so. Thus, plaintiff's passing reference to the ADA does not state any claim for relief under that statute.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion for summary judgment (Dkt. No. 38) be **GRANTED,** and the complaint **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2010.

Silvagnoli v. Fischer
Not Reported in F.Supp.2d, 2010 WL 1063849 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1063840 (N.D.N.Y.)

(Cite as: 2010 WL 1063840 (N.D.N.Y.))



Only the Westlaw citation is currently available.
**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,

N.D. New York.
Alex SILVAGNOLI, Plaintiff,
v.
Brian FISCHER, Commissioner of DOCS; Dr. Lester Wright, Associate Comm./ Chief Medical Examiner; Kenneth Perlman; Midstate Superintendent; and S. Neafach; Midstate Correctional Facility Counselor, Defendants.
No. 9:07–CV–0561.

March 22, 2010.
Alex Silvagnoli, Moravia, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Justin C. Levin, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

### *ORDER*

NORMAN A. MORDUE, Chief Judge.

**\*1** The above matter comes to me following a Report–Recommendation by Magistrate Judge Andrew T. Baxter, duly filed on the 1st day of March 2010. Following fourteen days from the service thereof, the Clerk has sent me the file, including any and all objections filed by the parties herein.

After careful review of all of the papers herein, including the Magistrate Judge's Report–Recommendation, and no objections submitted thereto, it is

ORDERED that:

1. The Report–Recommendation is hereby adopted in its entirety.

2. The defendants' motion for summary judgment (Dkt. No. 38) is granted and the complaint is dismissed in its entirety. The Clerk shall enter judgment accordingly.

3. The Clerk of the Court shall serve a copy of this Order upon all parties and the Magistrate Judge assigned to this case.

**IT IS SO ORDERED.**

N.D.N.Y.,2010.

Silvagnoli v. Fischer
Not Reported in F.Supp.2d, 2010 WL 1063840 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 642530 (N.D.N.Y.)

(Cite as: 1997 WL 642530 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Tyrone HOLTON, Plaintiff,
v.
R.A. MOORE, C.O., Defendant.
No. CIV.A.96CV0077.

Oct. 15, 1997.

Tyrone Holton, Plaintiff, Pro se, Green Haven
Correctional Facility, Stormville, New York.

Dennis C. Vacco, New York State Attorney General,
Attorney for Defendant, Albany New York, Darren
O'Connor, Assistant Attorney General, of Counsel.

MEMORANDUM DECISION AND ORDER

POOLER, D.J.

INTRODUCTION AND BACKGROUND

**\*1** The above matter comes to me following a
Report–Recommendation by Magistrate Judge Gustave J.
Di Bianco, duly filed on the 29th day of August, 1997.
Following ten days from the service thereof, the Clerk has
sent me the entire file, including any and all objections
filed by the parties herein.

Plaintiff Tyrone Holton, an inmate in the New York
State corrections system, commenced this civil rights
lawsuit against R.A. Moore, Corrections Officer at the
Clinton Correctional Facility, alleging that Moore touched
Holton's chest, genitals, and anus during the course of a
search. Compl. at 2. Holton also alleged that Moore
punched him in the back, slapped him in the head,
slammed him against the bars, and said Holton was lucky
Moore did not kill him. *Id.*

On September 18, 1996, Holton filed a motion for
summary judgment. Dkt. No. 22. In his submissions,
Holton stated that the incident he referred to in his
complaint occurred on October 29, 1995, and that as a
result of the October 29 incident, Holton received two

disciplinary charges of disobeying an order, refusing a
search or frisk, and failure to carry his identification card.
Holton Decl., Dkt. No. 22, ¶ 2–4. Holton explained that he
received the second disciplinary charge because on
October 31, Moore again attempted to search Holton and
repeated the same acts. *Id.* at 3. Holton alleges that on
October 31, one of Moore's co-workers told Moore to
make Holton lock himself in because he "did the same
thing last time." *Id.*

On October 31, 1996, Moore filed a cross motion for
summary judgment and papers in opposition to Holton's
motion. Dkt. Nos. 25, 26. Moore argued that Holton had
failed to sufficiently allege a violation of his Eighth
Amendment rights and that, in any event, Moore was
entitled to qualified immunity. Holton filed papers in
opposition to Moore's cross motion on November 21,
1996. Dkt. No. 28.

In his report-recommendation, Magistrate Judge Di
Bianco recommended (1) denying plaintiff's motion for
summary judgment; (2) granting defendant's motion for
summary judgment with respect to claims of verbal abuse
or physical assault; and (3) denying defendant's motion for
summary judgment with respect to Holton's improper
search and sexual abuse claims based on the Fourth and
Eighth Amendments. On September 9, 1997, Moore filed
objections to the magistrate-judge's
report-recommendation as to Holton's Eighth Amendment
claim. Dkt. No. 31. On October 3, 1997, Holton filed
objections to the magistrate-judge's
report-recommendation as to Holton's motion for summary
judgment. Dkt. No. 33.

DISCUSSION

Pursuant to Fed.R.Civ.P. 72, I review those portions
of the report-recommendation to which objections are
filed *de novo.* I review the remainder of the
report-recommendation for clear error.

A. Eighth Amendment

*1. Sexual Abuse*

Not Reported in F.Supp., 1997 WL 642530 (N.D.N.Y.)

(Cite as: 1997 WL 642530 (N.D.N.Y.))

The magistrate judge found that issues of fact as to exactly what occurred during the frisk about which Holton complains preclude summary judgment for either party on the sexual harassment or abuse claim. Holton's objections to this finding amount to nothing more than a restatement of the facts he alleged in his prior pleadings perhaps in greater detail. Holton alleges that Moore (1) touched Holton's bare chest under his shirt; (2) put his hands down Holton's pants "trying to part [his] cheeks coming in touch with [his] anal;" and (3) unzipped Holton's pants and touched his penis. Objections at 2. Holton argues that these acts constituted cruel and unusual punishment under the Eighth Amendment. Moore objected that Holton's claims did not rise to the level of an Eighth Amendment violation as a matter of law.

**\*2** I find that Holton fails to state an Eighth Amendment claim for sexual abuse. In order to find a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, the court must first find that the alleged punishment is, objectively, sufficiently serious. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "Under the objective standard, 'conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.' " *Boddie v. Schnieder,* 105 F.3d 857, 861 (2d Cir.1997) (quoting *Farmer,* 511 U.S. at 834)). Because sexual abuse "may violate contemporary standards of decency and can cause severe physical and psychological harm," the Second Circuit has held that "severe or repetitive sexual abuse of an inmate by a prison officer can be objectively, sufficiently serious enough to constitute an Eighth Amendment violation." *Boddie,* 105 F.3d at 860 (internal quotations and citations omitted).

Nevertheless, in *Boddie,* the court found that the plaintiff's allegations were insufficient to constitute an Eighth Amendment violation. There, the plaintiff alleged that a corrections officer touched plaintiff's penis, squeezed his hand made sexual comments, pressed against him with her breasts, and bumped into him "with her whole body vagina against penis pinning [[[plaintiff) to the door." *Id.* at 859–60. The Second Circuit held that the small number of instances in which the plaintiff asserted that he was verbally harassed, touched, and pressed

against without his consent were neither severe enough individually to be objectively, sufficiently serious, nor cumulatively egregious in the harm they inflicted. *Id.* at 861. The court noted that although "[t]he isolated episodes of harassment and touching alleged by [[plaintiff] are despicable ... they do not involve a harm of federal constitutional proportions as defined by the Supreme Court." *Id.* (citing *Farmer,* 511 U.S. at 833–34).

Similarly, the incidents Holton describes fail to rise to the level of an Eighth Amendment violation because the two instances of unwanted touching, even if true, were not objectively, sufficiently serious, nor did they inflict a harm of constitutional proportions, to state a violation of the Eighth Amendment. The two instances of touching alleged in the present case are analogous to, though perhaps less severe than, the four instances of touching alleged in *Boddie.* In recommending that I deny summary judgment on this claim, the magistrate judge relied on *Webb v. Foreman,* 1997 WL 379707, a case in which the district court held a bench trial to determine whether similar allegations of sexual abuse rose to the level of an Eighth Amendment violation. However, in *Webb* the court did not reach the issue of whether the allegations constituted a violation of the Eighth Amendment because the court determined after hearing the evidence that the allegations were false. *Id.* at \*2. In the present case, I assume for purposes of this motion that plaintiff's allegations are true and analyze those allegations under the precepts set forth by the Second Circuit in *Boddie,* 105 F.3d 857. I conclude that even if true, plaintiff's claims fail to constitute an Eighth Amendment violation. Consequently, I grant defendant's motion for summary judgment as to the sexual abuse claim and deny plaintiff's motion as moot.

*2. Physical and Verbal Abuse*

**\*3** The magistrate judge found that the allegations of physical and verbal abuse were insufficient to state a claim under the Eighth Amendment because Holton was not harmed, the use of force was *de minimis,* and verbal abuse without more is insufficient to state a claim. Holton's objections again merely repeated the allegations contained in his prior pleadings. I agree with the magistrate judge's determination. Moore submitted copies of Holton's ambulatory health record which indicate that Holton was

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 642530 (N.D.N.Y.)

(Cite as: 1997 WL 642530 (N.D.N.Y.))

examined on the day following each incident and reported no injuries whatsoever. Moore Aff. Ex. C. Holton does not dispute the assertion that he was unharmed in the incident. Consequently, the use of force Holton alleges was *de minimis* and does not state an Eighth Amendment violation. I grant defendant's motion for summary judgment relative to this claim and deny plaintiff's motion as moot.

B. Fourth Amendment

The magistrate judge found that the presence of factual issues concerning what took place during the search precluded summary judgment on Holton's Fourth Amendment claim. I agree. In determining whether a search is reasonable, even in the prison context, a court "must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Hodges v. Stanley,* 712 F.2d 34, 35 (2d Cir.1983) (per curiam) (quoting *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). Here, the scope of the search is a matter of dispute. As noted above, Holton contends that Moore reached inside his pants and touched his penis and anus. Moore contends that he only patted down the outside of Holton's clothing. Each party relies only on his own affidavit, which serves to create a factual dispute concerning the scope of the search. Consequently, I deny each party's motion for summary judgment relative to the Fourth Amendment claim.

CONCLUSION

For the reasons stated, I decline to adopt that portion of the report-recommendation addressing Holton's Eighth Amendment claim for sexual abuse. The report-recommendation is approved in all other respects. Moore's motion for summary judgment is granted as to each of Hilton's Eighth Amendment claims and denied as to the Fourth Amendment claims. Hilton's motion for summary judgment is denied in its entirety.

IT IS SO ORDERED.

GUSTAVE J. DI BIANCO, Magistrate Judge.

REPORT-RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the Honorable Rosemary S.

Pooler, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rules N.D.N.Y. 72.3(c).

In the instant civil rights complaint, plaintiff alleges that he was sexually and verbally harassed during two "pat frisks" conducted by defendant Moore and his partner. Plaintiff also alleges that defendant Moore assaulted him after one of the frisks. Plaintiff claims violations of both the Fourth and Eighth Amendments.

**4** Plaintiff seeks One Million Dollars in damages.

Presently before the court are plaintiff's motion for summary judgment pursuant to FED. R. CIV. P. 56 (Docket # 22) and defendant's cross-motion for the same relief (Docket # 25). Plaintiff has filed a response to the defendant's cross-motion.

For the following reasons, this court will recommend denying both motions for summary judgment.

DISCUSSION

1. *Summary Judgment:*

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At that point, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.*

2. *Facts:*

Plaintiff's complaint merely states that he was subjected to "[r]epeated sexual harassment", "assault", "[p]hysical and verbal abuse", and "intentional infliction of emotional distress". *See* Complaint. Plaintiff then

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 642530 (N.D.N.Y.)

(Cite as: 1997 WL 642530 (N.D.N.Y.))

alleges that during a search conducted by defendant Moore, the defendant felt and fondled the plaintiff "sexually", touching plaintiff's genital and anal area. Plaintiff then alleges that defendant Moore punched plaintiff in the back and slammed plaintiff up against the bars for no reason. Plaintiff claims that he asked the defendant his name, but was told that plaintiff was lucky that defendant did not kill him. Plaintiff states that the defendant's partner "did the same thing" and told plaintiff that he was going to die. Plaintiff states that defendant wrote a misbehavior report against the plaintiff.

In plaintiff's motion for summary judgment, he is more specific about the dates of the above alleged incidents. Plaintiff states that the incidents of sexual harassment and assault occurred on October 29, 1995 and October 31, 1995. Plaintiff's Brief in Support of Summary Judgment. In plaintiff's motion for summary judgment, he also alleges that the defendant wrote two misbehavior reports, and that these reports were fabricated. These incidents allegedly occurred when the plaintiff was being escorted to the shower area.

In plaintiff's response to defendant's cross-motion for summary judgment, plaintiff also discusses alleged problems with the disciplinary hearings that were held against him for failure to obey orders, refusal to submit to a pat frisk, and failure to have his identification card on one occasion. Plaintiff alleges that the hearing officer was not impartial because he would not listen to plaintiff's side of the story. However, plaintiff has not moved to amend his complaint, nor has he sued anyone in connection with the disciplinary hearing. The only defendant is Corrections Officer Moore, who would have no responsibility for due process at a disciplinary hearing. Thus, the court cannot consider any claims relating to the disciplinary hearing.

**\*5** Defendant has submitted as exhibits the documents relating to the two misbehavior reports and the disciplinary hearings held against the plaintiff. Defendant's Exhibits A and B. These documents are submitted in support of the defendant's argument that plaintiff was found guilty of refusing to submit to a search and failing to obey an order. Defendant alleges that he performed routine pat frisks, and it was the plaintiff that refused to submit and refused to put his hands up on the bars. Defendant has also submitted the plaintiff's medical

records for the period in question to show that plaintiff was not injured as a result of the incidents. Defendant's Exhibit C. Plaintiff had a medical visit on October 30, 1995, and on November 1, 1995, the day after each incident. *Id.* Each of the above visits was for an ear problem. There was no indication of any injury relating to an assault.

3. *Search:*

A. *Eighth Amendment:*

The Second Circuit has held that sexual abuse, in some cases, can be sufficiently serious to rise to the level of cruel and unusual punishment. *Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir.1997).* In *Boddie,* the court found that the "small number of incidents in which [the plaintiff] was verbally harassed, touched, and pressed against without his consent" were insufficient to rise to the level of a constitutional violation. *Id.* Boddie claimed that a female corrections officer had made a " 'pass' at him, but ... he 'could not be sure.' " *Id.* at 859. Additionally, Boddie alleged that the female corrections officer touched his hand, touched his penis, and made a sexually provocative statement to him. *Id.* at 859–60. She also allegedly told Boddie to take off a sweatshirt that he was wearing, then bumped into him in a sexually provocative manner. *Id.* at 860.

The Second Circuit dismissed *Boddie* on the complaint alone, finding that Boddie's claims were not severe enough to be objectively, sufficiently serious, nor were the incidents cumulatively egregious. *Id.* at 861. Finally, the Second Circuit stated that the isolated episodes of harassment and touching were "despicable" and if true, they could have formed the basis for state tort actions, but did not rise to the level of a federal constitutional claim. *Id.*

In July of 1997, a Southern District of New York court decided a case that contains allegations similar to the claims made in the instant case. *See Webb v. Foreman, No. 93 Civ. 8579, 1997 WL 379707 (S.D.N.Y. July 9, 1997).* In *Webb,* plaintiff challenged the method in which certain pat frisks had been conducted, claiming that his Eighth Amendment, as well as Fourth Amendment rights

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 642530 (N.D.N.Y.)

(Cite as: 1997 WL 642530 (N.D.N.Y.))

had been violated. *Id.* Although the case was ultimately dismissed, the dismissal occurred after a bench trial and after the court determined credibility issues regarding the method in which the defendant conducted the pat frisks.

In the instant case, plaintiff alleges that the defendant improperly conducted two separate pat frisks and then improperly charged the plaintiff with disciplinary violations when plaintiff attempted to resist the improper actions. Plaintiff alleges that the defendant touched not only his genital area but his anal area, as well as unzipped his pants and apparently touched his penis. Brief in Support of Plaintiff's Motion for Summary Judgment at p. 7–8.

**\*6** The defendant has submitted his affidavit, stating that he performed routine pat frisks of the plaintiff on both occasions, and that the plaintiff became abusive toward the defendant, causing defendant to charge him on both occasions with misbehavior. Plaintiff was ultimately found guilty of this misbehavior. It appears from defendant's affidavit, as well as plaintiff's claims, that the court is presented with a disputed issue of material fact as to exactly what happened during the pat frisks in question. The court would point out that according to *Boddie,* claims of sexual abuse may rise to the level of an Eighth Amendment violation. The court is not prepared to say at this time with the evidence before it, that the complaint does not state a claim for relief, even based upon the additional information provided by the defendant. Thus, summary judgment must be denied with respect the claims of sexual abuse.

The court would point out, however, that any claims of verbal abuse may be dismissed since verbal abuse, no matter how egregious, does not rise to the level of a Eighth Amendment violation, without any accompanying injury. *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986); *Brown v. Croce,* 967 F.Supp. 101, 104 (S.D.N.Y.1997). Thus, any claims of verbal abuse may be dismissed.

The plaintiff also alleges that in the course of one of the pat frisks, defendant Moore punched plaintiff in the back and slammed his hands back up against the bars. It is noted that plaintiff was not injured in any way as a result of this alleged assault. The medical records submitted by

defendant show that on each day after the pat frisk in question, plaintiff visited the infirmary, but neither time was any injury mentioned relating to a physical assault, or any kind of back injury or impairment. Both visits to the infirmary involved ear problems, which had nothing to do with these incidents. Defendant's Exhibit C.

Although, the lack of injury or serious injury is not necessarily dispositive of an Eighth Amendment claim, this amendment does exclude from constitutional recognition, "*de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian,* 503 U.S. 1, 9–10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The allegation that defendant Moore punched plaintiff in the back and slammed his hands back up against the bars during a frisk, particularly in view of the lack of injury to the plaintiff, can be characterized as a relatively de minimis use of physical force. Thus, the assault claim may be dismissed.

B. *Fourth Amendment:*

The court must point out that there is no dispute, and in fact the plaintiff concedes, that pat frisks are necessary to prison administration and are reasonable in view of security concerns. *Webb v. Foreman,* 1997 WL 379707, at p.\*3 (citing *inter alia Grummett v. Rushen,* 779 F.2d 491, 493 (9th Cir.1985)). The court in *Webb* held that a pat frisk could become unreasonable, and therefore violative of the Fourth Amendment, based on the way in which it was conducted. *Id.* at p.\*4 (citing *Watson v. Jones,* 980 F.2d 1165, 1166 (8th Cir.1992)). The court went on to say that the reasonableness of the pat frisk depended on the scope of the intrusion, the manner in which the frisk was conducted, its justification, and the place it was conducted. *Id.* (citations omitted).

**\*7** The court in *Webb* concluded that because it found after a bench trial that the defendant did not fondle the plaintiff's genitals, put his hands down the plaintiff's pants, or put his hands into the plaintiff's underwear, the pat frisk was not unreasonable, and Webb had failed to demonstrate a Fourth Amendment violation.

In the instant case, since this court is presented with a question of fact as to how the search was conducted, the

Not Reported in F.Supp., 1997 WL 642530 (N.D.N.Y.)

(Cite as: 1997 WL 642530 (N.D.N.Y.))

court will not recommend summary judgment be granted for either party on this issue.

WHEREFORE, based on the above, it is hereby

RECOMMENDED, that plaintiff's motion for summary judgment (Docket # 22) be DENIED, and it is further

RECOMMENDED, that defendant's motion for summary judgment (Docket # 25) be GRANTED IN PART, with respect to any claims of verbal abuse or physical assault, and it is further

RECOMMENDED, that defendant's motion for summary judgment (Docket # 25) be DENIED with respect to the improper search and sexual abuse claims based on both the Fourth Amendment and Eighth Amendment.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993)(citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1997.

Holton v. Moore
Not Reported in F.Supp., 1997 WL 642530 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 5325715 (N.D.N.Y.)

(Cite as: 2011 WL 5325715 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Kenneth BROBSTON, Plaintiff,
v.
Deborah SCHULT, Warden, FCI Ray Brook; Ms. Halladay, Special Investigation Serv., FCI Ray Brook; Mr. Helms, Lt., Former S.I.S., FCI Ray Brook; Hensley, Supervisor of Industry; Mr. Peterson, Factory Manager of Unicor, FCI Ray Brook; Mr. Duckett, Correctional Officer, FCI Ray Brook; Ms. Darrah, Unit Manager (Mohawk–B), FCI Ray Brook; Mr. Lucas, Case Manager (Mohawk–B), FCI Ray Brook; and Ms. Sepaneck,[FN1] Unit Counselor (Mohawk–B), FCI Ray Brook, Defendants.

> FN1. According to the Declaration submitted in support of Defendants' Motion to Dismiss or in the alternative for Summary Judgment, the correct spelling of this Defendant's name is "Sepanek" and the Court shall refer to her accordingly.

Civ. No. 9:10–CV–242 (GLS/RFT).

|
Sept. 28, 2011.
Kenneth Brobston, Three Rivers, TX, pro se.

Hon. Richard S. Hartunian, United States Attorney for the Northern District of New York, Charles E. Roberts, Asst. United States Attorney, of Counsel, Syracuse, NY, for Defendants.[FN2]

> FN2. The United States Attorney has appeared on behalf of all named Defendants, except for Ms. Darrah, upon whom service had not been accomplished primarily because she is no longer employed at FCI Ray Brook. Dkt. No. 18. Upon information and belief, Ms. Darrah has retired. Dkt. No. 29, Notice of Mot., dated Dec. 15, 2010, at p. 1, n. 1; see also infra Part II.G.

*REPORT–RECOMMENDATION and ORDER*

RANDOLPH F. TREECE, United States Magistrate Judge.

*1 *Pro se* Plaintiff Kenneth Brobston filed this civil rights action, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) ("Bivens"), against the Defendants claiming his constitutional rights were violated when he was incarcerated at Federal Correctional Institution in Ray Brook ("FCI Ray Brook"). Dkt. No. 1, Compl. On December 15, 2010, Defendants filed a Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56. Dkt. Nos. 29 & 32. Plaintiff opposes the Motion. Dkt. No. 34. For the reasons that follow, this Court recommends that Defendants' Motion be **granted** and this entire action be **dismissed.**

## I. BACKGROUND

Unless otherwise indicated, the following facts are well-supported and not reasonably controverted. *Pro se* Plaintiff Kenneth Brobston is a federal inmate, originally sentenced in the United States District Court for the Central District of Illinois for violating 21 U.S.C. §§ 846, 841(a)(1), & (b)(1)(A) (Conspiracy to Manufacture Methamphetamine). Dkt. No. 29–5, Robin VanWeelden Decl., dated Nov. 19, 2010, at ¶ 4 & Ex. A (docketed as Dkt. No. 29–6) at pp. 1–4.[FN3]

> FN3. Regarding page number citations to Defendants' Exhibits attached to various Declarations, the Court refers to those numbers automatically assigned by the Court's Case Management Electronic Case Files system.

On July 6, 2009, while incarcerated at FCI Ray Brook, Plaintiff submitted an Inmate Request to Staff (also known as a "cop out"), complaining about a new prison policy that went into effect on that date and prevented him from leaving the UNICOR factory, where he worked, to go to his dorm during the lunch break. Dkt. No. 29–8, Jon

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 5325715 (N.D.N.Y.)

(Cite as: 2011 WL 5325715 (N.D.N.Y.))

Hensley Decl., dated Nov. 9, 2010, at ¶¶ 5 & 7; Ex. A. Plaintiff complained that because he could not return to his dorm, he was forced to share the bathroom with three hundred other people and that there was a shortage of toilet paper. *Id.* He also complained that because he could not freely return to his cell, he had no access to hot water, microwaves, the telephone, or his counselor. *Id.* The policy in issue, implemented *via* Memorandum Notice on June 22, 2009, did not, *per se,* prevent the inmates from returning to their cells during their forty-five minute lunch break, but, for security reasons, if while in their cells the inmates were confined to their housing units because of it being locked down, such inmates could no longer obtain special release from the housing unit in order to return to the UNICOR factory. Hensley Decl. at ¶ 6 & Ex. C.

Defendant Jon Hensley, Ray Brook Superintendent of Industries and Education, responded to Plaintiff's July 6th Complaint, noting that, notwithstanding the new policy, Plaintiff still had access to UNICOR and Recreation toilets and that his other concerns, such as meeting with his counselor or using the telephone, could be met outside his UNICOR working hours. *Id.* at ¶ 7 & Ex. A. IN fact, UNICOR has three inmate restrooms, each with multiple toilets and urinals. *Id.* at ¶ 8.

**\*2** On July 13, 2009, Plaintiff submitted a second Request to Staff complaining that on two separate dates, July 6th and 9th, there was a shortage of toilet paper at UNICOR. *Id.* at ¶¶ 5 & 9; Ex. B. This complaint was made specifically against Defendants Hensley and CO Duckett for their alleged refusal to give Plaintiff the toilet paper he requested. Hensley Decl., Ex. B. According to Plaintiff's written complaint, Plaintiff alerted Defendant Duckett about the shortage of toilet paper on July 6th, but he refused to give Plaintiff any toilet paper; instead, Plaintiff received a roll from another inmate who overheard the conversation. *Id.* Then, on July 9th, Plaintiff informed Defendants Duckett and Hensley that there was no toilet paper and that he needed to use the bathroom stressing that it was an emergency. Plaintiff was denied toilet paper from 7:30 a.m. until 9:00 a.m., and because there was no move scheduled during that time, he could not return to his cell. *Id.* Shortly after 9:00 a.m., Defendant Hensley provided Plaintiff with a roll of toilet paper, but en route to use the bathroom, Plaintiff soiled himself. *Id.*

Plaintiff further expressed concern in the "cop-out" that Defendants Hensley and Duckett may be annoyed with him and may be motivated to retaliate against him. *Id.* According to his verified Complaint, after showering and changing his soiled clothes, Plaintiff informed Mr. Lucas, his Case Manager, and Ms. Sepanek, his Unit Counselor, about what transpired and requested that his complaints be placed on the record. Compl. at ¶ 8.

Defendant Hensley responded to Plaintiff's complaint, indicating that sufficient toilet paper was issued for the week of July 6–10; specifically, in addition to the normal weekly supply, upon being informed of the shortage of toilet paper, the factory issued another week's supply. Hensley Decl., Ex. B.

At some point while at Ray Brook, Plaintiff had inquired whether he could be transferred to another facility in Kentucky so that he could participate in a vocational welding program and be closer to home. Dkt. No. 29–9, Jackii Sepanek Decl., dated Nov. 19, 2010, at ¶ 5. As a result of Plaintiff's inquiry, Case Manager Lucas and the Supervisor of Education consulted with personnel at FCI Ashland in Kentucky and confirmed that Plaintiff met all the criteria for enrollment in their welding program. *Id.* On July 14, 2009, a Request for Transfer was completed and signed off by Defendant Lucas, Defendant Barbara Darrah, Plaintiff's Unit Manager, and Defendant Deborah Schult, FCI Ray Brook Warden. *Id.,* Ex. B.

Plaintiff claims that on July 13, 14, and 15, 2009, Defendants Lucas, Darrah, and Sepanek denied Plaintiff's requests for "BP. 8" forms so that Plaintiff could file a complaint about Defendants Hensley, Duckett, and Peterson, who was the factory manager for UNICOR.[FN4] Compl. at ¶¶ 13–18. He further claims that on July 14th, Defendant Lucas told Brobston that he's been receiving complaints about him because of what happened in UNICOR on July 6th and 9th and that he was holding up Plaintiff's transfer papers. *Id.* at ¶ 15.

> FN4. In his Complaint, Plaintiff stated that on July 15th, he received the BP.8 form from another inmate and began to type it up. Compl. at ¶ 18. He does not what the substance of his written complaint concerned nor whether he

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 5325715 (N.D.N.Y.)

(Cite as: 2011 WL 5325715 (N.D.N.Y.))

submitted his form for filing.

**\*3** On July 27, 2009, Plaintiff was issued an Incident Report, authored by Defendant Peterson, charging Plaintiff with possessing a narcotic in violation of the prison code. VanWeelden Decl., Ex. F (docketed as Dkt. No. 29–6) at p. 17. According to that Report, on July 27th, at approximately 1:15 p.m., Defendant Peterson and David Kirby [FN5] conducted a visual search of Brobston while he was on the UNICOR loading dock. *Id.* During this search, Brobston "attempted to stuff a cellophane wad in the floor drain." *Id.* At Kirby's direction, Brobston handed over the item, which was taken to the Lieutenant Degon [FN6]. *Id.* at pp. 17 & 19. Reportedly, Brobston was asked what the item was and he responded, "it[']s weed." *Id.* Lieutenant Degon confirmed that the packets he received contained a green leafy substance and tested positive for marijuana. *Id.* Peterson's Incident Report was entered on the Bureau of Prison's ("BOP") computerized system with the notation "SUSPENDED PENDING REFERRAL TO AUSA." VanWeelden Decl. at ¶ 7 & Ex. G (docketed as Dkt. No. 29–6) at pp. 28–29. On July 27th, in accordance with BOP policy, Plaintiff was placed in administrative detention within the special housing unit ("SHU") "pending an investigation of a violation of Bureau regulations." *Id,* Exs. H (docketed as Dkt. No. 29–7) at p. 8 & Ex. I (docketed as Dkt. No. 29–7) at p. 15. According to the Administrative Detention Order, written by Defendant Halladay, Plaintiff received a copy of the notice of administrative detention, as witnessed by S. Degon. *Id.,* Ex. I at p. 15. However, in accordance with BOP policy, because the BOP investigation into Defendant Peterson's Incident Report was suspended pending criminal prosecution, there was no requirement that Plaintiff be provided a copy of the subject Incident Report. *Id.,* Ex. H at pp. 4–5. Also in accordance with BOP policy, during his time in SHU, Plaintiff was subjected to periodic urinalysis testing. *Id.* at ¶ 11 & Ex. J (docketed as Dkt. No. 29–7) at pp. 16–20.

FN5. David Kirby is the UNICOR Production Foreman and is not named as a defendant in this matter.

FN6. Lieutenant Degon is not named as a defendant in this matter.

On July 28, 2009, a "Referral of an Inmate Criminal Matter for Investigation" was completed by Defendant Helms, who is a member of the Special Investigations Section ("SIS") Department, and the matter was referred to the United States Attorney's Office. *Id.,* Ex. F at p. 21. On February 10, 2010, a grand jury in the Northern District of New York issued an Indictment charging Plaintiff with violating 18 U.S.C. §§ 1791(a)(2) and (b)(3), for knowingly possessing "a prohibited object; to wit, marijuana, a schedule I controlled substance." *Id.,* Ex. B (docketed as Dkt. No. 29–6) at p. 6; *see also United States of Am. v. Brobston,* Case No. 8:10–CR–73 (FJS) (N.D.N.Y.). On March 4, 2010, a Writ of *Habeas Corpus Ad Prosequendum* was issued, and on March 16, 2010, Plaintiff was released from Ray Brook to the United States Marshals Service for prosecution of this criminal charge. VanWeelden Decl., Ex. C & D (docketed as Dkt. No. 29–6) at pp. 7–10. Plaintiff thereafter appeared before the undersigned for his Initial Appearance and Arraignment, where, after being advised of his rights, he pled not guilty and waived his right to a detention hearing. *See United States of Am. v. Brobston,* Case No. 8:10–CR–73, Min. Entry, dated Mar. 17, 2010. Plaintiff was remanded to the custody of the U.S. Marshals and was held at the Albany County Correctional Facility. *Id.,* Dkt. No. 3. On July 8, 2010, Plaintiff pled guilty to the one count Indictment with no plea agreement in place. *Id.,* Dkt. No. 19 (Change of Plea Hr'g Tr.). On December 1, 2010, Plaintiff was sentenced to be imprisoned for a term of four months to run consecutively with the current sentence, with three years supervised release to follow. *Id.,* Dkt. No. 15. Plaintiff filed a Notice of Appeal of that Judgment, but subsequently withdrew such appeal. *Id.,* Dkt. Nos. 16 & 20.

**\*4** In the interim, on February 8, 2010, Plaintiff filed a Petition for a Writ of *Habeas Corpus* in this District challenging his administrative SHU detention. [FN7] *See Brobston v. Schult,* 9:10–CV–145 (N.D.N.Y.) (JKS), Dkt. No. 1, Pet. On March 3, 2011, the Honorable James K. Singleton, Visiting United States District Judge, issued a Dismissal Order noting first that Plaintiff's Petition complaining about the conditions of his confinement should have been brought as a action pursuant to 42 U.S.C. § 1983 and that such an action had already been

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 5325715 (N.D.N.Y.)

(Cite as: 2011 WL 5325715 (N.D.N.Y.))

brought by Plaintiff in this District. *Id.,* Dkt. No. 20 at pp. 3–4 (referring to the current case). Judge Singleton further found that to the extent the case is properly brought as a *Habeas* Petition, the Petition should be denied because Brobston failed to exhaust his administrative remedies and failed to show good cause for such failure. *Id.* at p. 5. He further found that the Petition was moot because the relief sought in that action was Brobston's release from administrative SHU confinement at FCI Ray Brook, which had been accomplished during the pendency of the Petition when Brobston was transferred from Ray Brook to Albany County Jail pending the criminal prosecution. *Id.* at pp. 5–6; *see also supra* note 7. For all these reasons, the Petition was dismissed without prejudice to Brobston continuing his civil rights action. *Id.* at p. 6.

FN7. The instant civil rights action was filed on March 3, 2010, while Plaintiff was still at FCI Ray Brook. As noted above, on March 16, 2010, by Writ, Plaintiff was transferred from Ray Brook to U.S. Marshal custody for purposes of the criminal prosecution. On March 17, 2010, the day after appearing before the undersigned regarding this criminal prosecution, Brobston submitted a Notice of Change of Address in his *Habeas* case, noting that his updated address was at Albany County Jail. *Brobston v. Schult,* 9:10–CV–145 (N.D.N.Y.) (JKS), Dkt. No. 5.

## II. DISCUSSION

### A. Standard of Review—Rule 56(b)

The Defendants have moved for conversion of the Complaint pursuant to FED. R. CIV. P. 12(b)(6), and in the alternative have moved for summary judgment, pursuant to FED. R. CIV. P. 56. Dkt. No. 18–1. In moving for summary judgment, the Defendants submitted various documents outside the pleadings, which have been considered by the Court. It is within a court's discretion to convert a motion filed under Rule 12(b) and (c) into a motion seeking summary judgment when matters outside of the pleadings have been presented and accepted by the court. *Baum v. Northern Dutchess Hosp.,* 764 F.Supp.2d 410, 416 (N.D.N.Y. Jan.24, 2011) (citing *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.,* 404 F.3d 566 (2d Cir.2005)) (citations omitted). In light of this additional proof, and because Plaintiff also had notice and an opportunity to submit his own evidence, this Court has decided to proceed under the summary judgment standard of review.

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. Rule 56(a). The moving party bears the initial burden through the production of admissible evidence to establish that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This Court must view the evidence in the light most favorable to the party opposing the motion. *Id.* at p. 323.

If the moving party meets this initial burden, the nonmoving party must then set forth evidence demonstrating that there is a genuine issue of material fact. *Id.* at p. 324; *see also Salahuddin v. Goord,* 467 F.3d 263, 273 (2d. Cir.2006). "Though pro se plaintiffs are entitled to special latitude when defending against summary judgment motions, they must do more than simply show that there is some metaphysical doubt as to the material facts." *Hooks v. Howard,* 2010 WL 1235236, at *2 (N.D.N.Y. Mar.30, 2010) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Bald assertions, completely unsupported by evidence, will not satisfy the non-movant's burden. *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991). In order to defeat a motion for summary judgment, the nonmoving party must properly address the movant's assertion of fact, and cannot rest "merely on allegations or denials" of the facts submitted by the movant. *Fed.R.Civ.P. 56(e); see Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."). Rather, the opposing party must produce "specific facts" that influence "a reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "This is true even when the issue is exhaustion." *White v. Ercole,* 2009 WL 602890, at *5 (S.D.N.Y. Mar.3, 2009).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 5325715 (N.D.N.Y.)

(Cite as: 2011 WL 5325715 (N.D.N.Y.))

**\*5** When considering a motion for summary judgment, the trial court's duty "is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994). Furthermore, a court will grant summary judgment "only when reasonable minds could not differ as to the import of evidence." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991).

### B. *Bivens* Cause of Action

"*Bivens* established that the victims of a constitutional violation by a federal agent [acting under color of federal authority] have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green,* 446 U.S. 14, 18, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *see also Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Thomas v. Ashcroft,* 470 F.3d 491, 496 (2d Cir.2006).

The Second Circuit has recognized that "*Bivens* actions are not significantly dissimilar to claims brought under §§ 1981 and 1983 in terms of the interests being protected, the relief which may be granted, and the defenses which may be asserted." *Taverez v. Reno,* 54 F.3d 109, 110 (2d Cir.1995) (citation omitted). Thus it has been held that 42 U.S.C. § 1983 law is applicable to *Bivens* actions "[b]ecause the two actions share the same practicalities of litigation." *Id.* at 110 (internal quotation marks and citation omitted). Furthermore, "[b]ecause the doctrine of *respondeat superior* does not apply in *Bivens* actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation." *Thomas v. Ashcroft,* 470 F.3d at 496 (citation omitted) (emphasis in original).

### C. Exhaustion of Administrative Remedies

In seeking dismissal of this action, Defendants assert the affirmative defense that Plaintiff has not exhausted his available administrative remedies prior to bringing this action. Dkt. No. 29–1, Defs.' Mem. of Law, at pp. 10–18. Plaintiff maintains that on numerous occasions, his attempts to fully exhaust his administrative remedies were thwarted by all of the Defendants at different points in time. Compl. at ¶¶ 13–18 & 20–21; Dkt. No. 34, Pl.'s Aff./Mot., at ¶ 8.

The Supreme Court held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *see also Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004). Prisoners must exhaust all available "administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process." *Woodford v. Ngo,* 548 U.S. 81, 85, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (citing *Booth v. Churner,* 532 U.S. 731, 734, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)).

The Administrative Remedy Program is comprised of a four-step procedure set forth by the BOP. Inmates are required to use the Administrative Remedy program "in good faith and in an honest and straightforward manner." 28 C.F.R. § 542.11(b). First, the inmate must submit the issue of concern informally to staff, and staff must take measures to informally resolve the issue. *Id.* at § 542.13(a). Second, if the issue cannot be resolved informally, the inmate must submit a formal written Administrative Remedy Request, on a designated form, within twenty days of the event giving rise to the complaint. [FN8] *Id.* at § 542.14(a). If the inmate believes the issue is sensitive such that his/her safety or well-being would be placed in danger, the inmate may circumvent the initial filing at the institution by submitting the request directly to the appropriate Regional Director.[FN9] *Id.* at § 542.14(d)(1). Third, if the formal written request is denied, an unsatisfied inmate may submit an Appeal, on a designated form, to the appropriate Regional Director within twenty calendar days of the date the Warden signed the response. *Id.* at § 542.15(a). Fourth, an inmate may appeal a negative decision from the Regional Director to the General Counsel within thirty days of the date the Regional Director signed the response. *Id.* Appeal to the General Counsel is the last administrative appeal and once exhausted, legal action may commence.

> FN8. The inmate must obtain the grievance form from his/her correction counselor. *See* 28 C.F.R. § 542.13(c)(1).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 5325715 (N.D.N.Y.)

(Cite as: 2011 WL 5325715 (N.D.N.Y.))

FN9. The inmate must clearly write "sensitive" on the request, and further explain the reason for not submitting the request at his/her institution. *See* 28 C.F.R. § 542.14(d)(1). "If the Regional Administrative Remedy Coordinator agrees that the [r]equest is sensitive, the [r]equest shall be accepted. Otherwise, the [r]equest will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the [r]equest." *Id.*

**\*6** The Second Circuit recognized that while PLRA's exhaustion requirements are mandatory, certain caveats may apply. *Abney v. McGinnis,* 380 F.3d 663, 667 (2d Cir.2004) (citation omitted). "[A] three-part inquiry is appropriate where a prisoner plaintiff seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA[.]" *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). First, depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether such procedures were actually "available" to the prisoner. *Abney v. McGinnis,* 380 F.3d at 667. Second, "[t]he court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own action inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill v. New York,* 380 F.3d at 686 (citing *Johnson v. Testman,* 380 F.3d 691, 695 (2d Cir.2004) & *Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004)). Third, the Second Circuit has found that "there are certain 'special circumstances' in which ... the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified." *Giano v. Goord,* 380 F.3d 670, 676 (2d Cir.2004). "The effect of such justification is that, though the administrative remedies are no longer available for reasons of timing or other procedural restrictions, such restrictions cannot serve to keep the plaintiff's suit from proceeding." *Id.*

Recently, the Second Circuit ruled that a prisoner is not entitled to a jury trial when there is a factual dispute regarding administrative exhaustion. *Messa v. Goord,* 652 F.3d 305, 2011 WL 3086827 (2d Cir. July 26, 2011)

(joining five other Circuit Courts in holding that the Seventh Amendment guarantee to a jury trial does not extend to the "threshold issue[s] that *courts* must address to determine whether litigation is being conducted in the right forum at the right time" (emphasis and alterations in original) (quoting *Dillon v. Rogers,* 596 F.3d 260, 272 (5th Cir.2010)).

As in the *Messa* case, currently before us are issues of fact and matters of credibility with regard to Plaintiff's compliance with the PLRA's exhaustion mandate. Plaintiff asserts that while in administrative detention, he requested that he be provided with his legal work, but was denied. Compl. at ¶ 20 & Ex. 7. Four months later, he was finally furnished with his legal work. *Id.* at ¶ 21. According to Plaintiff, by the time he was able to submit the correct forms, they were denied as untimely. *Id.* at ¶ 28. Plaintiff asserts that his subsequent requests for grievance forms were also denied by various Defendants and that some of the complaints he filed were not answered in a timely fashion. *Id.* at ¶¶ 31–35, 47, & 52–53, 652 F.3d 305. Defendants categorically deny, under oath, that they ever denied Plaintiff the proper forms or otherwise impeded his efforts to properly exhaust his administrative remedies. They further suggest that Plaintiff could have sought the proper forms from any number of staff members who made regular rounds in SHU. *See* Van Weelden Decl. at ¶¶ 39–40; Sepanek Decl. at ¶ 9. Under such circumstances, we would be required to hold a fact-finding hearing prior to submitting any of Plaintiff's substantive claims to a jury. However, as explained more fully below, because Plaintiff's claims clearly lack merit, there is no need for this Court to exert further judicial resources in holding a hearing to determine whether Plaintiff's admitted failure to fully exhaust his administrative remedies should be excused.

### D. Eighth Amendment

**\*7** In his Complaint, Plaintiff asserts that on July 6th and 9th, his requests for toilet paper were denied by Defendants Duckett and Hensley. The shortage of toilet paper was resolved on July 6th after another inmate provided Plaintiff with a spare roll to use. On July 9th, Plaintiff did not have access to toilet paper for approximately an hour and a half, and ended up soiling

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 5325715 (N.D.N.Y.)

(Cite as: 2011 WL 5325715 (N.D.N.Y.))

himself. Much of Brobston's Complaint focuses on perceived retaliation and his alleged attempts to file multiple grievances, and thus, it is unclear whether Plaintiff raises an Eighth Amendment claim with regard to the deprivation of toilet paper. For example, in the Causes of Action portion of his Complaint, he does not cite this incident as an Eighth Amendment violation, and in this vein, the Complaint can be read as raising this issue solely as a means of providing background for his multiple retaliation claims. But, we are mindful that within the Complaint, he includes a paragraph that seems to implicate the Eighth Amendment. Compl. at ¶ 11. Thus, after liberally construing Plaintiff's Complaint, we find that a discussion of the Eighth Amendment is apropos.

In order to state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege that (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter,* 501 U.S. 294, 297–99, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (citation omitted) (cited in *Branham v. Meachum,* 77 F.3d 626, 630–31 (2d Cir.1996)).

In *Phelps v. Kapnolas,* 308 F.3d 180 (2d Cir.2002), the Second Circuit set out in detail the requirements that a plaintiff must prove in order to make out a claim that the conditions of his confinement violated the Eighth Amendment:

Under the Eighth Amendment, States must not deprive prisoners of their "basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety." *Helling [v. McKinney],* 509 U.S. [25,] 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 [ ( 1993) ] (citation and internal quotation marks omitted). Nor may prison officials expose prisoners to conditions that "pose an unreasonable risk of serious damage to [their] future health." *Id.* at 35. Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency. *Id.* at 35–36; *Rhodes [v. Chapman],* 452 U.S. 337[,] 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 [ ( 1981) ].

Concerning the "subjective" requirement, the Supreme Court has explained that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer [v. Brennan],* 511 U.S. [825,] 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 [ (1994) ].

**\*8** *Phelps v. Kapnolas,* 308 F.3d at 185–86.

"Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim." *Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir.1999) (citing *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). In determining whether a condition of confinement was objectively serious, courts consider the length of the deprivation and the potential for harm.

Under certain circumstances, the deprivation of toiletries, like toilet paper, can rise to the level of unconstitutional conditions of confinement. *See Trammell v. Keane,* 338 F.3d 155, 165 (2d Cir.2003) (quoted in *Reeder v. Hogan,* 2010 WL 3909050, at \*7 (N.D.N.Y. Sept.30, 2010)). Yet, courts in this Circuit have consistently held that an *occasional* or *temporary* deprivation of toilet use does not constitute an extreme deprivation of a basic human need or necessity of life. *Jones v. Marshall,* 2010 WL 234990, at \*3 (S.D.N.Y. Jan.19, 2010) (citing cases in support of the finding that the denial of the right to use the bathroom for ninety minutes did not "establish the existence of an objective injury for purposes of an Eighth Amendment claim"); *Cusamano v. Sobek,* 604 F.Supp.4d 416, 488–89 (N.D.N.Y.2009) (citing cases for the proposition that a "mere denial of the toilet paper and soap on several occasions for a few days is, while dismaying and unprofessional, not a denial of 'the minimal civilized measure of life's necessities,' as required by *Farmer [v. Brennan],* 511 U.S. at 834"); *Kee v. Hasty,* 2004 WL 807071, at \*26 n. 24 (S.D.N.Y. Apr.14, 2004) (citing *McNatt v. Unit Mgr. Parker,* 2000 WL 307000, at \*4

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 5325715 (N.D.N.Y.)

(Cite as: 2011 WL 5325715 (N.D.N.Y.))

(D.Conn. Jan.18, 2000)). In rendering these assessments, courts consider whether the deprivation of toilet use, or toilet paper, resulted in unsanitary conditions that posed a significant risk to an inmate's health. *See Whitted v. Lazerson,* 1998 WL 259929, at *1 & 2 (S.D.N.Y. May 21, 1998) (finding no Eighth Amendment violation where inmate was deprived of the use of toilet for approximately ninety minutes requiring him to "hold his bowel movement at painful levels, and at time partially urinate[ ] and defecate[ ] in his clothing"); *Gill v. Riddick,* 2005 WL 755745, at *16 (N.D.N.Y. Mar.31, 2005) (finding no Eighth Amendment violation when inmate urinated on himself as a result of the denial of the use of the bathroom during a trip to another prison).

In the circumstances before us, the lack of available toilet paper on July 6th and the temporary denial of toilet paper on July 9th do not objectively rise to the level of a constitutional violation. But, even if we were to find that, objectively, the denial of toilet paper was sufficiently serious, in light of the uncontested facts, it is clear that Defendants did not act with the requisite state of mind. Instead, by all accounts, Defendants took affirmative action to cure the toilet paper deficiency. Furthermore, there is no indication that Plaintiff was forced to stay in the soiled clothes, since, by his own account, he was able to shower and change his clothes immediately. Thus, to the extent stated in the Complaint, we recommend **granting** Defendants' Motion for Summary Judgment on Plaintiff's Eighth Amendment claim.

### E. Retaliation

**\*9** The true crux of Plaintiff's Complaint revolves around the notion that after he complained about the lack of toilet paper in UNICOR, and possibly because he complained about the BOP change in policy regarding prisoner movement during and after UNICOR lunch breaks, various Defendants retaliated against him. Such examples of retaliation include 1) Defendant Peterson's search while Plaintiff was on the UNICOR loading dock; 2) Defendant Helms's subsequent investigation; 3) forcing Plaintiff to submit to urine testing while in administrative detention; and 4) the hindrances imposed by all Defendants in blocking or delaying Plaintiff's attempts to file formal complaints while in SHU.

The Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679–80 (2d Cir.1995); *Franco v. Kelly,* 854 F.2d 584, 589–90 (2d Cir.1988). Claims of retaliation, like those asserted by Plaintiff, find their roots in the First Amendment. Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights. *Gill v. Pidlypchak,* 389 F.3d 379, 381–83 (2d Cir.2004).

Because of the relative ease with which claims of retaliation can be invoked, courts should examine such claims "with skepticism and particular care." *Colon v. Coughlin,* 58 F.3d at 872 (citation omitted); *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds, Swierkewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." (citation omitted)); *see also Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996)

To state a First Amendment claim for retaliation, an inmate must demonstrate that (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Gill v. Pidlypchak,* 389 F.3d at 380 (citing *Dawes v. Walker,* 239 F.3d at 492); *see also Morales v. Mackalm,* 278 F.3d 126, 131 (2d Cir.2002).

Here, Plaintiff satisfies the first prong because he engaged in constitutionally protected activity *vis a vis* filing grievances about the lack of toilet paper in UNICOR and complaining about the BOP change in policy. However, it is not entirely clear whether Plaintiff has satisfied the second and third prongs regarding adverse action taken against him and causal connection. It is worth noting that during the time Plaintiff alleges that various

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 5325715 (N.D.N.Y.)

(Cite as: 2011 WL 5325715 (N.D.N.Y.))

Defendants were retaliating against him, these same staff/team members were working on his behalf to have him transferred to a facility closer to his home. It was only after the July 27th incident that such effort was terminated. *See* Sepanek Decl. at ¶ 5 & Ex. B. It seems that Plaintiff seeks to label the search, and possibly the subsequent administrative confinement, urine testing, and criminal prosecution, as adverse action, but he fails to make a clear connection between his written complaints about the lack of toilet papers and these acts. Conspicuously absent from his Complaint are the facts surrounding the search. In his Complaint, Plaintiff would have us believe that for no reason, he was singled out and searched and then put into administrative detention without cause. At no point in his Complaint does he mention that marijuana was found on his person during that search. Yet, after reviewing the Defendants' moving papers, we learn that Plaintiff had been suspected of possessing or dealing drugs, which was the basis for the search,[FN10] and during such search, Plaintiff was observed attempting to force a cellophane wad down the drain. After determining that the substance in the cellophane was marijuana, the incident was referred to the United States Attorney's Office for prosecution. At no time does Plaintiff claim that the drugs found that day were not his nor that they were planted there by the Defendants. Indeed, he would be foreclosed in making such argument in light of his guilty plea to the crime of possession during his criminal prosecution.

   [FN10.] In his Declaration, Defendant Jon Hensley, Superintendent of Industries and Education, indicated that on July 27, 2009, he became aware that Plaintiff was selling drugs out of the factory restroom. Dkt. No. 29–8, Jon Hensley Decl., dated Nov. 9, 2010, at ¶ 11. He does not share with the Court how he came to possess such information. Hensley says that he informed Defendant Peterson of this and asked him to look into the allegation, which resulted in the visual search. *Id.*

   **\*10** Furthermore, it is clear from the Defendants' submissions that even if a retaliatory animus were present, based on their suspicion and because of the items discovered during the search, they would have taken the same steps, *i.e.,* administrative confinement and referral

for prosecution. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (citing, *inter alia, Mount Healthy Sch. Dist. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), for the proposition that in situations where the defendant's actions are the result of both retaliatory and legitimate reasons, the burden shifts to the defendants to show that they would have taken the same action absent the retaliatory motive); *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994) (cited in *Carpio v. Walker,* 1997 WL 642543, at *6 (N.D.N.Y. Oct.15,1997)); *see also Gayle v. Gonyea,* 313 F.3d at 682 (defendant may successfully meet this burden of justification with regard to a particular punishment by demonstrating that "plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report" (internal quotation marks and citations omitted)).

   The undisputed facts show that on July 27th, the search of Brobston, and subsequent lab testing, revealed he possessed marijuana. While a BOP Incident Report was written by Defendant Peterson that same day, the BOP investigation into this matter was suspended pending referral to the United States Attorney's Office. Van Weelden Decl. at ¶ 7 & Exs. F & G. In accordance with BOP policy, because of the pending investigation, Brobston was not furnished with a copy of the Incident Report. *Id.* at ¶ 10 & Ex. H. Also in accordance with BOP policy, Plaintiff was placed in administrative detention pending the criminal investigation and was subjected to periodic urinalysis. *Id.* at ¶¶ 8 & 11, Exs. H, I, & K. The following date, the matter was referred for investigation, thus, the timeline of such prosecution was no longer with any member of the BOP, but rather with the United States Attorney's Office. As we know, eventually, Plaintiff was indicted and pled guilty to the charge of Knowingly Possessing a Prohibited Object. Thus, it is clear from the undisputed evidence that even if a retaliatory motive existed, and we do not find that to be the case, the search, investigation, administrative detention, and urine testing were legitimate and in accordance with BOP policy. Thus, we recommend that these claims of retaliation be **dismissed.**

   Lastly, with regard to Plaintiff's claim that all nine Defendants retaliated against him by interfering with his ability to file administrative grievances, we note that such claim lacks the vital causal connection. The

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 5325715 (N.D.N.Y.)

(Cite as: 2011 WL 5325715 (N.D.N.Y.))

constitutionally protected activity at issue is the complaints Plaintiff filed with regard to the shortage of toilet paper in UNICOR. Those complaints were immediately addressed by UNICOR staff in the form of providing additional toilet paper and by Defendant Hensley, who issued a written response to Plaintiff's complaint indicating that he had fully investigated the matter and was assured that for the dates in question, UNICOR staff ensured that there was an adequate supply of toilet paper. It is not clear why Plaintiff believes that his complaints upset any of the nine Defendants that they would engage in acts of retaliation spanning over seven months. By all accounts, the complaints were resolved amicably. And, as noted above, prior to July 27th, these same staff members were working on Plaintiff's behalf to grant his request for a transfer. Having failed to assert a causal connection between the alleged retaliatory acts and his complaints about the lack of toilet paper, we recommend that this claim be **dismissed.**

### F. Qualified Immunity

**\*11** In light of the above analysis wherein this Court has assessed that no constitutional violations occurred, it is unnecessary for us to consider this affirmative defense put forth by Defendants. _Saucier v. Katz,_ 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). However, should there be any doubt as to the above recommendations, it is clear based upon the undisputed evidence and Declarations that the each Defendant would be entitled to qualified immunity for each of the above claims because "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[ ], could conclude that it was objectively unreasonable for the defendant[s] to believe that [t]he[y] w[ere] acting in a fashion that did not clearly violate an established federally protected right." _Lee v. Sandberg,_ 136 F.3d 94, 102 (2d Cir.1997) (citations omitted).

### G. Service

Under FED. R. CIV. P. 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m).[FN11] Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative after notice to the plaintiff, to dismiss the case without prejudice as to that defendant. _Id._

> FN11. Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y.L .R. 4.1(b).

Defendant Darrah has not been properly served in this matter. Apparently, at the time service was attempted, Ms. Darrah had already retired from the BOP. Dkt. Nos. 18 & 29. Nevertheless, as noted above, Plaintiff's claims regarding the shortage of toilet paper and various forms of retaliation should be dismissed against the Defendants, including Defendant Darrah, because he has not asserted a cognizable claim.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that Defendants' Motion to Dismiss/for Summary Judgment (Dkt. No. 29) should be **GRANTED** and this entire action be **DISMISSED;** and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.*** _Roldan v. Racette,_ 984 F.2d 85, 89 (2d Cir.1993) (citing _Small v. Sec'y of Health and Human Servs. .,_ 892 F.2d 15 (2d Cir.1989)); _see also_ 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

N.D.N.Y.,2011.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 5325715 (N.D.N.Y.)

(Cite as: 2011 WL 5325715 (N.D.N.Y.))

Brobston v. Schult
Not Reported in F.Supp.2d, 2011 WL 5325715
(N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 5325778 (N.D.N.Y.)

(Cite as: 2011 WL 5325778 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Kenneth BROBSTON, Plaintiff,
v.
Deborah SCHULT et al., Defendants.
No. 9:10–cv–242 (GLS/RFT).

Nov. 3, 2011.
Kenneth Brobston, Three Rivers, TX, pro se.

Hon. Richard S. Hartunian, United States Attorney, Office of the United States Attorney, Charles E. Roberts, Assistant United States Attorney, of Counsel, Syracuse, NY, for the Defendants.

### MEMORANDUM–DECISION AND ORDER

GARY L. SHARPE, District Judge.

#### I. *Introduction*

**\*1** Plaintiff *pro se* Kenneth Brobston brings this action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), alleging his constitutional rights were violated while he was incarcerated at Federal Correctional Institution in Ray Brook. (*See* Compl., Dkt. No. 1.) In a Report–Recommendation and Order (R & R) filed September 28, 2011, Magistrate Judge Randolph F. Treece recommended that the defendants' motion be granted and Brobston's Complaint be dismissed.[FN1] (*See generally* R & R, Dkt. No. 42.) Pending are Brobston's objections to the R & R. (Dkt. No. 43.) For the reasons that follow, the R & R is adopted in its entirety.

> FN1. The Clerk is directed to append the R & R to this decision, and familiarity therewith is presumed.

#### II. *Standard of Review*

Before entering final judgment, this court routinely reviews all report and recommendation orders in cases it has referred to a magistrate judge. If a party has objected to specific elements of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo. See Almonte v. N.Y. State Div. of Parole,* No. 04–cv–484, 2006 WL 149049, at *6–7 (N.D.N.Y. Jan.18, 2006). In those cases where no party has filed an objection, or only a vague or general objection has been filed, this court reviews the findings and recommendations of the magistrate judge for clear error. *See id.*

#### III. *Discussion*

To the extent specific objections to the R & R can be gleaned from Brobston's objections, they are that: (1) Judge Treece erred when he found Brobston exhausted administrative remedies; (2) he stated a cognizable Eighth Amendment claim; and (3) defendants' violated institutional policies with respect to his criminal conviction for possession of a prohibited object. (*See generally* Dkt. No. 43.) However, as discussed below, these objections are irrelevant and thus, will be construed as general objections.

Brobston's first and third objections, regarding the exhaustion of administrative remedies and the circumstances surrounding his criminal conviction, are immaterial to Judge Treece's dismissal recommendation. (*See* R & R at 13, 18–20; Dkt. No. 42.) Although Judge Treece—in the interest of thoroughness—discussed the unresolved questions of fact with respect to the exhaustion of administrative remedies, and the interplay between Brobston's criminal case and the instant case, his recommendation for dismissal was based on Brobston's failure to state cognizable Eighth Amendment and retaliation claims. (*See id.* at 10–20.)

Similarly, Brobston's second objection, which appears to challenge the objective reasonableness of preventing him from using the bathroom for an hour and a half, is also misdirected. (*See* Dkt. No. 43 at 3.) Notwithstanding Brobston's contention, Judge Treece concluded that Brobston's Eighth Amendment cause of action failed because "it is clear that Defendants did not act with the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 5325778 (N.D.N.Y.)

(Cite as: 2011 WL 5325778 (N.D.N.Y.))

requisite state of mind." (R & R at 16; Dkt. No. 42); *see, e.g., Phelps v. Kapnolas,* 308 F.3d 180, 185–86 (2d Cir.2002).

**\*2** Because Brobston objected to only extraneous matters, *i.e.,* non-dispositive grounds, the court concludes that a *de novo* review of Brobston's Eighth Amendment and retaliation claims is unnecessary.

### IV. *Conclusion*

Having found no clear error in the R & R, the court accepts and adopts Judge Treece's R & R in its entirety.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Randolph F. Treece's September 28, 2011 Report–Recommendation and Order (Dkt. No. 42) is **ADOPTED** in its entirety; and it is further

**ORDERED** that defendants' motion (Dkt. No. 29) is **GRANTED** and all Brobston's claims are **DISMISSED;** and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties by mail and certified mail.

**IT IS SO ORDERED.**

N.D.N.Y.,2011.

Brobston v. Schult
Not Reported in F.Supp.2d, 2011 WL 5325778 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Troy GARRETT, Plaintiff,
v.
Edward REYNOLDS, Superintendent, Mohawk Corr.
Facility; James A. Mance, Deputy Superintendent of
Programs; John O'Reilly,[FN1] Deputy Superintendent; J.
Burge, First Deputy; M. Maher, DSS; R. Centore,
Correctional Officer, Defendants.

> FN1. In this case, the defendants maintain and
> the docket confirms that defendant John O'Reilly
> has never been served. Service must be made
> upon a defendant within 120 days of filing the
> complaint or any claims against that defendant
> will be dismissed. See Fed.R.Civ.P. 4(m). The
> original complaint, which named O'Reilly, was
> filed on November 26, 1999, and the amended
> complaint was filed on July 13, 2001. However,
> O'Reilly was never served. Since this defendant
> has never been served, this court lacks
> jurisdiction over him, and this court recommends
> the dismissal of this defendant.

No. Civ.9:99CV2065NAMGLS.

Oct. 7, 2003.
Troy Garrett, Peekskill, NY, Plaintiff, pro se.

Hon. Eliot Spitzer, Attorney General State of New York,
Syracuse, NY, for the Defendants.

Maria Moran, Asst. Attorney General, of counsel.

*REPORT-RECOMMENDATION*

SHARPE, Magistrate J.
  I. *Introduction* [FN2]
  > FN2. This matter was referred to the undersigned
  > for a Report-Recommendation by the Hon.

Norman A. Mordue, United States District
Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and
Local Rule 72.3(c).

**\*1** Plaintiff, *pro se* Troy Garrett filed an action under
42 U.S.C. § 1983 claiming that the defendants violated his
civil rights when they retaliated against him for his
activities as an IGRC representative by subjecting him to
verbal harassment, physical abuse and subsequently, a
transfer. Garrett also claims that the supervisory
defendants failed to properly investigate his complaints
and failed to train/supervise their employees. This court
recommends denying the motion for summary judgment in
part and granting it in part.

II. *Procedural History*

On July 13, 2001, Garrett filed an amended complaint
against the defendants claiming that they violated his civil
rights under the First, Sixth Eighth, and Fourteenth
Amendments.[FN3] On September 28, 2001, the defendants
filed a motion for summary judgment. On January 18,
2002, this court issued an order informing Garrett of his
obligation to file a response and extended his time to
respond for thirty days. On April 24, 2002, this court
granted an additional sixty days to respond to the
defendants' motion. Despite having been given multiple
opportunities to respond, Garrett has failed to file a
response.

> FN3. Although Garrett claims to be raising
> violations under the Sixth, Eighth, and
> Fourteenth Amendments, the only viable claim
> based on this court's interpretation of the
> complaint is under the First Amendment for
> retaliation.

III. *Facts* [FN4]

> FN4. The facts are taken from the defendants'
> statement of undisputed material facts since
> Garrett failed to file a response.

On June 17, 1999, Garrett filed a grievance against

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Officer Kelley for verbal harassment.[FN5] This grievance was denied by the Central Office Review Committee (CORC) on July 21, 1999. On March 19, 2000, Garrett filed a grievance claiming that defendant Burge used intimidation tactics. Defendant Reynolds investigated the grievance and it was denied based on a finding that no harassment occurred. Garrett appealed to the CORC and they denied the grievance on April 5, 2000. On April 10, 2000, defendant Centore wrote a misbehavior report against Garrett for creating a disturbance and employee harassment. On April 12, 2000, Lieutenant Manell presided over Garrett's Tier 2 disciplinary hearing and he was found guilty of both charges. He was given a 21 day recreation penalty, and loss of packages and commissary. However, his recreation penalty was suspended and deferred. Garrett appealed the determination and it was affirmed on April 19, 2000.

FN5. Not a party in this suit.

On April 17, 2000, Garrett filed a grievance against Centore for harassment. Burge denied his grievance on May 4, 2000, and subsequently, the CORC denied it. On May 12, 2000, Garrett sent a letter to Burge concerning further harassment by Centore. On May 16, 2000, Garrett filed another grievance against Centore for harassment. His grievance was denied on May 26, 2000. After Garrett appealed, his grievance was again denied by the CORC. On June 22, 2000, the Superintendent's Office received a letter from Garrett alleging that Centore threw a piece of paper with a picture of a plunger and the words "always gets the job done" into his cell. He wrote a grievance against Centore for harassment due to the paper that he threw into his cell. Burge forwarded the grievance to the CORC on August 10, 2000. The CORC accepted the grievance on August 30, 2000, in order to investigate.

**\*2** On June 23, 2000, the Inspector General's Office interviewed Garrett at the Mohawk Correctional Facility regarding his complaints of Centore. That same day, Captain Naughton filed an administrative segregation recommendation. On June 29, 2000, an administrative segregation hearing was held. On July 14, 2000, Garrett was transferred [FN6] to the Mid-State Correctional Facility.

FN6. The defendants suggest that Garrett has

failed to exhaust his administrative remedies concerning his transfer. They claim that he agreed to the transfer and participated in the administrative hearing which resulted in his transfer. The issue of transfer will not be addressed in this Report-Recommendation because the court has insufficient information to determine whether he exhausted his remedies.

Finally, Garrett filed a claim alleging that his property was lost or damaged on October 8, 1999. However, he was paid $75.00 for this claim and he signed a release on December 13, 1999.

IV. *Discussion*

A. *Legal Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999). "When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the ... pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e) ], must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir.2000). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexford Holdings, Inc. v. Biderman,* 21 F.3d 522, 525 (2d Cir.1994)(alternation in original) (citation omitted). However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999).

Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U .S. 519, 520 (1972); *see Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)(a court is to read a *pro se* party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990); *see LaFond v. General Physics Serv. Corp.,* 50 F.3d 165, 171 (2d Cir.1995).

**\*3** This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond,* 00 CIV. 3725, 2001 WL 527484, at \*2 (S.D.N.Y. May 16, 2001). More specifically, Local Rule 7.1(a)(3) of this court specifically provides that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Local Rule 7.1(a)(3) further requires that the "non-movant shall file a Statement of Material Fact which mirrors the movant's statement in matching numbered paragraphs and which set forth a specific reference to the record where the material fact is alleged to arise." The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot,* 00-CV-1178, 2002 WL 368534, at \*2 (N.D.N.Y. March 1, 2002)(interalia citing *Bundy Am. Corp. v. K-Z Rental Leasing, Inc.,* 00-CV-260, 2001 WL 237218, at \*1 (N.D.N.Y. March 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty America v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002). As long as the local rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. *Id.* at 470-71.

In this case, Garrett did not file a response to the motion for summary judgment. Consequently, this court will accept the properly supported facts contained in the defendants' 7.1 Statement (*Dkt. No. 49* ) as true for purposes of this motion.[FN7] With this standard in mind, the court now turns to the sufficiency of Garrett's claims.

> FN7. The court notes that this does not apply to the various conclusions of law contained in the defendants' 7.1 Statement.

B. *Eleventh Amendment*

In Garrett's complaint, he raises claims against the defendants in their official and individual capacities. The Eleventh Amendment provides that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Although the Amendment does not specifically prohibit suits against a state by its own citizens, the Supreme Court has consistently applied that immunity to such cases. *See Burnette v. Carothers,* 192 F.3d 52, 57 (2d Cir.1999)(citing *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974)). Moreover, it is well established that Eleventh Amendment immunity applies not only when a state is a named defendant, but when liability must be paid from state coffers. *See New York City Health & Hosp. Corp. v. Perales,* 50 F.3d 129, 134 (2d Cir.1995)(citing *Edelman,* 415 U .S. at 665); *Dawkins v. State of New York,* 93-CV-1298, 1996 WL 156764, at \*2 (N.D.N.Y. Mar. 28, 1996).

**\*4** In this case, Garrett raises claims against the defendants in their official and individual capacities. Since the Eleventh Amendment bars official capacity claims against these state officers, this court recommends dismissal of Garrett's claims against the defendants in their official capacity.

C. *Retaliation*

In this case, Garrett claims that during the course of his appointment as an IGRC representative, he has been subjected to repeated acts of harassment, both verbal and

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

physical, threatened with physical assaults, placed into disciplinary confinement in the SHU, and transferred.[FN8] The Second Circuit has held that retaliation against a prisoner for pursuing a grievance is actionable under § 1983. *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996). Moreover, the Second Circuit has recognized both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated. Thus, prisoners' claims of retaliation are examined with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10 (2d Cir.1983).

> FN8. This case turns on the interpretation of the complaint. Garret's complaint is not a model of clarity and as noted, he has failed to file a response to the motion for summary judgment. Nonetheless, a careful reading of Garrett's opening paragraph under the title "Facts" compels this court to interpret this complaint as one claiming retaliation for his activities and status as an IGRC representative.

In order for a plaintiff to prevail on a First Amendment retaliation claim, a plaintiff must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and, (3) that there was a causal connection between the protected speech and the adverse action. *See Dawes v. Walker,*[FN9] 239 F.3d 489, 492 (2d Cir.2001) (citation omitted) *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002). If Garrett makes these showings, DOCS may evade liability if it demonstrates that it would have disciplined or transferred him " 'even in the absence of the protected conduct." ' *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted).

> FN9. Dawes' complaint was dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

An inmate has a constitutional right to be protected from retaliation based upon his activities as an IGRC representative. *Alnutt v. Cleary,* 913 F.Supp. 160, 170 (W.D.N.Y.1996). However, a claim brought under "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley,* 261 F.Supp.2d 113, 129

(N.D.N.Y.2003)(citing *Alnutt,* 913 F.Supp at 165-66)). Ordinarily, a claim for verbal harassment is not actionable under 42 U.S.C. § 1983. *Aziz Zarif Shabazz v. Picco,* 994 F.Supp. 460, 474 (S.D.N.Y.1998). Moreover, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Aziz Zarif Shabazz,* 994 F.Supp. at 474.

In this case, Garrett claims that defendant Centore harassed him for his activities as an IGRC representative. Garrett also claims that he was removed as an IGRC representative when he was transferred. In addition, Garrett claims that defendants Reynolds, Mance, Burger and Maher failed to properly investigate his allegations against Centore. Garrett claims that these defendants failed to properly investigate his claims in retaliation for his activities as an IGRC representative.

**\*5** More specifically, Garrett claims that Reynolds and Mance recalled IGRC passes for one day in order to interfere with an investigation inquiry into a correctional officer's conduct involving inmates who were left in the yard during inclement weather. Finally, Garrett claims that his property was destroyed while he was in the SHU.[FN10] Garrett filed grievances against Centore in April, May, and June of 2000. One of his complaints involved Centore throwing a folded piece of paper into his cell which had a picture of a plunger with the words "always gets the job done" on it. On June 23, 2000, he was placed in administrative segregation in the SHU. Three weeks later he was transferred.[FN11]

> FN10. However, the defendants provide the court with documents which show that he was paid $75.00 in settlement of this claim.

> FN11. The defendants maintain that Garrett failed to exhaust this claim. At this juncture, it is unclear whether or not he exhausted this claim. As such, this court cannot, as a matter of law, recommend dismissal because the court has insufficient information to determine this issue.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Viewing the facts in the light most favorable to Garrett, the non-moving party, this court cannot, as a matter of law, find that Garrett fails to state a claim for which relief can be granted. He claims that he was retaliated against for his activities as an IGRC representative. As noted, verbal harassment alone will not constitute a violation of a prisoner's constitutional rights but in this case, it appears that he was transferred for his activities as an IGRC representative. The defendants rely on numerous grievances which were denied by the CORC to show that their actions were proper. They also claim that Garrett has failed to show injury, however, at this juncture of the litigation with virtually no discovery in this case, this court cannot recommend dismissal as a matter of law.

D. *Personal Involvement*

It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)(*citation omitted* ). Since there is no respondeat superior liability, the defendant must be shown to have personal involvement in the alleged violation of rights. *Al- Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989).* Supervisory officials cannot be held liable under § 1983 solely for the acts of their subordinates. *See Monell v. Department of Social Serv.,* 436 U.S. 658, 690-695 (2d Cir.1978).* However, a supervisory official can be held liable for constitutional violations if he or she: (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)).

Garrett contends that defendants Reynolds and Mance allowed staff members under their supervision to violate his rights. More specifically, Mance refused to properly investigate Garrett's complaints. Garrett also claims that defendant Burge refused to grant his request for redress against defendant Centore. Finally, Garrett claims that the defendants collectively failed to properly train and supervise their employees.

**\*6** The defendants contend that the claims against the supervisory defendants should be dismissed for lack of personal involvement. However, this court finds this contention without merit since it appears that all of the defendants were involved in the investigation process of Garrett's complaint and he accuses all of them of continuing the alleged constitutional violation by failing to properly investigate the grievances he filed. Accordingly, this court recommends denying the defendants' motion for summary judgment based on the lack of personal involvement.

WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED, that Garrett's claims against the defendants in their official capacity under the Eleventh Amendment should be dismissed since these claims are barred; and it is further

RECOMMENDED, that defendant O'Reilly be dismissed since he was never served; and it is further

RECOMMENDED, that the defendants' motion for summary judgment be denied in all other respects; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties by regular mail.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2003.

Garrett v. Reynolds
Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2004 WL 2202645 (W.D.N.Y.)
(Cite as: 2004 WL 2202645 (W.D.N.Y.))

**C**
Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Frank G. MOWRY, Plaintiff(s),
v.
Robert F. NOONE, In his Individual and Official
Capacity and Douglas Dickenson, Individually and in
his Official Capacity as an employee/agent of the
County of Seneca, Defendant(s).
**No. 02-CV-6257FE.**

Sept. 30, 2004.

Frank G. Mowry, Gowanda, NY, pro se.

Thomas J. Lynch, Esq., Law Offices of Thomas J. Lynch,
Syracuse, NY, Thomas Desimon, Esq., Harris Beach LLP,
Pittsford, NY, for Defendants.

DECISION AND ORDER

*Preliminary Statement*

FELDMAN, Magistrate J.

**\*1** Plaintiff Frank G. Mowry ("Mowry" or "plaintiff"),
proceeding *pro se,* brings this action pursuant to 42 U.S.C.
§ 1983. Plaintiff alleges that (1) defendant Robert F.
Noone, Jr. ("Noone") used excessive force to effectuate
his arrest, in violation of his rights under the Fourth
Amendment of the Constitution, (2) defendant Douglas
Dickenson ("Dickenson") failed to intervene to prevent
Noone from using excessive force, and (3) both Noone
and Dickenson deliberately denied him medical care in
violation of his rights under the Fourteenth Amendment of
the Constitution. Defendants now move for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure (Docket # 70). In accordance with the
provisions of 28 U.S.C. § 636(c), the parties have
consented to the jurisdiction of this Court for all
dispositive matters, including trial. (Docket # 11). For the
reasons set forth herein, defendants' motion for summary
judgment is granted.

*Factual Background*

Mowry alleges that on July 22, 1999 he was stopped at a
traffic light in the left turn only lane at the Ovid Street
bridge in Seneca Falls, New York. Mowry continued
straight ahead onto Cayuga Street when the light turned
green. Defendant Officer Robert F. Noone, Jr. of the
Seneca Falls Police Department, observed Mowry disobey
the traffic sign, activated the emergency lights on his
vehicle and began following Mowry. (Mowry Dep. Trans.
p. 17, 17-18 FN1). Mowry knew that he was driving
illegally but did not pull over. (Mowry Dep. Trans. p. 18,
12). Noone continued to follow Mowry for several miles.
(Mowry Dep. Trans. p. 20, 8). When Mowry turned onto
Route 318, Deputy Douglas Dickenson of the Seneca
County Sheriff's Department, joined the pursuit and
activated his emergency lights. (Mowry Dep. Trans. p. 22,
5-6, p. 24, 3). Mowry continued driving even though he
knew he was the subject of pursuit. (Mowry Dep. Trans.
p. 25, 7). Mowry lead defendants on a highspeed chase
that reached speeds of over 75 mph and narrowly avoided
several head-on collisions as he attempted to pass vehicles
on the two-lane road. (Mowry Dep. Trans. p. 21, 12-13,
22). Mowry turned onto Birdsey Road and continued
driving until a construction road closure forced him to stop
his car. (Mowry Dep. Trans. p. 28, 9-22).

> FN1. Deposition references are to the page and
> line number of transcript of the May 27, 2003
> deposition of plaintiff Frank. G. Mowry.

Mowry exited his car and when he saw Dickenson,
followed by Noone, turn onto Birdsey Road he began to
flee. (Dep. Trans. p. 38, 9-13; p. 39, 3). Dickenson ran
after Mowry yelling at him to stop. (Mowry Dep. Trans. p.
39, 8). Once Mowry saw that he was about to be overtaken

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2202645 (W.D.N.Y.)
(Cite as: 2004 WL 2202645 (W.D.N.Y.))

by Dickenson, he stopped and Dickenson brought him to the ground. (Mowry Dep. Trans. p. 34, 20). Mowry landed with his hands and knees on the gravel. (Mowry Dep. Trans. p. 37, 2; p. 40, 20-21). Dickenson asked Mowry if he was alright, and Mowry responded yes. (Mowry Dep. Trans. p. 42, 15-20).

Dickenson gave Mowry 30 seconds to catch his breath on his hands and knees, then pulled Mowry's right arm behind his back to handcuff him. (Mowry Dep. Trans. p. 42, 12-13, p. 39, 21-22). At the same time, Mowry heard a car door slam and saw Noone running towards them. (Mowry Dep. Trans. p. 72, 19-21). Mowry testified that when he saw Noone running towards them he only had time to turn his head away. (Mowry Dep. Trans. p. 46, 6-8). Mowry testified that Noone was running too fast and overran Mowry and Dickenson. (Mowry Dep. Trans. p. 46, 18-19). As Noone jumped over the top of Mowry's head, the toe of Noone's boot hit the side of Mowry's head. (Mowry Dep. Trans. p. 49, 4-5). Noone landed on one foot before regaining his balance. (Mowry Dep. Trans. p. 48, 21-23). Noone and Dickenson pulled Mowry off the ground and placed him in Noone's car. (Mowry Dep. Trans. p. 49, 13-14). Mowry claims to have lost consciousness until he was placed in the back of the patrol car. (Mowry Dep. Trans. 50, 9-14). Mowry denies telling anyone that he was injured until after he got to the police station and was formally "booked in" at the county jail. (Mowry Dep. Trans. 55, 7-13). Mowry concedes that he did not ask for any medical attention at that time. (Mowry Dep. Trans. 55, 17-22, 68, 10-15).

**\*2** Mowry was taken to the Seneca Falls Police Station where he was charged with Driving While Intoxicated, Aggravated Unlicensed Operation of a Motor Vehicle in the First Degree, and Reckless Endangerment.[FN2] Within 24 hours of his arrest, Mowry was examined by medical personnel at the county jail and was treated for neck pain. (Mowry Dep. Trans. p. 68, 19; p. 58, 3-4).

> FN2. Mowry later admitted guilt to all three charges. (Mowry Dep. Trans. p. 63, 8-20).

Mowry alleges that he was later diagnosed with a fractured left cheekbone. (Mowry Dep. Trans. p. 65, 5-9). He also asserts that as a result of this injury he experiences blurred vision and migraine headaches. (Mowry Dep. Trans. p. 65, 6-9). According to Mowry, the results of an MRI taken while he was in prison were "normal." (Mowry Dep. Trans. p. 82, 18-19).

*Discussion*

*Summary Judgment Standard:* Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" only if it has some affect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Catanazaro v. Weiden,* 140 F.3d 91, 93 (2d Cir.1998).

The burden of showing the absence of any genuine issue of material fact rests on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When a court is confronted with facts that permit different conclusions, all ambiguities and inferences that may reasonably be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996). Rule 56(e), however, also provides that in order to defeat a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial. Such an issue is not created by a mere allegation in the pleadings [citations omitted], nor by surmise or conjecture on the part of the litigants." *United States v. Potamkin Cadillac Corp.,* 689 F.2d 379, 381 (2d Cir.1982) (per curium). "Affidavits submitted in opposition to a motion for summary judgment must set forth such facts as would be admissible in evidence." *Franklin v. Krueger Int'l,* 1997 WL 691424 at *3 (S.D.N.Y. November 5, 1997) (citing *Raskin v. The Wyatt Co.,* 125 F.3d 55 (2d Cir.1997) ("only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment").

In addition, *pro se* submissions, particularly those alleging civil rights violations, are construed liberally and are

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2202645 (W.D.N.Y.)
(Cite as: 2004 WL 2202645 (W.D.N.Y.))

treated as raising the strongest arguments that they might suggest. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). *See also Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (because plaintiff's "complaint alleges civil rights violations and he proceeded *pro se* in the District Court, we must construe his complaint with particular generosity") (citations omitted).

**\*3** *I. Excessive Force Claim:* The Supreme Court has held that claims against police officers for excessive force must be examined under the Fourth Amendment's reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Determining whether the force used was reasonable requires a balancing of the intrusion on the individual's Fourth Amendment rights against the interests of the government. *Id.* at 396. The reasonableness of a particular use of force must be judged objectively from the perspective of a reasonable officer at the scene of the arrest. *Graham,* 490 U.S. at 397. In evaluating the officer's actions, courts should consider the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396. It is well established that the right to make an arrest necessarily carries with it the right to use some degree of physical coercion. *Id. See Mickle v. Morin,* 297 F.3d 114, 120 (2nd Cir.2002)(in the context of excessive force used during an arrest, "not every push or shove" is excessive.)(internal citations omitted).

In this case, the record is clear that the officers were faced with an extremely dangerous situation as Mowry drove erratically down narrow roads to avoid capture. Indeed, Mowry's actions repeatedly put the lives of other motorists in imminent danger. Applying the *Graham* balancing test to these circumstances, there is no question that the officers acted appropriately in stopping and arresting Mowry. *See Washington v. City of Riverside Illinois,* 2003 WL 1193347, \*5 (N.D.Ill. March 13, 2003) (summary judgment granted when driver's decision to flee justified officer's subsequent use of force to arrest.). Simply put, Mowry has produced no evidence upon which a reasonable jury could find that the defendants used excessive force during his take down and arrest.

As for Mowry's allegation that Noone applied excessive force by "kicking him in the head," this Court will not credit Mowry's attempt to change his deposition testimony with the affidavit he submits in opposition to defendants' motions. Rather, this Court relies on Mowry's deposition testimony which clearly establishes the accidental nature of any injury caused by Noone. *See Mack v. United States,* 814 F.2d 120, 124 (2d Cir.1987)("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."); *Hayes v. New York City Dep't of Corr.,* 84 F.3d 614, 619 (2d Cir.1996) ("[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial.").

The undisputed facts here are that after Mowry was taken down by Dickenson, Noone exited his vehicle, ran toward Mowry with such speed that he overran Mowry and Dickenson, and tripped over Mowry. In light of the prolonged chase, the officers had a reasonable basis for believing that Mowry posed a serious threat, especially since he continued to run and evade arrest after he exited his vehicle. Under these circumstances, this Court finds that it was objectively reasonable for Noone to approach Mowry at a high rate of speed in his effort to assist Dickenson in subduing Mowry, and that his actions can not constitute excessive force.

**\*4** *II. Failure to Intervene Claim:* Mowry also makes a claim for failure to intervene. It is well established that a law enforcement official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his presence by other officers. *Curley v. Village of Suffern,* 268 F.3d 65, 72 (2d Cir.2001); *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994); *O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988). Failure to intercede results in liability where an officer observes the use of excessive force or has reason to know that it will be used. *Anderson,* 17 F.3d at 557. In order to be held liable, the law enforcement official must have had a realistic opportunity to intervene in order to prevent the harm from occurring. *Id.* at 557.

Here, based on the facts as presented by Mowry, Dickenson did not have the opportunity to intercede before Noone tripped over Mowry, and therefore cannot be held liable. *See O'Neill v. Krzeminski,* 839 F.2d 9, 11

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2202645 (W.D.N.Y.)
(Cite as: 2004 WL 2202645 (W.D.N.Y.))

(2d Cir.1988) (defendant entitled to judgment where record clear that blows were struck in such a rapid succession that officer "had no realistic opportunity to attempt to prevent them."). At the time the alleged excessive force was used, Dickenson had one hand on Mowry's left arm and was attempting to pull Mowry's right arm behind Mowry's back. Even Mowry stated that when he heard Noone running toward them he only had time to turn his head away before Noone overran them. Moreover, Noone's alleged use of excessive force was a single kick to the head, an event which Mowry concedes happened quickly and without warning. This was not a situation where the alleged excessive force continued for such a period of time that Dickenson, upon realizing what was happening, could have stopped it. *Id.* at 11-12.

Because a reasonable jury could not conclude otherwise, summary judgment should be granted in favor of Dickenson on the failure to intervene claim.

*III. Denial of Medical Treatment:* Mowry's third claim is for denial of medical treatment. The denial of medical treatment for a pre-trial detainee is evaluated under the Due Process Clause of the Fourteenth Amendment. *City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996). Although not specifically defined by the Supreme Court, the due process rights of a pre-trial detainee are at least as great as the Eighth Amendment rights of a convicted prisoner. *City of Revere,* 463 U.S. at 244; *Weyant v. Okst,* 101 F.3d. at 856.

In *Weyant,* the Second Circuit established a two-part test to determine liability for denial of medical treatment. First, the denial of medical treatment must concern an objectively serious injury. *Weyant,* 101 F.3d at 856. A serious injury has been defined as "one that may produce death, degeneration or extreme pain." *Mills v. Fenger,* 2003 WL 251953, *4 (W.D.N.Y.2003)* (citations omitted). Second, the plaintiff is required to show that based on what the defendant knew or should have known, the defendant acted with deliberate indifference to plaintiff's serious medical needs. *Weyant,* 101 F.3d at 856. Deliberate indifference is established if the defendant acted with reckless disregard for the substantial risk posed by the plaintiff's serious medical condition. *Weyant,* 101 F.3d at 856.

**\*5** Here, the undisputed facts establish that the defendants did not deny plaintiff medical treatment. Even assuming arguendo that Mowry's injury rose to the level of an objectively serious medical injury, there is no credible evidence in the record to base a finding that either Noone or Dickenson should have been aware of his need for medical treatment, but were indifferent to his needs. Indeed, the record demonstrates that Mowry never told the defendants that he needed medical attention and the injuries he now alleges were not apparent to them. Contrary to plaintiff's claims, Dickenson demonstrated his concern for plaintiff's well-being when he asked Mowry if he was alright and gave him time to catch his breath. Mowry did not ask for medical assistance or complain about his alleged injuries immediately following the arrest. At the county jail, Mowry stated that he did not need medical attention. It was not until the following day that Mowry first requested medical attention. Mowry admits that in response to this request, he was then treated by the medical personnel at the county jail and given a prescription for neck pain.

The record is devoid of credible evidence that either defendant acted with reckless disregard for the substantial risk posed by the plaintiff's serious medical needs. *See Thomas v. Nassau County Correctional Center,* 288 F.Supp.2d 333, 338 (E.D.N.Y.2003) (to establish a constitutional violation the facts must give rise to a reasonable inference that defendants *knew* of serious medical needs and intentionally disregarded them.). Based on the record here, summary judgment should be granted in favor of defendants Dickenson and Noone on plaintiff's denial of medical treatment claim.

*Conclusion*

For all the foregoing reasons, defendants' Motions for Summary Judgment (Docket # 67, 70) are granted. Having granted defendants' motion for summary judgment by determining that plaintiff has failed to adduce evidence of a constitutional violation, plaintiff's motions for "dismissal of defendant's (sic) motion" and "cross motion" for summary judgement (Docket # 75) are denied.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2202645 (W.D.N.Y.)
(Cite as: 2004 WL 2202645 (W.D.N.Y.))

SO ORDERED.

W.D.N.Y.,2004.
Mowry v. Noone
Not Reported in F.Supp.2d, 2004 WL 2202645
(W.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Jonathan HENRY, Plaintiff,
v.
James F. DINELLE, Corrections Officer; Russell E.
Duckett, Corrections Officer; Alfred J. Deluca,
Corrections Officer; Donald L. Broekema, Sergeant;
and Jean Norton, Nurse, Defendants.
No. 9:10–CV–0456 (GTS/DEP).

Nov. 29, 2011.

Sivin & Miller, LLP, Edward Sivin, Esq., of Counsel,
New York, NY, for Plaintiff.

Hon. Eric T. Schneiderman, Attorney General for the State
of New York, Timothy P. Mulvey, Esq., Assistant
Attorney General, of Counsel, Albany, NY, for
Defendants.

### MEMORANDUM–DECISION and ORDER

Hon. GLENN T. SUDDABY, District Judge.

*1 Currently before the Court, in this prisoner civil
rights action filed by Jonathan Henry ("Plaintiff") against
the five above-captioned employees of the New York
State Department of Corrections and Community
Supervision ("Defendants"), is Defendants' motion for
partial summary judgment. (Dkt. No. 24.) For the reasons
set forth below, Defendants' motion is granted in part and
denied in part.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint
alleges that, between approximately January 29, 2009, and
January 31, 2009, at Ulster Correctional Facility in
Napanoch, New York, Defendants violated Plaintiff's
following rights in the following manner: (1) Defendants

Nurse Jean Norton, Corrections Officer James F. Dinelle,
Corrections Officer Russell E. Duckett and Corrections
Officer Alfred J. DeLuca violated Plaintiff's rights under
the First Amendment by filing retaliatory false
misbehavior reports against him, and subsequently
providing false testimony against him at administrative
disciplinary hearings, which resulted in his spending time
in the Special Housing Unit ("SHU"); (2) Defendant
Dinelle violated Plaintiff's rights under the Eighth
Amendment by assaulting him on two occasions, and
Defendants DeLuca and Duckett violated Plaintiff's rights
under the Eighth Amendment by assaulting him once; (3)
Defendant Sergeant Donald L. Broekema violated
Plaintiff's rights under the Eighth Amendment by failing to
intervene to prevent one of these assaults from occurring;
(4) Defendant Norton violated Plaintiff's rights under the
Eighth Amendment by harassing him almost immediately
before he was subjected to the above-described assaults;
and (5) Defendants Norton, Dinelle, Duckett and DeLuca
violated Plaintiff's rights under the Fourteenth Amendment
by performing the aforementioned acts, which constituted
atypical and significant hardships in relation to the
ordinary incidents of prison life. (See generally Dkt. No.
1 [Plf.'s Compl.].) Familiarity with the factual allegations
supporting these claims in Plaintiff's Complaint is assumed
in this Decision and Order, which is intended primarily for
review by the parties. (Id.)

### B. Undisputed Material Facts

At all times relevant to Plaintiff's Complaint, Plaintiff
was an inmate and Defendants were employees of the New
York State Department of Corrections and Community
Supervision at Ulster Correctional Facility. On January 30,
2009, Defendant Dinelle took Plaintiff to the medical
ward, because Plaintiff was experiencing a foul odor and
oozing from a wound on his leg. After Defendant Norton
treated Plaintiff, she filed an inmate misbehavior report
against Plaintiff based on (1) Plaintiff's harassing behavior
toward Defendant Norton and Defendant Dinelle, and (2)
Plaintiff's disobedience of a direct order to be quiet. The
misbehavior report was signed by Defendant Dinelle as an
employee witness.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

At his deposition, Plaintiff testified, while leaving the infirmary, he was punched and kicked by Defendant Dinelle and two unknown prison officials. Plaintiff was then taken to the SHU, where he waited with Defendants Dinelle and Duckett, and up to three more individuals, for a sergeant to arrive. When Defendant Broekema (a sergeant) arrived at the SHU, Plaintiff was taken to a frisk room, where a frisk was conducted. During the frisk, Defendants Dinelle, Duckett and (Plaintiff suspected) DeLuca used force to bring Plaintiff to the ground. Plaintiff testified that, during the use of force, he was simultaneously punched in the nose by two officers while their supervisor watched.

**\*2** After the use of force, Plaintiff stated to Defendants Dinelle, Broekema and Duckette, "I will be contacting my attorney," or "I will be calling a lawyer." [FN1] Plaintiff never used the term "grievance" when addressing Defendants Dinelle, Broekema and Duckette (or Defendant Norton). [FN2] Subsequently, Defendant Duckett filed an inmate misbehavior report against Plaintiff based on his disobedience of frisk procedures and a direct order. Defendant DeLuca signed this report as a witness to the events.

> FN1. (*Compare* Dkt. No. 24, Attach. 9, at ¶ 17 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 27, Attach. 3, at ¶ 17 [Plf.'s Rule 7 .1 Response]; *see also* Dkt. No. 24, Attach. 4, at 100, 102–03 [attaching pages 216, 218 and 219 of Trans. of Plf.'s Depo.]; Dkt. No. 33, at 2–3 [attaching pages 228 and 229 of Trans. of Plf.'s Depo .].)

> FN2. (*Compare* Dkt. No. 24, Attach. 9, at ¶ 17 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 27, Attach. 3, at ¶ 17 [Plf.'s Rule 7 .1 Response]; *see also* Dkt. No. 24, Attach. 4, at 59–60, 100, 102–03 [attaching pages 175, 176, 216, 218 and 219 of Trans. of Plf.'s Depo.]; Dkt. No. 33, at 2–3 [attaching pages 228 and 229 of Trans. of Plf.'s Depo.].)

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, as set forth in the parties' Rule 7.1 Statement and Rule 7.1 Response, is assumed in this Decision and Order, which

(again) is intended primarily for review by the parties. (*Id.*)

**C. Defendants' Motion**

Generally, in support of their motion for partial summary judgment, Defendants argue as follows: (1) Plaintiff's claim that Defendants issued false misbehavior reports should be dismissed because Plaintiff has no constitutional right to be free of false misbehavior reports; (2) Plaintiff's First Amendment retaliation claim should be dismissed because he has failed to adduce admissible record evidence from which a rational factfinder could conclude that he (a) engaged in protected activity, or (b) suffered adverse action as a result of engaging in protected activity; (3) Plaintiff's Fourteenth Amendment substantive due process claim should be dismissed because he has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendants deprived Plaintiff of his liberty rights; (4) Plaintiff's Eighth Amendment excessive-force claim against Defendant Norton should be dismissed because Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that she (a) used force against Plaintiff, or (b) was in a position to prevent the use of force from occurring, yet failed to do so; (5) Plaintiff's Eighth Amendment excessive-force claim against Defendant DeLuca should be dismissed because Plaintiff's identification of Defendant DeLuca is "very tentative"; (6) Plaintiff's Eighth Amendment failure-to-intervene claim against Defendant Broekema should be dismissed because Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Broekema had a realistic opportunity to intervene to prevent or stop the assault, yet failed to do so; and (7) Defendants are protected from liability, as a matter of law, by the doctrine of qualified immunity, under the circumstances. (*See generally* Dkt. No. 24, Attach. 10 [Defs.' Memo. of Law].). [FN3]

> FN3. In their motion, Defendants do not challenge the evidentiary sufficiency of Plaintiff's Eighth Amendment excessive-force claim against Defendants Dinelle or Duckett. (*See generally* Dkt. No. 24, Attach. 10 [Defs.' Memo. of Law].)

In Plaintiff's response to Defendants' motion for partial summary judgment, he argues as follows: (1) his

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

retaliation claims should not be dismissed because there are triable issues of fact as to whether Defendants retaliated against him for stating that he would be contacting an attorney; (2) his failure-to-intervene claim against Defendant Broekema should not be dismissed because there are triable issues of fact as to whether Defendant Broekema failed to prevent excessive force from being used against him; (3) his excessive-force claim against Defendant DeLuca should not be dismissed because there are triable issues of fact as to whether Defendant DeLuca used excessive force against him; and (4) Defendants are not protected from liability, as a matter of law, by the doctrine of qualified immunity, under the circumstances. (*See generally* Dkt. No. 27, Attach. 5 [Plf.'s Response Memo. of Law].) [FN4]

> FN4. Plaintiff does not oppose Defendants' arguments that (1) Plaintiff's excessive-force claim against Defendant Norton should be dismissed, and (2) Plaintiff's substantive due process claim should be dismissed. (*See generally* Dkt. No. 27, Attach. 5 [Plf.'s Response Memo. of Law].)

**\*3** In their reply, Defendants essentially reiterate their previously advanced arguments. (*See generally* Dkt. No. 29, Attach. 1 [Defs .' Reply Memo. of Law].)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's decision in *Pitts v. Onondaga Cnty. Sheriff's Dep't,* 04–CV–0828, 2009 WL 3165551, at *2–3 (N.D.N.Y. Sept.29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### B. Legal Standards Governing Plaintiff's Claims

### 1. First Amendment Retaliation Claim

Claims of retaliation like those asserted by Plaintiff find their roots in the First Amendment. *See Gill v. Pidlypchak,* 389 F.3d 379, 380–81 (2d Cir.2004). Central to such claims is the notion that, in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of his First Amendment rights. *See Gill,* 389 F.3d at 381–383. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.

> *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), overruled on other grounds, *Swierkewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

To prevail on a First Amendment claim under 42 U.S.C. § 1983, a plaintiff must prove by the preponderance of the evidence that (1) the speech or conduct at issue was "protected", (2) the defendants took "adverse action" against the plaintiff—namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights, and (3) there was a causal connection between the protected speech and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Gill,* 389 F.3d at 380 (citing *Dawes v. Walker,* 239 F.3d 489, 492 [2d Cir.2001] ). Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

on the proper reasons alone. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).

**\*4** In determining whether an inmate has established a prima facie case of a causal connection between his protected activity and a prison official's adverse action, a number of factors may be considered, including the following: (1) the temporal proximity between the protected activity and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his motivation. *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir.1996); *Baskerville v. Blot,* 224 F.Supp.2d 723, 732 (S.D.N.Y.2002). Even where the inmate has established such a prima facie case, the prison official may be entitled to judgment as a matter of law on the inmate's retaliation claim where the prison official has satisfied his burden of establishing that the adverse action would have been taken on proper grounds alone. *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994); *Jordan v. Garvin,* 01–CV–4393, 2004 WL 302361, at *6 (S.D.N.Y. Feb.17, 2004).

**2. Eighth Amendment Claims of Excessive–Force and Failure–to–Intervene**

To establish a claim of excessive-force under the Eighth Amendment, a plaintiff must satisfy two components: "one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord,* 554 F.3d 255, 268 (2d Cir.2009). In consideration of the subjective element, a plaintiff must allege facts which, if true, would establish that the defendant's actions were wanton " 'in light of the particular circumstances surrounding the challenged conduct.' " *Id.* (quoting *Blyden v. Mancusi,* 186 F.3d 252, 262 [2d Cir.1999] ). The objective component asks whether the punishment was sufficiently harmful to establish a violation "in light of 'contemporary standards of decency.' " *Wright,* 554 F.3d at 268 (quoting *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Generally, officers have a duty to intervene and prevent such cruel and unusual punishment from occurring or continuing. *Curley v. Village of Suffern,* 268 F.3d 65, 72 (2d Cir.2001); *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). "It is well-established that a law enforcement official has an affirmative duty to intervene

on behalf of an individual whose constitutional rights are being violated in his presence by other officers." *Cicio v. Lamora,* 08–CV–0431, 2010 WL 1063875, at *8 (N.D.N.Y. Feb.24, 2010) (Peebles, M.J.). A corrections officer who does not participate in, but is present when an assault on an inmate occurs may still be liable for any resulting constitutional deprivation. *Id.* at *8. To establish a claim of failure-to-intervene, the plaintiff must adduce evidence establishing that the officer had (1) a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene. *Jean–Laurent v. Wilkinson,* 540 F.Supp.2d 501, 512 (S.D.N.Y.2008). Generally, officers cannot be held liable for failure to intervene in incidents that happen in a "matter of seconds." *Parker v. Fogg,* 85–CV–177, 1994 WL 49696 at *8 (N.D.N.Y. Feb.17, 1994) (McCurn, J.).

**3. Fourteenth Amendment Substantive Due Process Claims**

**\*5** The Due Process Clause of the Fourteenth Amendment contains both a substantive component and a procedural component. *Zinernon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The substantive component "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinernon,* 494 U.S. at 125 [internal quotations marks omitted]. The procedural component bars "the deprivation by state action of a constitutionally protected interest in life, liberty, or property ... *without due process of law." Id.* at 125–126 [internal quotations marks and citations omitted; emphasis in original]. One of the differences between the two claims is that a substantive due process violation "is complete when the wrongful action is taken," while a procedural due process violation "is not complete unless and until the State fails to provide due process" (which may occur *after* the wrongful action in question). *Id.*

"Substantive due process protects individuals against government action that is arbitrary, ... conscience-shocking, ... or oppressive in a constitutional sense, ... but not against constitutional action that is incorrect or ill-advised." *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) [internal quotations marks and citations omitted], *aff'g,* 91–CV–1196, Memorandum–Decision and

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

Order (N.D.N.Y. filed Jan. 26, 1993) (DiBianco, M.J.) (granting summary judgment to defendants in inmate's civil rights action).

"An inmate has a liberty interest in remaining free from a confinement or restraint where (1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular confinement or restraint; and (2) the confinement or restraint imposes 'an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Whitaker v. Super,* 08–CV–0449, 2009 WL 5033939, at *5 (N.D.N.Y. Dec. 14, 2009) (Kahn, J. adopting Report–Recommendation by Lowe, M.J.) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 [1995] ). Regarding the first prong of this test, "[i]t is undisputed ... that New York state law creates a liberty interest in not being confined to the SHU. *Palmer v. Richards,* 364 F.3d 60, 64 n. 2 (2d Cir.2004). When evaluating whether an inmate's confinement in SHU violates his substantive due process rights, the issue, then, is whether his keeplock confinement imposed "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Id.* at 64.

"In the Second Circuit, determining whether a disciplinary confinement constituted an 'atypical and significant hardship' requires examining 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation compared to discretionary confinement.' " *Whitaker,* 2009 WL 5033939, at *5 (quoting *Palmer,* 364 F.3d at 64). "Where a prisoner has served less than 101 days in disciplinary segregation, the confinement constitutes an 'atypical and significant hardship' only if 'the conditions were more severe than the normal SHU conditions.' " *Id.* (quoting *Palmer,* 364 F.3d at 65).[FN5]

> FN5. Generally, " '[n]ormal' SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week." *Whitaker,* 2009 WL 5033939, at *5 n. 27 (citing *Ortiz v. McBride,* 380 F.3d 649, 655 [2d Cir.2004] ).

**4. Qualified Immunity Defenses**

**\*6** The qualified immunity defense is available to only those government officials performing discretionary functions, as opposed to ministerial functions. *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991). "Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68–69 (2d Cir.2004), *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007).

In determining the second issue (i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).[FN6] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007).[FN7] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley*

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

*v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).FN8 As the Supreme Court has explained,

> FN6. *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v. City of Syracuse,* 26 F.3d 14, 17–18 (2d Cir.1994); *Calhoun v. New York State Div. of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

> FN7. *See also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' "); *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

> FN8. *See also Malsh v. Corr. Oficer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) [citing cases]; *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

[T]he qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity

should be recognized.

*Malley,* 475 U.S. at 341.FN9

> FN9. *See also Hunter v. Bryant,* 502 U.S. 224, 299, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks omitted].

**III. ANALYSIS**

**A. Plaintiff's Retaliation Claim Under the First Amendment**

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of this claim because Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that he (1) engaged in protected activity, or (2) suffered adverse action as a result of engaging in protected activity. More specifically, Defendants argue that the claim should be dismissed because (1) the statement of an inmate's intent to contact an attorney is not protected conduct, (2) Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Norton knew of Plaintiff's intention to contact an attorney, and (3) Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendants' actions were retaliatory. (Dkt. No. 24, Attach.10.) FN10

> FN10. Defendants also argue that Plaintiff's First Amendment claim should be dismissed to the extent that it is based solely on the fact that misbehavior reports against him were *false* (as opposed to being false *and retaliatory* ). The Court agrees that Plaintiff has no general constitutional right to be free from false misbehavior reports. *See Boddie v. Schneider,* 105 F.3d 857, 862 (2d Cir.1997). As a result, to the extent that the Plaintiff's Complaint may be construed as asserting a claim based solely on the issuance of false behavior reports, that claim is dismissed.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

**\*7** After carefully considering the admissible record evidence adduced in this case, and carefully reviewing the relevant case law, the Court has trouble finding that an inmate's one-time making of an oral statement (immediately after the use of force against him) that he would be "contacting [his] attorney," or "calling a lawyer" at some unidentified point in the future constitutes engagement in activity that is protected by the First Amendment—especially where, as here, the inmate did not reference the prison grievance process in his statement.

Representation by a lawyer is certainly not necessary to file an inmate grievance in the New York State Department of Corrections and Community Supervision, nor does such representation necessarily result in the filing of a grievance. Rather, such representation is most typically associated with the filing of a civil rights action in federal court (as is clear from the motions for appointment of counsel typically filed in federal court actions). As a result, the statement in question does not reasonably imply that Plaintiff would be filing a grievance as much as it implies that he was going to consult an attorney as to whether or not to file a civil rights action in federal court.

Here, such a statement is problematic. This is because, generally, the filing of the prisoner civil rights action in federal court in New York State must be preceded by the prisoner's exhaustion of his available administrative remedies (or his acquisition of a valid excuse for failing to exhaust those remedies). Any filing without such prior exhaustion (or acquisition of a valid excuse), under the circumstances, would be so wholly without merit as to be frivolous. Of course, filing a court action that is frivolous is not constitutionally protected activity.[FN11]

FN11. *See Wade–Bey v. Fluery,* 07–CV–117, 2008 WL 2714450 at \*6 (W.D.Mich. July 8, 2010) ("Although it is well established that prisoners have a constitutional right of access to the courts ..., the filing of a frivolous lawsuit would not be protected activity.") [citation omitted].

Moreover, to the extent that Plaintiff's statement could be construed as reasonably implying that he was going to consult an attorney as to whether or not to file a grievance, the Court has trouble finding that such a vague statement is constitutionally protected.[FN12] As one district court has stated, "[h]oping to engage in constitutionally protected activity is not itself constitutionally protected activity."[FN13] The Court notes that a contrary rule would enable a prisoner who has committed conduct giving rise to a misbehavior report to create a genuine issue of material fact (and thus reach a jury) on a retaliation claim (alleging adverse action based on the issuance of that misbehavior report) simply by uttering the words, "I'm calling a lawyer," after he commits the conduct in question but before the misbehavior report is issued.

FN12. The Court notes that numerous cases exist for the point of law that even *expressly threatening* to file a *grievance* does not constitutes protected activity. *See, e.g., Bridges v. Gilbert,* 557 F.3d 541, 554–55 (7th Cir.2009) ("[I]t seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance.") [emphasis in original]; *Brown v. Darnold,* 09–CV–0240, 2011 WL 4336724, at \*4 (S.D.Ill. Sept.14, 2011) ("Plaintiff cannot establish that his threat to file a grievance against Defendant Darnold is a constitutionally protected activity."); *Koster v. Jelinek,* 10–CV–3003, 2011 WL 3349831, at \*3, n. 2 (C.D.Ill. Aug.3, 2011) ("The plaintiff does not seem to be asserting that he had a First Amendment right to threaten the facilitators with lawsuits and grievances, nor does the Court believe that he has such a right."); *Ingram v. SCI Camp Hill,* 08–CV–0023, 2010 WL 4973302, at \*15 (M.D.Pa. Dec.1, 2010) ("Stating an intention to file a grievance is not a constitutionally protected activity."), *aff'd,* No. 11–1025, 2011 WL 4907821 (3d Cir. Oct.17, 2011); *Lamon v. Junious,* 09–CV–0484, 2009 WL 3248173, at \*3 (E.D.Cal. Oct.8, 2009) ("A mere threat to file suit does not rise to the level of a protected activity...."); *Miller v. Blanchard,* 04–CV–0235, 2004 WL 1354368, at \*6 (W.D.Wis. June 14, 2004) ("Plaintiff alleges that

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

defendants retaliated against him after he threatened to file a lawsuit against them. Inmates do not have a First Amendment right to make threats.").

FN13. *McKinnie v. Heisz,* 09–CV–0188, 2009 WL 1455489, at *11 (W.D.Wis. May 7, 2009) ("Hoping to engage in constitutionally protected activity is not itself constitutionally protected activity. At most, petitioner's actions could be construed as a 'threat' to assert his rights but that is not enough.").

In any event, even assuming, for the sake of argument, that Plaintiff's statement was constitutionally protected, the Court finds, based on the current record, that Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that his statement to Defendants Dinelle, Duckett, and Broekema that he would be contacting an attorney was a substantial or motivating factor for the issuance of the misbehavior report by Defendant Norton (which was signed by Defendant Dinelle as a witness), and the misbehavior report by Defendant Duckett (which was signed by Defendant DeLuca as a witness). The Court makes this finding for two alternate reasons.

**\*8** First, with regard to the misbehavior report issued by Defendant Norton, Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that she was aware Plaintiff would be contacting an attorney. In addition, with regard to the report made by Defendant Duckett (which was signed by Defendant DeLuca as a witness), although there is record evidence that Defendant Duckett had knowledge of Plaintiff's statement that he would contact an attorney, Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Duckett had reason to believe, at the time the misbehavior report was issued, Plaintiff would actually follow through with his one-time oral statement, made on the heals of a heated incident.

Second, even assuming that Defendant Duckett or Defendant Norton had reason to believe Plaintiff would contact an attorney, Plaintiff has failed to adduce

admissible record evidence from which a rational factfinder could conclude that Defendant Duckett or Defendant Norton would not have issued the misbehavior report anyway, based on Plaintiff's actions. Indeed, at Plaintiff's disciplinary hearings, evidence was adduced that he in fact committed most of the misconduct alleged in the misbehavior reports, which resulted in the hearing officer finding multiple violations and sentencing Plaintiff to SHU. FN14 Furthermore, those convictions were never subsequently reversed on administrative appeal. FN15 As a result, no admissible record evidence exists from which a rational factfinder could conclude that Plaintiff has established the third element of a retaliation claim—the existence of a causal connection between the protected speech and the adverse action.

FN14. *See Hynes v. Squillance,* 143 F.3d 653, 657 (2d Cir.1998) (holding that defendants met their burden of showing that they would have taken disciplinary action on valid basis alone where the evidence demonstrated that plaintiff had committed "the most serious, if not all, of the prohibited conduct"); *Jermosen v. Coughlin,* 86–CV–0208, 2002 WL 73804, at *2 (N.D.N.Y. Jan.11, 2002) (Munson, J.) (concluding, as a matter of law, that defendants showed by a preponderance of the evidence that they would have issued a misbehavior report against plaintiff even in the absence of his complaints against correctional department personnel, because they established that the misbehavior report resulted in a disciplinary conviction, "demonstrat[ing] that plaintiff in fact committed the prohibited conduct charged in the misbehavior report.").

FN15. For these reasons, the Court finds to be inapposite the case that Plaintiff cites for the proposition that the Court must accept as true his sworn denial that he committed any of the violations alleged in the misbehavior reports issued against him. *See Samuels v. Mockry,* 142 F.3d 134, 135–36 (2d Cir.1998) (addressing a situation in which a prisoner was placed in a prison's "Limited Privileges Program," upon a finding rendered by the prison's Program Committee, that he had refused to accept a

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

mandatory work assignment, *"without a hearing or a misbehavior report"* ) [emphasis added]. The Court would add only that, even if it were to accept Plaintiff's sworn denial as true, the Court would still find that he has failed to establish that Defendants Duckett and Norton would not have issued the misbehavior reports against him anyway, based on their subjective belief that he was acting in a disturbing, interfering, harassing and disobedient manner at the time in question (as evident from, *inter alia,* their misbehavior reports, the disciplinary hearing testimony of three of the Defendants, and admissions made by Plaintiff during his deposition regarding the "confusion" and "misunderstanding" that occurred during his examination by Defendant Norton, his persistent assertions about his prescribed frequency of visits, and his unsolicited comments about his proper course of treatment).

For each of these alternative reasons, Plaintiff's retaliation claim under the First Amendment is dismissed.

## B. Plaintiff's Claims Under the Eighth Amendment

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's Eighth Amendment claims because (1) Plaintiff has failed to adduce any admissible evidence from which a rational factfinder could conclude that Defendant Norton used any force against Plaintiff, or was in a position to intervene to prevent the use of force against Plaintiff, yet failed to do so, (2) Plaintiff has failed to adduce any admissible evidence from which a rational factfinder could conclude that Defendant Broekema had a reasonable opportunity to intervene and prevent the alleged assault by Defendants Dinelle, DeLuca and Duckett, yet failed to do so, and (3) Plaintiff's identification of Defendant DeLuca is "very tentative."

As an initial matter, because Plaintiff did not oppose Defendants' argument that his excessive-force claim against Defendant Norton should be dismissed, Defendants' burden with regard to this claim "is lightened such that, in order to succeed, they need only show the facial merit of their request, which has appropriately been characterized as a 'modest' burden." *Xu–Shen Zhou v.*

*S.U.N.Y. Inst. of Tech.,* 08–CV–0444, 2011 WL 4344025, at *11 (N.D.N.Y. Sept.14, 2011)* (Suddaby, J.). After carefully considering the matter, the Court finds that Defendants have met this modest burden, for the reasons stated by them in their memoranda of law. The Court would add only that, based on its own independent review of the record, the Court can find no record evidence to support the claim that Defendant Norton used force against Plaintiff, or was in a position to intervene to prevent the use of force against Plaintiff, yet failed to do so. As a result, Plaintiff's Eighth Amendment claim against Defendant Norton is dismissed.

**\*9** Turning to Plaintiff's failure-to-intervene claim against Defendant Broekema, it is undisputed that it was Defendants Duckett, Dinelle and DeLuca who used force against Plaintiff. Plaintiff testified that, while Defendant Broekema was in the room at the time, Defendant Broekema was standing behind Defendant Dinelle on his "immediate right." In addition, Plaintiff testified that Defendant Duckett's threat of physical force against Plaintiff was conditioned on Plaintiff's continued failure to comply with (what Plaintiff perceived to be) conflicting instructions by Defendants Duckett and Dinelle during the frisk. (Dkt. No. 24, Attach. 4, at 97–99.) Furthermore, Plaintiff testified that it was only after he failed to put his hands in his pockets (rather soon after being warned by Defendant Duckett) that either Defendant Duckett or Defendant Dinelle punched him *one time* with a "closed fist" in the side of his nose, causing him to immediately fall to the ground. (*Id.* at 98–99.) Finally, Plaintiff testified that the kicks that he suffered soon after falling to the ground were limited in nature, having occurred only "a couple of times," and indeed having only *possibly* occurred. (*Id.* at 99.)

While the Court in no way condones the conduct alleged in this action, the Court is simply unable to find, based on the current record, that Plaintiff has adduced sufficient admissible record evidence to reach a jury on his Eighth Amendment claim against Defendant Broekema. Rather, based on the evidence presented, a rational factfinder could only conclude that the use of force was simply too uncertain for a reasonable person in Defendant Broekema's position to expect; and it was too brief in nature to give Defendant Broekema a realistic opportunity

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

to intervene in it, so as prevent the one punch and possibly few kicks that Plaintiff presumably experienced.[FN16]

> FN16. *See* *O'Neill v. Krzeminski,* 839 F.2d 9, 11–12 (2d Cir.1988) (noting that "three blows [that occurred] in such rapid succession ... [is] not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator"); *Blake v. Base,* 90–CV–0008, 1998 WL 642621, at *13 (N.D.N.Y. Sept.14, 1998) (McCurn, J.) (dismissing failure-to-intervene claim against police officer based on finding that the punch to the face and few body blows that plaintiff allegedly suffered "transpired so quickly ... that even if defendant ... should have intervened, he simply did not have enough time to prevent plaintiff from being struck"); *Parker v. Fogg,* 85–CV–0177, 1994 WL 49696, at *8 (N.D.N.Y. Feb.17, 1994) (McCurn, J.) (holding that an officer is not liable for failure-to-intervene if there "was no 'realistic opportunity' to prevent [an] attack [that ends] in a matter of seconds"); *see also* *Murray–Ruhl v. Passinault,* 246 F. App'x 338, 347 (6th Cir.2007) (holding that there was no reasonable opportunity for an officer to intervene when one officer stood by while another fired twelve shots in rapid succession); *Ontha v. Rutherford Cnty., Tennessee,* 222 F. App'x 498, 506 (6th Cir.2007) ("[C]ourts have been unwilling to impose a duty to intervene where ... an entire incident unfolds 'in a matter of seconds.' "); *Miller v. Smith,* 220 F.3d 491, 295 (7th Cir.2000) (noting that a prisoner may only recover for a correction's officer's failure to intervene when that officer "ignored a realistic opportunity to intervene").

Finally, based on the current record, the Court rejects Defendants' third argument (i.e., that Plaintiff's excessive-force claim against Defendant DeLuca should be dismissed because Plaintiff's identification of Defendant DeLuca is "very tentative"). Defendants argue that Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant DeLuca was present during the use of force

against Plaintiff (let alone that Defendant DeLuca used force against Plaintiff). This is because Plaintiff's basis for bringing his excessive-force claim against Defendant DeLuca is that he remembered being assaulted by three individuals, including Defendants Dinelle and Duckett, whose last names began with the letter "D." While this fact is undisputed, it is also undisputed that Defendant DeLuca was interviewed by the Inspector General's Office regarding his involvement in the incidents giving rise to Plaintiff's claims,[FN17] and that both Defendant Broekema's use-of-force report, and Defendant Broekema's Facility Memorandum, state that Defendant DeLuca participated in the use of force against Plaintiff.[FN18] Based on this evidence, a rational factfinder could conclude that Defendant DeLuca violated Plaintiff's Eighth Amendment rights. As a result, Plaintiff's Eighth Amendment excessive-force claim against Defendant DeLuca survives Defendants' motion for summary judgment. The Court would add only that, although it does not construe Plaintiff's Complaint as alleging that Defendant DeLuca failed to intervene in the use of force against Plaintiff, assuming, (based on Plaintiff's motion papers) that Plaintiff has sufficiently alleged this claim, the claim is dismissed because the entirety of the record evidence as it pertains to Defendant DeLuca establishes that he used force against Plaintiff.

> FN17. (Dkt. No. 27, Attach. 2, at 19–20.)

> FN18. (Dkt. No. 27, Attach. 2, at 10, 14.)

**C. Plaintiff's Claim Under the Fourteenth Amendment**

**\*10** As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of this claim because Defendants did not deprive Plaintiff of his liberty rights. As stated above in note 2 of this Decision and Order, Plaintiff failed to address Defendants' argument that his substantive due process claim should be dismissed. As a result, as stated above in Part III.B. of this Decision and Order, Defendants' burden with regard to this claim "is lightened such that, in order to succeed, they need only show the facial merit of their request, which has appropriately been characterized as a 'modest' burden." *Xu–Shen Zhou,* 2011 WL 4344025, at *11.

After carefully considering the matter, the Court finds

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

that Defendants have met this modest burden, for the reasons stated by them in their memoranda of law. The Court would add only that, based on its own independent review of the record, although the record evidence establishes that Plaintiff was confined in SHU for 150 days as a result of the misbehavior reports issued by Defendants Norton and Duckett, Plaintiff has failed to adduced admissible record evidence from which a rational factfinder could conclude that the conditions of his confinement during this 150–day period were more severe than normal SHU conditions.[FN19] As a result, Plaintiff's substantive due process claim is dismissed.

> FN19. *See Spence v. Senkowski,* 91–CV–0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (finding that 180 days that plaintiff spent in SHU, where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord, Husbands v. McClellan,* 990 F.Supp. 214, 217–19 (W.D.N.Y.1998) (180 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin,* 985 F.Supp. 350, 353–56 (W.D.N.Y.1997) (161 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky,* 96–CV–2003, 1997 WL 137448, at *4–6 (S.D.N.Y.1997) (192 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin,* 949 F.Supp. 112, 116–17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin,* 94–CV–4094, 1996 WL 487951, at *4–5 (S.D.N.Y. Aug.27, 1996) (210 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero,* 905 F.Supp. 99, 103–04 (W.D.N.Y.1995) (270 days in SHU under numerous conditions of confinement that

were more restrictive than those in general population).

**D. Defendants' Defense of Qualified Immunity**

As stated above in Part I.C. of this Decision and Order, Defendants seek dismissal of Plaintiff's claims on the alternative ground that they are protected from liability, as a matter of law, by the doctrine of qualified immunity, under the circumstances.

**1. Retaliation**

The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 [1982] ). Here, even assuming that Plaintiff's statement that he would contact an attorney regarding the use of force he experienced constitutes engagement in protected activity, and even also assuming that the only reason Defendant Norton and/or Duckett issued Plaintiff a misbehavior report was because he made this statement, these Defendants are, under the circumstances, entitled to qualified immunity. This is because the Court finds that the right to make this statement (without experiencing any resulting adverse action) was not a clearly established during the time in question (January 2009), based on a review of the relevant case law. *See, supra,* notes 12 and 13 of this Decision and Order.

As a result, Plaintiff's retaliation claim is dismissed on the alternate ground of qualified immunity.

**2. Excessive Force**

There is no doubt that the right to be free from the use of excessive force was "clearly established" at the time of the incidents giving rise to Plaintiff's claims. *See, e.g., Hudson v. McMillian,* 503 U.S. 1, 9–10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Moreover, with regard to whether it was objectively reasonable for Defendants to use the alleged amount of force that they used, the Second Circuit has made clear that, "[w]here the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." *Mickle v. Morin,* 297 F.3d 114, 122 (2d Cir.2002) [internal quotation marks omitted].

**\*11** Here, after carefully reviewing the record, and construing it in the light most favorable to Plaintiff, the Court finds that, even if Defendants Dinelle, DeLuca and Duckett genuinely feared being assaulted by Plaintiff, and even if those three Defendants genuinely perceived Plaintiff's words and movements to constitute an attempt to resist a frisk, admissible record evidence exists from which a rational jury could conclude that those perceptions were not objectively reasonable under the circumstances. As the Second Circuit has observed, it is impossible to "determine whether [Defendants] reasonably believed that [their] force was not excessive when several material facts [are] still in dispute, [and therefore,] summary judgment on the basis of qualified immunity [is] precluded." *Thomas v. Roach,* 165 F.3d 137, 144 (2d Cir.1999).[FN20] For these reasons, the Court rejects Defendants' argument that Plaintiff's excessive-force claim should be dismissed on the ground of qualified immunity as it relates to Defendants Dinelle, DeLuca and Duckett.

> FN20. *See also Robison v. Via,* 821 F.2d 913, 924 (2d Cir.1987) ( "[T]he parties have provided conflicting accounts as to [who] initiated the use of force, how much force was used by each, and whether [the arrestee] was reaching toward [a weapon]. Resolution of credibility conflicts and the choice between these conflicting versions are matters for the jury and [should not be] decided by the district court on summary judgment.").

However, the Court reaches a different conclusion with regard to Plaintiff's failure-to-intervene claim against Defendant Broekema: the Court finds that, at the very least, officers of reasonable competence could disagree on the legality of Defendant Broekema's actions, based on the current record. As a result, Plaintiff's failure-to-intervene claim against Defendant Broekema is dismissed on this alternative ground.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for partial

summary judgment (Dkt. No. 24) is ***GRANTED*** in part and ***DENIED*** in part in the following respects:

(1) Defendants' motion for summary judgment on Plaintiff's First Amendment claim is ***GRANTED;***

(2) Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment substantive due process claim is ***GRANTED;***

(3) Defendants' motion for summary judgment on Plaintiff's Eighth Amendment excessive-force claim against Defendant Norton is ***GRANTED;***

(4) Defendants' motion for summary judgment on Plaintiff's Eighth Amendment failure-to-intervene claim against Defendant Broekema is ***GRANTED;*** and

(5) Defendants' motion for summary judgment on Plaintiff's Eighth Amendment excessive-force claim against Defendant DeLuca is ***DENIED;*** and it is further

**ORDERED** that the following claims are ***DISMISSED*** **with prejudice** from this action:

(1) Plaintiff's First Amendment claim;

(2) Plaintiff's Fourteenth Amendment substantive due process claim;

(3) Plaintiff's Eighth Amendment excessive-force claim against Defendant Norton; and

(4) Plaintiff's Eighth Amendment failure-to-intervene claim against Defendant Broekema; and it is further

**ORDERED** that Defendants Norton and Broekema are ***DISMISSED*** from this action; and it is further

**ORDERED** that, following this Decision and Order, the following claims remain pending in this action: Plaintiff's Eighth Amendment excessive-force claim against Defendants DeLuca, Dinnelle and Duckett; and it is further

**\*12 ORDERED** that counsel are directed to appear

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

on **JANUARY 4, 2012 at 2:00 p.m.** in chambers in Syracuse, N.Y. for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiff is further directed to forward a written settlement demand to defendants no later than **DECEMBER 16, 2011,** and the parties are directed to engage in meaningful settlement negotiations prior to the 1/4/12 conference.

N.D.N.Y.,2011.

Henry v. Dinelle
Slip Copy, 2011 WL 5975027 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1063864 (N.D.N.Y.)

(Cite as: 2010 WL 1063864 (N.D.N.Y.))



Only the Westlaw citation is currently available.
**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,

N.D. New York.
Terry CICIO, Plaintiff,
v.
R. LAMORA, R. Scott, R. Macwilliams, K. Crossett, E. Facteau, C.O. Demers, R.Woods, R. Gill, Defendants.
Civil Action No. 9:08–cv–431 (GLS/DEP).

March 22, 2010.
Terry Cicio, Malone, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, C. Harris Dague, Esq., Assistant Attorney General, of Counsel, Albany, NY, for the Defendants.

### *ORDER*

GARY L. SHARPE, District Judge.

**\*1** The above-captioned matter comes to this court following a Report–Recommendation by Magistrate Judge David E. Peebles, duly filed February 24, 2010. Following ten days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

No objections having been filed, and the court having reviewed the Magistrate Judge's Report–Recommendation for clear error, it is hereby

ED, that the Report–Recommendation of Magistrate Judge David E. Peebles filed February 24, 2010 is ACCEPTED in its entirety for the reasons state therein, and it is further

ORDERED, that defendants' motion for summary judgment (Dkt. No. 35) is GRANTED to the extent that plaintiff's claims against defendants in their official capacities and those against defendant Woods is DISMISSED but the defendants' motion otherwise is DENIED, and it is further

ORDERED, that the Clerk of the court serve a copy of this order upon the parties in accordance with this court's local rules.

IT IS SO ORDERED.

N.D.N.Y.,2010.

Cicio v. Lamora
Not Reported in F.Supp.2d, 2010 WL 1063864 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 856426 (N.D.N.Y.)

(Cite as: 2011 WL 856426 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
James PINE, et al., Plaintiff,
v.
Greg SEALLY, et al., Defendants.
No. 9:09–CV–1198 (DNH/ATB).

Feb. 4, 2011.

Abul Labib, Wilton, NY, pro se.

Harold Burroughs, Jr., Dannemora, NY, pro se.

Cleon Taylor, Attica, NY, pro se.

Barry D. Irvis, Malone, NY, pro se.

Lee Goergen, Malone, NY, pro se.

Jonathan M. Bernstein, William J. Greagan, Goldberg, Segalla Law Firm, Adrienne J. Kerwin, Office of Attorney General Albany, NY, for Defendants.

## REPORT–RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge.

*1 pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c). The case was transferred to me on January 4, 2010, following the retirement of U.S. Magistrate Judge Gustave J. Di Bianco. (Dkt. No. 15).

Plaintiffs filed this civil rights complaint, pursuant to 42 U.S.C. § 1983, regarding incidents that occurred during their incarceration at Greene County Jail ("Greene").[FN1] Robert Cuttita and Deborah Clark ("State Defendants") filed a motion to dismiss plaintiffs' complaint ("State Defendants' Motion") on March 17, 2010. (Dkt. No. 22). Defendants Peter Bennett, Hulbiki, John Jarvis, Donna Juliano, Ken Liese, Brian McMannis, Gregory Seeley, Donnie Skimmerhorn, Michael Spitz, Mike Sutherland, Edward Vorheese, Ed Warga, and Steven Worth ("County

Defendants") filed a motion to dismiss plaintiff's complaint ("County Defendants' Motion") on April 15, 2010. (Dkt. No. 49). Plaintiff Burroughs filed a response (Burroughs's Response) to the State Defendants' Motion and the County Defendants' Motion on June 22, 2010. (Dkt. No. 55). The county defendants filed a memorandum of law in reply and in further support of their motion to dismiss. (Dkt. No. 69). Defendants Richard Hussey and Don Rivenburg ("Additional County Defendants") filed a motion to dismiss plaintiffs' complaint ("Additional County Defendants' Motion") with an accompanying memorandum of law on December 8, 2010. (Dkt. Nos.79, 80). Plaintiff Burroughs filed a response to the Additional County Defendants' Motion on December 29, 2010. (Dkt. No. 82).

> FN1. Plaintiffs are currently in the custody of the New York State Department of Correctional Services ("DOCS"), with the exception of Lee Goergen, who has been released on parole and has not updated his address with the court. *See* http://nysdocslookup.docs.state.ny.us.

## DISCUSSION

### I. *Facts and Claims*

Plaintiffs divide the section of their complaint,[FN2] entitled "Facts," according to the claims they assert and the dates they associate with those claims.[FN3] Plaintiffs' first claim that from November 2006 to September 2007, they were "sexually harassed on a daily basis by defendant Beojekian, who would fondle his exposed penis during strip searches and at times touch [the plaintiffs]".[FN4] (Compl. p. 7).

> FN2. Plaintiff Lee Goergen filed a motion to intervene (Dkt. No. 20) that was granted on April 6, 2010. (Dkt. No. 46). Plaintiff Goergen filed his complaint on April 6, 2010, which is in all respects identical to the complaint filed at Docket No. 1, with his name added as a plaintiff. For ease of reference, the court will only refer to the complaint filed at Docket No. 1.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 856426 (N.D.N.Y.)

(Cite as: 2011 WL 856426 (N.D.N.Y.))

FN3. Plaintiffs do not number the paragraphs or pages in their complaint, so the court will refer to material by citing to the page number assigned by the Case Management/Electronic Case Files (CM/ECF) system.

FN4. As described above in the facts, Beojekian is the only person involved in the alleged touching. The court assumes that plaintiff lists the other individuals in an attempt to establish supervisory liability based on their knowledge of Beojekian's history. *See Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) (supervisory liability can be established if (1) that official directly participated in the infraction; (2) after learning of a violation through a report or appeal, he or she failed to remedy the wrong; (3) the official created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; or (4) he or she was grossly negligent in managing subordinates who caused the unlawful condition or event). Because the court is recommending dismissal on the merits of plaintiffs' claims, no analysis of personal involvement is necessary.

Plaintiffs' second claim is that from December 2006 to October 2007, defendants Snyder, Hussey, Schnur, and Rivenburg "racially harassed [the plaintiffs] on several occasions ... by wearing a white sheet with a hood, carrying a noose ... [and] threaten[ed] to hang us because we were niggers and nigger lovers." FN5 (Compl. p. 8).

FN5. Although plaintiffs' cause of action is not clear, it appears from plaintiff Burroughs' response filed at Docket No. 55 that defendant Snyder was the person who actually made the threats, and plaintiff lists the other people in an attempt to establish supervisory liability. *See* Dkt. No. 55, ¶ 10; note 4, *supra,* and accompanying text.

Plaintiffs' third claim is that from October 2006 to August 2008, defendants Snyder, Skimmerhorn, Sutherland, McMannis, Jarvis, Voorheese, Rivernburg, Liese, and Warga assaulted plaintiffs "often," and spit in plaintiffs food or denied them food. (Compl. p. 8).

Plaintiffs' fourth claim is that from October 2006 to August 2008, defendants Seeley, Hussy, Schnur, Worth, and Spitz exposed plaintiffs to "unsanitary living conditions," where they were exposed to black mold, lead paint, and lead pipes. (Compl. p. 9). Plaintiffs were also exposed to scabies, "Mercer FN6," crabs, bed bugs, "T.B." FN7, hepatitis, and other diseases "due to there being no medical tier." (Compl. p. 9).

FN6. The court assumes plaintiffs mean "MRSA," or methicillin-resistant staphylococcus aureus.

FN7. Tuberculosis.

**\*2** Plaintiffs fifth claim is that from December 2006 to August 2008, defendants Seeley, Hussey, Worth, Spitz, Schnur, Rivenburg, Liese, Voorheese, Warga, Cuttita, and Clark did nothing to address plaintiffs' complaints of their rights being violated. (Comp. p. 9).

Plaintiffs' sixth claim is that from October 2006 to August 2008, defendants Hussey, Seeley, Worth, Spitz, Schnur, Cuttita, and Clark refused plaintiffs' requests for legal reference material, the law library is outdated and there is no law clerk.FN8 (Compl. p. 10).

FN8. It is unclear who denied legal materials to the plaintiffs.

Plaintiffs' seventh claim is that from November 2006 to August 2008, defendants Hussey, Schnur, Rivenburg, Spitz, Liese, Warga, Voorhese, Bennett, Seeley, and Worth lost and misplaced plaintiffs' mail. (Compl. p. 10).

Plaintiffs' eighth claim is that from October 2006 to August 2008, defendants Seeley, Spitz, Hussey, and Worth did not have a "trained person" handling plaintiffs' medications, causing plaintiffs to "often" be sick from receiving the wrong medication. (Compl. p. 11).

Plaintiffs' ninth claim is that from October 2006 to August 2008, defendants Hussey, Seeley, Schnur, Spitz, Liese, Voorhese, Warga, Rivenburg, and Bennett denied

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 856426 (N.D.N.Y.)

(Cite as: 2011 WL 856426 (N.D.N.Y.))

plaintiffs "legal calls" to their attorneys and denied plaintiffs postage for legal mail.[FN9] (Compl. p. 11).

>FN9. Again, it is unclear who denied plaintiffs legal calls or postage for legal mail.

Plaintiffs' tenth claim is that from November 2006 to August 2008, defendant Warga refused to investigate any of the grievances plaintiffs filed. (Compl. p. 12).

Plaintiffs' eleventh claim is that from October 2006 to August 2008, defendants Hulbiki and Juliano "refused to properly treat [plaintiffs]" and refused to let plaintiffs "see an emergency room doctor until infections from [MRSA] spread, a hernia got worse, and blood began to leak out of the penis." (Compl. p. 12).

Plaintiffs twelfth claim is that from January 2008 to August 2008, defendants Seeley, Spitz, Worth, Liese, Warga, and Voorheese "locked in" plaintiffs, gave them no privileges, gave them only one hour of visitation per week, did not let plaintiffs make collect phone calls, refused to let plaintiffs purchase stamps or hygiene items, prevented plaintiffs from communicating with their attorneys about plea bargains, and prevented plaintiffs from communicating with their loved ones at all. (Compl. p. 13).

Plaintiffs' thirteenth claim is that from October 2006 to August 2008, defendants Hussey, Seeley, Worth, Schnur, and Spitz denied plaintiffs "Elder 'Rastafarian' or Eman [sic] 'Muslim' services ... special diets, the right to Ramadan," and Jewish inmates were not allowed to celebrate Passover and were not given kosher diets. (Compl. p. 13).

## II. *Relief Sought*

Plaintiffs seek injunctive relief,[FN10] in addition to significant compensatory and punitive damages. Presently before the court are the County Defendants' Motion,[FN11] the State Defendants' Motion, and the Additional County Defendants' Motion to dismiss the complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). This court recommends that the State Defendants' Motion be granted, the Additional County Defendants' Motion be granted, and the County Defendants' Motion be granted in part and

denied in part for the reasons discussed below.

>FN10. Plaintiffs seek injunctive relief for each of their claims, but because they are no longer being held at Greene County Jail, their claims for injunctive relief are moot. *See Thompson v. Choinski,* 525 F.3d 205, 209 (2d Cir.2008) (plaintiff's transfer moots his claims related to his conditions of confinement claims); *Mawhinney v. Henderson,* 542 F.2d 1, 2 (2d Cir.1976) (plaintiff's transfer moots claims for injunctive relief). sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* ⸻ U.S. ⸻, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp.,* 550 U.S. at 555 (citation omitted).

>FN11. Plaintiffs have failed to serve defendants Snyder and Schnur, who therefore are not participating in the motions to dismiss. Failure to serve these defendants could be grounds for dismissal pursuant to Fed.R.Civ.P. 4(m), but because the court is recommending dismissal of all plaintiffs' complaints for failure to state a claim except for one that does not involve defendant Snyder or Schnur, it also recommends dismissing the complaint as to the unserved defendants for failure to state a claim pursuant to 28 U.S.C.1915(e)(2)(B)(ii). This section provides that the court may dismiss an *in forma pauperis* action *sua sponte* at any time if the court determines that, *inter alia,* the action fails to state a claim on which relief can be granted.

## III. *Motion to Dismiss—Legal Standards*

**\*3** To survive dismissal for failure to state a claim, the complaint must contain When ruling on a motion to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 856426 (N.D.N.Y.)

(Cite as: 2011 WL 856426 (N.D.N.Y.))

dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir.1995). The court must heed its particular obligation to treat *pro se* pleadings with liberality. *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005); *Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (*per curiam* ).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits, and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the motion to one for summary judgment).

## IV. *Conditions–of–Confinement*

Allegations of mistreatment of pretrial detainees in state custody are brought under the Due Process Clause of the Fourteenth Amendment. *See Caiozzo v. Korman,* 581 F.3d 63, 69 (2d Cir.2009). It has been held that because a pretrial detainee has not been "convicted," the proper inquiry is whether the conditions of confinement amount to punishment under the Due Process Clause, not whether the "punishment" is cruel and unusual under the Eighth Amendment. *See Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (contrasting sentenced prisoners with pretrial detainees). However, the same standard applies to claims of deliberate indifference to a serious threat to the health or safety of a person in custody, regardless of whether they are brought under the Eighth Amendment, relating to convicted prisoners, or under the Fourteenth Amendment for pretrial detainees.[FN12] *See Caiozzo v. Korman,* 581 F.3d at 72.

FN12. Because the due process rights of pretrial detainees are "at least as great as the Eighth Amendment protections available to a convicted prisoner," and the same standard applies, cases cited that refer to the Eighth Amendment are thus applicable to the conditions of confinement

claims alleged here. *Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983).

## A. Living Conditions[1]

Plaintiffs' fourth cause of action is based on alleged exposure to black mold, lead in pipes, and lead in paint while they were housed at Greene County Jail.

## 1. Legal Standards

To establish an Eighth Amendment or a Due Process claim based on unsafe or medically inappropriate living conditions, a plaintiff must establish that (1) he was incarcerated under conditions which posed a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety. *See Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

"The deliberate indifference standard embodies both an objective and a subjective prong." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). Under the objective standard, a plaintiff must allege a deprivation "sufficiently serious" to constitute a constitutional violation. *Hathaway,* 37 F.3d at 66 (quoting *Wilson v. Seiter,* 501 U.S. at 298). In addition, "[b]ecause society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditionsof-confinement' claim." *Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir.199) (citing *Hudson v. McMillan,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (only those deprivations denying "the minimal civilized measures of life's necessities" are sufficiently serious to form the basis of an Eighth Amendment violation) (internal quotations and citations omitted).

**\*4** The objective prong can be satisfied by conditions of confinement, which, when combined, "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Davidson v. Murray,* 371 F.Supp.2d 361, 370 (W.D.N.Y.2005). However, "[n]othing so amorphous as overall conditions can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 856426 (N.D.N.Y.)

(Cite as: 2011 WL 856426 (N.D.N.Y.))

The subjective element of the Eighth Amendment analysis focuses on whether the defendant official acted with "a sufficiently culpable state of mind." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir.2006) (citing *Wilson v. Seiter,* 501 U.S. at 300). "Deliberate indifference" requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. *Farmer,* 511 U.S. at 835. In order for a prison official to act with deliberate indifference, he must know of and disregard an excessive risk to an inmate's health or safety. *Hathaway,* 37 F.3d at 66. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.*

Plaintiffs provide no specific facts other than "exposure," and list the names of jail personnel. In his response, plaintiff Burroughs states that the jail was under their "supervision" and they "did nothing to clean up" the mold or lead. (Dkt. No. 55, ¶ 21). Plaintiffs allege no injury or consequence resulting from their "exposure." This court does not find that plaintiffs allegations meet the objective prong required to establish a Constitutional violation, but even if the objective prong were met, plaintiffs have failed to show deliberate indifference on the part of the named defendants.

It is well-settled that personal involvement is required for assessments of damages in § 1983 actions. *See, e.g., Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (personal involvement is a prerequisite to the assessment of damages in a section 1983 case); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003). Plaintiffs have not shown how any of the named defendants were involved in the alleged exposure to lead and mold, other than listing their names, associated with the alleged exposure. *See, e .g., Green v. Bauvi,* 792 F.Supp. 928, 941–942 (S.D.N.Y.1992) (inmate may recover damages for unconstitutional conditions of confinement only from persons who created or were responsible for those conditions).

Plaintiffs' third cause of action is based on alleged denials of food, and that defendants Snyder, Skimmerhorn, Sutherland, McMannis, Jarvis, Voorheese, Rivernburg, Liese, and Warga spit in plaintiffs' food. Plaintiffs fail to indicate with any specificity who did a particular action

and when it occurred. Plaintiffs' allegations are conclusory, and not sufficient to cross over the line into plausibility. Conclusory allegations are insufficient to state constitutional claims. *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987). Complaints relying on civil rights statutes must contain some specific allegations of fact indicating a deprivation of rights, instead of a "litany of general conclusions that shock but have no meaning." *Hunt v. Budd,* 895 F.Supp. 35, 38 (N.D.N.Y.1995) (citing *inter alia Barr v. Abrams,* 810 F.2d at 363). Therefore, plaintiffs' third and fourth causes of action based on their conditions of confinement should be dismissed.

**B. Excessive Force**

**\*5** Plaintiffs' third claim is based in part on allegations of being "assaulted on a regular basis" by defendants Snyder, Skimmerhorn, Sutherland, McMannis, Jarvis, Voorheese, Rivernburg, Liese, and Warga between October 2006 to August 2008.

**1. Legal Standards**

Inmates enjoy Constitutional protection against the use of excessive force, and may recover damages under 42 U.S.C. § 1983 for a violation of those rights. *Hudson v. McMillian,* 503 U.S. 1, 9–10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000). To sustain a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999).

In order to satisfy the objective element of the constitutional standard for excessive force, the defendants' conduct must be " 'inconsistent with the contemporary standards of decency.' " *Whitely v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (citation omitted); *Hudson,* 503 U.S. at 9. "[T]he malicious use of force to cause harm constitute[s][an] Eighth Amendment violation per se[,]" regardless of the seriousness of the injuries. *Blyden,* 186 F.3d at 263 (citing *Hudson,* 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 856426 (N.D.N.Y.)

(Cite as: 2011 WL 856426 (N.D.N.Y.))

force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson, 503 U.S. at 9–10* (citations omitted). " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.' " *Sims, 230 F.3d at 22* (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Id. at 21* (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Id.* (quoting *Hudson, 503 U.S. at 7).* In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: the extent of the injury and the mental state of the defendant; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir.2003).*

**2. Application**

Plaintiffs' general accusation of regular assault by a group of defendants, without more, is insufficient to state a plausible claim based on a use of excessive force. Plaintiffs allege no specific injuries incurred by any particular plaintiff and allege no specific details about any particular assault by any named defendant. Plaintiffs' third claim based on a use of excessive force should be dismissed without prejudice.

**C. Medical Indifference**

**\*6** Plaintiffs claim that Doctor Hulbiki and Nurse Juliano were deliberately indifferent to their medical needs because they did not treat them appropriately. Deliberate indifference to serious medical needs constitutes cruel and unusual punishment, in violation of the Eighth Amendment, as made applicable to the states through the Fourteenth Amendment. *Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).* The standards applied to assess the adequacy of medical care provided to pretrial detainees under the Due Process Clause are the same as those applied to convicted prisoners under the

Eighth Amendment. *Id. at* 69, 70–72; *Mayo v. County of Albany, 357 Fed. Appx. 339, 341(2d Cir.2009).*

**1. Legal Standards**

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, plaintiffs must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).* There are two elements to the deliberate indifference standard. *Smith v. Carpenter, 316 F.3d 178, 183–84 (2d Cir.2003).* The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id. at 184* (citing *inter alia Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir.1998)).*

The objective prong of the standard is satisfied "when (a) the prisoner was 'actually deprived of adequate medical care,' meaning prison officials acted unreasonably in response to an inmate health risk under the circumstances, and (b) 'the inadequacy in medical care is sufficiently serious.' *Bellotto v. County of Orange, 248 Fed. Appx. 232, 236 (2d Cir.2007)* (quoting *Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir.2006)).* If the "unreasonable care" consists of a failure to provide any treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Smith v. Carpenter, 316 F.3d 178, 185–86 (2d Cir.2003).* When a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," the court must focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption, rather than the prisoner's underlying medical condition alone." *Id. at 185.* The standard for determining when a deprivation or delay in a prisoner's medical need is sufficiently serious, contemplates a condition of urgency that may result in degeneration of the patient's condition or extreme pain. *Bellotto v. County of Orange, 248 Fed. Appx. at 236* (citing *Chance v. Armstrong, 143 F.3d at 702* and *Smith v. Carpenter, 316 F.3d at 187* (actual medical consequences are highly relevant)).

The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."

Not Reported in F.Supp.2d, 2011 WL 856426 (N.D.N.Y.)

(Cite as: 2011 WL 856426 (N.D.N.Y.))

*Farmer v. Brennan,* 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference. *Id.* at 835, 837.

**\*7** A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. *Chance v. Armstrong,* 143 F.3d at 703. Nor does the fact that an inmate feels that he did not get the level of medical attention he deserved, or that he might prefer an alternative treatment, support a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services,* 151 F.Supp.2d 303, 311 (S.D.N.Y.2001) (citing *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986)). Even negligence in diagnosing or treating an inmate's medical condition does not constitute deliberate indifference. *Farmer v. Brennan,* 511 U.S. at 835. Thus, any claims of medical malpractice, or disagreement with treatment are not actionable under Section 1983. *Ross v. Kelly,* 784 F.Supp. 35, 44–45 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (1992) (table).

## 2. Application

Plaintiffs' fourth claim is based in part on alleged exposure to various parasites and diseases. Plaintiffs' eighth claim is based on defendants Seeley, Spitz, Hussey, and Worth, supervisors at Greene County Jail, failure to properly supervise correctional officers dispensing medication, causing plaintiffs to receive incorrect medication and become sick. (Compl. p. 12, Dkt. No. 55, ¶ 65–66). Plaintiffs' eleventh claim is based on alleged MRSA infections, a reference to "blood began to leak out of the penis" and plaintiff Burroughs' hernia. (Compl. p. 12). As to the exposure to various parasites and diseases, plaintiffs allege no specific injury, not indicating who, if anyone, had MRSA or blood leaking out of his penis and the requisite deliberate indifference to that medical need.

Plaintiff Burroughs alleges that after he tested positive for tuberculosis, Doctor Hulbiki and Nurse Juliano failed to give him medicine. (Burroughs's Response ¶ 33–34).

Plaintiff Burroughs attaches a copy of the form indicating his positive test for tuberculosis. (Burroughs's Response Exhibit B). However, this only establishes that he was seen by medical professionals, and he tested positive for tuberculosis. Plaintiff Burroughs does not indicate if he suffered from any symptoms of tuberculosis. He only states that he was housed with other inmates after receiving his diagnosis.[FN13] Because plaintiff Burroughs fails to allege any injury resulting from his diagnosis, he has failed to establish anything other than a disagreement with how medical professionals chose to treat him, which, as explained above, is insufficient to state a claim for deliberate indifference to a serious medical need.

> FN13. Plaintiff Burroughs appears to be attempting to assert the rights of other inmates. However, a litigant has no standing to assert the constitutional rights of others. *Carlen v. Department of Health Services of Suffolk,* 912 F.Supp. 35, 42

Plaintiff Burroughs' hernia is a different matter. Burroughs alleges that he met with Dr. Hulbiki on several occasions for treatment of his hernia, which was the "size of a softball."[FN14] (Burroughs's Response ¶ 74). Burroughs alleges that he received no treatment for the attendant pain and it was only after a court order that he was able to get surgery for his hernia at Columbia Hospital in Hudson, New York. (Burroughs's Response ¶¶ 76–77). After his hernia surgery, plaintiff Burroughs alleges that Dr. Hulbiki and Nurse Juliano failed to give him his prescribed pain medication, and the correctional officers who dispense medication failed to give him his prescribed pain medication. (Burroughs's Response ¶¶ 67, 69–70). He also alleges that the correctional officers "would hear me crying from the pain after my surgery and I would hear them laughing at me." (Burroughs's Response ¶ 68). However, plaintiff Burroughs does not specify which correctional officers were aware of his serious pain and ignored it.[FN15]

> FN14. Plaintiff Burroughs clarifies the details of his claim in his response. As noted by the court in *Benitez v. Ham,* "the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 856426 (N.D.N.Y.)

(Cite as: 2011 WL 856426 (N.D.N.Y.))

opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint." No. 9:04–CV–1159, 2009 WL 3486379, at *8 (N.D.N.Y. October 21, 2009) (citing, *inter alia, Washington v. James,* 782 F.2d 1134, 1138–39 (2d Cir.1986)).

FN15. Plaintiff Burroughs is not attempting to sue the correctional officers who allegedly heard him.

**\*8** Plaintiff Burroughs has sufficiently stated a claim for deliberate indifference to a serious medical need as to Doctor Hulbiki and Nurse Juliano. Defendants' motion to dismiss plaintiff Burroughs' Eighth Amendment claim of deliberate indifference to his serious medical need based on his hernia and extreme pain from hernia surgery should be denied.

**D. Harassment**

Plaintiffs' first cause of action is based on the alleged inappropriate touching that occurred between November 2006 to September 2007.

While allegations of sexual abuse may, in some circumstances, violate the Eighth Amendment, isolated incidents of harassment, involving verbal harassment and touching are not severe enough to be "objectively, sufficiently serious." *Boddie v. Schnieder,* 105 F.3d 857, 861 (2d Cir.1997) (quoting *Whitely v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). In order to violate the Eighth Amendment, the "punishment" must be "objectively, sufficiently serious," and the official must have had a "sufficiently culpable state of mind." *Id.* (citing *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). The plaintiff in *Boddie* was also claiming an Eighth Amendment violation based upon allegations of sexual abuse. *Id.* The court held that the "isolated episodes of harassment and touching alleged by Boddie are despicable and, if true, they may potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions ...." *Id* .

In this case, plaintiffs allege that defendant Beojekian conducted strip frisks that rose to the level of sexual harassment. Pursuant to *Boddie,* allegations such as those made by plaintiffs do not rise to the level of constitutional violations regardless of the impropriety of the action. FN16 *Id.* Thus, plaintiffs' claim based on sexual harassment should be dismissed.

FN16. The court notes that numerous courts have held that allegations of sexual abuse during frisk searches do not implicate the Eighth Amendment. *See Morrison v. Cortright,* 397 F.Supp.2d 424 (W.D.N.Y.2005) (allegation that correctional officer shone light up inmate's anus, ran his middle finger across inmate's buttocks, causing inmate to urinate on himself, and rubbed his penis against inmate's buttocks during strip frisk failed to implicate the Eighth Amendment); *Davis v. Castleberry,* 364 F.Supp.2d 319, 321 (W.D.N.Y.2005) (allegation that correction officer grabbed inmate's penis during pat frisk insufficient); *Montero v. Crusie,* 153 F.Supp.2d 368 (S.D.N.Y.2001) (allegation that correctional officer, on several occasions, squeezed inmate's genitalia during pat frisks did not implicate the Eighth Amendment, especially when inmate did not allege physical injury); *Williams v. Keane,* No. 95 Civ. 379, 1997 U.S. Dist. LEXIS 12665, 1997 WL 527677, at * 11 (S.D.N.Y. Aug.25, 1997) (allegation that correctional officer put his hand down inmate's pants and fondled inmate's genitals during frisk search failed to implicate the Eighth Amendment).

Plaintiffs' second cause of action is based on alleged racial slurs and threats made between October 2006 and August 2008. However, verbal harassment, "unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem does not constitute the violation of any federally protected right and, therefore, is not actionable under ... § 1983." *Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y.1998); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (a guard calling a plaintiff names did not establish any "appreciable injury" and dismissal of the claim was proper). Plaintiffs in this case did not assert,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 856426 (N.D.N.Y.)

(Cite as: 2011 WL 856426 (N.D.N.Y.))

nor does the record support, any allegations of physical injury related to the verbal harassment, however inappropriate it might have been. Even accepting plaintiffs' allegations as true, this court finds that plaintiffs have failed to state a claim, and their second cause of action based on verbal harassment should be dismissed.

### V. *Grievances and Investigations*

Plaintiffs' fifth and tenth causes of action pertain to grievances and defendants' alleged failure to respond or investigate them. The law is well-settled that inmates do not have a constitutional right to grievance procedures. *Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003); *Davis v. Buffardi,* No. 0:01–CV–0285, 2005 U.S. Dist. LEXIS 45487, 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) (Magnuson, J.) ("[p]articipation in an inmate grievance process is not a constitutionally protected right") (citations omitted). Furthermore, a violation of the inmate grievance procedures does not give rise to a claim under section 1983; *Cancel v. Goord,* No. 00 CIV.2042, 2001 U.S. Dist. LEXIS 3440, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001).

**\*9** To the extent that plaintiffs attempt to assert a separate constitutional claim of "failure to investigate," the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) (collecting cases). In order for a constitutional violation to have occurred, the investigation *itself* must have resulted in a deprivation of a constitutional right. *Faison v. Hash,* 03–CV–6475P, 2004 U.S. Dist. LEXIS 29151 at *6, 2004 WL 944523 (W.D.N.Y. Apr.23, 2004) (citing *Malloy v. City of New York,* 1996 U.S. Dist. LEXIS 16417 at *6, 1996 WL 648927 (S.D.N.Y. Nov.7, 1996) (holding that warden's alleged failure to investigate assault by correctional officer did not give rise to constitutional violation, where plaintiff failed to show that warden could have anticipated or had other direct involvement in the assault); *Gomez v. Whitney,* 757 F.2d 1005 (9th Cir.1985) (a claim against a police department for failure to investigate is insufficient to state a civil rights claim without another recognized constitutional right being involved).

First, contrary to plaintiffs' allegations that defendants failed to investigate, Beojekian's Arrest Report,[FN17] submitted as Exhibit A to plaintiff Burroughs's own opposition papers (Dkt. No. 55), indicates that an investigation was conducted and mentions that Aaron Beojekian "had numerous allegations regarding sexual misconduct with the inmates." (Pls' Opp. to Mot. to Dismiss, Ex. C). In any event, plaintiffs had no constitutional right to any investigation of their grievances. Accordingly, plaintiffs' claims based on the alleged failure to investigate their grievances may be dismissed for failure to state a constitutional claim.

> [FN17.] Beojekian was arrested on January 10, 2008, and the report indicates that the reasons for the arrest were the allegations of sexual misconduct by Beojekian involving inmates at the Greene County Jail. (E.D.N.Y.1996) (citing *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

### VI. *Mail Tampering and Access to Courts*

Plaintiffs allege that their access to the courts was hindered due to the alleged inadequacy of the law library at the Greene County Jail. Plaintiffs also claim that they were not permitted to contact their attorneys as much as they would have liked.

In order to establish a claim that a prisoner's right of access to the courts has been violated, actual injury must be shown. *See Lewis v. Casey,* 518 U.S. 343, 351–52, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Inmates' right of access to the courts is not "an abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis,* 518 U.S. at 351–54. To establish a violation, "the inmate ... must ... demonstrate that the alleged shortcomings ... hindered his efforts to pursue a legal claim." *Lewis,* 518 U.S. at 351. The same standard applies when inmates claim that legal mail has been obstructed. *See Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003). Plaintiffs must allege that the defendants' actions hindered their "efforts to pursue a legal claim." *Id.* (citing *Monsky v. Moraghan,* 127 F.3d 243, 247 (2d Cir.1997).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 856426 (N.D.N.Y.)

(Cite as: 2011 WL 856426 (N.D.N.Y.))

**\*10** Prior to the Supreme Court's decision in *Lewis,* the Second Circuit had held that "an isolated instance" of interference with an inmate's legal mail delivery was insufficient to state a First Amendment claim, either with respect to the mail itself or with respect to access to courts, where "the infraction was not in accordance with official policy or practice and where no showing had been made that the inmate's right to access to courts was chilled...." *Washington v. James,* 782 F.2d 1134, 1139 (2d Cir.1986) (citation omitted). *Lewis* also suggests that the actual harm must be to direct or collateral attacks on the inmate's conviction, or to a challenge to the conditions of confinement. 518 U.S. at 355. "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.' " *Davis v. Goord,* 320 F.3d at 352 (citing *Jermosen v. Coughlin,* 877 F.Supp. 864, 871 (S.D.N.Y.1995)).

Plaintiffs' right of access to the courts was not abridged in any way by defendants' actions, even assuming that plaintiffs' allegations are true. Plaintiffs' allegations are conclusory statements that the law library is "inadequate," and "outdated." (Compl. p. 11). If, as their allegations suggest, plaintiffs had been appointed attorneys, no access to any law library was required. *See Bourden v. Loughren,* 386 F.3d 88, 93 (2d Cir.2004) ("the appointment of counsel can be a valid means of satisfying a prisoner's right of access to the courts").

Plaintiffs only allegations of injury is that they were "unable to file motions on our behalf that could have been fruitful to our criminal cases." (Compl. p. 11). These allegations are insufficient to state a plausible claim for denial of access to the courts. Accordingly, plaintiffs' sixth, seventh, ninth, and twelfth claims related to the alleged deficiencies in the quality of the law library, the lack of access to legal materials, and limited access to attorneys should be dismissed.

## VII. *First Amendment*

Plaintiffs' thirteenth claim is based on defendants' alleged violation of the Free Exercise Clause of the First Amendment. The First Amendment guarantees the right to the free exercise of religion. *Cutter v. Wilkinson,* 544 U.S.

709, 719, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir.2003) (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)). This right "is not absolute or unbridled, and is subject to valid penological concerns, including those relating to institutional security." *Johnson v. Guiffere,* 04–CV–57, 2007 WL 3046703, at \*4, 2007 U.S. Dist. LEXIS 77239 (N.D.N.Y. Oct.17, 2007). The Free Exercise Clause extends "beyond mere attendance at congregate religious services into other aspects of prison life including, pertinently, that of an inmate's diet...." *Id.* The Second Circuit has held that it is "clearly established that a prisoner has a right to a diet consistent with his or her religious scruples...." *Ford,* 352 F.3d at 597 (citations omitted). Therefore, to "deny prison inmates the provision of food that satisfies the dictates of their faith ... unconstitutionally burden[s] their free exercise rights." *McEachin v. McGuinnis,* 357 F.3d 197, 203 (2d Cir.2004).

**\*11** Plaintiffs do not specify who among them, if any, is Rastafarian, Muslim, or Jewish. They do not specify who denied them meals appropriate to their specific religious beliefs and how their specific religious beliefs were abridged, other than conclusory allegations of denial of Rastafarian or Muslim services, special diets, or celebration of Ramadan or Passover. The defendants that plaintiffs associate with these allegations are Sheriff Hussey, Sheriff Seeley, Undersheriff Worth, Superintendent Spitz, and Lieutenant Schnur. Each defendant's duties is described as "manages the jail's daily operations and executes the jail's policies." (*See Civil Cover Sheet,* Dkt. No. 1–1 at ¶¶ 1–4, 14). Plaintiffs appear to be attempting to establish personal involvement based on these defendants' supervisory roles at Greene County Jail. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (holding that a position in a hierarchical command structure, without more, is insufficient to establish personal involvement). Plaintiffs' allegations are insufficient to establish personal involvement on the part of the named defendants, and do not cross the line into plausibility to render them adequate enough to state a claim. Plaintiffs' thirteenth claim should be dismissed.

## VII. *Qualified Immunity*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 856426 (N.D.N.Y.)

(Cite as: 2011 WL 856426 (N.D.N.Y.))

Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). However, even if the constitutional privileges are clearly established, a government actor may still be shielded by qualified immunity "if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991) (citing *Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir.1990).

In determining whether qualified immunity applies, the court may first consider whether "the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), modified by *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 811, 172 L.Ed.2d 565 (2009) (holding that, "while the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory in all cases"). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201. This court need not address qualified immunity with respect to those of plaintiff's claims which do not state actionable violations of his constitutional rights.

As to plaintiff's deliberate indifference claims against defendants Hulbiki and Juliano, it was clearly established, as of the time of the alleged incidents in 2007, that plaintiffs had a Constitutional right to be free from deliberate indifference to their medical needs. *See, e.g., Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Smith v. Carpenter,* 316 F.3d 178 (2d Cir.2003). Thus, accepting plaintiff's allegations as true, qualified immunity cannot protect defendants Hulbiki and Juliano at this time, because a reasonable person in their position would or should have known that deliberate indifference to medical needs was a constitutional violation.

**\*12 WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that the State Defendants' Motion (Dkt. No. 22) be **GRANTED,** and plaintiffs' claims as to defendants Robert Cuttita and Deborah Clark be **DISMISSED IN THEIR ENTIRETY,** and it is further

**RECOMMENDED,** that the Additional County Defendants' Motion (Dkt. No. 79) be **GRANTED,** and plaintiffs' claims as to defendants Peter Bennett, John Jarvis, Ken Liese, Brian McMannis, Gregory Seeley, Donnie Skimmerhorn, Michael Spitz, Mike Sutherland, Edward Vorheese, Ed Warga, and Steven Worth be **DISMISSED IN THEIR ENTIRETY,** and it is further

**RECOMMENDED,** that county defendants' motion to dismiss (Dkt. No. 49) be **GRANTED IN PART AND DENIED IN PART** and all plaintiffs' claims be **DISMISSED IN THEIR ENTIRETY** as to all defendants except for plaintiff Burroughs' claim based on deliberate indifference to his serious medical need as to defendants Hulbiki and Juliano.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2011.

Pine v. Seally
Not Reported in F.Supp.2d, 2011 WL 856426 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2864951 (N.D.N.Y.)

(Cite as: 2006 WL 2864951 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
John ALLEN, Plaintiff,
v.
State of NEW YORK; New York State Department of
Correctional Services; New York State Division of
Parole, Defendants.
No. 9:05-CV-1613 (NAM)(GJD).

Oct. 5, 2006.
John Allen, Moravia, NY, Plaintiff, pro se.

**DECISION and ORDER**

Hon. NORMAN A. MORDUE, Chief U.S. District Court
Judge.

**\*1** By prior Decision and Order, this Court ruled that
the original pleading filed by *pro se* plaintiff John Allen
failed to allege facts to support a live case or controversy
which he had standing to pursue. Dkt. No. 4.[FN1] In light of
his *pro se* status, plaintiff was afforded an opportunity to
file an amended complaint. *Id.* at 4-6.

> FN1. Plaintiff's *in forma pauperis* application
> was granted. *Id* . at 5.

Plaintiff's amended complaint is before this Court for
consideration. Dkt. No. 5.

In its prior Decision and Order, the Court determined
that plaintiff had not established that his perceived injury
from the application of New York State Mental Hygiene
Law to convicted sex offenders immediately prior to their
scheduled release from state prison is "sufficiently real
and immediate" so as to constitute an existing case or
controversy which may be properly considered by this
Court. Dkt. No. 4 at 4. As noted by the Court, plaintiff's
complaint did not clearly identify him as a sex offender,
nor did plaintiff claim that he is scheduled for imminent
release from prison. *Id.*

Upon review of the amended complaint, the Court
finds that plaintiff has failed to cure the deficiencies
discussed by the Court in its prior Decision and Order.
While the amended complaint sets forth plaintiff's criminal
history in sufficient detail to demonstrate that he is within
the class of inmates who might be evaluated pursuant to
Mental Hygiene Law § 9.27 (*see* Dkt. No. 6 at 6-7, 10), it
does not appear from that pleading that plaintiff's release
is imminent. Rather, plaintiff's conditional release date is
not until 2013. *Id.* at ex. 1.

The Court notes that the amended complaint also sets
forth claims challenging what plaintiff describes as a
practice of withholding participation in the Sexual
Offender Counseling Program ("SOCP") until an inmate
is within one year of his conditional release date.
According to plaintiff, one result of this practice is that
inmates may not have completed this program prior to
their initial appearance before the parole board and may,
as a result, be denied release. Dkt. No. 5 at 7-8. It is
well-settled that inmates do not enjoy constitutionally
rights to participate in particular programs or to parole
release. *See Lee v. Governor of New York,* 87 F.3d 55,
58-59 (2d Cir.1996); *Grant v. Ahern,* No. 03-CV-0539,
2005 WL 1936175 * 5 (N.D.N.Y.) (Magnuson, V.J.).
Accordingly, these allegations do not a state a claim upon
which relief may be granted by this Court.

Plaintiff also seeks to consolidate this action with
*Donhauser v. Goord,* 9:01-CV-1535 (DNH/GHL). Dkt.
No. 5 at 10-11. *Donhauser* is a class action challenging
certain aspects of the SOCP. By Order filed February 15,
2005, District Judge Hurd certified the class, which is
defined as "[c]urrent or former New York State prisoners
who have lost or been denied good time credits or have
been threatened with the loss or denial of good time
credits because of a refusal to admit guilt to criminal
sexual conduct as part of the Sexual Offender Counseling
Program." *Donhauser,* Dkt. No. 127. Upon review,
because plaintiff has not demonstrated in his amended
complaint that he is a member of the class certified in
*Donhauser,* consolidation is not warranted.[FN2]

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2864951 (N.D.N.Y.)

(Cite as: 2006 WL 2864951 (N.D.N.Y.))

> FN2. Inasmuch as plaintiff claims that he has been denied the opportunity to enrol in the SOCP, he can not claim to be a member of a class consisting of SOCP participants who have refused to comply with certain program requirements.

**\*2** For the reasons set forth herein and in the Court's prior Decision and Order, plaintiff's amended complaint, as drafted, fails to state a claim upon which relief may be granted, and this action is hereby dismissed.

WHEREFORE, based upon the foregoing, it is hereby

ORDERED, that this action is dismissed due to plaintiff's failure to state a claim upon which relief can be granted, and it is further

ORDERED, that the Clerk serve a copy of this Order on plaintiff.

IT IS SO ORDERED.

N.D.N.Y.,2006.

Allen v. New York
Not Reported in F.Supp.2d, 2006 WL 2864951 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4492181 (N.D.N.Y.)

(Cite as: 2012 WL 4492181 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Corey FORD, Plaintiff,
v.
Joseph T. SMITH, Superintendent, Shawangunk Corr.
Facility; C.O. Palmer, Corr. Officer, Shawangunk Corr.
Facility; LAW, Corr. Officer/Sec. Staff Employee,
Shawangunk Corr. Facility; DeGeorgio, Corr. Officer,
Shawangunk Corr. Facility; and S. Lacika, Jr., Corr.
Officer, Shawangunk Corr. Facility, Defendants.
No. 9:11–CV–212 (GTS/RFT).

Sept. 28, 2012.
Corey Ford, Wallkill, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State
of New York, Robert W. Kinsey, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendant.

***MEMORANDUM–DECISION and ORDER***

GLENN T. SUDDABY, District Judge.

*1 Currently before the Court, in this *pro se* prisoner
civil rights action by Corey Ford ("Plaintiff") against the
five above-captioned Shawangunk Correctional Facility
employees ("Defendants"), are (1) Defendants' motion for
summary judgment (Dkt. No. 40), (2) United States
Magistrate Judge Randolph F. Treece's
Report–Recommendation (Dkt. No. 49), and (3) Plaintiff's
objection to the Report–Recommendation (Dkt. No. 51).
For the reasons set forth below, the
Report–Recommendation is accepted; Defendants' motion
is granted; and all of Plaintiff's claims are dismissed.

**I. RELEVANT BACKGROUND**

**A. Plaintiff's Complaint**

Plaintiff filed his initial Complaint on February 24,
2011. (Dkt. No. 1.) Plaintiff filed an Amended Complaint

on April 27, 2011. (Dkt. No. 9.) Generally, and liberally
construed, Plaintiff's Amended Complaint alleges as
follows. He has been a practicing Muslim of the Nation of
Islam for the past nine years. (*Id.* at ¶ 10.) During
Ramadan in 2009, and 2010, while Plaintiff was
incarcerated at Shawangunk Correctional Facility
("Shawangunk C.F."), Defendants failed to provide him
with hot water for his pre-dawn meal, which precluded
him from exercising one of the five pillars of his faith (i.e.,
fasting). (*Id.* at ¶¶ 13, 14, 15 .)

More specifically, on August 22, 2009, Defendant
Palmer refused to provide Plaintiff with hot water despite
Plaintiff's request. (*Id.* at ¶ 17.) Similarly, on September 1,
2009, Defendant Law also refused to provide Plaintiff
with hot water. (*Id.* at ¶ 18.) On or about September 7,
2009, Plaintiff wrote Defendant Smith to complain about
being refused hot water for his pre-dawn meal during
Ramadan. (*Id.* at ¶ 19.) Defendant Smith responded by
informing Plaintiff that there is no method for providing
Plaintiff with hot water, and otherwise did nothing to cure
Plaintiff's complaint. (*Id.* at ¶ 20.) Also on or about
September 7, 2009, Defendant Law threatened to "put
some kind of substance in plaintiff's hot water" in
retaliation for writing a complaint to Defendant Smith. (*Id.*
at ¶ 21.)

On or about August 14, 2010, Defendant Lacika
refused to provide Plaintiff with hot water for his
pre-dawn meal during Ramadan. (*Id.* at ¶ 22.) On or about
August 28, 2010, Defendant Doe [FN1] refused to provide
Plaintiff with hot water for his pre-dawn meal during
Ramadan. (*Id.* at ¶ 23.) On or about August 30, 2010,
Defendant DeGeorgio refused Plaintiff the opportunity to
prepare his pre-dawn meal during Ramadan. (*Id.* at ¶ 24.)

> FN1. Despite Plaintiff's specific allegation
> against him, Defendant "John Doe" is not listed
> in the caption of this action. (*See generally*
> Docket Sheet.) *For this reason, the Clerk of the
> Court is Ordered to add "John Doe" to the
> caption of this action.*

Not Reported in F.Supp.2d, 2012 WL 4492181 (N.D.N.Y.)

(Cite as: 2012 WL 4492181 (N.D.N.Y.))

Despite his awareness of Plaintiff's denial of hot water during Ramadan for his pre-dawn meal, Defendant Smith did nothing to stop it. As a result, Defendant Smith has allowed and participated in a "blanket policy of depriving plaintiff of his constitutional ... rights in violation of [Plaintiff's] first and fourteenth amendment rights...." (*Id.* at ¶ 26.) In contrast, Jewish prisoners at Shawangunk C.F. are provided up to four cups of water every day to fulfill their religious dietary requirements. (*Id.* at ¶ 14.) Plaintiff has grieved his complaints through the Inmate Grievance Resolution Committee at Shawangunk C.F. (*Id.* at ¶ 27 .)

**\*2** Based on these factual allegations, Plaintiff asserts claims arising under the First, Fourteenth, and Eighth Amendments, and the Religious Land Use and Institutionalized Person Act ("RLUIPA"). (*See generally* Dkt. No. 9.) As relief, Plaintiff requests damages in the amount of five hundred thousand dollars ($500,000.00), consisting of two hundred and fifty thousand dollars ($250,000.00) in compensatory damages and two hundred and fifty thousand dollars ($250,000.00) in punitive damages, plus costs. (*Id.* at ¶¶ 31–33.) For a more detailed recitation of Plaintiff's factual allegations, the Court refers the reader to the Amended Complaint in its entirety. (Dkt. No. 9.)

**B. The Parties' Briefings on Defendants' Motion for Summary Judgment**

On January 23, 2012, Defendants submitted their motion for summary judgment. [FN2] (Dkt. No. 40.) In their motion, Defendants make the following six arguments: (1) based on the four corners of Plaintiff's Amended Complaint, Plaintiff has failed to state claims under the First and Eighth Amendments (Dkt. No. 40, Attach. 6 at 5–6, 7–8); (2) based on the record evidence, there is no genuine dispute of material fact as to whether Defendants violated Plaintiff's rights under RLUIPA and the Fourteenth Amendments (*id.* at 6–7, 9); (3) any portion of the Amended complaint that seeks compensatory damages for mental and emotional injuries should be dismissed because, based on the four corners of Plaintiff's Amended Complaint, Plaintiff has failed to allege facts plausibly suggesting that he suffered any physical injury (*id.* at 11); (4) to the extent that Plaintiff's Amended Complaint attempts to assert a claim for verbal abuse, that claim should be dismissed because it is not cognizable under 42

U.S.C. § 1983 ("Section 1983") (*id.* at 12); (5) Plaintiff's claims against Defendant Smith should be dismissed because, based on the four corners of Plaintiff's Amended Complaint, Plaintiff has failed to allege facts plausibly suggesting that Defendant Smith was personally involved any of the alleged constitutional violations; (*id.* at 12–13); and (6) Defendants are entitled to qualified immunity and sovereign immunity under the Eleventh Amendment (*id.* at 14–16). For a more detailed recitation of Defendant's arguments, the Court refers the reader to their memorandum of law in support of their motion for summary judgment. (*See generally id.*)

    FN2. Although Defendants have identified their motion as one for summary judgment, some of Defendants' arguments in their supporting memorandum of law more closely relate to a motion to dismiss for failure to state a claim. (*See generally* Dkt. No. 40, Attach. 6.) For this reason, in this Decision and Order, the Court particularly identifies each of Defendants' arguments as one for summary judgment based on the record evidence, or for dismissal based on the four corners of Plaintiff's Amended Complaint.

Liberally construed, Plaintiff's response makes the following seven arguments: (1) by refusing to provide Plaintiff with hot water for his pre-dawn meal during Ramadan, Defendants precluded him from being able to exercise his Muslim faith in violation of the First Amendment because, without the hot water, he was precluded from fasting as required by his faith (Dkt. No. 44, Attach. 1 at 8); (2) Defendants' refusal to provide Plaintiff with hot water for his pre-dawn meal during Ramadan amounted to a substantial burden under RLUIPA (*id.* at 9–10); (3) the allegations in Plaintiff's Amended Complaint (i.e., Jewish prisoners are supplied with hot water for their religious dietary needs every day) are sufficient to state a claim for an equal protection violation (*id.* at 11–13); (4) the Prison Litigation Reform Act ("PLRA") does not preclude Plaintiff from recovering compensatory damages for constitutional violations arising under the First Amendment (*id.* at 13–16); (5) Plaintiff has adequately alleged the personal involvement of Defendant Smith, because Plaintiff's Amended Complaint alleges that Defendant Smith denied Plaintiff's grievances (*id.* at 17);

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4492181 (N.D.N.Y.)

(Cite as: 2012 WL 4492181 (N.D.N.Y.))

(6) Eleventh Amendment immunity does not apply in this case because Plaintiff is suing Defendants in their individual capacities (*id.* at 18); and (7) it is not appropriate to grant qualified immunity on a motion for summary judgment (*id.* at 19).

**\*3** Defendants did not file a reply. (Dkt. No. 45.)

### C. Magistrate Judge Treece's Report–Recommendation

On August 17, 2012, Magistrate Judge Treece issued a Report–Recommendation recommending that Defendants' motion be granted and that Plaintiff's Amended Complaint be dismissed in its entirety. (Dkt. No. 49.) In particular, Magistrate Judge Treece's recommendation was based on his following four findings: (1) Plaintiff's First Amendment and RLUIPA claims should be dismissed because, even assuming the allegations in Plaintiff's Amended Complaint are true, those allegations give rise to nothing more than a de minimus violation under RLUIPA and the First Amendment (Dkt. No. 49 at 7–8); (2) because Plaintiff's allegations giving rise to his equal protection claim under the Fourteenth Amendment is no more than conclusory, that claim should be dismissed (*id.* at 8); (3) because none of Plaintiff's constitutional claims survive Defendants' motion, whether Defendants are entitled to qualified immunity is moot (*id.* at 8–9); and (4) because Defendants Palmer and Doe were never served in this action, they both should be dismissed from the action pursuant to [Fed.R.Civ.P. 4](m) (*id.* at 9).[FN3] Familiarity with the grounds of Magistrate Judge Treece's Report–Recommendation is assumed in this Decision and Order, which is intended primarily for review by the parties.

> [FN3.] As part of the Report–Recommendation, Magistrate Judge Treece issued an Order denying Plaintiff's motion for leave to file a Second Amended Complaint (submitted two days after Defendants filed their motion for summary judgment) and Plaintiff's motion for sanctions (submitted four days before Defendants filed their motion for summary judgment). (Dkt. No. 49 at 9–11.)

### D. Plaintiff's Objection

On August 29, 2012, Plaintiff filed his objection to the Report–Recommendation. (Dkt. No. 51.) Generally, in his objection, Plaintiff asserts the following three arguments: (1) Plaintiff has set forth a genuine dispute of material fact as to whether hot water is a part of his religious belief (*id.* at ¶ 7); (2) Plaintiff has set forth a genuine dispute of material fact as to whether the four incidents that occurred over a period of a year, when Defendants allegedly deprived Plaintiff hot water for his pre-dawn meal during Ramadan, constitute a de minimis violation of his rights under the First Amendment and/or RLIUPA (*id.* at ¶ 9); and (3) the fact that Defendant Smith admits that Jewish prisoners receive up to five cups of water per day for their dietary restrictions demonstrates the existence of a genuine issue of material fact as to whether Defendants violated Plaintiff's right to equal protection (*id.* at ¶ 18).

### III. APPLICABLE LEGAL STANDARDS

### A. Standard of Review Governing a Report–Recommendation

When a *specific* objection is made to a portion of a magistrate judge's reportrecommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. [Fed.R.Civ.P. 72(b)(2)](; [28 U.S.C. § 636(b)(1)(C)](. To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c).[FN4] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." [28 U.S.C. § 636(b)(1)](. However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance.[FN5]

> [FN4.] *See also* [Mario v. P & C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir.2002)]( ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4492181 (N.D.N.Y.)

(Cite as: 2012 WL 4492181 (N.D.N.Y.))

deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

FN5. See *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U.S. v. Raddatz,* 447 U.S. 667, 676, n. 3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

**\*4** When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b)(2),(3); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition.[FN6] Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[FN7] Finally, when *no* objection is made to a portion

of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [FN8]

FN6. *See also Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at \*2–3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999).

FN7. *See Mario,* 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed.R.Civ.P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly–Rate Emp. Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady,* 09–CV–0924, 2010 WL 3761902, at \*1, n. 1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue,* 07–CV–1077, 2010 WL 2985968, at \*3 & n. 3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole,* 04–CV–0484, 2006 WL 149049, at \*4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

FN8. *See also Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4492181 (N.D.N.Y.)

(Cite as: 2012 WL 4492181 (N.D.N.Y.))

**B. Legal Standard Governing Motions for Summary Judgment**

Because Magistrate Judge Treece correctly recited the legal standard governing a motion for summary judgment, and Plaintiff has not (in his objection) specifically challenged that recitation, that standard is adopted by, and incorporated by reference in, this Decision and Order, which is intended primarily for the review of the parties. (Dkt. No. 49, at Part III.A.)

**C. Legal Standard Governing a Motion to Dismiss for Failure to State a Claim**

For the sake of brevity, the Court will not recite, in this Decision and Order, the wellknown legal standard governing dismissals for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), but will direct the reader to the Court's decision in *Wade v. Tiffin Motorhomes, Inc.,* 686 F.Supp.2d 174, 181–84 (N.D .N.Y.2009) (Suddaby, J.), which accurately recites that standard.

**IV. ANALYSIS**

As indicated above in Part I.D. of this Decision and Order, while Plaintiff's objection specifically challenges Magistrate Judge Treece's recommendations regarding RLUIPA claim, Plaintiff's First Amendment claim, and Fourteenth Amendment claim, that objection does not specifically challenge Magistrate Judge Treece's recommendation regarding Plaintiff's claims against Defendants Palmer and Doe. *See, supra,* Part I.D. of this Decision and Order.

After carefully reviewing the relevant filings in this action, the Court can find no clear error regarding Magistrate Judge Treece's recommendation regarding Plaintiff's claims against Defendants Palmer and Doe. In the alternative, even if the Court were to subject that recommendation to a de novo review, the Court would find that recommendation survives such a review. The Court reaches this conclusion for the reasons stated by Magistrate Judge Treece in his ReportRecommendation. (Dkt. No. 49, at 9.)

**\*5** With regard to the remaining portions of the Report–Recommendation, after carefully reviewing the relevant filings in this action, the Court can find no clear whatsoever in those portions Report–Recommendation: Magistrate Judge Treece employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (Dkt. No. 49.) The Court reaches this conclusion for the reasons stated by Magistrate Judge Treece in his ReportRecommendation, and the reasons offered by Defendants in their memorandum of law. (Dkt. No. 49, at 5–9; Dkt. No. 40, Attach. 6, at 4–16 [attaching pages "2" through "14" of Defs.' Memo. of Law].)

As a result, Magistrate Judge Treece's Report–Recommendation is accepted and adopted in its entirety for the reasons stated therein. (*Id.*) The Court would add only the following four brief points.

First, with regard to Defendants' argument that Plaintiff's Amended Complaint has failed to allege facts plausibly that Defendants violated Plaintiff's Eighth Amendment right to be free of cruel and unusual punishment (an argument with which the Court agrees), the Court adds the following analysis. "While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement...." *Green v. LaClair,* 07–CV–0351, 2012 WL 1144569, at \*13 (N.D.N.Y.2012) (Peebles, M.J.). To satisfy the pleading requirements for an Eighth Amendment claim, a prisoner-plaintiff must "satisfy both an objective and subjective requirement-the [prison] conditions must be 'sufficiently serious' from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with 'deliberate indifference.' " *Green,* 2012 WL 1144569, at \*13. "Deliberate indifference exists if an official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 832 [1994] ). Here, Plaintiff's Amended Complaint, even construed with the utmost liberality, does not allege facts that plausibly suggest that Defendants' alleged refusal to provide Plaintiff with hot water for his pre-dawn meal during Ramadan disregarded a risk to Plaintiff's health or safety, or that such refusal by Defendants was undertaken with the requisite deliberate indifference. (*See generally* Dkt. No. 9.)

Second, even if the Court (out of an abundance of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4492181 (N.D.N.Y.)

(Cite as: 2012 WL 4492181 (N.D.N.Y.))

caution) were to analyze Plaintiff's Eighth Amendment claim under a summary judgment standard, the Court would conclude that Plaintiff failed to adduce admissible record evidence from which a rational fact-finder could conclude that such an Eighth Amendment violation occurred. (*See generally* Dkt. No. 44.)

Third, in addition to being dismissed for the reasons cited by Magistrate Judge Treece in his Report–Recommendation (Dkt. No. 49 at 5–8), Plaintiff's free-exercise claim under the First Amendment is dismissed because Plaintiff's Amended Complaint fails to allege facts plausibly suggesting that his religious dietary requirements during Ramadan demanded that he eat a meal prepared with hot water under the circumstances. (*See generally* Dkt. No. 9.) Rather, in contrast, Plaintiff's Amended Complaint alleges that he was provided additional food in his breakfast bag during Ramadan, without alleging that this additional food violated any of his religious dietary restrictions. (*Id.* at ¶ 16.) Because Plaintiff's Amended Complaint alleges that Plaintiff was given food for his pre-dawn meal during Ramadan that did not require hot water, the Court finds that Plaintiff's Amended Complaint fails to allege facts plausibly suggesting that Defendants deprived Plaintiff of his opportunity to eat a pre-dawn meal during Ramadan.

**\*6** Fourth, although the Court agrees with Defendants' analysis as to whether a claim for "verbal abuse" is cognizable under Section 1983 (Dkt. No. 40, Attach. 6 at 12), the Court construes the allegations against Defendant Law in Plaintiff's Amended Complaint as asserting a claim for retaliation under the First Amendment (Dkt. No. 9 at ¶ 21). Specifically, Plaintiff's Amended Complaint alleges that "on or about 8/7/2009 plaintiff was threatened[ed] by C.O. Law defendant to put some kind of substance in plaintiff's hot water for writing complain[ts] and grievances to defendant smith for being denied his right to practice his religion.... [P]laintiff was feared [sic] of being poisoned by defendant Law." (Dkt. No. 9 at ¶ 21). Because Defendants do not move for the dismissal of this specific claim, the Court is left to analyze that claim in light of (1) its authority to *sua sponte* review the pleading sufficiency of claims pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), and (2) in the alternative, Defendants' defense of qualified immunity (*see*

Dkt. No. 40, Attach. 6 at 13).

With regard to the Court's *sua sponte* review the pleading sufficiency of Plaintiff's retaliation claim, the Court begins by noting that, to state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting that (1) the speech or conduct at issue was "protected," (2) the defendants took "adverse action" against the plaintiff, and (3) there was a causal connection between the protected speech and the adverse action. [FN9]

> FN9. *See Gantt v. Lape,* 10–CV–0083, 2012 WL 4033729, at *8 (N.D.N.Y. July 31, 2012) (Dancks, M.J.) ("To state a retaliation claim under [Section] 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was 'protected'; (2) the defendants took 'adverse action' against the plaintiff—namely, action that would deter a similarly situated individual of ordinary firmness from exercising his ... constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action—in other words, that the protected conduct was a 'substantial motivating factor' in the defendants' decision to take action against the plaintiff.") (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U .S. 274, 287 [1977] ).

Here, while the Court can find no issue with regard to either the first element or the third element of the above-described test, the Court does find an issue with regard to the second element. Generally, "prison officials' conduct constitutes an 'adverse action' when it 'would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.' " *Alicea v. Howell,* 387 F.Supp.2d 227, 237 (W.D.N.Y.2005) (quoting *Dawes v. Walker,* 239 F.3d 489, 492 [2d Cir.2001] ). This adverse action inquiry is a contextual one. *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003). The contextual nature of this inquire permits, and indeed requires, courts to consider a variety of factors in determining whether conduct constitutes sufficiently adverse action for purposes of the First Amendment.

For example, in the case of oral threats, generally,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4492181 (N.D.N.Y.)

(Cite as: 2012 WL 4492181 (N.D.N.Y.))

"[t]he less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights." *Mateo v. Fischer,* 682 F.Supp.2d 423, 434 (S.D.N.Y.2010). "In addition, the fact that a threat was never carried out, while not necessarily dispositive, is a factor weighing against a finding of adverse action." *Alicea,* 387 F.Supp.2d at 237. Moreover, when a plaintiff appears to be an individual of ordinary firmness, whether or not his speech was actually chilled-while certainly not dispositive of the adverse-action inquiry-appears at least to be a factor in determining whether the speech of a similarly situated inmate (also of ordinary firmness) would be deterred. [FN10]

> **FN10.** *See Hofelich v. Ercole,* 06–CV–13697, 2010 WL 1459740, at *3 (S.D.N.Y. Apr. 8, 2010) ("Because the 'ordinary firmness' standard is an objective test, the fact that plaintiff was not deterred from exercising his constitutional rights is not dispositive.... However, the fact that plaintiff was not deterred from filing grievances is some evidence that a similarly situated prisoner of ordinary firmness would not have been deterred ... In response to the defendants' motion, plaintiff has not come forward with any evidence that he is a person of unusual firmness."); *accord, Starr v. Moore,* 849 F.Supp.2d 205, 209 (D .N.H.2012) (citing cases from the Courts of Appeals for the Fourth, Eighth, and Eleventh Circuits); *Houseknecht v. Doe,* 653 F.Supp.2d 547, 561 (D.Pa.2009) (citing cases from the Courts of Appeals for the Fourth, Tenth and Eleventh Circuits); *cf.* Fed.R.Evid. 401 ("Evidence is relevant if ... it has any tendency to make a fact more or less probable than it would be without the evidence....").

**\*7** When considering the relevant factors, courts should bear in mind that "[p]risoners may be required to tolerate more ... than average citizens, before a [retaliatory] action taken against them is considered adverse." *Davis,* 320 F.3d at 353. "The alleged retaliation must be more than de minimis for it to be actionable." *Alicea,* 387 F.Supp.2d at 237 (citing *Davis,* 320 F.3d at 353). Finally, because of "the ease with which claims of

retaliation may be fabricated," courts should "examine prisoners' claims of retaliation with skepticism and particular care." *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995).

Based on the contextual nature of the adverse-action inquiry, it is not surprising that courts within the Second Circuit appear to have reached different results when examining analogous fact patters. For example, some courts have found that, where the threat has neither been preceded by nor followed by the threatened conduct actually occurring, a general threat does not constitute sufficient adverse action. [FN11] Similar such courts have reached the same conclusion even where the threat is specific. [FN12]

> **FN11.** *See Mateo v. Fischer,* 682 F.Supp.2d 423, 434 (S.D.N.Y.2010) (finding that threats "wait till [I] put [my] hands on [you]" and "one day [you] and I will party" for filing grievances were not sufficient adverse action); *Kemp v. LeClaire,* 03–CV–0844, 2007 WL 776416, at * 15 (W.D.N.Y. Mar. 12, 2007) (finding that threats "your day is coming," "you'll be sent to your mother in a black box," and "you'll get your black ass kicked" for filing grievances were not sufficient adverse action).

> **FN12.** *See Johnson v. Brown,* 09–CV–0002, 2011 WL 1097864, at *6 (N.D.N.Y. Mar. 22, 2011) (Suddaby, J.) (finding that threatening to "set up with weapons and/or drugs [being planted] in [the inmate's] cell area, which would result in a new criminal charged being lodged against [him]," for filing grievances was not sufficient adverse action) [quoting allegation in plaintiff's complaint]; *Rosales v. Kikendall,* 677 F.Supp.2d 643, 648 (W.D.N.Y.2010) (finding that threat that staff would "get [him]," "set[ ] him up" by planting illegal contraband in his cell, and "remove him from the IGRC office *at any cost,*" for inmate's activities in his role as inmate grievance representative was not sufficient adverse action) [quoting statements from plaintiff's complaint; emphasis in original]; *Garcia v. Watts,* 08–CV–7778, 2009 WL

Not Reported in F.Supp.2d, 2012 WL 4492181 (N.D.N.Y.)

(Cite as: 2012 WL 4492181 (N.D.N.Y.))

2777085, at *11 (S.D.N.Y. Sept. 1, 2009) (finding that threatening to file incident reports against inmate and place him in SHU for filing grievances was not sufficient adverse action); *Cabassa v. Smith,* 08–CV–0480, 2009 WL 1212495, at *7 (N.D.N.Y. Apr. 30, 2009) (Report–Recommendation of Peebles, M.J., adopted by Kahn, J.) (finding that making the following threats to inmate for filing grievances was not sufficient adverse action: telling inmate in a "pissed off" tone of voice to "back off" or be "subjected to reprisals"; telling inmate that "you're going to regret ever filing that particular [grievance] because I'm going to ... make you look like you snitched [another inmate] out.... Brace yourself because I'm going to get you"; telling inmate that "I can write whatever I want and say that is what you told me"; telling inmate to "back the fuck off ... or else ... wind up on the hospital"; and telling inmate his beating is going to be "sanction [ed] then cover[ed] up") [quoting statements from plaintiff's complaint]; *Islam v. Goord,* 05–CV–7502, 2006 WL 2819651, at *1, 5 (S.D.N.Y. Sept. 29, 2006) (finding that threatening to put inmate in involuntary protective custody for filing an employee misconduct report against corrections officer was not sufficient adverse action); *Bartley v. Collins,* 95–CV–10161, 2006 WL 1289256, at *2, 6 (S.D.N.Y. May 10, 2006) (finding that threat "we [are] going to get you" for filing lawsuit was not sufficient adverse action); *Alicea,* 387 F.Supp.2d at 237 (finding that threat that inmate would "have to pay the consequences" for filing a grievance was not sufficient adverse action); *Pledger v. Hudson,* 99–CV–2167, 2005 WL 736228, at *1, 2, 4, 5 (S.D.N.Y. Mar. 31, 2005) (finding that threatening to filing misbehavior reports against an inmate, remove him from a prison program, and confine him in SHU, for filing a grievance was not sufficient adverse action); *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995) (finding that threatening inmate with disciplinary action, physical violence, an extension of his time in keeplock confinement, and possible segregation in SHU for lodging

complaints was not sufficient adverse action).

Meanwhile, other courts have found sufficient adverse action in the case of specific threats.[FN13] Similarly, at least one court has found sufficient adverse action in the case of even a general threat.[FN14]

FN13. *See* *Gill v. Tuttle,* 93 F. App'x 301, 303–04 (2d Cir.2004) (finding that threat to "keep filing misbehavior reports" against inmate for filing could constitute adverse action, *where the threat was preceded by both the filing of such a misbehavior report and the placement of the inmate in disciplinary confinement* ) [emphasis added]; *Pierce v. Monell,* 06–CV–1290, 2007 WL 2847317, at *8 (N.D.N.Y. Sept. 26, 2007) (Report–Recommendation of Lowe, M.J., adopted by Kahn, J.) (finding that threatening to file criminal charges against inmate, and kill him, for filing a grievance was sufficient adverse action, *where the threat was immediately preceded by the filing of criminal charges* ) [emphasis added]; *Lunney v. Brureton,* 04–CV–2438, 2007 WL 1544629, at *3, 18–19, 23 (S.D.N.Y. May 29, 2007) (finding that threats that, "[i]f I ever hear about you complaining about another officer you'll be sorry. You won't be so lucky next time," and, "if you don't stop writing grievances I'm going to break your fuckin' neck," were sufficient adverse action, *where they were preceded by a physical assault by prison guards* ) [emphasis added]; *Hepworth v. Suffolk Cnty.,* 02–CV–6473, 2006 WL 2844408, at *2–3, 8–9 (E.D.N.Y. Sept. 26, 2006) (finding that threats that inmate "get another beating" and be killed for filing grievance was sufficient adverse action, *where the threat was preceded by a beating* ) [emphasis added]; *Brown v. Coughlin,* 965 F.Supp. 401, 403–04, 405 (W.D.N.Y.1997) (finding that threat to inmate that, "We got you on a real bad ticket," and that when officers were "done with him" he would not want to "file any more complaints," was sufficient adverse action, *where threat to prosecute him for a disciplinary ticket*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4492181 (N.D.N.Y.)

(Cite as: 2012 WL 4492181 (N.D.N.Y.))

*was immediately preceded by the filing of that ticket,* expressly noting that "Knapp filed a misbehavior report about Brown on July 18, 1993, the same day that he and Curren allegedly threatened Brown") [emphasis added]; *Hofelich,* 2010 WL 184453, at *1–4, 9–10 (finding that threats to inmate that he would receive "a new [disciplinary] sentence on a set-up" and that he would "receive trauma that is irreversible," for filing grievances, were sufficient adverse action, *where threats were preceded by a disciplinary sentence on an alleged set-up and the infliction of physical trauma* ), *reconsidered on different grounds,* 2010 WL 1259740 (S.D.N.Y. Apr. 8, 2010).

FN14. *See Kerman v. City of New York,* 261 F.3d 229, 232, 242 (2d Cir.2001) (finding that, after plaintiff had stated that he was going to sue police, an officer's threat that "I'm going to teach you a lesson ... I'll give you something to sue for," was sufficient adverse action, *where the threat was followed by a handcuffing of plaintiff on the ground face up with his hands behind his back, the refusal to cover his face from his neighbors, and his transportation to a mental hospital* ) [emphasis added].

However, the apparent difference in these results may be somewhat illusory, given that in each of the cases cited in notes 13 and 14 the threatened conduct was either preceded by or followed by the threatened conduct (or conduct similar to the threatened conduct) actually occurring, giving the inmate *reason* to lend credence to the threat. *See, supra,* notes 13 and 14 of this Decision and Order. Here, because the threatened conduct was vague as to both the type of "substance" that would be put in Plaintiff's hot water and when (if ever) that might happen, and because the tampering never allegedly happened before the threat was made and did not allegedly happen after the threat was made, the Court finds this case to be more analogous to those cited in notes 11 and 12 of this Decision and Order than to those cited in notes 11 and 12 of this Decision and Order.

In any event, even if the Court needed an additional

ground on which to base a determination that a similarly situated inmate of ordinary firmness would not have been deterred by the alleged threat, the Court would have such an additional ground. Specifically, based on the factual allegations of his Amended Complaint, (1) Plaintiff appears to be an individual of ordinary firmness, and (2) he in fact continued to file grievances after the alleged threat. (*See, e.g.,* Dkt. No. 9 at ¶¶ 10–14, 19, 21, 25, 27, 28.) Again, while this factor is fact is certainly it not dispositive of the adverse-action inquiry, the Court finds that it is at least relevant to that inquiry. *See, supra,* note 10 of this Decision and Order.

**\*8** For all of these reasons, the Court finds that, based on the factual allegations of Plaintiff's Amended Complaint, a similarly situated inmate of ordinary firmness would not have been deterred by the alleged threat. As a result, the Court finds that Plaintiff's retaliation claim against Defendant Law must be, and is, dismissed. Because Plaintiff has already been afforded the opportunity to amend this claim, he need not be, and is not, afforded another such opportunity prior to dismissal. *Abascal v. Hilton,* 04–CV–1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 13, 2008) (Kahn, J., adopting, on *de novo* review, Report–Recommendation by Lowe, M.J.) ("Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading."), *aff'd,* 357 F. App'x 388 (2d Cir.2009); *accord,* *Shuler v. Brown,* 07–CV–0937, 2009 WL 790973, at *5 & n. 25 (N.D.N.Y. March 23, 2009)(McAvoy, J., adopting Report–Recommendation by Lowe, M.J.), *Smith v. Fischer,* 07–CV–1264, 2009 WL 632890, at *5 & n. 20 (N.D.N.Y. March 9, 2009) (Hurd, J., adopting Report–Recommendation by Lowe, M.J.).[FN15]

FN15. *See also Foman v. Davis,* 371 U.S. 178, 182 (1962) (explaining that denial of leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in pleading); *Coleman v. brokersXpress, LLC,* 375 F. App'x 136, 137 (2d Cir.2010) ("Nor can we conclude that the district court abused its discretion in denying Coleman leave to amend. The district court afforded Coleman one opportunity to amend the complaint, and Coleman made no specific showing as to how he

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4492181 (N.D.N.Y.)

(Cite as: 2012 WL 4492181 (N.D.N.Y.))

would cure the defects that persisted if given a second opportunity to amend."); *Dyson v. N.Y. Health Care, Inc.,* 353 F. App'x 502, 503–03 (2d Cir.2009) ("[T]he district court did not abuse its discretion by dismissing Dyson's third amended complaint with prejudice.... [T]he district court afforded Dyson three opportunities to file an amended complaint so as to comply with Rule 8(a)(2), and, despite these, she did not plead any facts sufficient to show that she was plausibly entitled to any relief."); *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("We do not mean to imply that the court has no power to dismiss a prolix complaint without leave to amend in extraordinary circumstances, such as where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible."); *Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (affirming dismissal of *pro se* plaintiff's amended complaint without leave to amend, for failure to state a claim upon which relief can be granted, without engaging in analysis of whether second amended complaint would be futile); *Yang v. New York City Trans. Auth.,* 01–CV–3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) ("Yang's amended complaint fails to remedy this defect in his pleadings.... His equal protection claim is dismissed."), *aff'd,* 71 F. App'x 90 (2d Cir.2003); *Payne v. Malemathew,* 09–CV–1634, 2011 WL 3043920, at *6 (S.D.N.Y. July 22, 2011) ("Plaintiff has repeatedly failed to cure the defects in his claims despite having received detailed instructions and despite the bases of the dismissals having been specified in advance, and he has not identified any additional facts he could advance now that would address these defects. Accordingly, nothwithstanding Plaintiff's pro se status, leave to amend yet again is denied."); *Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) ("While that failure to plead special damages with respect to the other alleged representations in theory might be cured by amendment, plaintiff already has amended once and has not sought leave to amend again.").

Accordingly, the fraud claims will be dismissed except to the limited extend indicated.").

Finally, because the Court has found adequate reason upon which to base the dismissal of Plaintiff's retaliation claim against Defendant Law, the Court need not, and does not, address Defendants qualified immunity argument with regard to that claim. Similarly, because none of Plaintiff's other claims survive Defendants' motion, the Court need not, and does not, address Defendants qualified immunity argument with regard to those claims.

**ACCORDINGLY,** it is

**ORDERED** that the Clerk of the Court shall add "John Doe" as a Defendant in the caption of this action on the docket sheet; and it is further

**ORDERED** that Magistrate Judge Treece's Report–Recommendation (Dkt. No. 49) is *ACCEPTED* and *ADOPTED;* and it is further

*ORDERED* that Defendant's motion for summary judgment (Dkt.No.40) is *GRANTED;* and it is further

*ORDERED* that Defendants Palmer and Doe are *DISMISSED* from this action pursuant to Fed.R.Civ.P. 4(m); and it is further

*ORDERED* that Plaintiff's retaliation claim against Defendant Law is *sua sponte* dismissed for failure to state a claim upon which relief can be granted, pursuant to pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 9) is *DISMISSED* in its entirety.

The clerk is directed to enter judgment in favor of the defendants and close this case.

N.D.N.Y.,2012.

Ford v. Smith
Not Reported in F.Supp.2d, 2012 WL 4492181 (N.D.N.Y.)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4492181 (N.D.N.Y.)

(Cite as: 2012 WL 4492181 (N.D.N.Y.))

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2847317 (N.D.N.Y.)

(Cite as: 2007 WL 2847317 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Lucas PIERCE, Plaintiff,
v.
Dave MONELL, Lieutenant, Tioga County Jail, Jessie
Howe, Corrections Officer, Tioga County Jail, and Nate
Marsh, Sergeant, Tioga County Jail, Defendants.
No. 9:06-CV-1290 (LEK/GHL).

Sept. 26, 2007.
Lucas Pierce, Auburn, NY, pro se.

Office of Frank W. Miller, Frank W. Miller, Esq., of
Counsel, East Syracuse, NY, for Defendants.

### DECISION AND ORDER

LAWRENCE E. KAHN, U.S. District Judge.

**\*1** This matter comes before the Court following a
Report-Recommendation filed on September 10, 2007 by
the Honorable George H. Lowe, United States Magistrate
Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3(c) of
the Northern District of New York. Report-Rec. (Dkt. No.
14). After ten days from the service thereof, the Clerk has
sent the entire file to the undersigned, including the
objections by Defendants Dave Monell, Jessie Howe, and
Nate Marsh, which were filed on September 24, 2007.
Objections (Dkt. No. 15).

It is the duty of this Court to "make a de novo
determination of those portions of the report or specified
proposed findings or recommendations to which objection
is made." 28 U.S.C. § 636(b). "A [district] judge ... may
accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge." *Id.*
Defendants claim that Judge Lowe incorrectly applied the
heightened pleading standards established by the United
States Supreme Court in *Bell Atlantic Corp. v. Twombly,*
550 U.S. ----, 127 S.Ct. 1955 (2007). In a *per curiam*
decision issued shortly after *Twombly,* the Supreme Court

reaffirmed that documents filed *pro se,* as is the case
before the Court, must still be liberally construed and held
to a less stringent standard. *Erickson v. Pardus,* --- U.S.
----, 127 S.Ct. 2197, 2200 (2007) (per curiam). In keeping
with this admonition, Judge Lowe's
Report-Recommendation properly stated and applied the
pleading standards. Accordingly, after considering the
objections and undertaking a de novo review of the record,
the Report-Recommendation should be approved for the
reasons stated therein.

Therefore, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt.
No. 14) is **APPROVED** and **ADOPTED** in its
**ENTIRETY;** and it is further

**ORDERED,** that Defendants' Motion to dismiss (Dkt.
No. 6) is **GRANTED IN PART and DENIED IN
PART;** and it is further

**ORDERED,** that Plaintiff's independent state law tort
claim arising out of Defendants' alleged threats against
him is **DISMISSED;** and it is further

**ORDERED,** that Plaintiff's federal civil rights claim
alleging Defendants' negligent loss of Plaintiff's property
is **DISMISSED;** and it is further

**ORDERED,** that the remainder of Defendants'
Motion to dismiss is **DENIED** for the reasons stated in
Judge Lowe's Report-Recommendation; and it is further

**ORDERED,** that the Clerk serve a copy of this Order
on all parties.

**IT IS SO ORDERED.**

### REPORT-RECOMMENDATION

GEORGE H. LOWE, United States Magistrate Judge.

This action has been referred to me for Report and
Recommendation by the Honorable Lawrence E. Kahn,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2847317 (N.D.N.Y.)

(Cite as: 2007 WL 2847317 (N.D.N.Y.))

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court. Generally, in this *pro se* civil rights action brought under 42 U.S.C. § 1983, Lucas Pierce ("Plaintiff"), currently incarcerated by the New York State Department of Correctional Services, alleges that, while he was an inmate at the Tioga County Jail ("the Jail"), three employees of the Jail-Lieutenant Dave Monell, Corrections Officer Jessie Howe, and Sergeant Nate Marsh ("Defendants")-violated his rights under the First and Fourteenth Amendments by negligently losing, or perhaps intentionally taking, his property and then retaliating against him for complaining about that property deprivation. (Dkt. No. 1.) Currently pending is Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 6.) For the reasons stated below, I recommend that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

**\*2** Liberally construing Plaintiff's *pro se* civil rights Complaint as I must, I read that Complaint as alleging that, while Plaintiff was an inmate at the Tioga County Jail during an unspecified time period, Defendants (1) "took close to $1,500.00 ... worth of jewelry" from him without recording the jewelry in the Jail's "property log" upon his admission to the Jail, did not return the jewelry to him upon his discharge from the Jail, and refused to compensate him for the loss of the jewelry despite his repeated requests for such compensation, in violation of the Fourteenth Amendment, and (2) retaliated against him by "threaten[ing] his life" and threatening to file "criminal charges" against him when he exercised his right, or attempted to exercise his right, under the First Amendment to complain about the deprivation of property through "speak[ing] his mind" to Defendants and through writing to a "third party" about the deprivation. (Dkt. No. 1, ¶¶ 6, 7.)

In their memorandum of law, Defendants assert four arguments in favor of dismissal of Plaintiff's Complaint pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure: (1) that Plaintiff has failed to allege facts plausibly suggesting, or adduce evidence establishing, that he exhausted his administrative remedies before filing this action in federal court; (2) that Plaintiff's allegations of

threats by Defendants fail to state a claim since the allegations make no mention of physical injury, nor do the allegations even state that the threatened actions against Plaintiff were not actually taken by Defendants; (3) that Plaintiff's allegations that Defendants deprived him of his property at most state a claim for negligence by Defendants, which is not actionable under 42 U.S.C. § 1983; (4) that any claims that Plaintiff has attempted to assert against Defendants under New York State law are barred by the applicable statute of limitations, set forth in New York General Municipal Law §§ 50-e, 50-i. (Dkt. No. 6, Part 4.)

## II. APPLICABLE LEGAL STANDARDS

## A. Effect of Plaintiff's Failure to Respond to Defendants' Motion

Defendants filed their motion to dismiss on February 20, 2007. (Dkt. No. 6.) In light of Plaintiff's special status as a *pro se* civil rights litigant, on April 12, 2007, and May 22, 2007, I *sua sponte* (1) twice reminded Plaintiff that he had not yet responded to Defendants' motion to dismiss, (2) twice granted Plaintiff an extension of time in which to respond, first until May 11, 2007, and then until June 22, 2007, and (3) advised Plaintiff that his failure to so respond would be deemed consent to the relief requested in Defendants' motion. (Dkt.Nos.10, 12.) Still, Plaintiff did not respond to Defendants' motion to dismiss.

"Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown." N.D.N.Y. L.R. 7.1(b)(3).

**\*3** Here, Defendants' motion to dismiss has been properly filed, and Plaintiff has failed to oppose it (despite being warned of the possible consequences of that failure). Therefore, the next issue before the Court is whether Plaintiff has shown good cause as to why his failure to oppose Defendants' motion should not be deemed as "consent" to the granting of the motion.

The closest Plaintiff comes to showing such cause is

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2847317 (N.D.N.Y.)

(Cite as: 2007 WL 2847317 (N.D.N.Y.))

when he asserts, in his two verified applications for the appointment of counsel, that (1) he is "unable to fully complete paperwork on [his] own due to [a] lack of knowledge," (2) his incarceration in his correctional facility's Special Housing Unit has "greatly limit[ed] his ability to litigate" this action due in part to his limited access to the facility's law library, (3) his " 'mental' discibility [sic]" has inhibited his ability to respond to Defendants' motion, and (4) "his limited knowledge [of] law" has inhibited his ability to "investigate his case with regard to certain exhibits" filed by Defendants, and his ability to obtain "medical records" that are material to Defendants' motion. (Dkt. No. 9, Part 1, ¶ [C]; Dkt. No. 11, ¶¶ 1, 3, 4.)

After carefully considering the matter, I find that these sworn assertions by Plaintiff do not constitute good cause excusing his failure to oppose Defendants' motion. As an initial matter, I find that, rather than filing his second motion for the appointment of counsel (which totaled eight pages in length and included an affidavit of another prisoner), Plaintiff could well have simply responded to Defendants' motion. Moreover, Plaintiff needed no ability to "investigate his case" in order to respond to Defendants' motion, since the legal standard governing that motion does not permit the consideration of extrinsic evidence such as documents obtained through discovery.

However, I note that, in the cover letter to his first motion for the appointment of counsel, Plaintiff advises the Court that he is no longer incarcerated at Auburn Correctional Facility but at Southport Correctional Facility. (Dkt. No. 9, Part 2.) This change of address is also indicated implicitly in Plaintiff's second motion for the appointment of counsel. (Dkt. No. 11 at 4-6, 8.) The problem is that, because of the somewhat inconspicuous nature of this change-of-address notification, the change of address was not reflected on the docket when the Court twice extended Plaintiff's time in which to respond to Defendants' motion, and notified Plaintiff that his failure to so respond would be deemed consent to the relief requested in Defendants' motion. (Dkt.Nos.10, 12.)

Ordinarily, an uncertainty as to whether a plaintiff received such communications from the Court might

undermine a finding that the plaintiff knowingly and voluntarily chose not to respond to an opponent's motion. However, here, I find no such uncertainty since it appears that mail addressed to Plaintiff at Auburn Correctional Facility has been forwarded to Plaintiff at Southport Correctional Facility. I base this conclusion on several pieces of evidence.[FN1]

> FN1. This evidence includes the following: (1) the fact that none of the Court's correspondence to Plaintiff at Auburn Correctional Facility has been returned to the Court as undeliverable (which is usually what happens when a prisoner has been transferred from a correctional facility without leaving a forwarding address); (2) the fact that, on or about February 9, 2007, a letter from a lawyer addressed to Plaintiff "c/o Auburn Correctional Facility" apparently reached Plaintiff at Southport Correctional Facility; and (3) the fact that an affidavit of a fellow prisoner, submitted by Plaintiff, indicates that Plaintiff received a copy of the Court's Order of April 12, 2007, despite the fact that the Order was sent to Auburn Correctional Facility while Plaintiff was actually incarcerated at Southport Correctional Facility. (Dkt. No. 9, Part 1 at 3; Dkt. No. 11 at 7.)

**\*4** Therefore, the final issue before the Court is whether Defendants have met their burden to demonstrate entitlement to dismissal for failure to state a claim, under the Federal Rules of Civil Procedure and the Local Rules of Practice for this Court.[FN2] The Court's consideration of whether a movant has met its burden "to demonstrate entitlement" to the relief requested under Local Rule 7 .1(b)(3) is a more limited endeavor than a consideration of a contested motion requesting such relief.[FN3] However, such a consideration is not merely a perfunctory step but involves a review of the merits of Defendants' motion.[FN4] Obviously, the Court is not going to grant a motion that, on its face, lacks merit (especially when the motion requests dismissal of the complaint of a *pro se* civil rights litigant, who is generally afforded special solicitude due to his lack of familiarity with legal procedure and the serious nature of his claims).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2847317 (N.D.N.Y.)

(Cite as: 2007 WL 2847317 (N.D.N.Y.))

**FN2.** *See* Fed.R.Civ.P. 12(b)(6) (permitting defendant to assert defense of failure to state a claim by motion); Fed.R.Civ.P. 7(b)(1) (requiring motions to, *inter alia,* "state with particularity the grounds therefor"); L.R. 7.1(a) (requiring all motions to dismiss to include a memorandum of law containing citations to legal authorities).

**FN3.** *See, e.g., Hernandez v. Nash,* 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before an unopposed motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*" ) (emphasis added) (citations omitted); *Race Safe Sys., Inc. v. Indy Racing League,* 251 F.Supp.2d 1106, 1109-1110 (N.D.N.Y.2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3] ); *see also Wilmer v.. Torian,* 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1 [b] [3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 1997 U.S. Dist. LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello,* 95-CV-989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F.Supp. 595 (N.D.N.Y.1996) (Pooler, J.).

**FN4.** *See, supra,* notes 2 and 3 of this Report-Recommendation.

**B. Recently Revised Legal Standard Governing Motions to Dismiss**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on

either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2); [FN5] or (2) a challenge to the legal cognizability of the claim. [FN6]

**FN5.** *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

**FN6.** *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002) ( "These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") (citation omitted); *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12 [b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2847317 (N.D.N.Y.)

(Cite as: 2007 WL 2847317 (N.D.N.Y.))

(S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") (citation omitted); *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b] [6] motion-one aimed at the sufficiency of the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[FN7] The purpose of this rule is to "facilitate a proper decision on the merits."[FN8] A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[FN9]

FN7. *Dura Pharmaceuticals, Inc. v. Broudo,* 125 S.Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley,* 355 U.S. at 47); *see also Swierkiewicz,* 534 U.S. at 512 (quoting *Conley,* 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U .S. 163, 168 (1993) (quoting *Conley,* 355 U.S. at 47).

FN8. *See Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48).

FN9. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d

1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[FN10] However, it is well established that even this liberal notice pleading standard "has its limits."[FN11] As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard.[FN12]

FN10. *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

FN11. 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

FN12. *See, e.g., Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-1974 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2847317 (N.D.N.Y.)

(Cite as: 2007 WL 2847317 (N.D.N.Y.))

(affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See* *Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 127 S.Ct. 1955, 1968-1969 (2007).[FN13] Rather than turning on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim. *Id.* at 1965-1974. More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

FN13. The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts

consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly,* 127 S.Ct. at 1969.

**\*5** Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[FN14] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*"[FN15] Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[FN16]

FN14. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

FN15. *Hernandez,* 18 F.3d at 136 (citation omitted); *see also* *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) (citations omitted); *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) (citation omitted).

FN16. *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

Moreover, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[FN17] However, "all normal rules of pleading are not absolutely suspended."[FN18] For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[FN19]

FN17. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2847317 (N.D.N.Y.)

(Cite as: 2007 WL 2847317 (N.D.N.Y.))

Cir.2000) (internal quotation and citation omitted); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"). Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.

FN18. *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980) (citations omitted), *accord, Gil v. Vogilano,* 131 F.Supp.2d 486, 491 (S.D.N.Y.2001).

FN19. *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

Finally, it should be remembered that Rule 12(b)(6) motions are limited to the facts alleged in the complaint and must be converted into a motion for summary judgment if the court considers materials outside the pleadings. [FN20] However, of course, the court may, without converting the motion to dismiss into a motion for summary judgment, consider (1) any documents relied on and/or referenced in the complaint (even if those documents are not attached to the complaint, if those documents are provided by defendants in their motion to dismiss), [FN21] and (2) any documents provided by the plaintiff in opposition to defendants' motion to dismiss, to the extent those documents are consistent with the allegations in the complaint. [FN22]

FN20. *See* Fed.R.Civ.P. 12(b) ("If, on a motion asserting the defense numbered (6) o dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

FN21. *See Chambers v. Time Warner,* 282 F.3d 147, 153 & n. 3 (2d Cir.2002) (district court's consideration of certain contracts attached to defendant's motion to dismiss was appropriate where plaintiff relied on documents in drafting his complaint) [collecting cases]; *Levy v. Southbrook Int'l Invest., Ltd.,* 263, F.3d 10, 13, n. 3 (2d Cir.2001) (noting that "it was appropriate for the district court to refer to documents attached to the motion to dismiss since the documents were referred to in the complaint") [citation omitted]; *San LeandroEmergency Med. Group v. Philip Morris Co., Inc.,* 75 F.3d 801, 808 (2d Cir.1996) (a document that is "integral" to the complaint may be considered by the district court on a motion to dismiss "despite the fact that the complaint only contains limited quotations from that document") [collecting cases]; *Harsco Corp. v. Segui,* 91 F.3d 337, 341, n. 1 (2d Cir.1996) ("This letter, though cited to and described in the complaint, was not attached to the complaint. We may nonetheless review the letter in its entirety [in deciding defendants' motion to dismiss].") [citation omitted]; *Cortec Indus., Inc. v. Sum Holding LP,* 949 F.2d 42, 48 (2d Cir.1991) ("When plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."); *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.,* 936 F.2d 759, 762 (2d Cir.1991) ("We ... decline to close our eyes to the contents of the prospectus and to create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the prospectus to the complaint or to incorporate it by reference." [citations omitted].

FN22. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2847317 (N.D.N.Y.)

(Cite as: 2007 WL 2847317 (N.D.N.Y.))

motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96 Civ. 7544, 1997 WL 714878, *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004).

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

After reading Defendants' memorandum of law, and reviewing the applicable case law, I have no choice but to find that Defendants' exhaustion argument, on its face, lacks merit. (*See* Dkt. No. 6, Part 4, at 2-3 [Defs.' Mem. of Law].)

As an initial matter, to the extent that Defendants, during their exhaustion argument, rely on evidence outside the four corners of Plaintiff's Complaint, they straddle, or outright cross, the line between a Rule 12(b)(6) analysis and a Rule 56 analysis. (*See id* . at 2 [relying on the affidavit of Captain Paul Rhodes].) As explained above in Part II.B. of this Report-Recommendation, in certain circumstances, the Court can rely on documents not attached to a plaintiff's complaint without converting a motion to dismiss into a motion for summary judgment. One of those circumstances is when the plaintiff's complaint relies on or references a document provided by the defendant in support of its motion to dismiss.[FN23]

> FN23. *See, supra,* note 21 of this Report-Recommendation.

Here, Defendants implicitly ask the Court, when evaluating Defendants' exhaustion argument, to consider (1) an excerpt of the "Tioga County Inmate Rule Book" setting forth the Jail's inmate grievance procedure, (2) four inmate grievance forms authored by Plaintiff, complaining of inadequate medical care, and (3) a letter dated September 18, 2006, from Plaintiff to one Patricia Scott (a sergeant at Tioga County Jail), complaining about the "lost and/or stolen property" at issue in this action.

**\*6** The problem with the four inmate grievance forms authored by Plaintiff is that they are nowhere relied on, or referenced, by Plaintiff in his Complaint. (*See generally* Dkt. No. 1.) Similarly, the problem with the Jail's inmate grievance procedure is that it is nowhere relied on, or referenced, by Plaintiff in his Complaint. (*See id.*)[FN24] As a result, the Court cannot consider these particular extrinsic documents without converting Defendants' motion to dismiss into a motion for summary judgment. (This I decline to do, and I urge the Court to decline to do. Plaintiff has not been given the required notice of such a conversion of Defendants' motion, nor has he been given an opportunity to present evidence to create an issue of fact, nor has he even been given an attempt to conduct discovery in this action.)

> FN24. The closest that Plaintiff comes, in his Complaint, to conceivably relying on, or referencing, that procedure is when, in response to the question "Why did you choose to not present the facts relating to your complaint in the prison's grievance program?" Plaintiff stated, "The facts of the complaint do not matter in my current facility [i.e., Auburn Correctional Facility]." (*Id.* at ¶ 4[c].) However, clearly, this statement is not an attempt to rely on, or reference, the Tioga County Jail's inmate grievance procedure.

I reach a different conclusion, however, with regard to Plaintiff's letter of September 18, 2006, to Sergeant Scott about the "lost and/or stolen property" at issue in this action. This is because, in his Complaint, Plaintiff alleges, "After several request[s] ... to a third party [regarding my lost or stolen property,] I had my life threaten[e]d and had criminal charges threatened for

Not Reported in F.Supp.2d, 2007 WL 2847317 (N.D.N.Y.)

(Cite as: 2007 WL 2847317 (N.D.N.Y.))

writing to [a] third party [sic]." (*Id.* at ¶ 7.) Admittedly, I have some uncertainty as to whether this "request ... to third party" is a reference to this letter.[FN25] However, the letter is entirely consistent with Plaintiff's allegations. In addition, I am reminded that *pro se* civil rights complaints are to be liberally construed, and interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) [citation omitted]. And, frankly, I believe that the letter in question inures to Plaintiff's benefit more than it works to his detriment, for a variety of reasons. As a result, for the purposes of Defendants' motion, I will liberally construe Plaintiff's Complaint as incorporating by reference the statements made in his letter dated September 18, 2006, to Sergeant Scott about the "lost and/or stolen property" at issue in this action. (Dkt. No. 6, Part 3, Ex. D [Rhodes Affid.].)

> FN25. *Cf. San LeandroEmergency Med. Group,* 75 F.3d at 808 (considering document because it was "integral" to the complaint and the complaint contained quotations from the document); *Harsco Corp.,* 91 F.3d at 341, n. 1 (considering letter because it was "cited to and described in the complaint").

However, even with the benefit of this letter, Defendants' exhaustion argument, when it is evaluated within the confines of a Rule 12(b)(6) analysis, lacks facial merit. This is because, for some years now, it has been the majority rule (followed by the Second Circuit) that a prisoner's fulfillment of his duty to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") is not a fact that the prisoner had to plead in order to state a claim under 42 U.S.C. § 1983 but a fact that may be challenged by a defendant through an affirmative defense (such as on a motion for summary judgment) established by the PLRA. *See, e.g., Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir.1999). Recently, the Supreme Court upheld this interpretation of the exhaustion requirement, prohibiting circuits (such as the Sixth, Tenth and Eleventh Circuits) from using exhaustion as a heightened pleading requirement in prisoner civil rights case. *See Jones v. Block,* 127 S.Ct. 910, 914-915, 918-923 (2007). "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Block,*

127 S.Ct. at 921. Rather, it means that a prisoner has no duty to plead facts plausibly suggesting that he exhausted his administrative remedies. If he chooses to plead facts regarding exhaustion, however, his Complaint may be dismissed for failure to state a claim if "the allegations in the complaint [taken as true] suffice to establish that [the prisoner failed to exhaust his administrative remedies]." *Id.*

**\*7** Here, the allegations in Plaintiff's Complaint, taken as true, simply do not suffice to establish that he failed to exhaust his administrative remedies. Defendants are certainly correct that, in Plaintiff's Complaint, in response to the question "Is there a prisoner grievance procedure at this facility," Plaintiff responded "Yes." (Dkt. No. 1, ¶ 4[a].) Defendants are also correct that, in response to the question "If your answer to 4(a) is YES, did you present the facts relating to your complaint in this grievance program," Plaintiff responded "No." (*Id.* at ¶ 4[b].) However, in Plaintiff's response to the next question, Plaintiff plausibly suggests that he was interpreting the words "this facility" in the previous questions as referring to his current facility at the time of the signing of his Complaint (i.e., Auburn Correctional Facility), not to the facility at which the alleged constitutional violations occurred (i.e., Tioga County Jail).[FN26] As a result, none of Plaintiff's allegations, taken as true, appear to say *anything at all* about what formal grievance procedures he did or did not avail himself of at Tioga County Jail.

> FN26. Specifically, in response to the question "Why did you choose to not present the facts relating to your complaint in the prison's grievance program," Plaintiff responded, "The facts of the complaint do not matter in my current facility." (Dkt. No. 1, ¶ 4[b].)

In any event, Plaintiff has alleged facts plausibly suggesting that he was excused from exhausting his administrative remedies under the circumstances. The Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *See Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004). First, "the court must ask whether [the] administrative remedies [not

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2847317 (N.D.N.Y.)

(Cite as: 2007 WL 2847317 (N.D.N.Y.))

pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill, 380 F.3d at 686* (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted).

Here, Plaintiff has alleged facts plausibly suggesting that Defendants are estopped from asserting exhaustion as an affirmative defense since Defendant Monell threatened Plaintiff's life, and threatened to file criminal charges against Plaintiff, in response to Plaintiff's complaints to Defendants and "a third party" (apparently Sergeant Scott) about Defendants' having "lost" or "stolen" his jewelry, and the other Defendants "helped" Defendant Monell to do so. (*Id.* at ¶¶ 6-7, 9.) Moreover, Plaintiff has alleged facts plausibly suggesting that "special circumstances" exist in that (1) he tried to informally exhaust his administrate remedies at Tioga County Jail, but stopped because he was frustrated from doing so by Defendants, and (2) he did not try to grieve the issue once he was transferred from Tioga County Jail to Auburn Correctional Facility because he was laboring under the misunderstanding that he could no longer avail himself of his administrative remedies at Tioga County Jail and that Auburn Correctional Facility was not the proper forum at which to avail himself of his administrative remedies. (Dkt. No. 1, ¶¶ 4[b], 6-7.) Whether Plaintiff would be able to adduce any evidence of such estoppel or special circumstances sufficient to create an issue of fact on a motion for summary judgment is another question, which I need not, and do not, decide here.

**\*8** For these reasons, I recommend that the Court reject as facially unmerited Defendants' exhaustion argument.

**B. Plaintiff's Allegations of Threats**

In their memorandum of law, Defendants assume that Plaintiff is attempting to assert, in part, some sort of independent claim of a "threat" against Defendants. (Dkt. No. 6, Part 4 at 3-4.) As an initial matter, Defendants do not describe the precise nature of the claim to which they are referring, for example, whether it is a claim for the tort of intentional infliction of emotional distress, the tort of assault, etc. Furthermore, even liberally construing Plaintiff's Complaint, I have trouble discerning such a claim. Plaintiff never uses the words "emotional distress," "mental or emotional injury," or "state law claim" in his Complaint. (*See* Dkt. No. 1, ¶¶ 6-7, 9.) Rather, I liberally construe Plaintiff's allegations of threats to be *inextricably tied* to his allegations of his attempts to exercise his right to "petition the Government for a redress of grievances," as articulated by the First Amendment.[FN27] Plainly stated, Plaintiff appears to be alleging that Defendants threatened him in retaliation for exercising his First Amendment right to complain.

> FN27. For example, when Plaintiff alleges that "[D]efendant [Monell] has threatened my life as well as [threatening me] with [the filing of] criminal charges," he makes that allegation immediately after alleging that "[Defendant] Monell has violated my Constitutional First Amend. rights to freedom of speech and of self expression." (Dkt. No. 1, ¶ 6.) Thus, the allegation of a threat would appear to be an explanation of *how* Defendant Monell violated Plaintiff's First Amendment right. This interpretation of Plaintiff's theory of liability is confirmed by his later allegation that "I had my life threatened and had criminal charges threatened for writting [sic] to a third party [about the deprivation of my property]." (*Id.* at ¶ 7.)

In any event, assuming Plaintiff is attempting to assert such a claim, Defendants are indeed correct that, under the PLRA, any such claim by Plaintiff, to the extent that it is one "for mental or emotional injury," would be precluded by the PLRA, absent a "prior showing of physical injury." (*Id.*)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2847317 (N.D.N.Y.)

(Cite as: 2007 WL 2847317 (N.D.N.Y.))

For these reasons, I accept as facially merited Defendants' argument that any independent state law claim by Plaintiff based on tortious threats by Defendants must be dismissed.

With regard to Plaintiff's First Amendment retaliation claim, Defendants argue, in their memorandum of law, that Plaintiff does not state a viable claim since he does not allege that Defendants actually took any "adverse action" against him. (*Id.* at 4.) More specifically, they argue that (1) the property deprivation does not constitute "adverse action" since it occurred before his exercise of his First Amendment right, and (2) the alleged threats do not constitute such "adverse action" since the threats did not actually result in physical harm or physical injury. (*Id.*) While Defendants are correct in making their first point, they are clearly incorrect in making their second point.

This is because it is clearly established that, for threats to constitute "adverse action" for purposes of a First Amendment retaliation claim, the threats need not have been actually executed, or cause any actual physical harm or physical injury to a prisoner. Rather, all that is required is that the threat was of such a nature as to "deter[ ] a reasonable inmate [from complaining]," or more specifically, to "deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights." [FN28] Here, I find that the allegations of Plaintiff's Complaint, taken as true, plausibly suggest that the threats would have deterred a similarly situated prisoner of ordinary firmness from exercising his First Amendment right to complain about the alleged property deprivation. In particular, Plaintiff alleges that the threats included a threat against his life. (Dkt. No. 1, ¶¶ 6, 7["[D]efendant [Monell] has threatened my life.... I had my life threatened ...."].) Plaintiff also alleges that the threats included a threat to file "criminal charges" against him. (*Id.*) Death threats may constitute "adverse action." [FN29] Indeed, even unfulfilled threats of disciplinary charges may constitute "adverse action." [FN30] Again, whether Plaintiff would be able to adduce any evidence of such threats sufficient to create an issue of fact on a motion for summary judgment is another question, which I need not, and do not, decide here.

FN28. *Gill v. Pidlypchak,* 389 F.3d 379, 381-382 (2d Cir.2004) (Scullin, J., sitting by designation) [internal quotation marks and citations omitted].

FN29. *See, e.g., Hepworth v. Suffolk County,* 02-CV-6473, 2006 WL 2844408, at *8-9 (E.D.N.Y. Sept. 29, 2006) ("continued verbal threats" that inmate "would receive another beating or be killed").

FN30. *See, e.g., Gill v. Tuttle,* 93 F. App'x 301, 303 (2d Cir.2004) (threat to "keep filing misbehavior reports" against plaintiff).

**\*9** For these reasons, I recommend that the Court (1) dismiss any independent state law tort claim by Plaintiff arising out of Defendants' alleged threats against him, and (2) reject as facially unmerited Defendants' argument with regard to Plaintiff's First Amendment retaliation claim.

**C. Plaintiff's Allegations of a Property Deprivation**

To the extent that Defendants argue that Plaintiff's claim of negligent loss of property should be dismissed because negligence is not actionable under 42 U.S.C. § 1983, I agree. (Dkt. No. 6, Part 4, at 5.) Even liberally construing Plaintiff's Complaint, I read it as asserting such a fatal claim of negligence. (Dkt. No. 1, ¶¶ 6, 9 [Plf.'s Compl., alleging that Defendants failed to "log[ ] [the taking of his jewelry] into their property log," and that his jewelry was "lost" or "stolen"].) "[M]ere negligence will not support a section 1983 claim." [FN31]

FN31. *Burgess v. County of Rensselaer,* 03-CV-0652, 2006 U.S. Dist. LEXIS 91521, at *26 (N.D.N.Y. Dec. 14, 2006) (McCurn, J.) [citation omitted]; *see also Estelle v. Gamble,* 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Pena v. Deprisco,* 432 F.3d 98, 112 (2d Cir.2005) ("In order to establish a violation of a right to substantive due process, a plaintiff must

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2847317 (N.D.N.Y.)

(Cite as: 2007 WL 2847317 (N.D.N.Y.))

demonstrate not only government action but also that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' ... [T]he Fourteenth Amendment is not a 'font of tort law.' ... It does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable.... '[N]egligently inflicted harm is categorically beneath the threshold of constitutional due process.' ") [citations omitted].

To the extent that Defendants argue that Plaintiff's claim of property deprivation should be dismissed because he has failed to allege facts plausibly suggesting that Defendants were personally involved in the deprivation, I reject that argument. (Dkt. No. 6, Part 4, at 5.) Plaintiff has alleged that "C.O. Howe and Sgt. [Marsh] have helped Lt. Monell to unlawfully deprive me of my personal property in violation of the 14th Amend. of the U.S. Constitution. The defendants unlawfully took close to $1,500.00$ [sic] worth of jewelry upon [my] admittenced [sic] to there [sic] facility and never returned them [sic]. In fact they [sic] never got logged into their property log." (Dkt. No. 1, ¶ 6.) Plaintiff has further alleged that he made "several request[s]" to Defendants for the replacement of, or reimbursement for, his jewelry, and that Defendants denied those requests, and indeed, threatened him in response to those requests. (*Id.* at ¶ 7.) Liberally construed, these allegations plausibly suggest that Defendants were personally involved in the deprivation at issue. Again, whether Plaintiff would be able to adduce any evidence of such personal involvement to create an issue of fact on a motion for summary judgment is another question.

Finally, to the extent that Defendants argue that Plaintiff's claim of property deprivation should be dismissed because he has failed to allege facts plausibly suggesting that Defendants intentionally stole (or "converted") his property, I reject that argument as well. (Dkt. No. 6, Part 4, at 5.) Plaintiff expressly characterizes his jewelry as "stolen" in his Complaint, as he does in his letter of September 18, 2006, to Sergeant Scott, which Defendants implicitly ask the Court to deem as incorporated into that Complaint by reference. (Dkt. No.

1, ¶ 9; Dkt. No. 6, Part 3, at 24.) Moreover, Plaintiff alleged that (1) "defendants unlawfully" took the jewelry, (2) "never ... logged [the jewelry] into their property log," and (3) "helped" each other to deprive Plaintiff of the jewelry, and (4) threatened Plaintiff when he complained about the jewelry. (*Id.* at ¶¶ 6-7.) Liberally construed, these allegations plausibly suggest that Defendants intentionally stole his property. Again, whether Plaintiff would be able to adduce any evidence of such a theft to create an issue of fact on a motion for summary judgment is another question.

**\*10** For these reasons, I recommend that the Court (1) dismiss Plaintiff's claim of negligent loss of property, and (2) reject as facially unmerited Defendants' arguments regarding Plaintiff's allegations of personal involvement and property theft.

### D. Statute of Limitations

Defendants argue that any claims that Plaintiff is attempting to assert against Defendants under New York State law are barred by the applicable statute of limitations, set forth in New York General Municipal Law §§ 50-e, 50-i.

To the extent that Defendants argue that any independent state law claim by Plaintiff based on Defendants' alleged threats is barred by the applicable statute of limitations, such an argument is moot. As stated above, even liberally construing Plaintiff's Complaint, I have trouble discerning, in that Complaint, any independent state law claim based on Defendants' alleged threats, such as a claim sounding in tort for intentional infliction of emotional distress or assault. *See, supra,* Part III.B. of this Report-Recommendation. As a result, I have already recommended that such attempted claim by Plaintiff be dismissed because (1) it does not allege facts plausibly suggesting that such a tort occurred, and (2) any such claim would be precluded by the PLRA's "prior showing of physical injury" requirement.

Incidentally, I note that the limitations period governing civil rights claims brought in New York and asserted under 42 U.S.C. § 1983 (including Plaintiff's First Amendment retaliation claim, which involves an allegation of various threats made against him) is three years, absent

Not Reported in F.Supp.2d, 2007 WL 2847317 (N.D.N.Y.)

(Cite as: 2007 WL 2847317 (N.D.N.Y.))

evidence of a continuing violation or grounds for equitable tolling. *See Patterson v. County of Oneida,* 375 F.3d 206, 225 (2d Cir.2004); *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir.1994).[FN32]

> FN32. *See also Wilson v. Garcia,* 471 U.S. 261, 266-268 (1985); 42 U.S.C. § 1988; N.Y. C.P.L.R. § 214(5) (personal injury statute of limitations).

To the extent that Defendants argue that any independent state law tort claims by Plaintiff for (1) misappropriation (or "conversion") of property and (2) negligent loss of property should be dismissed as untimely, it appears that Defendants are correct that the limitations period governing those state law tort claims would be the period set forth in New York General Municipal Law §§ 50-e, 50-i.[FN33] *See White v. City of Mount Vernon,* 633 N.Y.S.2d 369, 370 (N.Y.App.Div., 2d Dept., 1995); *Schwinghammer v. Sullivan W. Cent. Sch. Dist.,* 768 N.Y.S.2d 696, 696-697 (N.Y.App.Div., 3d Dept., 2003); *Bliss v. Vill. of Arcade,* 761 N.Y.S.2d 573, 573 (N.Y.App.Div., 4th Dept., 2003). However, Defendants' statute-of-limitations argument with regard to these two state law tort claims contains a fatal flaw that I cannot ignore.

> FN33. I note that I have *some* trouble construing Plaintiff's Complaint as intending to assert an independent state law claim of tortious conversion or negligence. Plaintiff never uses the words "conversion" or "state law claim" in his Complaint. (*See* Dkt. No. 1, ¶¶ 6-7, 9.) Nor does he use the words "negligence" or "careless." (*Id.*) Nor does he mention his loss of property without appearing to inextricably tie that loss to his Fourteenth Amendment deprivation-of-property claim. (*See, e.g.*, at ¶ 6 ["C.O. Howe and Sgt. [Marsh] helped Lt. Monell to unlawfully deprive me of my personal property *in violation of the 14th Amend. of the U.S. Constitution.*" ] [emphasis added], *accord, id.* at ¶ 7, "Second Cause of Action," "Third Cause of Action.") However, I am reminded that I must liberally construe Plaintiff's Complaint "to raise the strongest arguments that they suggest." *Cruz v.*

*Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted). As a result, I will liberally construe Plaintiff's Complaint as intending to assert these two state law tort claims.

Because Defendants advance this statute-of-limitations argument through a Rule 12(b)(6) motion to dismiss, I am confined to the four corners of Plaintiff's Complaint for the answer to the question of whether Plaintiff complied with the relevant limitations period. Based on the allegations contained in Plaintiff's Complaint (and Plaintiff's letter of September 18, 2006, to Sergeant Scott, which, as explained above, I have deemed as incorporated into Plaintiff's Complaint by reference), it is unclear to me that the date of the incident giving rise to such a claim is in fact November of 2004. (Dkt. No. 6, Part 4, at 6; Dkt. No. 6, Part 3, at 24.) For example, if Defendants took Plaintiff's jewelry with the intent to convert it upon his admission to the Jail, then the elements of the tort of conversion were complete in November of 2004; however, if Defendants did not take Plaintiff's jewelry with the intent to convert it upon his admission to the Jail, but formed that intent at some later date (such as when Plaintiff was next discharged from the Jail and/or demanded the jewelry's return), then the elements of the tort were not complete until that later date, whenever that date was.[FN34] Due to the lack of specificity in Plaintiff's Complaint, we do not know when he is alleging that intent was formed.[FN35] (Nor is it likely that the parties will have any evidence of such a fact without the benefit of discovery.)

> FN34. *See White v. City of Mount Vernon,* 633 N.Y.S.2d 369, 370 (N.Y.App.Div., 2d Dept., 1995).

> FN35. I note that Plaintiff had no duty to plead that particular detail in order to state a claim. As with the failure to exhaust one's administrative remedies, a failure to comply with the applicable statute of limitations is an affirmative defense, which a defendant must prove and which a plaintiff need not plead. *See* Fed.R.Civ.P. 8(c);

Not Reported in F.Supp.2d, 2007 WL 2847317 (N.D.N.Y.)

(Cite as: 2007 WL 2847317 (N.D.N.Y.))

*Jones v. Block,* 127 S.Ct. 910, 920-921 (2007) ("If the allegations ... show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; [but] that does not make the statute of limitations any less an affirmative defense ....").

**\*11** More important, we do not know, based solely on the allegations of Plaintiff's Complaint, whether he in fact complied with New York General Municipal Law §§ 50-e, 50-i. Granted, Defendants have adduced evidence that Plaintiff never filed a notice of claim within 90 days after the claim arose, as required by New York General Municipal Law § 50-e. (Dkt. No. 6, Part 3, ¶¶ 8, 10 [Rhodes Affid.].) However, as explained above, consideration of such evidence would convert Defendants' motion to dismiss to a motion for summary judgment. And such a conversion would be improper since Plaintiff has not been given the required notice of such a conversion of Defendants' motion, nor has he been given an opportunity to present evidence to create a question of fact on the issue (nor has he even been given an attempt to conduct discovery on the issue). For example, on a properly filed motion for summary judgment, Plaintiff might conceivably be able to adduce evidence that (1) he did in fact file, or diligently attempt to file, such a notice of claim, and/or (2) he was prevented by Defendants from filing such a notice of claim due to their threats against him.

Of course, the Court has the discretion to not exercise jurisdiction over any such pendent state law claims, under the principles of *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."). However, I believe that such a decision is best left for a later time, after Defendants' inevitable motion for summary judgment has been decided, and it has been determined whether any federal civil rights claims exist to which state law claims may be appended.

For these reasons, I recommend that the Court reject as facially unmerited Defendants' statute-of-limitations argument.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 6) be ***GRANTED* in part,** insofar as that motion requests the dismissal of (1) any independent state law tort claim by Plaintiff arising out of Defendants' alleged threats against him, and (2) any federal civil rights claim by Plaintiff alleging negligent loss of property by Defendants, but that the motion be **otherwise *DENIED;*** and it is further

**ORDERED** that the Clerk's Office shall change Plaintiff's address of record in this action from Auburn Correctional Facility to Southport Correctional Facility (as requested by him in Dkt. No. 9, Part 2).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2007.

Pierce v. Monell
Not Reported in F.Supp.2d, 2007 WL 2847317 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 776416 (W.D.N.Y.)

(Cite as: 2007 WL 776416 (W.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

W.D. New York.
Delroy KEMP, Plaintiff,
v.
Lucien J. LeCLAIRE, Theresa Knapp-David, Donald Selsky, Randy James, C.O. Bea, Darryl Borawski, A. Welsh, Officer A. Brigzna, D. Morris, A. Mezydlo, James Conway and Ms. Arnone, Defendants.
No. 03-CV-844S.

March 12, 2007.

Delroy Kemp, Elmira, NY, pro se.

Kim S. Murphy, NYS Attorney General's Office, Buffalo, NY, for Defendants.

**DECISION AND ORDER**

WILLIAM M. SKRETNY, United States District Judge.

**I. INTRODUCTION**

*1 In this action, pro se Plaintiff Delroy Kemp alleges pursuant to 42 U.S.C. § 1983 that Defendants violated several of his constitutional rights by, *inter alia,* repeatedly retaliating against him for filing grievances against prison officials. Presently before this Court is Defendants' Motion for Summary Judgment.[FN1] This Court has reviewed and considered the motion papers and finds that oral argument is unnecessary. For the following reasons, Defendants' motion is granted in its entirety.

> FN1. In support of their Motion for Summary Judgment, Defendants filed the following documents: a memorandum of law, a Rule 56 Statement of Undisputed Facts, the Declaration of Aivars Brigzna, the Declaration of Randy James, the Declaration of Allan Welsh, the May 12, 2006 Declaration of Kim Murphy, Esq., and two Reply Declarations of Kim Murphy, Esq. filed June 30 and November 6, 2006. In opposition to Defendants' motion, Plaintiff filed

three of his own Declarations dated June 19, July 10, and November 28, 2006.

**II. BACKGROUND**

**A. Procedural History**

Plaintiff's Complaint was entered on the docket on November 10, 2003. Because Plaintiff was granted *in forma pauperis* status, his Complaint was screened pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a). As a result of this screening process, this Court dismissed several defendants, primarily because Plaintiff failed to assert adequate claims against them. (*See* Docket No. 5.) On May 12, 2006, the remaining defendants filed the instant Motion for Summary Judgment. The parties fully briefed the motion, and as of November 28, 2006, this Court took the matter under advisement without oral argument. The facts underlying Plaintiff's claims are discussed below.

**B. Facts**

Plaintiff is an inmate in the custody of the New York State Department of Correctional Services ("DOCS"). (Defendants' Rule 56 Statement of Undisputed Facts ("Defendants' Statement"), ¶ 1.) At one time, Plaintiff resided in the Great Meadow Correctional Facility. (Defendants' Statement, ¶¶ 3, 4.) DOCS transferred Plaintiff from Great Meadow to the Attica Correctional Facility on February 20, 2003. (Defendants' Statement, ¶ 3.) This transfer was effectuated because mental health professionals determined that Plaintiff would benefit from treatment through the Specialized Treatment Program ("STP") available at Attica. (James Decl., ¶ 13.) However, Plaintiff stopped attending STP shortly after arriving at Attica, despite being encouraged to continue. (James Decl., ¶ 14.) Plaintiff alleges that he stopped attending because officers and inmates were verbally harassing him. (Complaint, p. 9.)

The staff at Attica placed Plaintiff in the Special Housing Unit ("SHU") upon his arrival, which is a unit designated for inmates with disciplinary violations. (Defendants' Statement, ¶ 3; James Decl., ¶ 6.) Plaintiff's history includes 44 Misbehavior Reports related to threats

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 776416 (W.D.N.Y.)

(Cite as: 2007 WL 776416 (W.D.N.Y.))

and violence against staff. (James Decl., ¶ 9.)

Plaintiff maintains that from the outset, Defendants undertook a campaign of retaliation against him because he filed numerous grievances. This retaliation included verbal and physical threats, punitive restraint and cell shield orders, an assaultive pat frisk, the denial of medical care and the opening of his legal mail. These incidents are set forth below.

**1. Verbal and Physical Threats**

Plaintiff alleges that he was verbally abused and physically threatened by Defendants Arnone, Borawski, Bea, Brigzna and James for filing grievances. He alleges that he was told at various times that he would be hanged in his cell, that all of the bones in his body would be broken, that he would be sent to his mother in a black box, and that he would have his "black ass kicked," all because he repeatedly filed grievances against prison staff. Plaintiff further maintains that he was called a "black nigger bitch," a rat, and a "pain in the ass." He also maintains that Defendants Morris and Mezydlo told other inmates that they would not receive any favors because of Plaintiff's complaints about prison staff.

**2. The Restraining Order**

*2 On February 16, 2003, while Plaintiff was at Great Meadow, he was under a restraining order because of his continued threats and assaults against staff members. (James Decl., ¶ 7.) Defendant James, Deputy Superintendent of Security at Attica, continued this order when Plaintiff was transferred to Attica. (Defendants' Statement, ¶¶ 4, 5.) Defendant James is authorized to impose such an order under 7 NYCRR § 305.4, which provides as follows:

Section 305.4 Restraint orders.

(a) Any inmate assigned to an SHU who has history of assaultive behavior and/or who presents a threat to the safety or security of himself/herself, other persons, or State property may be placed under a restraint order by the deputy superintendent for security or, in his/her absence, the O.D. or higher ranking authority.

(b) A restraint order will be valid for no more than seven days and may be renewed by the deputy

superintendent for security or, in his/her absence, the O.D. or higher ranking authority.

(c) A copy of the restraint order and any renewal thereafter must be forwarded to the superintendent and the inmate within 24 hours. The order and any renewal thereafter must briefly state the reason(s) for the order or renewal and contain the following notice to the inmate: "You may write to the deputy superintendent for security or his/her designee to make a statement as to the need for continuing the restraint order."

(d) A restraint order will describe the types of restraints to be used and the manner in which they are to be applied (e.g., handcuffed in front or in back, with or without waist chain, with or without leg irons).

(e) If an inmate is under a restraint order directing that he/she be mechanically restrained whenever he/she leaves the SHU cell for any reason, the inmate will remain mechanically restrained during the entire period of time he/she is out of the SHU cell, except:

(1) upon request of a physician, nurse practitioner, or a physician's assistant (P.A.) when removal is necessary to permit medical treatment;

(2) upon request of the Parole Board at a parole hearing;

(3) upon the request of a judge or magistrate;

(4) when the inmate can be secured in a shower room during the scheduled shower period;

(5) when the inmate has been secured in the exercise area, unless the restraint order (or renewal) includes a written determination stating the reason(s) why the removal of restraints in the exercise area would, in the light of the particular circumstances relative to the affected inmate, present a treat to the safety or security of the inmate, other persons or State property. Such a determination, in any restraint order or renewal, shall only remain in effect for three days unless approved in writing by the superintendent or acting superintendent, based upon his or her review of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 776416 (W.D.N.Y.)

(Cite as: 2007 WL 776416 (W.D.N.Y.))

the relevant facts. Note: This paragraph does not apply to Southport Correctional Facility;

(6) upon order of the deputy superintendent for security services or higher ranking authority; or

**\*3** (7) when in a general population visiting room and not in a noncontact area.

(f) When mechanical restraints are removed pursuant to subdivision (e) of this section, they will be reapplied as specified in the restraint order prior to return to the SHU cell.

[7 NYCRR § 305.4](#)

Defendant James reviewed this order each week, and continued to renew the order through September 12, 2003, at which time the DOCS stopped using this type of restraining order. (Defendants' Statement, ¶¶ 6, 7, 9.) Defendant James continuously renewed his restraining order because he believed it was necessary to prevent Plaintiff from committing further acts of violence against staff and other inmates. (Defendants' Statement, ¶ 8.)

Plaintiff maintains that there was no cause for the restraining order and that Defendant James kept it in place as a punitive measure for Plaintiff's filing of grievances. (Complaint, p. 10.) He further alleges that Defendant James repeatedly renewed the restraint order because Plaintiff refused to participate in the STP, despite Defendant James' encouragement of him to do so. (Complaint, pp. 10-11, 12.)

### 3. The Cell Shield Order

Along with the restraining order, Defendant James found cause to issue a cell shield order against Plaintiff based on his continued threats against staff and his unhygienic acts. (Defendants' Statement, ¶¶ 11, 13.) Defendant James is authorized to impose such an order under [7 NYCRR § 305.6](#), which provides as follows:

[Section 305.6](#) Use of cell shields.

(a) A cell shield is a transparent cell front covering, equipped to provide adequate ventilation.

(b) Cell shields may be ordered for good cause, including but not limited to the reasons listed below:

(1) Spitting through the cell door, or the throwing of feces, urine, food, or other objects through the cell door.

(2) The inmate refuses to keep his/her hands within the cell and/or otherwise attempts to assault or harass staff.

(3) The inmate is so disruptive as to adversely affect the proper operation of the unit.

(c) Use of the cell shield shall be ordered by the deputy superintendent for security or, in his/ her absence, the O.D. or higher ranking authority. The cell shield order shall be valid for no more than seven days and may be renewed by the deputy superintendent for security or, in his/her absence, the O.D. or higher ranking authority.

(d) A copy of the cell shield order and any renewal thereafter shall be forwarded to the superintendent and the inmate within 24 hours. The order and any renewal thereafter shall briefly state the reason for the order or renewal and contain the following notice to the inmate: "You may write to the deputy superintendent for security or his/her designee to make a statement as to the need for continuing the cell shield order."

[7 NYCRR § 305.6](#)

Defendant James renewed this order on a weekly basis from February 28, 2003, through April 25, 2003, at which point he discontinued it because Plaintiff was housed on the third floor of the SHU, which had permanent plexiglass shields on the cells. (Defendants' Statement, ¶¶ 13, 14, 16; James Decl., ¶ 25.)

**\*4** Again, Plaintiff maintains that there were no grounds for this order and that Defendant James kept the order in place to retaliate against him for filing grievances against prison staff.

### 4. The Opening of Legal Mail

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 776416 (W.D.N.Y.)

(Cite as: 2007 WL 776416 (W.D.N.Y.))

On August 22, 2003, Defendant Welsh received a letter from Prisoners Legal Services that was addressed to Plaintiff, but contained the identification number of another inmate. (Defendants' Statement, ¶ 17; Welsh Decl., ¶ 6.) Because of this discrepancy, Defendant Welsh advised Plaintiff that the letter would be opened in his presence to determine whether it was in fact intended for him, and to inspect it for contraband. (Defendants' Statement, ¶ 18.) Defendant Welsh opened the letter in Plaintiff's presence in an interview room, examined it briefly, and determined that it was intended for Plaintiff. (Defendants' Statement, ¶ 19; Welsh Decl., ¶¶ 6-8.) Defendant Welsh did not read the letter, nor did he question Plaintiff regarding the nature of the letter. (Defendants' Statement, ¶ 20.)

Plaintiff alleges that Defendant Welsh opened and read his legal mail and then asked him whether he filed another complaint against the prison. (Complaint, p. 16.) Plaintiff allegedly responded that he was not required to discuss his legal proceedings. (Complaint, p. 16.)

**5. Pat-Frisk**

On September 17, 2003, Defendant Brigzna conducted a pat-frisk on Plaintiff before Plaintiff went to the shower. (Defendants' Statement, ¶ 21.) A pat-frisk search requires searching the buttocks and groin areas, which are favored areas for concealing contraband. (Defendants' Statement, ¶ 23.) This type of search is required for every inmate who enters or leaves the SHU, and is authorized by 7 NYCRR § 305.1 as follows:

Section § 305.1 Frisks.

In accordance with the provisions of directives concerning "Control of and Search for Contraband," the following procedures will be followed in such designated special housing units.

...

(b) *Pat frisk.* An inmate will be pat-frisked whenever he goes out of or returns to the SHU; and/or prior to and upon returning from any exercise periods, hearings, interviews, etc.

7 NYCRR § 305.1.

Plaintiff did not seek medical attention after the pat-frisk, despite the availability of medical staff through regular rounds in the SHU. (Defendants' Statement, ¶ 25.) However, Plaintiff sought medical attention three days later, on September 20, 2003, complaining of mild pain in his testicle. (Defendants' Statement, ¶¶ 26, 27.) Dr. Stephan Lakowski examined Plaintiff and found no evidence of swelling. (Defendants' Statement, ¶ 27.)

Plaintiff maintains that Defendant Brigzna slapped his right testicle "very hard" during the pat-frisk, and then "felt [his] left side ass." (Complaint, p. 18.) Plaintiff asserts that he asked to see medical personnel immediately after the pat-frisk because his testicle hurt, but that his request was denied and he was told that he would be cited for assault if he persisted in his bid for medical assistance. (Complaint, p. 18.)

**III. DISCUSSION**

**\*5** Cognizant of the distinct disadvantage that pro se litigants face, federal courts routinely read their submissions liberally, and interpret them to raise the strongest arguments that they suggest. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). Since Plaintiff is proceeding pro se, this Court has considered his submissions and arguments accordingly.

Plaintiff argues that Defendants took the measures discussed above in retaliation for his numerous grievances and in violation of his constitutional rights under the First, Eighth and Fourteenth Amendments. Defendants do not deny that these events took place (other than the verbal threats and denial of medical care), but rather, maintain that there is a legitimate reason for each action taken, and that none of Plaintiff's constitutional rights were violated. Moreover, they maintain that even if a constitutional violation occurred, they are entitled to the protections of qualified immunity. The parties' respective positions are discussed below.

**A. Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the

Not Reported in F.Supp.2d, 2007 WL 776416 (W.D.N.Y.)

(Cite as: 2007 WL 776416 (W.D.N.Y.))

"pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Ford v. Reynolds,* 316 F.3d 351, 354 (2d Cir.2003). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson,* 477 U.S. at 248. In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

At this stage, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249. Thus, summary judgment is not appropriate if "there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Ford,* 316 F.3d at 354.

When deciding a motion for summary judgment, a court must view the evidence and the inferences drawn from the evidence "in the light most favorable to the party opposing the motion." *Addickes v. S.H. Kress and Co.,* 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970). However, the party against whom summary judgment is sought "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991).

**B. 42 U.S.C. § 1983**

**\*6** Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities

secured by the Constitution and laws. *See* 42 U.S.C. § 1983. On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. *See Graham v. Connor,* 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting *Baker v. McCollan,* 443 U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)). Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged. *See Baker,* 443 U.S. at 140. Here, Plaintiff's various § 1983 claims are grounded in the First, Eighth and Fourteenth Amendments.

**C. Personal Involvement**

Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983. *See Haygood v. City of New York,* 64 F.Supp.2d 275, 280 (S .D.N.Y.1999). Moreover, it is well settled in this Circuit that personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of damages under § 1983. *See McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977); *Richardson v. Coughlin,* 101 F.Supp.2d 127, 129 (W.D.N.Y.2000); *Pritchett v. Artuz,* No. 99 Civ. 3957(SAS), 2000 WL 4157, at *5 (S.D.N.Y. Jan. 3, 2000). The Second Circuit construes personal involvement in this context to mean "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996); *see also Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994).

Defendants LeClaire, Knapp-David and Selsky argue that they must be dismissed because Plaintiff's Complaint does not contain any allegations against them. Plaintiff contends that these defendants were personally involved because they failed to act on letters that he sent them complaining about threats and other mistreatment, and requesting a transfer out of Attica. (Plaintiff's June 19, 2006 Decl ., p. 5.)

The fact that Plaintiff sent letters of complaint to Defendants LeClaire, Knapp-David and Selsky is insufficient to maintain a § 1983 claim against them. Courts have consistently held that the mere receipt of a letter does not render a supervisor personally liable. *See*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 776416 (W.D.N.Y.)

(Cite as: 2007 WL 776416 (W.D.N.Y.))

*Hyman v. Holder,* No. 96 Civ. 7748(RCC), 2001 WL 262665, *6 (S.D.N.Y.2001)* (no personal involvement where inmate wrote letter to supervisor, who then forwarded it to deputy); *see also Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Richardson,* 101 F.Supp.2d at 131; *Thomas v. Coombe,* 95 Civ. 10342, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998); *Gayle v. Lucas,* 97 Civ. 883, 1998 WL 148416, at *4 (S.D.N.Y. Mar. 30, 1998).

**\*7** It appears that Plaintiff is suing each of these defendants simply because they held supervisory positions. Such allegations are insufficient to establish the required level of personal involvement. *See Black,* 76 F.3d at 74 ("a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority"). There is no evidence (or allegation) that Defendants LeClaire, Knapp-David or Selsky were personally involved in the alleged constitutional deprivations or had direct knowledge thereof. As such, these defendants are entitled to summary judgment and will be dismissed.

**D. Verbal and Physical Threats**

As indicated, Plaintiff alleges that he was verbally abused and physically threatened by Defendants Arnone, Borawski, Brigzna, Bea and James. Defendants vigorously deny these allegations. (Brigzna Decl., ¶¶ 12, 15; James Decl., ¶¶ 5, 16, 17.) Nonetheless, even assuming that these defendants insulted and threatened Plaintiff in the manner that he alleges, this Court finds that no constitutional violation occurred.

Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under § 1983. *See Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir.1985); *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986)(per curiam)(finding that a claim that a prison guard called an inmate a name does not allege any appreciable injury); *see also Rivera v. Goord,* 119 F.Supp.2d 327, 342 (S.D.N.Y.2000) (collecting cases). Moreover, the use of racial epithets, racially prejudicial insults and name-calling, without more, does not violate the Constitution. *See Cuoco v. U.S. Bureau of Prisons,* No. 98 Civ. 9009, 2001 WL 167694, at *3 (S.D.N.Y. Feb. 16, 2001) (finding that although abhorrent, verbal

harassment and profanity do not violate an inmate's constitutional rights); *Brown v. Croce,* 967 F.Supp. 101, 104 (S.D.N.Y.1997) (racial slurs and epithets not actionable); *Jeromosen v. Coughlin,* 878 F.Supp. 444, 449 (N.D.N.Y.1995) (same).

There is no evidence in the record to support a finding that Plaintiff was injured by or as a result of the verbal abuse and physical threats that he alleges Defendants' directed at him. Indeed, Plaintiff does not assert that he suffered any physical injury. As such, he does not state a constitutional claim under § 1983, and Defendants Arnone, Borawski, Brigzna, Bea and James are entitled to summary judgment.

**E. The Restraining and Cell Shield Orders**

Plaintiff contends that Defendant James' imposition of the restraining and cell shield orders violated his Eighth Amendment rights. Prison officials have wide latitude to place restraints on inmates and only violate the Eighth Amendment if the imposed restraint is "totally without penological justification, grossly disproportionate, or involves the unnecessary and wanton infliction of pain." *Horne v. Coughlin,* 155 F.3d 26, 31 (2d Cir.1998) (citations omitted).

**\*8** There are no disputed issues of fact on this claim. Plaintiff concedes that Defendant James imposed the restraint and cell shield orders pursuant to 7 NYCRR §§ 305.4 and 305.6 because of his disciplinary history, including 44 previous Misbehavior Reports. (Plaintiff's June 19, 2006 Decl., pp. 13, 14.) Plaintiff simply contends that, in his judgment, he was not a threat to security. (*Id.*) While Plaintiff may hold this belief, the fact remains that Defendant James was authorized to impose the restraining and cell shield orders under the regulations, and he did so for a legitimate, penological purpose. Defendant James reviewed the propriety of the orders on a weekly basis as required and determined that continuation was warranted. (James Decl., ¶¶ 9, 21.) As such, there is no violation of the Eighth Amendment. *See Dabney v. McGinnis,* 97 CV 489, 2006 WL 1285625, at *5 (W.D.N.Y. May 9, 2006) (upholding use of restraint order to shackle inmate for exercise); *DeMaio v. Mann,* 877 F.Supp. 89, 93 (N.D.N.Y.1995) (use of plexiglass shield on cell that does not interfere with air flow does not violate the Eighth or

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 776416 (W.D.N.Y.)

(Cite as: 2007 WL 776416 (W.D.N.Y.))

Fourteenth Amendment).

To the extent Plaintiff claims a Fourteenth Amendment violation based on a denial of Due Process, "it has been held that the daily review of deprivation orders, the availability of the inmate grievance program, and the fact that the inmate has a judicial remedy to challenge deprivation orders, and restraining orders, under CPLR article 78 clearly provide due process of law." *Dawes v. Coughlin,* 964 F.Supp. 652, 658 (N.D.N.Y.1997). Moreover, "courts in this Circuit have found that a prison inmate in New York has no protected liberty interest in confinement in an unshielded cell." *Breazil v. Bartlett,* 998 F.Supp. 236, 243 (W.D.N.Y.1997) (citing *DeMaio,* 877 F.Supp. at 93 and *Young v. Scully,* 91 Civ. 4332, 1993 WL 88144, at *3 (S.D.N.Y. Mar. 22, 1993)). As such, no violation of the Fourteenth Amendment occurred.

Accordingly, this Court finds that Defendant James is entitled to summary judgment on this claim.

**F. The Opening of Legal Mail**

Plaintiff argues that Defendant Welsh's opening and examination of his legal mail violated his constitutional rights. Inmates retain a recognized right under the First Amendment to the free flow of their incoming and outgoing mail subject to reasonable restrictions related to legitimate penological interests. *See Thornburgh v. Abbott,* 490 U.S. 401, 413-415, 109 S.Ct. 1874, 104 L . Ed.2d 459 (1999); *Heimerle v. Attorney Gen.,* 753 F.2d 10, 12-13 (2d Cir.1985). To maintain a claim, however, an inmate must demonstrate more than a single instance of interference with his mail. *See Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003) ("an isolated incident of mail tampering is usually insufficient to establish a constitutional violation"); *Washington v. James,* 782 F.2d 1134, 1139 (2d Cir.1986) (isolated incident of interference with inmate's mail insufficient to state a claim under § 1983); *Morgan v. Montayne,* 516 F.2d 1367, 1372 (2d Cir.1975) (same). Rather, to establish a violation, an inmate must demonstrate that prison officials "regularly and unjustifiably interfered with the incoming legal mail." *Davis,* 320 F.3d at 351 (citations omitted).

**\*9** Here, Plaintiff alleges only a single incident of

mail interference that did not result in any identifiable harm. Even assuming that Defendant Welsh read Plaintiff's letter, which he denies doing, Plaintiff fails to state a constitutional claim. In addition, it is undisputed that the piece of legal mail in question was addressed to Plaintiff but contained a different inmate's identification number. (Welsh Decl., ¶ 6.) Thus, Defendant Welsh properly opened the letter, in Plaintiff's presence, to determine its rightful owner and whether it contained contraband. *See Word v. Croce,* 169 F.Supp.2d 219, 228 (S.D.N.Y.2001) ("prison officials may open incoming mail to ensure that no contraband is contained in the correspondence") (quoting *Webster v. Mann,* 917 F.Supp. 185, 187 (W.D.N.Y.1996). Accordingly, Defendant Welsh is entitled to summary judgment on Plaintiff's claim that he violated his First Amendment rights.

**G. Pat-Frisk and Request for Medical Care**

**1. The Pat-Frisk**

Plaintiff alleges that Defendant Brigzna violated his Eighth Amendment rights by using excessive force against him when he allegedly slapped him in his right testicle during the pat-frisk. Moreover, Plaintiff maintains that Defendant Brigzna sexually assaulted him during the pat-frisk by fondling his buttocks.

Defendant Brigzna denies that he assaulted Plaintiff and notes that Plaintiff's grievance of this incident was denied because the investigation revealed that Plaintiff's allegations were without merit. (Brigzna Decl., ¶¶ 5-8.) Moreover, Defendant Brigzna contends that the investigator noted in his report that the video surveillance tape revealed that Defendant Brigzna did not strike Plaintiff in the groin or fondle his buttocks during the pat-frisk. (Brigzna Decl., ¶ 8.)

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter,* 501 U.S. 294, 297, 11 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991). "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being." *Helling v. McKinney,* 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (quotation and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 776416 (W.D.N.Y.)

(Cite as: 2007 WL 776416 (W.D.N.Y.))

citation omitted). Part of the state's duty is to protect inmates from punishments that are "totally without penological justification." *See Williams v. Fitzpatrick, No. 03 CV 11, 2006 WL 1889964, at *2 (D.Vt. July 10, 2006)* (quoting *Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)*).

Plaintiff's Eighth Amendment excessive force claim is evaluated under the familiar two-prong inquiry. *See Warren v. Chakravorty, No. 03 Civ. 8736, 2006 WL 2067736, at *7 (S.D.N.Y. July 25, 2006)*. That is, both an objective and subjective prong must be satisfied. To meet the objective prong, the alleged violation must be "sufficiently serious" by objective standards. *Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)*. To meet the subjective prong, the inmate must show that the prison officials involved had a wanton state of mind when they engaged in the misconduct. *See Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir.1999)* (quoting *Davidson v. Flynn, 32 F.3d 27, 30 (2d Cir.1994)*).

**\*10** As noted, Plaintiff alleges that Defendant Brigzna used excessive force when he allegedly slapped him in his right testicle during the pat-frisk. This Court finds that Defendant Brigzna is entitled to summary judgment on this claim for several reasons.

First, Plaintiff has not presented any evidence that this incident actually took place. He rests only on his bare accusations. *See* FED.R.CIV.P. 56(e) ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial"); *see Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir.1994)* ("mere allegations or denials" not enough to defeat summary judgment); *Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998)* (conclusory allegations and unsubstantiated speculation cannot defeat summary judgment). Defendants, on the other hand, have presented evidence that an internal investigation revealed that Plaintiff's present allegations have no merit. (Brigzna Decl., ¶¶ 5-8.) This determination was also upheld on internal appeal. (Brigzna Decl., ¶ 9.)

Second, even assuming that Defendant Brigzna's hand

came into contact with Plaintiff's testicle, there is no evidence whatsoever that Defendant Brigzna took such action as a punitive measure against Plaintiff. Plaintiff does not dispute that 7 NYCRR 305.1 requires that inmates entering or leaving the SHU be pat-frisked by officers. He may disagree with the regulation, but Plaintiff does not dispute that Defendant Brigzna conducted the pat-frisk because Plaintiff was leaving the SHU to go to the showers. Thus, Defendant Brigzna acted with a legitimate penological purpose pursuant to the regulation.

Third, even assuming that Defendant Brigzna slapped Plaintiff's testicle as alleged, Plaintiff's claim fails. There is no medical evidence establishing that Plaintiff suffered a serious injury, and even if there was, there is no evidence from which a reasonable trier of fact could conclude that Defendant Brigzna acted maliciously. *See Green v. Morse, No. 00-CV-6533, 2005 WL 1490301, at *3 (W.D.N.Y. June 23, 2005)* ("even if the harm inflicted is not significant, if plaintiff can show malicious intent then the objective prong will [ ] almost always be satisfied"); *Griffin, 193 F.3d at 91* (malicious use of force to cause harm constitutes an Eighth Amendment violation per se whether or not significant injury is evident).

The subjective inquiry requires this Court to determine whether there is evidence from which it could be concluded that the prison officials involved had a wanton state of mind when they engaged in the misconduct. *See Davidson, 32 F.3d at 30*. Put another way, the "core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Warren, 2006 WL 2067736, at *7* (quoting *Hudson v. McMillian, 503 U.S. 1, 6-7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)*). In light of the complete absence of any evidence that Defendant Brigzna acted with a wanton state of mind and the existence of evidence that he in fact acted with a legitimate penological purpose, this Court finds that no reasonable jury could find that Defendant Brigzna violated Plaintiff's Eighth Amendment rights.

**\*11** Finally, to the extent Plaintiff asserts that Defendant Brigzna sexually abused or assaulted him, Defendant Brigzna denies committing such an act (Brigzna Decl., ¶ 7) and, in any event, the Second Circuit

Not Reported in F.Supp.2d, 2007 WL 776416 (W.D.N.Y.)

(Cite as: 2007 WL 776416 (W.D.N.Y.))

has determined that an isolated act of alleged sexual touching is insufficient to state an Eighth Amendment claim. *Boddie v. Schnieder,* 105 F.3d 857, 860-61 (2d Cir.1997); *Young v. Poff,* No. 04 CV 320, 2006 WL 1455482, at *3 (W.D.N.Y. May 22, 2006) (discussing *Boddie).*

Accordingly, this Court finds that Defendant Brigzna is entitled to summary judgment on Plaintiff's claim that he used excessive force and sexually assaulted him in violation of his Eighth Amendment rights.[FN2]

> FN2. To the extent that Plaintiff argues that the mere fact that he was subjected to a pat-frisk violated his Eighth Amendment rights, that claim also fails. Conditions of confinement violate the Eighth Amendment only when "they result 'in unquestioned and serious deprivations of basic human needs' or 'deprive inmates of the minimal civilized measure of life's necessities.' " *Anderson v. Coughlin,* 757 F.2d 33, 34-35 (2d Cir.1985)(quoting *Rhodes,* 452 U.S. at 347). There is simply no evidence that Plaintiff suffered a serious deprivation of his basic human needs as a result of being pat-frisked.

**2. Request for Medical Care**

Plaintiff also maintains that Defendants Brigzna, Welsh and Morris ignored his requests to see medical personnel following the pat-frisk and refused to provide him medical care in violation of the Eighth Amendment.

The Eighth Amendment to the United States Constitution applies to the States through the Fourteenth Amendment, and "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson,* 501 U.S. at 297; U.S. Const. amend. VIII. As such, prison conditions and the treatment prisoners receive while incarcerated are subject to scrutiny under the Eighth Amendment. *See DeShaney v. Winnebago County Dept. of Social Svcs.,* 489 U.S. 189, 199-200, 109 S.Ct. 998, 1005-1006, 103 L.Ed.2d 249 (1989). In addition, the Supreme Court has recognized that a prisoner's claim that he was intentionally denied medical treatment is cognizable under the Eighth Amendment and § 1983:

We therefore conclude that deliberate indifference to

serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

...

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment.

*Estelle v. Gamble,* 429 U.S. 97, 104, 106, 97 S.Ct. 285, 291, 292, 50 L.Ed.2d 25 (1976)(quotations and citations omitted).

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components-one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000) (citing *Hudson v. McMillian,* 503 U.S. 1, 7-8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992); *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999)). With respect to a claim of deliberate indifference to a serious medical need, a prisoner must show that he suffered from a "sufficiently serious" medical condition, *see Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998), and that the defendants acted with a "sufficiently culpable state of mind," *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994).

**\*12** The subjective component "requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." *Sims,* 230 F .3d at 21 (citations omitted). The objective component is "contextual and responsive to contemporary standards of decency." *Id.* (quoting *Hudson,*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 776416 (W.D.N.Y.)

(Cite as: 2007 WL 776416 (W.D.N.Y.))

503 U.S. at 8).

"An official acts with the requisite deliberate indifference when he 'knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' "

  *Brown v. Picarelli,* No. 96 Civ. 1222, 2003 WL 1906180, at *6 (S.D.N.Y. Apr. 15, 2003)(quoting *Farmer,* 511 U.S. at 837).

This Court finds that Plaintiff has failed to demonstrate the existence of any genuine issue of material fact regarding his Eighth Amendment denial of medical treatment claim. Defendants Brigzna and Welsh deny that Plaintiff ever requested medical attention after the pat-frisk (Brigzna Decl., ¶ 10; Welsh Decl., ¶ 12), but even assuming that he did, this Court finds that Plaintiff's claim fails.

First, Plaintiff has failed to present competent evidence demonstrating that he suffered a sufficiently serious injury to his right testicle as a result of the pat-frisk. More than minor discomfort or injury is required to demonstrate a serious medical condition implicating the Eighth Amendment. *See Evering v. Rielly,* No. 98 CIV. 6718, 2001 WL 1150318, *9 (S.D.N.Y. Sept. 28, 2001). At most, Plaintiff received some pain medication, but there is no evidence that he suffered a lasting injury. In fact, Defendants presented evidence that Dr. Stephan Lakowski found no sign of swelling and that Plaintiff reported only mild pain. (Murphy May 12, 2006 Decl., ¶ 3 and Exhibit A.)

The Second Circuit has set forth a number of factors to be considered when determining whether a serious medical condition exists. *See Chance,* 143 F.3d at 702. These factors include, but are not limited to, "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic or substantial pain." *Chance,* 143 F.3d at 702 (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir.1992)) (citations omitted)).

There are numerous examples of injuries that courts have found to be too lacking in seriousness to raise Eighth Amendment concerns. *See, e.g., Rivera v. Johnson,* No. 95 CIV. 0845E(H), 1996 WL 549336 at *2 (W.D.N.Y. Sept. 20, 1996) (broken finger); *Glasper v. Wilson,* 559 F.Supp. 13 (W.D.N.Y.1982) (lack of immediate medical attention for bowel problems); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303 (S.D.N.Y.2001) (cut finger); *Henderson v. Doe,* No. 98 CIV. 5011, 1999 WL 378333 (S.D.N.Y. June 10, 1999) (broken finger); *Gibson v. McEvers,* 631 F.2d 95, 98 (7th Cir.1980) (cold symptoms); *Dickson v. Colman,* 569 F.2d 1310 (5th Cir.1978) (per curiam) (headaches); *Tyler v. Rapone,* 603 F.Supp. 268 (E.D.Pa.1984) (toothache and cut).

*13 There are also numerous examples of injuries found to be sufficiently serious to satisfy the Eighth Amendment standard. *See Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed .2d 338 (1989) (brain tumor); *Hathaway,* 37 F.3d at 66 (two year delay in arranging hip surgery); *Williams v. Vincent,* 508 F.2d 541, 544 (2d Cir.1974) (loss of an ear); *Corby v. Convoy,* 457 F.2d 251 (2d Cir.1972) (serious nasal problem); *Monmouth County Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987) (abortion); *Griffin v. DeRobertis,* 557 F.Supp 302, 306 (N.D.Ill.1983) (spitting up blood).

The minor pain and discomfort Plaintiff reported in his testicle clearly falls into the former category of injuries that are not sufficiently serious to raise an Eighth Amendment claim. There is simply no suggestion in the record, let alone any evidence, that Plaintiff suffered from an untreated medical condition that was "sufficiently serious, in the sense that [it was] a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998).

Second, even assuming that Plaintiff could establish that he suffered a sufficiently serious injury such that he is able to meet the objective component of an Eighth Amendment claim, this Court finds that he cannot meet the subjective component because there is no evidence that

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 776416 (W.D.N.Y.)

(Cite as: 2007 WL 776416 (W.D.N.Y.))

Defendants Brigzna and Welsh acted wantonly. In fact, Plaintiff admits that he received medical attention for his alleged injury, although not immediately when he requested it. It is therefore undisputed that Defendants provided medical care. (Murphy May 12, 2006 Decl., Exhibit A.) To the extent Plaintiff argues that his rights were violated because he did not receive medical attention immediately upon his request, this Court notes that Plaintiff is not entitled to choose his own course of treatment. *See Armstrong, 143 F.3d at 703* ("it is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."). Plaintiff simply cannot demonstrate that Defendants Brigzna and Welsh acted with a sufficiently culpable state of mind to meet the deliberate indifference standard. *See Hathaway, 37 F.3d at 66.*

Accordingly, for the reasons stated above, this Court finds that Defendants Brigzna, Welsh and Morris are entitled to summary judgment on Plaintiff's claim that they denied him adequate medical care in violation of his Eighth Amendment rights.

## H. Retaliation

Plaintiff claims that Defendants Arnone, James, Borawski, Bea, Welsh, Brigzna, Mezydlo, Morris and Conway retaliated against him in various ways because he repeatedly filed grievances against Attica staff members. Plaintiff argues that Defendants took all of the actions discussed above-the verbal and physical threats, the restraining and cell shield orders, the opening of his legal mail, the pat-frisk, and the denial of medical treatment-in retaliation for his filing of grievances.

**\*14** It is well established that prison officials cannot retaliate against inmates for exercising their constitutional rights. *See Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir.2002); Franco v. Kelly, 854 F.2d 584, 589 (2d Cir.1988).* The Second Circuit has cautioned that courts "must approach prisoner claims of retaliation with skepticism and particular care" because such claims are "prone to abuse" and can be easily fabricated. *See Dawes v. Walker, 239 F.3d 489, 491 (2d Cir.2001), overruled on*

other grounds by, *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); Colon, 58 F.3d at 872; Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir.1983).*

To prove a retaliation claim under the First Amendment, an inmate must establish the following:

(1) that the speech or conduct at issue was protected;

(2) that the defendant took adverse action against the plaintiff, and

(3) that there was a causal connection between the protected speech and the adverse action.

*Gill v. Pidlypchack, 389 F.3d 379, 380 (2d Cir.2004)* (citing *Dawes, 239 F.3d at 492).*

For purposes of the second requirement, adverse action is defined as one "that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights." *Gill, 389 F.3d at 380* (citing *Davis, 320 F.3d at 353).* "If the action would not deter an individual of ordinary firmness the retaliatory act 'is simply de minimis and therefore outside the ambit of constitutional protection." *Islam v. Goord, No. 05 Civ. 7502, 2006 WL 2819651, at \*4 (S.D.N.Y. Sept. 29, 2006)* (citing *Davis, 320 F.3d at 353).*

Here, it is undisputed that Plaintiff repeatedly filed grievances against prison staff members, which undoubtedly constitutes a constitutionally protected activity. *See Gayle, 313 F.3d at 682.* However, Plaintiff has failed to demonstrate that Defendants' actions, even assuming that they would deter an individual of ordinary firmness from filing grievances, were causally connected to his protected speech or would not have been imposed otherwise for penological reasons.

As discussed at length above, there exist legitimate, penological reasons for the restraining and cell shield orders, the opening of Plaintiff's mail, and the pat-frisk. Moreover, Plaintiff has not come forward with any evidence that he was denied medical treatment, and in fact, the evidence of record demonstrates that Plaintiff received

Not Reported in F.Supp.2d, 2007 WL 776416 (W.D.N.Y.)

(Cite as: 2007 WL 776416 (W.D.N.Y.))

treatment for the pain and discomfort he felt in his testicle. In any event, these are not the types of harms that courts in this circuit typically consider significant enough to constitute adverse actions. *See Islam,* 2006 WL 2819651, at *6 (collecting cases including *Morales v. Mackalm,* 278 F.3d 126, 131-32 (2d Cir.2002) (transfer to psychiatric facility); *Graham v. Henderson,* 89 F.3d 75, 80-81 (2d Cir.1996) (false misbehavior reports); *Colon,* 58 F.3d at 872-73 (planted contraband in plaintiff's cell); *Gill v. Hoadley,* 261 F.Supp.2d 113, 124 (N.D.N.Y.2003) (false misbehavior report resulting in keeplock confinement for almost fifty days)).

**\*15** That leaves only the alleged verbal and physical threats. Even assuming that Defendants insulted and threatened Plaintiff as he alleges, "threats made to an inmate, without more, do not rise to the level of a constitutional violation." *Pledger v. Hudson,* No. 99 Civ. 2167, 2005 WL 736228, at *5 (S.D.N.Y. Mar. 31, 2005). The threats at issue here, such as "your day is coming," "you'll be sent to your mother in a black box," and "you'll get your black ass kicked" and the alleged statement to other prisoners that no favors would be granted because of Plaintiff's grievances, are indistinguishable from those that have been found insufficient to establish a constitutional violation. *See, e.g., Bartley v. Collins,* 95 Civ. 10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) ("verbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action"); *Alicea v. Howell,* 387 F.Supp.2d 227, 237 (W.D.N.Y.2005) ("alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance ... do not rise to a First Amendment retaliation claim"); *Williams v. Muller,* No. 98 Civ. 5204, 2001 WL 936297, at *4 (S.D.N.Y. Aug. 17, 2001) (defendant's "alleged spreading of rumors [that] plaintiff's claims ... were intended to incite the inmates to harm plaintiff ... do not rise to a retaliation claim").

Here, Plaintiff has not presented any evidence that the threats he alleges were leveled at him resulted in any further action or injury. Indeed, they are exactly the types of threats that have been found to be insufficient to sustain a First Amendment claim. Accordingly, this Court finds that Defendants Arnone, James, Borawski, Bea, Welsh,

Brigzna, Mezydlo, Morris and Conway are entitled to summary judgment on Plaintiff's retaliation claim.

**I. Qualified Immunity**

"[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known." *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 1696, 143 L.Ed.2d 818 (1999) (internal quotations and citation omitted). In light of the fact that this Court finds that Defendants did not infringe Plaintiff's constitutional rights, it is unnecessary to reach the merits of Defendants' alternate qualified immunity argument.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

**V. ORDERS**

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 34) is GRANTED.

FURTHER, that Plaintiff's Motion to Compel Discovery (Docket No. 33) is DENIED as moot.[FN3]

> **FN3.** Plaintiff filed a Motion to Compel Discovery that he alleges Defendants failed to provide. Defendants' counsel indicates in opposition that the relevant requested discovery was provided, and that Plaintiff's other discovery demands fall outside the relevant time period. (Murphy May 12, 2006 Decl.,¶¶ 5-11.) This Court has reviewed Plaintiff's motion and concludes that Defendants' discovery production is proper, and that the requested discovery, even if it was not already provided, would not alter this Court's determination that Defendants are entitled to summary judgment in this case.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 776416 (W.D.N.Y.)

(Cite as: 2007 WL 776416 (W.D.N.Y.))

W.D.N.Y.,2007.

Kemp v. LeClaire
Not Reported in F.Supp.2d, 2007 WL 776416 (W.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 1392164 (S.D.N.Y.), 24 NDLR P 61

(Cite as: 2002 WL 1392164 (S.D.N.Y.))



United States District Court, S.D. New York.

Abdul SHARIFF, Mark Bartley, Jamal Stephenson, David Gobern, Lewis Purcell, Sam Johnson, Terence Stevens, Stephen Gowins, and Abdul Suluk, Plaintiffs,
v.
Philip COOMBE, Commissioner of New York State Docs; Glen Goord, Acting Commissioner; Christopher Artuz, Superintendent of Green Haven Corr. Facility; Gail Haponic, Acting Deputy of Admin. of Green Haven; Roger Maines, Supervisor of Green Haven; M. Muller, Maintenance Supervisor of Green Haven, individually and in their official capacities, and the State of New York, Defendants.
No. 96 Civ. 3001(BSJ).

June 26, 2002.
*Memorandum & Order*

JONES, J.

### I. INTRODUCTION

**\*1** Plaintiffs, nine disabled prisoners who depend on wheelchairs for mobility, bring this action against the State of New York and six individuals employed by the New York State Department of Correctional Services ("DOCS") in an administrative capacity. Those six individuals, who are sued both in their individual and in their official capacities, are two former DOCS Commissioners and four administrators at Green Haven Correctional Facility ("Green Haven"), including the Superintendent, the former Plant Superintendent, a Deputy Superintendent, and a Maintenance Supervisor. Plaintiffs seek both injunctive and monetary relief for conditions affecting disabled inmates at Green Haven. The gravamen of the Fourth Amended Complaint [FN1] is that the conditions at Green Haven amount to unlawful discrimination against disabled inmates. These conditions allegedly violate (1) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.;* (2) Title V of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 *et seq.;* (3) Section 70 of the New York State Correction Law; and (4) the Eighth and Fourteenth Amendments of the Constitution pursuant to 42 U.S.C. § 1983.

> FN1. Unless otherwise noted, references to the "Fourth Amended Complaint" refer to Plaintiffs' most recent Complaint, the Fourth Amended Complaint dated September 29, 1998.

Defendants move for summary judgment on several grounds pursuant to Federal Rule of Civil Procedure 56. Due to changes in the legal standards applicable to Plaintiffs' claims and the facts relevant to the issues of injunctive relief, exhaustion, and prior adjudication, the court must reserve decision on some issues at this time. In such circumstances, the court has identified issues for additional briefing by the parties in a second round of dispositive motions. Indeed, the complexity of those and other issues applicable to Plaintiffs' remaining claims may require a hearing for proper resolution. For the reasons stated below, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part without prejudice to renew.

### II. CLAIMS FOR INJUNCTIVE RELIEF

Any Plaintiff who is no longer incarcerated at Green Haven is barred from asserting a claim for injunctive relief regarding conditions at Green Haven. *See Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.") (citing cases). Plaintiffs Bartley, Gobern, Johnson, Purcell, Stevens, and Suluk are no longer incarcerated at Green Haven. Therefore, the court dismisses with prejudice all claims for injunctive relief brought by those six Plaintiffs.

Plaintiffs are not entitled to injunctive relief for those claims that are now moot because they have been addressed by prison officials. *See Prins v. Coughlin,* 76 F.3d 504, 506; *see also Farmer v. Brennan,* 511 U.S. 825, 846 (1994). Plaintiffs' injunctive claims as to the A & B yard have been rendered moot because Defendants have "repaired and repaved" this yard. (*See, e.g.,* Pls.' Mem. of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 1392164 (S.D.N.Y.), 24 NDLR P 61

(Cite as: 2002 WL 1392164 (S.D.N.Y.))

Law in Opp'n to Defs.' Mot. for Summ. J. at 11.) Accordingly, all Plaintiffs, but particularly Plaintiffs Shariff and Stephenson, are precluded from seeking injunctive relief as to the conditions of the A & B yard that have been repaired, and the court dismisses those claims with prejudice.

**\*2** In light of the changes in both Plaintiffs' circumstances and the conditions at Green Haven that have occurred since this motion was filed, the court has been unable to address Plaintiffs' remaining claims for injunctive relief. For example, when this motion was filed, numerous repairs and renovations were scheduled for Green Haven. (*See* Turbin Aff. Ex. E.) If any such repairs were, in fact, conducted, Plaintiffs' claims for injunctive relief concerning those repairs would also be moot. The court directs the parties to address these issues, as well as other changes in the facts of this case that may affect the viability of Plaintiff's claims for injunctive relief, in the additional briefing ordered by the court.

### III. CLAIMS FOR MONETARY RELIEF

#### A. CLAIMS UNDER 42 U.S.C. § 1983

Absent express statutory abrogation or consent by a state to suit, the Eleventh Amendment bars suits brought in federal court against a state by citizens of another state or the state's own citizens. *See Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 72-73 (2000); *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54 (1996). Section 1983 does not abrogate a state's immunity, *Quern v.. Jordan,* 440 U.S. 332, 343-45 (1979), and New York has not consented to suit in federal court, *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir.1977). State employees sued in their official capacities are also immune from suits for monetary damages under the Eleventh Amendment in cases where the state is the real party in interest. *See Al- Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). Moreover, "[s]tates[ ] and state officers, if sued in their official capacities for retrospective relief ... are not 'persons' subject to suit under § 1983." *K & A Radiologic Tech. Services, Inc. v. Commissioner of Dep't of Health,* 189 F.3d 273, 278 (2d Cir.1999). Therefore, the court dismisses Plaintiffs' claims for monetary relief pursuant to § 1983 against the State of New York and the other six

Defendants in their official capacities.

### B. THE ADA AND THE REHABILITATION ACT [FN2]

> [FN2]. The ADA, which was adopted in 1992 and covers individuals and entities that do not receive federal funds, is broader in scope than the Rehabilitation Act, which was adopted in 1973 and is limited to programs receiving financial assistance from the federal government. *See Kilcullen v. New York State Dep't of Labor,* 205 F.3d 77, 79 n. 1 (2d Cir.2000).

Neither Title II of the ADA nor Section 504 of the Rehabilitation Act provides for suits against state officials in their individual capacities. *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn,* 280 F.3d 98, 107 (2d Cir.2001) (collecting cases). Therefore, the court dismisses with prejudice Plaintiffs' claims under the ADA and the Rehabilitation Act against the six individual Defendants in their individual capacities.

The legal standards applicable to Plaintiffs' claims under the ADA and the Rehabilitation Act against the State of New York and the other six Defendants in their official capacities have changed during the pendency of this motion. The changes in the law render much of Defendants' briefing on these claims inapplicable. The court directs the parties to brief Plaintiffs' remaining claims under the ADA and the Rehabilitation Act in light of the standards set forth in *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn,* 280 F.3d 98 (2d Cir.2001). *See also Harris v. New York State Dep't of Health,* No. 01 Civ. 3343, 2002 WL 726659, at \*27-\*31 (S.D .N.Y. Apr. 24, 2002) (applying the standards set forth in *Garcia* ).

### C. STATE LAW CLAIMS

**\*3** Plaintiffs raise state law claims alleging that Defendants have failed to fulfill their duties under Section 70 of the New York State Correction Law. The court dismisses Plaintiffs' claims under Section 70 against the State of New York and the six other defendants in both their personal and their official capacities for lack of subject matter jurisdiction pursuant to New York State Correction Law Section 24 and the Eleventh Amendment. *See Baker v. Coughlin,* 77 F.3d 12, 14-15 (2d Cir.1996).

Not Reported in F.Supp.2d, 2002 WL 1392164 (S.D.N.Y.), 24 NDLR P 61

(Cite as: 2002 WL 1392164 (S.D.N.Y.))

## IV. OTHER ARGUMENTS CONCERNING PLAINTIFFS' REMAINING CLAIMS

### A. EXHAUSTION OF ADMINISTRATIVE REMEDIES

In their Motion for Summary Judgment, Defendants argue that Plaintiffs' claims must be dismissed for failure to exhaust administrative remedies. Under 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1996 ("PLRA") on April 26, 1996, no action brought by a prisoner pertaining to prison conditions may be brought until all available administrative remedies are exhausted. *Porter v. Nussle,* 122 S.Ct. 983, 988 (2002); *see* 42 U.S.C. § 1997e(a) (Supp.2000) (as amended by PLRA § 803). While the mandatory exhaustion requirement of the PLRA does not apply retroactively, any claim filed after April 26, 1996, must be exhausted administratively before it may be raised in federal court. *See Salahuddin v. Mead,* 174 F.3d, 272, 275 (2d Cir.1999); *Blissett v. Casey,* 969 F.Supp. 118, 125 (N.D.N.Y.1997).

The court denies without prejudice to renew that portion of Defendants' motion seeking dismissal of Plaintiffs' claims for failure to exhaust administrative remedies. The court reserves final decision on the issues raised by Defendants' arguments relating to exhaustion for three reasons. First, the issue of exhaustion was briefed insufficiently by the parties to permit the court to rule. Specifically, the court requires a detailed, plaintiff-by-plaintiff analysis of the exhaustion requirements applicable to each claim and the actions taken by each Plaintiff. Second, the court recognizes that Plaintiffs may have pursued additional administrative remedies during the pendency of this motion. Third, changes in the law since briefing was submitted on this motion have clarified the exhaustion requirements applicable to each Plaintiff's claims. Depending on the exhaustion requirements applicable to each claim and the actions taken by individual Plaintiffs to pursue administrative relief, the court may lack jurisdiction over some of Plaintiffs' remaining claims. The court notes the following as guidance for the parties in fashioning future arguments:

Plaintiff Shariff's initial *pro se* Complaint was filed on February 27, 1996; therefore, the claims he alleged therein are not subject to mandatory exhaustion. Nevertheless, the court retains discretion and may require exhaustion with respect to the pre-PLRA claims raised by Plaintiff Shariff under certain circumstances. *See* 42 U.S.C. § 1997e(a) (1994) (amended 1996). The court expressly leaves open the questions of whether the court should, in its discretion, require exhaustion as to Plaintiff Shariff's claims and whether Plaintiff Shariff did, in fact, pursue administrative remedies with respect to the claims raised in this case.[FN3]

> **FN3.** Additionally, the parties have not addressed the question of whether any claims raised by Shariff in amendments to the initial Complaint filed after April 26, 1996, should be subject to the mandatory exhaustion requirements of the PLRA. The court reserves decision as to that issue.

**\*4** The other eight Plaintiffs first included their claims as part of the multiple amended complaints filed in this case after the exhaustion provisions were amended in 1996. Thus, it seems likely to the court that those eight Plaintiffs are required to have exhausted their claims prior to filing them in federal court. *Cf. Farber v. Wards Co., Inc.,* 825 F.2d 684, 689 (2d Cir.1987) (noting that "Rule 15(c) governs the 'relation back' of amended pleadings only for the purpose of the statute of limitations"). "Rule 15(c) does not exist merely to keep the door open for any tardy plaintiff.... Rather, Rule 15(c) stands as a remedial device for adding or substituting a party who 'but for a mistake concerning the identity of the proper party' would have been named originally." *Morin v. Trupin,* 778 F.Supp. 711, 735 (S.D.N.Y.1991). Thus, the decision by the other eight Plaintiffs, who raise many claims distinct from those initially filed by Plaintiff Shariff in his *pro se* Complaint, to file their claims as part of this case rather than filing their own lawsuits is unlikely to have obviated the PLRA's mandatory exhaustion requirement with respect to their claims. Since this issue has not been addressed in the light of current case law, the court reserves decision on this issue as well.

### B. PRIOR ADJUDICATION

When briefing was submitted on this motion, some of Plaintiffs' claims already had been adjudicated or were

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 1392164 (S.D.N.Y.), 24 NDLR P 61

(Cite as: 2002 WL 1392164 (S.D.N.Y.))

pending in other fora. (Defs.' Reply Mem. for Summ. J., Table C.) Defendants argue for dismissal of Plaintiffs' claims on the basis of such prior adjudication, which may preclude Plaintiffs from raising those claims in this court. *See Harris v. New York State Dep't of Health,* No. 01 Civ. 3343, 2002 WL 726659 (S.D.N.Y. Apr. 24, 2002) (discussing interaction between preclusion rules and abstention doctrines). Once again, the court has not been provided with enough detail of the claims raised by Plaintiffs in other proceedings to determine whether preclusion rules, abstention doctrines, or principles concerning double recoveries would bar any of the claims raised in the Fourth Amended Complaint, and Defendants have not addressed those topics substantively in their briefing on this motion. Thus, the court denies without prejudice to renew Defendants' motion to dismiss Plaintiffs' claims as a result of prior adjudication.

## C. PRIOR PHYSICAL INJURY REQUIREMENT

Pursuant to 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Claims by prisoners brought pursuant to § 1983 for emotional damages unrelated to any physical injuries are subject to dismissal. *See, e.g., Dawes v. Walker,* 239 F.3d 489, 494 (2d Cir.2001) (finding failure to make an objective showing of actual injury necessary to state an Eighth Amendment claim based on prison conditions); *Siglar v. Hightower,* 112 F.3d 191, 193-94 (5th Cir.1997) (finding bruised ear an insufficient physical injury to overcome bar of § 1997e(e)); *Zehner v. Trigg,* 952 F.Supp. 1318, 1322-23 (S.D.Ind.) (dismissing claim based on prisoners' exposure to asbestos), *aff'd* 133 F.3d 459, 461 (7th Cir.1997); *Brazeau v. Travis,* No. 96 CV 783, 1996 WL 391701, at *1 (N.D.N.Y. July 9, 1996) (holding that claim for emotional damages caused by delay in receipt of parole hearing transcript was barred by § 1997e(e)).

**\*5** The absence of a physical injury does not constitute a total bar to claims by prisoners under § 1983, since application of § 1997e(e) does not bar claims for nominal damages, punitive damages, or declaratory or injunctive relief. *Wagnoon v. Gatson,* 00 Civ. 3722 and 99 Civ. 5872, 2001 U.S. Dist. LEXIS 8417, at *12-*13 (June 25, 2001). Nevertheless, Plaintiffs' claims for

compensatory damages relating to non-physical accidents, particularly those raised by Plaintiffs Gobern, Johnson, and Purcell, may not meet the physical injury requirement of the PLRA. The court expressly leaves open the question of whether any Plaintiff can meet the prior physical injury requirement, which has been inadequately briefed on a plaintiff-by-plaintiff basis. Indeed, Defendant raises this issue only briefly in the context of argument presented as to the standard applicable to claims of a deprivation of rights under the Eighth Amendment. (*See* Defs.' Mem. of Law in Supp. of Mot. for Summ. J. at 30-31.)

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part without prejudice to renew. The following claims raised in the Fourth Amended Complaint are dismissed with prejudice: claims by Plaintiffs Bartley, Gobern, Johnson, Purcell, Stevens, and Suluk for injunctive relief; all claims for injunctive relief as to the conditions of the A & B yard that have been repaired; all claims against the State of New York and the other six Defendants in their official capacities for monetary relief pursuant to § 1983; all claims against the six individual Defendants in their individual capacities pursuant to the ADA and the Rehabilitation Act; and all claims against all Defendants under Section 70 of the New York State Correction Law. The remainder of Defendants' Motion for Summary Judgment is denied without prejudice to renew.

The court directs the parties to appear before the court for a conference at 3:00 p.m. on Tuesday, July 2, 2002, prepared to discuss Plaintiffs' remaining claims and current conditions at Green Haven. If Defendants choose to submit additional briefing, such briefing must be submitted as a renewed motion for summary judgment filed within thirty days of the date of this Memorandum and Order.

SO ORDERED:

S.D.N.Y.,2002.

Shariff v. Coombe
Not Reported in F.Supp.2d, 2002 WL 1392164 (S.D.N.Y.), 24 NDLR P 61

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 1392164 (S.D.N.Y.), 24 NDLR P 61

(Cite as: 2002 WL 1392164 (S.D.N.Y.))


END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 12805 (S.D.N.Y.)

(Cite as: 1997 WL 12805 (S.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Robert L. MOORE, Plaintiff,
v.
PAINEWEBBER, INC., Defendant.
No. 96 Civ. 6820 (JFK).

Jan. 14, 1997.
*MEMORANDUM*

*OPINION AND ORDER*

KEENAN, District Judge:

**\*1** Defendant Painewebber, Inc. ("Painewebber") moves to stay discovery pending the outcome of its motion to dismiss the complaint. The motion to dismiss will be fully submitted on January 24, 1997, and oral argument is scheduled to be heard on January 27, 1997. Discovery was stayed pending decision on the instant motion for a stay.[FN1] For the reasons stated below, Defendant's motion for a stay of discovery is denied in part and granted in part.

> FN1. Therefore, Plaintiff's contention that Painewebber has failed to timely respond to his document request and has therefore waived any objections to the request is meritless.

Under Federal Rule of Civil Procedure 26(c), a district court may stay discovery may be "for good cause shown." The burden is upon the movant to establish good cause for the granting of such a protective order. *See Dove v. Atlantic Corp.,* 963 F.2d 15, 19 (2d Cir.1992). Although the filing of a dispositive motion may in a proper case support a finding of "good cause," the pendency of a motion to dismiss does not *per se* entitle the movant to a stay of discovery. *See In re WRT Energy Secs. Litig.,* Nos. 96 Civ. 3610, 96 Civ. 3611 (JFK), 1996 WL 580930, at *1 (citing *Moran v. Flaherty,* No. 92 Civ. 3200(PKL), 1992 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992); *In re Chase Manhattan Corp. Secs. Litig.,* No. 90 Civ. 6092(LMM), 1991 WL 79432 (S.D.N.Y. May 7, 1991)).

Painewebber bases its motion to stay almost entirely on the likelihood that its motion to dismiss will be granted and that Plaintiff will not be given leave to replead. After preliminarily reviewing the complaint and Painewebber's memorandum of law in support of the motion to dismiss, however, the Court notes that even if the motion is granted, Plaintiff will likely be given leave to replead as this is Plaintiff's initial complaint and what Painewebber points to as "defects" in the complaint are potentially curable by amendment. *Cf. In re WRT,* 1996 WL 580930, at *1. Therefore, the Court finds that a stay of discovery is not justified.

Painewebber also raises the breadth of Plaintiff's first request for the production of documents as a factor militating in favor of a stay. The Court agrees that the document request served by Plaintiff is quite broad in scope, containing 28 separate requests for wide categories of documents spanning a period of more than nine years. Although the degree of detail in the complaint reveals that the action was not filed solely for the purpose of using the discovery process to uncover wrongdoing by Painewebber, it does seem to the Court that Plaintiff can—and should—re-craft its document request to target the areas most likely to provide relevant evidence and to reduce the expense to Painewebber of producing documents while this motion is pending. If the action survives the motion, Plaintiff will have the opportunity to serve reasonable supplemental document requests.

In light of the above, the Court denies the motion to stay insofar as document discovery is concerned, but orders Plaintiff to redraft its first request for documents to target more specifically the documents it needs. The Court further finds it appropriate to stay the taking of depositions until the motion to dismiss has been decided.

**\*2** SO ORDERED.

S.D.N.Y.,1997.

Moore v. Painewebber, Inc.
Not Reported in F.Supp., 1997 WL 12805 (S.D.N.Y.)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 12805 (S.D.N.Y.)

(Cite as: 1997 WL 12805 (S.D.N.Y.))

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.


Slip Copy, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Ronald PHIPPS, Plaintiff,
v.
Dr. Sohail A. GILLANI [FN1] and the State of New York,
Defendants.

> **FN1.** In plaintiff's complaint the individual defendant is named as Dr. Guilani. However, from the signature page of his affidavit as well as publicly available information, *see* http://www.vitals.com/doctors/Dr_ Sohail_Gillani (screenshot attached), it appears that the correct name of that defendant is Dr. Sohail A. Gillani. The clerk is respectfully directed to adjust the court's records to reflect the correct spelling of Dr. Gillani's name.

Civil Action No. 9:10–CV–1588 (TJM/DEP).

Jan. 5, 2012.
Ronald Phipps, Dannemora, NY, pro se.

Hon. Eric T. Schneiderman, Office of the Attorney General, State of New York, Department of Law, Christina Roberts–Ryba, Esq., Assistant Attorney General, William J. Mccarthy, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** *Pro se* plaintiff Ronald Phipps, a New York State prison inmate, has commenced this action pursuant to 42 U.S.C. § 1983 alleging deprivation of his civil rights.[FN2] Interpreted in a light most favorable to him, plaintiff's complaint, which is exceedingly brief, alleges that Dr. Sohail Gillani, a psychiatrist at the prison facility in which he was housed at the relevant times, injected him on multiple occasions with Risperdal over his objection, in violation of his constitutional rights.

> **FN2.** In addition to this matter plaintiff has filed six other suits in this court, four of which were commenced prior to this action. *See Phipps v. Senkowski,* No. 9:96–CV–0596 (RSP/RWS); *Phipps v. Cuomo,* No. 8:08–CV–1169 (GTS/RFT); *Phipps v. Attorney General's Office,* No. 9:07–CV–0132 (TJM/RWS); *Phipps v. The State of New York,* No. 9:07–CV–0372 (TJM/GJD); *Phipps v. Senkowski,* No. 9:96–CV–0596 (RSP/RWS); and *Phipps v. Superintendent,* No. 9:11–CV–0015 (DNH). From a review of the history of the earlier actions it appears that Phipps has at least two, and possibly three, strikes within the meaning of 28 U.S.C. § 1915(g). I have not set forth a complete analysis concerning this issue or incorporated it into my recommendation, however, in light of the fact that it appears likely plaintiff could qualify for the imminent danger exception to the three strikes provision of section 1915(g). *See Chavis v. Chappius,* 618 F.3d 162, 169–171 (2d Cir.2010).

Currently pending before the court in connection with this action are two dismissal motions. In the first, Dr. Gillani seeks dismissal of plaintiff's claims both for failure to state a cause of action upon which relief may be granted and on the basis of qualified immunity.[FN3] In a subsequently filed motion the State of New York, named as a co-defendant along with Dr. Gillani, requests dismissal of plaintiff's claims against it based upon the immunity afforded by the Eleventh Amendment. For the reasons set forth below I recommend that the State's motion be granted, but that Dr. Gillani's be denied.

> **FN3.** Defendant Gillani's motion also requests that the court stay discovery pending a final disposition of the dismissal motion.

I. *BACKGROUND*[FN4]

> **FN4.** In light of the procedural posture of this

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)); *see also Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734, 12 L.Ed.2d 1030 (1964).

From the scant allegations set forth in his complaint, which is comprised of one solitary paragraph, it appears that the plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), and designated to the Clinton Correctional Facility, located in Dannemora, New York.[FN5] *See generally* Complaint (Dkt. No. 1). While at Clinton plaintiff claims to have been administered in excess of 200 bi-weekly medical injections of Risperdal, over his objection, despite the fact that a court order directing such involuntary injections expired in October 2007. Complaint (Dkt. No. 5). Plaintiff asserts that the injections "have caused [him] to feel weak and dizzy and sick." *Id.*

> FN5. According to publicly available information, not confirmed by any change of address notification received from the plaintiff in compliance with this court's local rules, *see* N.D.N .Y.L.R. 10.1(c)(2), Phipps was transferred from Clinton to the Central New York Psychiatric Center ("CNYPC"), a facility operated by the New York State Office of Mental Health, in or about May, 2011, and was later returned from that agency to DOCCS custody at Clinton on or about October 12, 2011. http:// nysdoccslookup.doccs.ny .gov/GCA00P00/WIQ3/WINQ130 (site lasted visited on January 4, 2012) (screenshot attached).

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on December 30, 2010, with the filing of a pleading styled as an order to

show cause for a temporary restraining order and seeking preliminary injunctive relief.[FN6] Dkt. No. 1. Plaintiff's initial pleading names Dr. Gillani and New York State as defendants and requests an order from the court directing that the DOCCS "cease and desist" from administering involuntary injections of Risperdal. *Id.*

> FN6. That filing was followed by the submission of a virtually identical document on January 12, 2011. Dkt. No. 5.

On January 12, 2011, Senior District Judge Thomas J. McAvoy issued a decision and order directing the filing of plaintiff's original submission as a complaint, granting plaintiff's application for *in forma pauperis* status, denying plaintiff's motion for a temporary restraining order, and ordering a response by the named defendants to plaintiff's request for injunctive relief. Dkt. No. 4. Thereafter, on February 16, 2011, defendants responded to plaintiff's motion for injunctive relief. Dkt. Nos. 10, 11. Among the materials provided in opposition to the motion for injunctive relief was an affidavit from Dr. Gillani identifying himself as a board certified psychiatrist employed by the CNYPC and assigned to treat inmates with mental health needs at Clinton. Gillani Aff. (Dkt. No. 10–1) ¶¶ 1, 2. In his affidavit, Dr. Gillani asserts that he has never administered any medication to the plaintiff over his objection and states further, based upon his review of plaintiff's medical records, which were also supplied, that there is no indication that any other physician at Clinton has done so. *Id* . at ¶¶ 4–9, 11. Plaintiff's motion for a preliminary injunction as well as a subsequent submission, construed by the court as also seeking interim injunctive relief, *see* Dkt. No. 13, were denied by order issued by Senior District Judge McAvoy on May 3, 2011. Dkt. No. 19.

**\*2** In lieu of answering, each of the two named defendants has now moved seeking dismissal of plaintiff's complaint. The first of those motions was filed on March 28, 2011 by Dr. Gillani, requesting dismissal of plaintiff's claims against him for failure to state a cause of action and on the basis of qualified immunity. Dkt. No. 16. A second motion to dismiss was later filed on behalf of the State requesting dismissal of plaintiff's claims against that defendant on the basis of the Eleventh Amendment. Dkt. No. 23. Plaintiff has not responded to either of the

Slip Copy, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

outstanding dismissal motions, which are now ripe for determination and have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).[FN7] *See* Fed.R.Civ.P. 72(b).

> **FN7.** Plaintiff's failure to respond to the pending motion does not preclude the court from recommending its disposition without the benefit of his submission. *See, e.g., White v. Mitchell, No. 99–CV–8519, 2001 WL 64756, at *1 (E.D.N.Y. Jan.18, 2001).* Such a motion to dismiss tests only the legal sufficiency of the plaintiff's complaint; accordingly, since the plaintiff has been afforded a reasonable opportunity to respond to the motion, but has failed to avail himself of that chance, the court can now determine the complaint's sufficiency as a matter of law based on its own reading of the complaint and knowledge of the case law. *McCall v. Pataki, 232 F.3d 321, 322–23 (2d Cir.2000).* It should be noted, however, that plaintiff's failure to respond in opposition to the pending motion is not without significance; under this court's local rules, a party's failure to respond to a properly filed motion can constitute consent to the granting of that motion, so long as the court determines that the moving party has met its burden demonstrating entitlement to the relief requested. N.D.N.Y.L.R. 7.1(b)(3); *see also McCall, 232 F.3d at 322–23* (holding that plaintiff's failure to respond to motion to dismiss in and of itself could not constitute basis for dismissal if plaintiff's complaint stated a claim for relief; *White, 2001 WL 64756, at n. 2* (citing *McCall* ).

## III. *DISCUSSION*

### A. *Dismissal Motion Standard*

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands

more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal,* 556 U.S. 129, ——, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929, ——, (2007)). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). *Id.* While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face. *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (citing *Twombly, 550 U.S. at 570, 127 S.Ct. at 1974).* As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly, 550 U.S. at 570, 127 S.Ct. at 1974).*

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson,* 127 S.Ct. at 2200 (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers' ") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (internal quotations omitted)); *Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (citation omitted); *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.). In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark,* 927 F.2d 698, 704–05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

**\*3** In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.2003), *cert. denied,* 540 U.S. 823, 124 S.Ct. 153, 157 L.Ed.2d 44 (2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Iqbal,* 129 S.Ct. at 1949. In the wake of *Twombly* and *Iqbal,* the burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) remains substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, " 'but whether the claimant is entitled to offer evidence to support the claims.' " *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.,* 223 F.Supp.2d 435, 441 (S.D.N.Y.2001) (quoting *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995)) (citations and quotations omitted).

**B.** *New York State's Motion to Dismiss*

Although its basis is not altogether clear, plaintiff has asserted a claim in this action against the State of New York. In its motion, the State asserts that plaintiff's claims against it are precluded under the Eleventh Amendment.

As the State contends, the Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3057–58, 57 L.Ed.2d 1114 (1978). This absolute immunity which states enjoy under the Eleventh Amendment extends both to state agencies, and in favor of state officials sued for damages in their official capacities when the essence of the claim involved seeks recovery from the state as the real party in interest . [FN8] *Richards v. State of New York Appellate Division, Second Dep't,* 597 F.Supp. 689, 691 (E.D.N.Y.1984) (citing *Pugh* and *Cory v. White,* 457 U.S. 85, 89–91, 102 S.Ct. 2325, 2328–29, 72 L.Ed.2d 694 (1982)). That amendment bars suits in law or equity in a federal court against the state absent either the state's consent to be sued or a congressional abrogation of immunity. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54–55, 116 S.Ct. 1114, 1122–23, 134 L.Ed.2d

252 (1996). It is well established that neither the State nor the DOCCS has consented to be sued in federal court under circumstances such as those now presented. *See Dube v. State University of New York,* 900 F.2d 587, 594–95 (2d Cir.1990), *cert. denied,* 501 U.S. 1211, 222 S.Ct. 2814, 115 L.Ed.2d 986 (1991). In addition, it is equally clear that in enacting section 1983 Congress did not intend abrogate the Eleventh Amendment immunity afforded to states. *Daisernia v. State of New York,* 582 F.Supp. 792, 798–99 (N.D.N.Y.1984) (McCurn, J.); *see also Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir.1996).

> **FN8.** As the Supreme Court has reaffirmed relatively recently, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment. *Northern Ins. Co. of New York v. Chatham County,* 547 U.S. 189, 193, 126 S.Ct. 1689, 1693, 164 L.Ed.2d 367 (2006).

**\*4** Based upon the foregoing, plaintiff's claims in this action against the State of New York are plainly barred, and its motion to dismiss should therefore be granted.

**C.** *Dr. Gillani's Motion to Dismiss*

**1.** *Failure to State a Claim*

In his motion, Dr. Gillani first argues that plaintiff has failed to state a cognizable claim against him. In his memorandum, Dr. Gillani has devoted considerable time and effort in an attempt to show that plaintiff's Eighth Amendment rights were not violated, characterizing his challenge to being injected with Risperdal against his will as a mere disagreement over a prescribed course of treatment. This argument, however, misses the mark. Plaintiff's claim in this case does not arise under the Eighth Amendment, but instead finds its roots in the due process clause of the Fourteen Amendment.

It is well-established that prison inmates possess "a significant liberty interest in avoiding the unwanted administration of anti-psychotic drugs under the Due Process Clause of the Fourteenth Amendment."

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

*Washington v. Harper,* 494 U.S. 210, 221–22, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990); *see also Cruzan v. Director, Missouri Dep't of Health,* 497 U.S. 261, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990) (discussing generally the right of a patient to refuse treatment under both common law under the constitution); *Roland v. Smith,* No. 10 Civ. 9218(VM)(KMF), 2011 WL 3449545, at *1 (S.D.N.Y. July 26, 2011).[FN9] In *Harper,* notwithstanding an inmate's liberty interest in refusing psychotropic medication, the Supreme Court held that a state may treat an inmate against his will if (1) "the inmate is dangerous to himself or others" and (2) "the treatment is in the inmate's medical interest." 494 U.S. at 227, 110 S.Ct. 1039–40; *see also Roland,* 2011 WL 3449545, at * 1 (citing *Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178); *Project Release v. Prevost,* 722 F.2d 960, 971–81 (2d Cir.1983). In that case, the Court also upheld a prison policy that provided administrative procedures, including notice, a right to be present at an adversary hearing, and to present and cross examine witnesses, prior to a determination that inmate would be medicated over his or her objections as comporting with the requirements of procedural due process.[FN10] *Harper,* 494 U.S. at 235, 110 S.Ct. at 1044.

FN9. Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

FN10. In doing so, the Court concluded that the policy at issue represented

an accommodation between an inmate's liberty interest in avoiding the forced administration of antispsychotic drugs and the State's interests in providing appropriate medical treatment to reduce the danger that an inmate suffering from a serious mental disorder represents to himself or others. The Due Process Clause does require certain essential procedural protections, all of which are provided by the regulation before us.

*Harper,* 494 U.S. at 236, 110 S.Ct. at 1044.

In *Project Release,* the Second Circuit held that "due process requires an opportunity for hearing and review of a decision to administer antipsychotic medication-but such a hearing need not be judicial in nature." *Project Release,* 722 F.2d at 981. Moreover, due process does not require a guarantee that a physician's assessments in their commitment evaluation be correct. *Rodriguez City of New York,* 72 F.3d 1051, 1062 (2d Cir.1995).

New York Correction Law § 402 provides procedures whereby, upon the certification of a correctional facility physician that an inmate is mentally ill and in need of care and treatment, the superintendent of the facility may apply to a judge of a New York county court or justice of the supreme court in the county for an order committing such inmate to a hospital for the mentally ill. *See generally* N.Y. Correct. Law § 402. The procedure outlined in section 402 expressly includes notice and opportunity to be heard to the mentally ill inmate. *See id.* at § 402(3). During the pendency of any section 402 proceeding, "the judge may forthwith commit such alleged mentally ill person to a hospital for the mentally ill upon petition and the affidavit of two examining physicians that the superintendent is not able to properly care for such person at the institution where he is confined and that such person is in immediate need of care and treatment." *Id.* at § 402(8). Additionally, section 402 provides that an inmate of a correctional facility may be admitted on an emergency basis to CNYPC upon certification of two examining physicians that he or she "suffers from a mental illness which is likely to result in serious harm to himself or others as defined in subdivision (a) of section 9 .39 of the mental hygiene law." *Id.* at 402(9). When an inmate is delivered to CNYPC under this emergency provision, a proceeding for an order of commitment as outlined in section 402 must be commenced immediately. *See id.* The procedural safeguards guaranteed under section 402 are similar to the provisions of New York Mental Health Law § 33.03, the general provision governing involuntary commitment and one which "has withstood challenges that it was facially unconstitutional." *United States v. Waters,* 23 F.3d 29, 32 (2d Cir.1994) (citing *Project Release,* 722 F.2d at 971–981); *see also Johnson v. Myers,* No. 10–CV–1964, 2011 WL 6131003, at *4 (E.D.N.Y. Dec.6, 2011).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

**\*5** While a prisoner may, in some circumstances, refuse medical treatment, it appears that the right to do so has not been clearly defined. *Rose v. Goldman,* No. 02–CV–5370, 2011 WL 1130214, at \*8 (E.D.N.Y. Mar. 24, 2011) (citing cases). On the other hand, it seems clear that the procedural protections afforded by Correction Law § 402, if afforded plaintiff in this case, "exceeded what was required by the Due Process Clause." *Gonzales v. Carpenter,* No. 9:08–CV–629, 2011 WL 768990, at \*17 (Jan. 3, 2011) (Baxter, M.J.) (citing *Sheridan v. Dubow,* 92 Civ. 6024, 1993 WL 336946, at \*3 (S.D.N.Y. Sep.3, 1993)), *report and recommendation adopted,* 2011 WL 767546 (N.D.N.Y. Feb.25, 2011) (Kahn, J.).

From plaintiff's complaint, though scant, it appears that the section 402 procedures may well have been followed in the past, resulting in the issuance of a state court order in or about 2007, authorizing such involuntary injections—an order which, according to the plaintiff, is now expired. While Dr. Gillani's affidavit submitted in opposition to plaintiff's motion for injunctive relief suggests that the facts may not ultimately bear out plaintiff's claim, his complaint, when liberally construed, suggests that Dr. Gillani involuntarily administered Risperdal over plaintiff's objection without first having satisfied the requirements of due process, and thus states a plausible due process claim.[FN11] I therefore recommend that defendant Gillani's motion to dismiss for failure to state a cognizable claim be denied.

> FN11. It is true, as was previously noted, that Dr. Gillani has submitted an affidavit to the court in which he flatly denies having ever administered or authorized the administering of medication to the plaintiff over his objection. That affidavit, however, is not property considered on a motion to dismiss, and I have therefore not taken into account that denial in assessing the sufficiency of plaintiff's complaint. *Gadson v. Goord,* No. 96–CV–7544, 1997 WL 714878, at \*1 n. 2 ("Generally a court may not look outside the pleadings when review a Rule 12(b)(6) motion to dismiss.")

2. *Qualified Immunity*

In addition to requesting dismissal on the merits, defendant Gillani also seeks a finding that he is entitled to qualified immunity from suit, having acted reasonably in his belief that plaintiff's rights were not violated.

Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted). "In assessing an officer's eligibility for the shield, 'the appropriate question is the objective inquiry whether a reasonable officer could have believed that [his or her actions were] lawful, in light of clearly established law and the information the officer[ ] possessed." *Kelsey v. County of Schoharie,* 567 F.3d 54, 61 (2d Cir.2009) (quoting *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). The law of qualified immunity seeks to strike a balance between the need to hold government officials accountable for irresponsible conduct and the need to protect them from "harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009).

In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court "mandated a two-step sequence for resolving government official's qualified immunity claims." *Pearson,* 555 U.S. at 232, 129 S.Ct. at 815–16. The first step requires the court to consider whether, taken in the light most favorable to the party asserting immunity, the facts alleged show that the conduct at issue violated a constitutional right,[FN12] *Kelsey,* 567 F.3d at 61, with "the second step being whether the right is clearly established", *Okin v. Village of Cornwall–On–Hudson Police Dept.,* 577 F.3d 415, 430 n. 9 (citing *Saucier* ).[FN13] Expressly recognizing that the purpose of the qualified immunity doctrine is to ensure that insubstantial claims are resolved prior to discovery, the Supreme Court recently retreated from the prior *Saucier* two-step mandate, concluding in *Pearson* that because "[t]he judges of the district courts and courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case", those decision makers

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

"should be permitted to exercise their sound discretion in deciding which of the ... prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." [FN4] *Pearson, 555 U.S. at 236, 242, 129 S.Ct. at 818, 821*. In other words, as recently emphasized by the Second Circuit, the courts "are no longer *required* to make a 'threshold inquiry' as to the violation of a constitutional right in a qualified immunity context, but we are free to do so." *Kelsey,* 567 F.3d at 61 (citing *Pearson,* 129 S.Ct. at 821) (emphasis in original).

> FN12. In making the threshold inquiry, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151, 150 L.Ed.2d 272.

> FN13. In *Okin,* the Second Circuit clarified that the " 'objectively reasonable' inquiry is part of the 'clearly established' inquiry", also noting that "once a court has found that the law was clearly established at the time of the challenged conduct and for the particular context in which it occurred, it is no defense for the [government] officer who violated the clearly established law to respond that he held an objectively reasonable belief that his conduct was lawful." *Okin,* 577 F.3d at 433, n. 11 (citation omitted).

> FN14. Indeed, because qualified immunity is "an immunity from suit rather than a mere defense to liability ...", *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." *Pearson,* 555 U.S. at 231, 129 S.Ct. at 815 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 524, 116 L.Ed.2d 589, ––––– (1991) (per curiam)).

**\*6** For courts engaging in a qualified immunity analysis, "the question after *Pearson* is 'which of the two prongs ... should be addressed in light of the circumstances in the particular case at hand.' " *Okin,* 577

F.3d 430 n. 9 (quoting *Pearson* ). "The [*Saucier* two-step] inquiry is said to be appropriate in those cases where 'discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all .' " *Kelsey,* 567 F.3d at 61 (quoting *Pearson,* 129 S.Ct. at 818).

At this early procedural juncture, I am unable to recommend a finding that Dr. Gillani acted reasonably and is therefore entitled to qualified immunity. The principle that a prison inmate is entitled to due process before being forced to take medication over his objection was well-established at the relevant times. *See Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178. Reading plaintiff's complaint in a light most favorable to him, as the court must, and assuming that Dr. Gillani injected plaintiff with Risperdal over his objection without first having satisfied the requirements of the Fourteenth Amendment, the court is unable to conclude that such conduct was objectively reasonable. I therefore recommend denial of defendant Gillani's motion for a finding of qualified immunity, without prejudice to renewal at a later stage in the proceedings based upon a more robust record.

**D. *Stay of Discovery***

As was previously noted, defendant Gillani has also requested a stay of discovery pending resolution of his dismissal motion. The Federal Rules of Civil Procedure provide, in relevant part, that

[a] party or any person from who discovery is sought may move for a protective order in the court where the action is pending ... the Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery.

Fed.R.Civ.P. 26(c)(1); *see also, Spencer Trask Software and Information Services, LLC v. RPost Intern. Ltd.,* 206 F.R.D. 367, 368 (S.D.N.Y.2002) (granting stay of discovery pending determination of motion to dismiss

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

where court found defendants presented "substantial arguments" for dismissal of many if not all of the claims in the lawsuit); *United States v. County of Nassau,* 188 F.R.D. 187, 188–89 (E.D.N.Y.1999) (granting stay of discovery during the pendency of a motion to dismiss where the "interests of fairness, economy and efficiency ... favor[ed] the issuance of a stay of discovery," and where the plaintiff failed to claim prejudice in the event of a stay.).

In this instance, I find good cause to grant a stay of discovery pending final resolution of defendants' dismissal motions.[FN15]

> FN15. I note that it appears unlikely the plaintiff will be prejudiced by such a stay of discovery. Under the rules of this court and its established practice, no discovery in the action can occur absent court permission until an answer is filed and the court has issued its standard pretrial order pursuant to Rule 16 of the Federal Rules of Civil Procedure.

IV. *SUMMARY AND RECOMMENDATION*

Plaintiff's complaint in this action, when construed in a light most favorable to Phipps, appears to assert that defendant Dr. Gillani injected him, against his will, with Risperdal on multiple occasions while he was a prison inmate housed at Clinton. This allegation suffices, at this early juncture, to set forth a plausible due process claim. Plaintiff's claim against the State of New York based upon the same conduct, however, is precluded by the immunity afforded under the Eleventh Amendment. Accordingly, it is hereby respectfully

**\*7** RECOMMENDED that the motion of defendant State of New York to dismiss plaintiff's claims in this action against that defendant (Dkt. No. 23) be GRANTED, and that all claims against the State be DISMISSED; and it is further

RECOMMENDED that the motion of defendant Dr. Sohail Gillani to dismiss plaintiff's claims against him in this action (Dkt. No. 16) be DENIED, without prejudice to the defendant's right to raise a defense of qualified immunity at an appropriate juncture in the future; and it is

further

ORDERED, that pending final disposition of the pending dismissal motions, the filing of an answer in the case, and the issuance of the court's Rule 16 customary pretrial order, discovery in this action be and hereby is STAYED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))



© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))



© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

Find Doctors by Disorder | Find Leading Experts | International Doctors | Find Arthritis Doctors | Find Chronic Myeloid Leukemia Doctors

As more fully set forth in this website's terms and conditions, (1) nothing contained on or offered by or through this website should be construed as medical advice and should not be relied upon for medical diagnosis or treatment. MDX Medical, Inc. ("MDX"), the provider of this website, does not recommend or endorse any particular healthcare provider whose information or ratings appear on this website; and (2) MDX has granted you a limited license to access and use this website for your own noncommercial use. You are not permitted to copy, reproduce, distribute, transmit, mirror, frame, scrape, extract, wrap, create derivative works of, reverse engineer, decompile or disassemble any part or aspect of this website.

Copyright © 2006 - 2011 Vitals.com & MDx Medical, Inc. All Rights Reserved.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))



© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

| ARSON 1ST | A1 |
|-----------|-----|
|           |    |
|           |    |

| **Sentence Terms and Release Dates** | |
|---|---|
| Under certain circumstances, an inmate may be released prior to serving his or her minimum term and before the earliest release date shown for the inmate. As of 01/04/12 | |
| **Aggregate Minimum Sentence** | 0015 Years, 00 Months, 00 Days |
| **Aggregate Maximum Sentence** | LIFE Years, 99 Months, 99 Days |
| **Earliest Release Date** | 09/2013 |
| **Earliest Release Type** | PAROLE HEARING DATE |
| **Parole Hearing Date** | 09/2013 |
| **Parole Hearing Type** | REAPPEARANCE |
| **Parole Eligibility Date** | 02/03/2006 |
| **Conditional Release Date** | NONE |
| **Maximum Expiration Date** | LIFE |
| **Maximum Expiration Date for Parole Supervision** | |
| **Post Release Supervision Maximum Expiration Date** | |
| **Parole Board Discharge Date** | |

| Home | Privacy Policy | Accessibility Information | Contact DOCCS | Disclaimer |
|------|----------------|--------------------------|---------------|------------|

N.D.N.Y.,2012.

Phipps v. Gillani
Slip Copy, 2012 WL 265727 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Ronald PHIPPS, Plaintiff,
v.
Dr. Sohail A. GILLANI [FN1] and the State of New York,
Defendants.

> **FN1.** In plaintiff's complaint the individual defendant is named as Dr. Guilani. However, from the signature page of his affidavit as well as publicly available information, *see* http://www.vitals.com/doctors/Dr_Sohail_Gillani (screenshot attached), it appears that the correct name of that defendant is Dr. Sohail A. Gillani. The clerk is respectfully directed to adjust the court's records to reflect the correct spelling of Dr. Gillani's name.

Civil Action No. 9:10–CV–1588 (TJM/DEP).

Jan. 5, 2012.

Ronald Phipps, Dannemora, NY, pro se.

Hon. Eric T. Schneiderman, Office of the Attorney General, State of New York, Department of Law, Christina Roberts–Ryba, Esq., Assistant Attorney General, William J. Mccarthy, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

### REPORT AND RECOMMENDATION

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** *Pro se* plaintiff Ronald Phipps, a New York State prison inmate, has commenced this action pursuant to 42 U.S.C. § 1983 alleging deprivation of his civil rights.[FN2] Interpreted in a light most favorable to him, plaintiff's complaint, which is exceedingly brief, alleges that Dr. Sohail Gillani, a psychiatrist at the prison facility in which he was housed at the relevant times, injected him on multiple occasions with Risperdal over his objection, in violation of his constitutional rights.

> **FN2.** In addition to this matter plaintiff has filed six other suits in this court, four of which were commenced prior to this action. *See Phipps v. Senkowski,* No. 9:96–CV–0596 (RSP/RWS); *Phipps v. Cuomo,* No. 8:08–CV–1169 (GTS/RFT); *Phipps v. Attorney General's Office,* No. 9:07–CV–0132 (TJM/RWS); *Phipps v. The State of New York,* No. 9:07–CV–0372 (TJM/GJD); *Phipps v. Senkowski,* No. 9:96–CV–0596 (RSP/RWS); and *Phipps v. Superintendent,* No. 9:11–CV–0015 (DNH). From a review of the history of the earlier actions it appears that Phipps has at least two, and possibly three, strikes within the meaning of 28 U.S.C. § 1915(g). I have not set forth a complete analysis concerning this issue or incorporated it into my recommendation, however, in light of the fact that it appears likely plaintiff could qualify for the imminent danger exception to the three strikes provision of section 1915(g). *See Chavis v. Chappius,* 618 F.3d 162, 169–171 (2d Cir.2010).

Currently pending before the court in connection with this action are two dismissal motions. In the first, Dr. Gillani seeks dismissal of plaintiff's claims both for failure to state a cause of action upon which relief may be granted and on the basis of qualified immunity.[FN3] In a subsequently filed motion the State of New York, named as a co-defendant along with Dr. Gillani, requests dismissal of plaintiff's claims against it based upon the immunity afforded by the Eleventh Amendment. For the reasons set forth below I recommend that the State's motion be granted, but that Dr. Gillani's be denied.

> **FN3.** Defendant Gillani's motion also requests that the court stay discovery pending a final disposition of the dismissal motion.

### I. BACKGROUND[FN4]

> **FN4.** In light of the procedural posture of this

Not Reported in F.Supp.2d, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)); *see also Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734, 12 L.Ed.2d 1030 (1964).

From the scant allegations set forth in his complaint, which is comprised of one solitary paragraph, it appears that the plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), and designated to the Clinton Correctional Facility, located in Dannemora, New York.[FN5] *See generally* Complaint (Dkt. No. 1). While at Clinton plaintiff claims to have been administered in excess of 200 bi-weekly medical injections of Risperdal, over his objection, despite the fact that a court order directing such involuntary injections expired in October 2007. Complaint (Dkt. No. 5). Plaintiff asserts that the injections "have caused [him] to feel weak and dizzy and sick." *Id.*

> FN5. According to publicly available information, although not confirmed by any change of address notification received from the plaintiff in compliance with this court's local rules, *see* N.D.N .Y.L.R. 10.1(c)(2), Phipps was transferred from Clinton to the Central New York Psychiatric Center ("CNYPC"), a facility operated by the New York State Office of Mental Health, in or about May, 2011, and was later returned from that agency to DOCCS custody at Clinton on or about October 12, 2011. http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130 (site lasted visited on January 4, 2012) (screenshot attached).

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on December 30, 2010, with the filing of a pleading styled as an order to show cause for a temporary restraining order and seeking preliminary injunctive relief.[FN6] Dkt. No. 1. Plaintiff's initial pleading names Dr. Gillani and New York State as defendants and requests an order from the court directing that the DOCCS "cease and desist" from administering involuntary injections of Risperdal. *Id.*

> FN6. That filing was followed by the submission of a virtually identical document on January 12, 2011. Dkt. No. 5.

On January 12, 2011, Senior District Judge Thomas J. McAvoy issued a decision and order directing the filing of plaintiff's original submission as a complaint, granting plaintiff's application for *in forma pauperis* status, denying plaintiff's motion for a temporary restraining order, and ordering a response by the named defendants to plaintiff's request for injunctive relief. Dkt. No. 4. Thereafter, on February 16, 2011, defendants responded to plaintiff's motion for injunctive relief. Dkt. Nos. 10, 11. Among the materials provided in opposition to the motion for injunctive relief was an affidavit from Dr. Gillani identifying himself as a board certified psychiatrist employed by the CNYPC and assigned to treat inmates with mental health needs at Clinton. Gillani Aff. (Dkt. No. 10–1) ¶¶ 1, 2. In his affidavit, Dr. Gillani asserts that he has never administered any medication to the plaintiff over his objection and states further, based upon his review of plaintiff's medical records, which were also supplied, that there is no indication that any other physician at Clinton has done so. *Id .* at ¶¶ 4–9, 11. Plaintiff's motion for a preliminary injunction as well as a subsequent submission, construed by the court as also seeking interim injunctive relief, *see* Dkt. No. 13, were denied by order issued by Senior District Judge McAvoy on May 3, 2011. Dkt. No. 19.

*2 In lieu of answering, each of the two named defendants has now moved seeking dismissal of plaintiff's complaint. The first of those motions was filed on March 28, 2011 by Dr. Gillani, requesting dismissal of plaintiff's claims against him for failure to state a cause of action and on the basis of qualified immunity. Dkt. No. 16. A second motion to dismiss was later filed on behalf of the State requesting dismissal of plaintiff's claims against that defendant on the basis of the Eleventh Amendment. Dkt. No. 23. Plaintiff has not responded to either of the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

outstanding dismissal motions, which are now ripe for determination and have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).[FN7] *See* Fed.R.Civ.P. 72(b).

> **FN7.** Plaintiff's failure to respond to the pending motion does not preclude the court from recommending its disposition without the benefit of his submission. *See, e.g., White v. Mitchell, No. 99–CV–8519, 2001 WL 64756, at *1 (E.D.N.Y. Jan.18, 2001).* Such a motion to dismiss tests only the legal sufficiency of the plaintiff's complaint; accordingly, since the plaintiff has been afforded a reasonable opportunity to respond to the motion, but has failed to avail himself of that chance, the court can now determine the complaint's sufficiency as a matter of law based on its own reading of the complaint and knowledge of the case law. *McCall v. Pataki, 232 F.3d 321, 322–23 (2d Cir.2000).* It should be noted, however, that plaintiff's failure to respond in opposition to the pending motion is not without significance; under this court's local rules, a party's failure to respond to a properly filed motion can constitute consent to the granting of that motion, so long as the court determines that the moving party has met its burden demonstrating entitlement to the relief requested. N.D.N.Y.L.R. 7.1(b)(3); *see also McCall, 232 F.3d at 322–23* (holding that plaintiff's failure to respond to motion to dismiss in and of itself could not constitute basis for dismissal if plaintiff's complaint stated a claim for relief); *White, 2001 WL 64756, at n. 2* (citing *McCall* ).

## III. *DISCUSSION*

### A. *Dismissal Motion Standard*

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands

more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal,* 556 U.S. 129, ——, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929, ——, (2007)). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). *Id.* While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal, 129 S.Ct. at 1950.*

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face. *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (citing *Twombly, 550 U.S. at 570, 127 S.Ct. at 1974*). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir.2007)* (quoting *Twombly, 550 U.S. at 570, 127 S.Ct. at 1974).*

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson,* 127 S.Ct. at 2200 (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers' ") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (internal quotations omitted)); *Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (citation omitted); *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.). In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark,* 927 F.2d 698, 704–05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

**\*3** In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.2003), *cert. denied,* 540 U.S. 823, 124 S.Ct. 153, 157 L.Ed.2d 44 (2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Iqbal,* 129 S.Ct. at 1949. In the wake of *Twombly* and *Iqbal,* the burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) remains substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, " 'but whether the claimant is entitled to offer evidence to support the claims.' " *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.,* 223 F.Supp.2d 435, 441 (S.D.N.Y.2001) (quoting *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995)) (citations and quotations omitted).

B. *New York State's Motion to Dismiss*

Although its basis is not altogether clear, plaintiff has asserted a claim in this action against the State of New York. In its motion, the State asserts that plaintiff's claims against it are precluded under the Eleventh Amendment.

As the State contends, the Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3057–58, 57 L.Ed.2d 1114 (1978). This absolute immunity which states enjoy under the Eleventh Amendment extends both to state agencies, and in favor of state officials sued for damages in their official capacities when the essence of the claim involved seeks recovery from the state as the real party in interest . [FN7] *Richards v. State of New York Appellate Division, Second Dep't,* 597 F.Supp. 689, 691 (E.D.N.Y.1984) (citing *Pugh* and *Cory v. White,* 457 U.S. 85, 89–91, 102 S.Ct. 2325, 2328–29, 72 L.Ed.2d 694 (1982)). That amendment bars suits in law or equity in a federal court against the state absent either the state's consent to be sued or a congressional abrogation of immunity. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54–55, 116 S.Ct. 1114, 1122–23, 134 L.Ed.2d

252 (1996). It is well established that neither the State nor the DOCCS has consented to be sued in federal court under circumstances such as those now presented. *See Dube v. State University of New York,* 900 F.2d 587, 594–95 (2d Cir.1990), *cert. denied,* 501 U.S. 1211, 222 S.Ct. 2814, 115 L.Ed.2d 986 (1991). In addition, it is equally clear that in enacting section 1983 Congress did not intend abrogate the Eleventh Amendment immunity afforded to states. *Daisernia v. State of New York,* 582 F.Supp. 792, 798–99 (N.D.N.Y.1984) (McCurn, J.); *see also Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir.1996).

> FN8. As the Supreme Court has reaffirmed relatively recently, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment. *Northern Ins. Co. of New York v. Chatham County,* 547 U.S. 189, 193, 126 S.Ct. 1689, 1693, 164 L.Ed.2d 367 (2006).

**\*4** Based upon the foregoing, plaintiff's claims in this action against the State of New York are plainly barred, and its motion to dismiss should therefore be granted.

C. *Dr. Gillani's Motion to Dismiss*

1. *Failure to State a Claim*

In his motion, Dr. Gillani first argues that plaintiff has failed to state a cognizable claim against him. In his memorandum, Dr. Gillani has devoted considerable time and effort in an attempt to show that plaintiff's Eighth Amendment rights were not violated, characterizing his challenge to being injected with Risperdal against his will as a mere disagreement over a prescribed course of treatment. This argument, however, misses the mark. Plaintiff's claim in this case does not arise under the Eighth Amendment, but instead finds its roots in the due process clause of the Fourteen Amendment.

It is well-established that prison inmates possess "a significant liberty interest in avoiding the unwanted administration of anti-psychotic drugs under the Due Process Clause of the Fourteenth Amendment."

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

*Washington v. Harper,* 494 U.S. 210, 221–22, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990); *see also Cruzan v. Director, Missouri Dep't of Health,* 497 U.S. 261, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990) (discussing generally the right of a patient to refuse treatment under both common law under the constitution); *Roland v. Smith,* No. 10 Civ. 9218(VM)(KMF), 2011 WL 3449545, at *1 (S.D.N.Y. July 26, 2011).[FN9] In *Harper,* notwithstanding an inmate's liberty interest in refusing psychotropic medication, the Supreme Court held that a state may treat an inmate against his will if (1) "the inmate is dangerous to himself or others" and (2) "the treatment is in the inmate's medical interest." 494 U.S. at 227, 110 S.Ct. 1039–40; *see also Roland,* 2011 WL 3449545, at * 1 (citing *Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178); *Project Release v. Prevost,* 722 F.2d 960, 971–81 (2d Cir.1983). In that case, the Court also upheld a prison policy that provided administrative procedures, including notice, a right to be present at an adversary hearing, and to present and cross examine witnesses, prior to a determination that inmate would be medicated over his or her objections as comporting with the requirements of procedural due process.[FN10] *Harper,* 494 U.S. at 235, 110 S.Ct. at 1044.

FN9. Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

FN10. In doing so, the Court concluded that the policy at issue represented

an accommodation between an inmate's liberty interest in avoiding the forced administration of antispsychotic drugs and the State's interests in providing appropriate medical treatment to reduce the danger that an inmate suffering from a serious mental disorder represents to himself or others. The Due Process Clause does require certain essential procedural protections, all of which are provided by the regulation before us.

*Harper,* 494 U.S. at 236, 110 S.Ct. at 1044.

In *Project Release,* the Second Circuit held that "due process requires an opportunity for hearing and review of a decision to administer antipsychotic medication-but such a hearing need not be judicial in nature." *Project Release,* 722 F.2d at 981. Moreover, due process does not require a guarantee that a physician's assessments in their commitment evaluation be correct. *Rodriguez City of New York,* 72 F.3d 1051, 1062 (2d Cir.1995).

New York Correction Law § 402 provides procedures whereby, upon the certification of a correctional facility physician that an inmate is mentally ill and in need of care and treatment, the superintendent of the facility may apply to a judge of a New York county court or justice of the supreme court in the county for an order committing such inmate to a hospital for the mentally ill. *See generally* N.Y. Correct. Law § 402. The procedure outlined in section 402 expressly includes notice and opportunity to be heard to the mentally ill inmate. *See id.* at § 402(3). During the pendency of any section 402 proceeding, "the judge may forthwith commit such alleged mentally ill person to a hospital for the mentally ill upon petition and the affidavit of two examining physicians that the superintendent is not able to properly care for such person at the institution where he is confined and that such person is in immediate need of care and treatment." *Id.* at § 402(8). Additionally, section 402 provides that an inmate of a correctional facility may be admitted on an emergency basis to CNYPC upon certification of two examining physicians that he or she "suffers from a mental illness which is likely to result in serious harm to himself or others as defined in subdivision (a) of section 9 .39 of the mental hygiene law." *Id.* at 402(9). When an inmate is delivered to CNYPC under this emergency provision, a proceeding for an order of commitment as outlined in section 402 must be commenced immediately. *See id.* The procedural safeguards guaranteed under section 402 are similar to the provisions of New York Mental Health Law § 33.03, the general provision governing involuntary commitment and one which "has withstood challenges that it was facially unconstitutional." *United States v. Waters,* 23 F.3d 29, 32 (2d Cir.1994) (citing *Project Release,* 722 F.2d at 971–981); *see also Johnson v. Myers,* No. 10–CV–1964, 2011 WL 6131003, at *4 (E.D.N.Y. Dec.6, 2011).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

**\*5** While a prisoner may, in some circumstances, refuse medical treatment, it appears that the right to do so has not been clearly defined. *Rose v. Goldman,* No. 02–CV–5370, 2011 WL 1130214, at \*8 (E.D.N.Y. Mar. 24, 2011) (citing cases). On the other hand, it seems clear that the procedural protections afforded by Correction Law § 402, if afforded plaintiff in this case, "exceeded what was required by the Due Process Clause." *Gonzales v. Carpenter,* No. 9:08–CV–629, 2011 WL 768990, at \*17 (Jan. 3, 2011) (Baxter, M.J.) (citing *Sheridan v. Dubow,* 92 Civ. 6024, 1993 WL 336946, at \*3 (S.D.N.Y. Sep.3, 1993)), *report and recommendation adopted,* 2011 WL 767546 (N.D.N.Y. Feb.25, 2011) (Kahn, J.).

From plaintiff's complaint, though scant, it appears that the section 402 procedures may well have been followed in the past, resulting in the issuance of a state court order in or about 2007, authorizing such involuntary injections—an order which, according to the plaintiff, is now expired. While Dr. Gillani's affidavit submitted in opposition to plaintiff's motion for injunctive relief suggests that the facts may not ultimately bear out plaintiff's claim, his complaint, when liberally construed, suggests that Dr. Gillani involuntarily administered Risperdal over plaintiff's objection without first having satisfied the requirements of due process, and thus states a plausible due process claim.[FN11] I therefore recommend that defendant Gillani's motion to dismiss for failure to state a cognizable claim be denied.

> FN11. It is true, as was previously noted, that Dr. Gillani has submitted an affidavit to the court in which he flatly denies having ever administered or authorized the administering of medication to the plaintiff over his objection. That affidavit, however, is not properly considered on a motion to dismiss, and I have therefore not taken into account that denial in assessing the sufficiency of plaintiff's complaint. *Gadson v. Goord,* No. 96–CV–7544, 1997 WL 714878, at \*1 n. 2 ("Generally a court may not look outside the pleadings when review a Rule 12(b)(6) motion to dismiss.")

*2. Qualified Immunity*

In addition to requesting dismissal on the merits, defendant Gillani also seeks a finding that he is entitled to qualified immunity from suit, having acted reasonably in his belief that plaintiff's rights were not being violated.

Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted). "In assessing an officer's eligibility for the shield, 'the appropriate question is the objective inquiry whether a reasonable officer could have believed that [his or her actions were] lawful, in light of clearly established law and the information the officer[ ] possessed." *Kelsey v. County of Schoharie,* 567 F.3d 54, 61 (2d Cir.2009) (quoting *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). The law of qualified immunity seeks to strike a balance between the need to hold government officials accountable for irresponsible conduct and the need to protect them from "harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009).

In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court "mandated a two-step sequence for resolving government official's qualified immunity claims." *Pearson,* 555 U.S. at 232, 129 S.Ct. at 815–16. The first step requires the court to consider whether, taken in the light most favorable to the party asserting immunity, the facts alleged show that the conduct at issue violated a constitutional right,[FN12] *Kelsey,* 567 F.3d at 61, with "the second step being whether the right is clearly established", *Okin v. Village of Cornwall–On–Hudson Police Dept.,* 577 F.3d 415, 430 n. 9 (citing *Saucier* ).[FN13] Expressly recognizing that the purpose of the qualified immunity doctrine is to ensure that insubstantial claims are resolved prior to discovery, the Supreme Court recently retreated from the prior *Saucier* two-step mandate, concluding in *Pearson* that because "[t]he judges of the district courts and courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case", those decision makers

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

"should be permitted to exercise their sound discretion in deciding which of the ... prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." [FN14] *Pearson,* 555 U.S. at 236, 242, 129 S.Ct. at 818, 821. In other words, as recently emphasized by the Second Circuit, the courts "are no longer *required* to make a 'threshold inquiry' as to the violation of a constitutional right in a qualified immunity context, but we are free to do so." *Kelsey,* 567 F.3d at 61 (citing *Pearson,* 129 S.Ct. at 821) (emphasis in original).

> FN12. In making the threshold inquiry, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151, 150 L.Ed.2d 272.

> FN13. In *Okin,* the Second Circuit clarified that the " 'objectively reasonable' inquiry is part of the 'clearly established' inquiry", also noting that "once a court has found that the law was clearly established at the time of the challenged conduct and for the particular context in which it occurred, it is no defense for the [government] officer who violated the clearly established law to respond that he held an objectively reasonable belief that his conduct was lawful." *Okin,* 577 F.3d at 433, n. 11 (citation omitted).

> FN14. Indeed, because qualified immunity is "an immunity from suit rather than a mere defense to liability ...", *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." *Pearson,* 555 U.S. at 231, 129 S.Ct. at 815 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 524, 116 L.Ed.2d 589, —— (1991) (per curiam)).

**\*6** For courts engaging in a qualified immunity analysis, "the question after *Pearson* is 'which of the two prongs ... should be addressed in light of the circumstances in the particular case at hand.' " *Okin,* 577

F.3d 430 n. 9 (quoting *Pearson* ). "The [*Saucier* two-step] inquiry is said to be appropriate in those cases where 'discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all .' " *Kelsey,* 567 F.3d at 61 (quoting *Pearson,* 129 S.Ct. at 818).

At this early procedural juncture, I am unable to recommend a finding that Dr. Gillani acted reasonably and is therefore entitled to qualified immunity. The principle that a prison inmate is entitled to due process before being forced to take medication over his objection was well-established at the relevant times. *See Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178. Reading plaintiff's complaint in a light most favorable to him, as the court must, and assuming that Dr. Gillani injected plaintiff with Risperdal over his objection without first having satisfied the requirements of the Fourteenth Amendment, the court is unable to conclude that such conduct was objectively reasonable. I therefore recommend denial of defendant Gillani's motion for a finding of qualified immunity, without prejudice to renewal at a later stage in the proceedings based upon a more robust record.

### D. *Stay of Discovery*

As was previously noted, defendant Gillani has also requested a stay of discovery pending resolution of his dismissal motion. The Federal Rules of Civil Procedure provide, in relevant part, that

[a] party or any person from who discovery is sought may move for a protective order in the court where the action is pending ... the Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery.

Fed.R.Civ.P. 26(c)(1); *see also, Spencer Trask Software and Information Services, LLC v. RPost Intern. Ltd.,* 206 F.R.D. 367, 368 (S.D.N.Y.2002) (granting stay of discovery pending determination of motion to dismiss

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

where court found defendants presented "substantial arguments" for dismissal of many if not all of the claims in the lawsuit); *United States v. County of Nassau,* 188 F.R.D. 187, 188–89 (E.D.N.Y.1999) (granting stay of discovery during the pendency of a motion to dismiss where the "interests of fairness, economy and efficiency ... favor[ed] the issuance of a stay of discovery," and where the plaintiff failed to claim prejudice in the event of a stay.).

In this instance, I find good cause to grant a stay of discovery pending final resolution of defendants' dismissal motions.FN15

> FN15. I note that it appears unlikely the plaintiff will be prejudiced by such a stay of discovery. Under the rules of this court and its established practice, no discovery in the action can occur absent court permission until an answer is filed and the court has issued its standard pretrial order pursuant to Rule 16 of the Federal Rules of Civil Procedure.

IV. *SUMMARY AND RECOMMENDATION*

Plaintiff's complaint in this action, when construed in a light most favorable to Phipps, appears to assert that defendant Dr. Gillani injected him, against his will, with Risperdal on multiple occasions while he was a prison inmate housed at Clinton. This allegation suffices, at this early juncture, to set forth a plausible due process claim. Plaintiff's claim against the State of New York based upon the same conduct, however, is precluded by the immunity afforded under the Eleventh Amendment. Accordingly, it is hereby respectfully

**\*7** RECOMMENDED that the motion of defendant State of New York to dismiss plaintiff's claims in this action against that defendant (Dkt. No. 23) be GRANTED, and that all claims against the State be DISMISSED; and it is further

RECOMMENDED that the motion of defendant Dr. Sohail Gillani to dismiss plaintiff's claims against him in this action (Dkt. No. 16) be DENIED, without prejudice to the defendant's right to raise a defense of qualified immunity at an appropriate juncture in the future; and it is

further

ORDERED, that pending final disposition of the pending dismissal motions, the filing of an answer in the case, and the issuance of the court's Rule 16 customary pretrial order, discovery in this action be and hereby is STAYED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))



© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))



Not Reported in F.Supp.2d, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

Find Doctors by Disorder | Find Leading Experts | International Doctors | Find Arthritis Doctors | Find Chronic Myeloid Leukemia Doctors

As more fully set forth in this website's terms and conditions, (1) nothing contained on or offered by or through this website should be construed as medical advice and should not be relied upon for medical diagnosis or treatment. MDX Medical, Inc. ("MDX"), the provider of this website, does not recommend or endorse any particular healthcare provider whose information or ratings appear on this website; and (2) MDX has granted you a limited license to access and use this website for your own noncommercial use. You are not permitted to copy, reproduce, distribute, transmit, mirror, frame, scrape, extract, wrap, create derivative works of, reverse engineer, decompile or disassemble any part or aspect of this website.

Copyright © 2006 - 2011 Vitals.com & MDx Medical, Inc. All Rights Reserved.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))



© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 265727 (N.D.N.Y.)

(Cite as: 2012 WL 265727 (N.D.N.Y.))

| ARSON 1ST | A1 |
| --- | --- |
| | |
| | |
| | |

| Sentence Terms and Release Dates | |
| --- | --- |
| Under certain circumstances, an inmate may be released prior to serving his or her minimum term and before the earliest release date shown for the inmate. As of 01/04/12 | |
| **Aggregate Minimum Sentence** | 0015 Years, 00 Months, 00 Days |
| **Aggregate Maximum Sentence** | LIFE Years, 99 Months, 99 Days |
| **Earliest Release Date** | 09/2013 |
| **Earliest Release Type** | PAROLE HEARING DATE |
| **Parole Hearing Date** | 09/2013 |
| **Parole Hearing Type** | REAPPEARANCE |
| **Parole Eligibility Date** | 02/03/2006 |
| **Conditional Release Date** | NONE |
| **Maximum Expiration Date** | LIFE |
| **Maximum Expiration Date for Parole Supervision** | |
| **Post Release Supervision Maximum Expiration Date** | |
| **Parole Board Discharge Date** | |

| Home | Privacy Policy | Accessibility Information | Contact DOCCS | Disclaimer |
| --- | --- | --- | --- | --- |

N.D.N.Y.,2012.

Phipps v. Gillani
Not Reported in F.Supp.2d, 2012 WL 265727 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



**MINA POURZANDVAKIL, Plaintiff, -against- HUBERT HUMPHRY,
JUDISICIAL SYSTEAM OF THE STATE OF MINNESOTA AND OLMESTED
COUNTY COURT SYSTEAM, AND STATE OF MINNESOTA, SAINT PETER
STATE HOSPITAL, DOCTOR GAMMEL STEPHELTON, ET EL ERICKSON,
NORTH WEST BANK AND TRUST, OLMESTED COUNTY SOCIAL SERVICE,
J.C. PENNY INSURNCE, METMORE FINICIAL, TRAVELER INSURNCE,
COMECIAL UNION INSURNCE, HIRMAN INSURNCE, AMRICAN STATE
INSURNCE, FARMERS INSURNCE, C. O BROWN INSURNCE, MSI
INSURNCE, STEVEN YOUNGQUIST, KENT CHIRSTAIN, MICHEAL BENSON,
UNITED AIRLINE, KOWATE AIRLINE, FORDMOTOR CRIDITE, FIRST
BANK ROCHESTER, GEORGE RESTWICH, BRITISH AIRWAYS, WESTERN
UNION, PRUDENIAL INSURNCE, T.C.F. BANK, JUDGE SANDY KIETH,
JUDGE NIERGARI, OLMESTEAD COUNTY JUDGERING, JUDGE MORES,
JUDGE JACOBSON, JUDGE CHALLIEN, JUDGE COLLIN, JUDGE THOMASE,
JUDGE BUTTLER, JUDGE MORKE, JUDGE MOWEER, SERA CLAYTON,
SUSAN MUDHAUL, RAY SCHMITE, Defendants.** [1]

1   Names in the caption are spelled to reflect plaintiffs complaint.

**Civil Action No. 94-CV-1594**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
NEW YORK**

*1995 U.S. Dist. LEXIS 7136*

**May 22, 1995, Decided
May 23, 1995, FILED**

## CASE SUMMARY:

**PROCEDURAL POSTURE:** Plaintiff filed a complaint
accusing defendants with kidnapping plaintiff and her
daughter, torturing plaintiff in the Mayo Clinic, and
causing plaintiff and her daughter to suffer physically,
financially, and emotionally. Certain defendants sought
vacation of the defaults entered against them without
proper service, some sought dismissal of the complaint,
and some sought both vacation of the defaults and
dismissal.

**OVERVIEW:** Plaintiff served defendants by certified
mail. The court determined that such service was not
authorized under federal law or under either New York
or Minnesota law. Additionally, plaintiff's extraterritorial
service of process was not effective under *Fed. R. Civ. P.*

*4(k)*. Defendants were not subject to federal interpleader
jurisdiction, and they were not joined pursuant to *Fed. R.
Civ. P. 14* or *Fed. R. Civ. P. 19*. No federal long-arm
statute was argued as a basis for jurisdiction, and the
alleged harm did not stem from acts in New York for
jurisdiction under *N.Y. C.P.L.R. § 302(a)*. The complaint
showed no basis for subject matter jurisdiction against
defendants that were insurance companies with no
apparent relationship to claims of rape, torture,
harassment, and kidnapping, and the court found that no
basis for supplemental jurisdiction under *28 U.S.C.S. §
1367(a)* existed. Venue was clearly improper under *28
U.S.C.S. § 1391(b)* because no defendant resided in the
district and none of the conduct complained of occurred
there. Plaintiff's claims of civil rights violations were
insufficient because her complaint was a litany of general
conclusions, not specific allegations of fact.

**OUTCOME:** The court vacated all defaults. The court dismissed plaintiff's complaint against all moving and non-moving defendants. The dismissal of the complaint against certain defendants premised on the court's lack of power either over the person of the defendant or the subject matter of the controversy was without prejudice, but dismissals against the remaining defendants were with prejudice. Requests for sanctions and attorney's fees were denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Residential Service*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Agents*
*Governments > Federal Government > Employees & Officials*
[HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2)*. Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed. R. Civ. P. 4(e)(1)*.

*Business & Corporate Law > Agency Relationships > Agents Distinguished > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Corporations*
[HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1), 4(e)(1)*.

*Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview*
[HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *N.Y. C.P.L.R. §§ 308, 311* (Supp. 1995); *N.Y. Bus. Corp. Law § 306* (Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995).

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview*
*Governments > Local Governments > Claims By & Against*
[HN4] Service on states, municipal corporations, or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2)*. Minnesota law does not authorize service on a governmental entity by certified mail. Minn. R. 4.03(d), (e) (1995).

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Parties > Interpleaders > General Overview*
[HN5] A plaintiff's extraterritorial service of process in New York can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York state; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN6] *N.Y. C.P.L.R. § 302(a)* provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state such as transacting any business in the state and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General*

*Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN7] *28 U.S.C.S. § 1367(a)* requires a relationship between the state and federal claims for pendent jurisdiction so that they form part of the same case or controversy.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN8] See *28 U.S.C.S. § 1391(a).*

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN9] See *28 U.S.C.S. § 1391(1).*

*Civil Procedure > Venue > Federal Venue Transfers > Improper Venue Transfers*
*Civil Procedure > Venue > Individual Defendants*
*Civil Procedure > Venue > Multiparty Litigation*
[HN10] Where venue is laid in the wrong district, the court shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. *28 U.S.C.S. § 1406(a).*

*Civil Procedure > Venue > Motions to Transfer > General Overview*
*Civil Procedure > Judicial Officers > Judges > Discretion*
*Governments > Legislation > Statutes of Limitations > General Overview*
[HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is to eliminate impediments to the timely disposition of cases and controversies on their merits.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*
[HN12] Where a court has already dismissed against the moving parties on jurisdictional grounds, it has no power to address a *Fed. R. Civ. P. 12(b)(6)* issue.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*

*Civil Rights Law > General Overview*
[HN13] Complaints that rely on civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights instead of a litany of general conclusions that shock but have no meaning.

*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN14] A pro se plaintiff's complaint must be construed liberally and should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN15] Even pro se complaints must show some minimum level of factual support for their claims.

*Civil Procedure > Parties > Self-Representation > General Overview*
*Civil Procedure > Counsel > Appointments*
*Civil Rights Law > Prisoner Rights > Prison Litigation Reform Act > Claim Dismissals*
[HN16] The United States Supreme Court explicitly has acknowledged a district court's power under *28 U.S.C.S. § 1915(d)* to dismiss as frivolous a complaint that lacks an arguable basis either in law or in fact. The Supreme Court has explicitly declined to rule, however, on whether a district court has the authority to dismiss sua sponte frivolous complaints filed by non-indigent plaintiffs. The law in the district of New York is that a district court may sua sponte dismiss a frivolous complaint even if the plaintiff has paid the filing fee.

**COUNSEL:** [*1] HUBERT H. HUMPHREY, III, Attorney General of the State of Minnesota, Attorney for Hubert H. Humphry, III, Judicial System of the State of Minnesota, St. Peter Regional Treatment Center, Gerald Gammell, MD, William Erickson, MD, Thomas Stapleton, MD, the Honorable James L. Mork, Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen, and Judge Lawrence Collins, St. Paul, MN, OF COUNSEL: JEROME L. GETZ, Assistant Attorney General.

CONDON & FORSYTH, P.C., Attorneys for British Airways, P.L.C. and Kuwait Airways Corp., New York, NY, OF COUNSEL: STEPHEN J. FEARON, ESQ., MICHAEL J. HOLLAND, ESQ.

DUNLAP & SEEGER, P.C., Attorneys for Olmsted County, Raymond Schmitz, Susan Mundahl, Norwest Bank Minnesota, N.A. (the Northwest Bank & Trust), C.O. Brown Agency, Inc., Rochester, MN, OF COUNSEL: GREGORY J. GRIFFITHS, ESQ.

ARTHUR, CHAPMAN, McDONOUGH, KETTERING & SMETAK, P.A., Attorneys for J.C. Penney Insurance Co. and Metropolitan Insurance Co., Minneapolis, MN, OF COUNSEL: EUGENE C. SHERMOEN, JR., ESQ.

SHAPIRO & KREISMAN, Attorneys for Metmor Financial, Inc., Rochester, NY, OF COUNSEL: JOHN A. DiCARO, ESQ.

COSTELLO, COONEY & FEARON, Attorneys [*2] for Travelers Insurance Companies; Hirman Insurance; Commercial Union Insurance Companies, Syracuse, NY, OF COUNSEL: PAUL G. FERRARA, ESQ., ROBERT J. SMITH, ESQ.

SMITH, SOVIK, KENDRICK & SUGNET, P.C., Attorneys for American States Insurance Co. and Prudential Insurance Co., Syracuse, NY, OF COUNSEL: THOMAS N. KAUFMANN, ESQ.

STEVEN C. YOUNGQUIST, ESQ., Pro Se, Rochester, MN.

THOMAS J. MARONEY, United States Attorney, Attorney for Michael Benson, Postmaster, Northern District of New York, Syracuse, NY, OF COUNSEL: WILLIAM F. LARKIN, Assistant United States Attorney.

GEORGE F. RESTOVICH & ASSOCIATES, Attorneys for George F. Restovich, Esq., Rochester, MN, OF COUNSEL: GEORGE F. RESTOVICH, ESQ.

CONBOY, McKAY, BACHMAN & KENDALL, L.L.P., Attorneys for Western Union, Watertown, NY, OF COUNSEL: GEORGE K. MYRUS, ESQ.

RICHARD MAKI, Pro Se, Rochester, MN.

**JUDGES:** ROSEMARY S. POOLER, UNITED STATES DISTRICT JUDGE

**OPINION BY:** ROSEMARY S. POOLER

**OPINION**

***MEMORANDUM-DECISION AND ORDER***

**INTRODUCTION**

In the four and one-half months since she filed this action, plaintiff Mina Pourzandvakil has filed three amended complaints and ten motions. She also has sought and received [*3] entry of default against ten defendants, none of whom she properly served. She twice has sought and been denied temporary restraining orders. She has included in her action defendants with no apparent connection to this forum, that were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of defendants have filed a total of twelve motions, some seeking vacation of the defaults entered against them, some seeking dismissal and others seeking both. We grant defendants' motions insofar as they seek vacation of the clerk's entries of default and dismissal of the complaint. We vacate *sua sponte* the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

**BACKGROUND**

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. [*4] Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also [*5] adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint

on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*) [2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, [*6] it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March [*7] 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper [3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

2   Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

3   Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

[*8]   The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or *Rule 12 of the Federal Rules of Civil Procedure*. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to *Fed. R. Civ. P. 12(b)* or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson [*9] and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to

Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. [*10] Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

> 4   The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against nonmoving defendants for failure to state a claim on which relief can be granted.
>
> 5   The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

[*11] Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

## ANALYSIS

### The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. [HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2).* Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed.* [*12] *R. Civ. P.*

*4(e)(1).* [HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1) and 4(e)(1).* [HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See N.Y. Civ. Prac. L. & R. §§ 308, 311* (McKinney Supp. 1995); *N.Y. Bus. Corp. Law § 306* (McKinney Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995). Finally, [HN4] service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2).* Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. [*13] R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

In addition to raising various [*14] other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

### A. Personal Jurisdiction

Maki, the state defendants, Olmsted County,

Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Younquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. [HN5] Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant [*15] is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Rule 14* or *Rule 19 of the Federal Rules of Civil Procedure* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*. Defendants are not subject to federal interpleader jurisdiction and they were not joined pursuant to *Rule 14* or *Rule 19*. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to *Rule 4(k). See N.Y. Civ. Prac. L. & R. § 302* (McKinney Supp. 1995). [HN6] This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain [*16] minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id. § 302(a)*. The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of *Section 302(a)*. Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

### B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by *Fed. R. Civ. P. 8(a)(1)*. Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The

state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff [*17] was a party. *District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983)*. These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. *28 U.S.C. § 1332*. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's [*18] address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under *28 U.S.C. § 1367(a). Section 1367(a)* [HN7] requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

> 6 We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. *28 U.S.C. § 1332(a)*. However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id. § 1332(a)(2)*. Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of *28 U.S.C. §*

*1603*. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See 28 U.S.C. § 1330*. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under *Section 1332. Cf. Hiram Walker & Sons, Inc. v. Kirk Line, 877 F.2d 1508, 1511-1512 (11th Cir. 1989), cert. denied, 131 L. Ed. 2d 219, 115 S. Ct. 1362 (1995)* (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under *28 U.S.C. § 1332*.

[*19] We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

## C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. [*20] The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

[HN8] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*28 U.S.C. § 1391(a)*. *Section 1391(b)* provides that federal question actions, except as otherwise provided by law, may be brought only in

[HN9] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

[*21] *Id. § 1391(b)*. The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of, occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. [HN10] Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id. § 1406(a)*. Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. [HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993)* (holding that it was an improper exercise of discretion to dismiss rather than transfer [*22] when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United

States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

### III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).* [7] [HN12] We already [*23] have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the *Rule 12(b)(6)* issue only on ASI's motion. *See Bell v. Hood, 327 U.S. 678, 682-83, 90 L. Ed. 939, 66 S. Ct. 773 (1946)* (subject matter jurisdiction); *Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963)* (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

> 7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other [*24] defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. [HN13] Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation [*25] of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).* [HN14] A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)* (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr, 810 F.2d at 363.*

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not [*26] pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to [*27] amend her pleading and plaintiff still was not able to offer specifics. [9] [HN15] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White, 886 F.2d 721, 724 (4th Cir. 1989)).* We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).*

> 8    Former Supreme Court Justice Harry A. Blackmun.
>
> 9    We note also that plaintiff has not requested leave to amend in this action.

We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under *28 U.S.C. § 1915(d),* holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. [*28] [HN16] The Supreme Court explicitly has acknowledged a district court's power under *Section 1915(d)* to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams, 490 U.S. 319, 325, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989).* The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id. at 329 n.8.* The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter, 151 F.R.D. 537, 540 (S.D.N.Y. 1993), aff'd 41 F.3d 1500 (2d Cir. 1994); cf. Pillay v. I.N.S., 45 F.3d 14, 17 (2d Cir. 1995) (per curiam)* (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts [*29] and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler, 151 F.R.D. at 540.*

### IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture, 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991).* Moreover, her litigiousness has not yet reached the point

at which courts in this circuit have justified injunctive relief. *See id. at 694* (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants [*30] on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id. at 695.*

## CONCLUSION

All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188-9 (5th Cir. 1986)* (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co., 377 F.2d 194, 199 n.3 (2d Cir. 1967)* (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 875* (3d Cir.) *cert. denied, 322 U.S. 740, 88 L. Ed. 1573, 64 S. Ct. 1057 (1944)* (dismissal for lack of personal jurisdiction is not [*31] a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

DATE: May 22, 1995

Syracuse, New York

ROSEMARY S. POOLER

UNITED STATES DISTRICT JUDGE