IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────

ERIC WELLINGTON,

                              Plaintiff,

                                                    Civil Action No.
              v.                                    9:12-CV-1019 (FJS/DEP)

B. LANGENDORF, Corrections
Officer,

                              Defendant.

─────────────────────────────

APPEARANCES:                                 OF COUNSEL:

FOR PLAINTIFF:

ERIC WELLINGTON, *Pro Se*
09-A-0622
Attica Correctional Facility
Box 149
Attica, NY 13118

FOR DEFENDANT:

HON. ERIC T. SCHNEIDERMAN          CHRISTOPHER W. HALL, ESQ.
New York State Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Eric Wellington, a New York State prison inmate, commenced this action, pursuant to 42 U.S.C. § 1983, claiming that his civil rights were violated by a number of individuals. Through motion practice and the filing of an amended complaint, the sole surviving claim in the action stems from plaintiff's allegation that defendant B. Langendorf issued a misbehavior report to him in retaliation for his filing of grievances.

Currently pending before the court is defendant Langendorf's motion for summary judgment seeking dismissal of the remaining claim. For the reasons set forth below, I recommend that the motion be granted.

I.      BACKGROUND[1]

Plaintiff is an inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Dkt. No. 12. At the times relevant to his claims, he was confined at the Shawangunk Correctional Facility ("Shawangunk"), located in Wallkill, New York. *Id.*

On April 5, 2011, plaintiff asked defendant Langendorf, a corrections officer employed at the facility, why the guards had not released his cell

_____

[1]      In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

door to permit him to attend a daily meal and programming. Dkt. No. 12 at 3. In response, defendant Langendorf stated, "The reason [w]hy I didn't let you go out for porter's and gang is because I wanted too [sic] see your[] Black Snake," interpreted by Wellington as a reference to his penis. *Id.* Later on that same day, plaintiff submitted a written complaint concerning the incident to Vernon Fonda, the DOCCS Chief of Investigations. *Id.* at 4; *see also* Dkt. No. 2 at 16-17.[2]

Two weeks later, on April 19, 2011, as plaintiff was exiting the prison barber shop, defendant Langendorf ordered him to stand against the wall and submit to a pat frisk pursuant to a facility policy requiring all inmates entering or exiting the barber shop to be pat-frisked in light of the potentially dangerous devices located there. Dkt. No. 12 at 2, 8; Dkt. No. 42-2 at 5. Plaintiff alleges that, while he stood facing toward the wall, defendant Langendorf rubbed the front of his body against Wellington's

---

[2]    Plaintiff's original complaint was accompanied by several attached exhibits. Dkt. No. 2 at 11-25. On July 2, 2012, Senior District Judge Frederick J. Scullin, Jr., ordered plaintiff to file an amended complaint curing deficiencies identified in the original complaint if he wished to pursue claims against certain defendants. Dkt. No. 8 at 10. That order notified plaintiff that any amended complaint "shall supersede and replace in its entirety the prior complaint[.]" *Id.* at 9. Plaintiff's amended complaint, which was timely filed and accepted for filing, incorporates by reference the same exhibits attached to his original complaint, but fails to actually attach them. Dkt. No. 12. Although it is well settled that an amended complaint supersedes a prior complaint in its entirety, it is clear to the court that plaintiff intended to attach the exhibits to his amended complaint. For the sake of efficiency, and mindful of my obligation to extend special solicitude to *pro se* litigants, I have not required plaintiff to resubmit those exhibits, and instead have considered them incorporated into plaintiff's amended complaint.

buttocks, making a grinding motion, while whispering in plaintiff's ear that he wanted to "see [plaintiff's] black snake." Dkt. No. 12 at 2, 8. Plaintiff filed another written complaint concerning defendant Langendorf's conduct on that same day with Richard Roy, Deputy Commissioner and Inspector General of the DOCCS. Dkt. No. 12 at 2; Dkt. No. 2 at 12-13. Plaintiff also filed a written complaint regarding the incident with John Maly, the Deputy Superintendent for Security at Shawangunk.[3] Dkt. No. 12 at 2-3.

As a result of the encounter between defendant Langendorf and plaintiff outside of the barber shop, defendant Langendorf issued a misbehavior report to plaintiff accusing him of creating a disturbance, interfering with an employee, and harassing an employee. Dkt. No. 12 at 4; Dkt. No. 2 at 19; Dkt. No. 42-2 at 6. Those charges were based upon defendant's claim that, on his way back to his housing unit, and while defendant Langendorf was processing other inmates through a metal detector, plaintiff began yelling obscenities toward him as he walked down the hall. Dkt. No. 42-2 at 2-3, 6. As a result of the commotion caused by plaintiff's conduct and the presence of other inmates in the area, defendant Langendorf was forced to stop processing inmates through the

---

[3]    Plaintiff's amended complaint alleges that he filed a third written complaint against defendant Langendorf regarding the incident to J.T. Smith, the Superintendent at Shawangunk, and claims that he attached it as Exhibit A-2. Dkt. No. 12 at 2-3. Neither the original nor amended complaint, however, have an Exhibit A-2 attached. *See generally* Dkt. No. 2; Dkt. No. 12.

metal detector and direct them back into a sally port, while plaintiff continued to direct obscenities toward him. *Id.* at 3, 6.

A Tier II hearing was convened on May 4, 2011, to address the charges set forth in the misbehavior report.[4] Dkt. No. 42-2 at 9-13. Defendant Langendorf appeared and testified at the hearing, and answered questions posed by the plaintiff. *Id.* at 11-12. Plaintiff neither called any witnesses nor offered any evidence in his defense. *Id.* at 12. At the close of the hearing he was found guilty on all three counts, and was sentenced to a period of twenty-one days of keeplock confinement and a thirty-day loss of package, telephone, and commissary privileges.[5] *Id.*

---

[4]     The DOCCS conducts three types of inmate disciplinary hearings. *See* 7 N.Y.C.R.R. § 270.3; *see also Hynes v. Squillace*, 143 F.3d 653, 655 n.1 (2d Cir. 1998). Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges. *Hynes*, 143 F.3d 655 n.1. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the SHU. *Id.* Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. *Id.*

[5]     "Keeplock" is a form of confinement through which an "inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); *accord*, *Warburton v. Goord*, 14 F. Supp. 2d 289, 293 (W.D.N.Y. 1998); *Tinsley v. Greene*, No. 95-CV-1765, 1997 WL 160124, at *2 n.2 (N.D.N.Y. Mar. 31, 1997) (Pooler, J., *adopting report and recommendation by* Homer, M.J.) (citing *Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995)). "The most significant difference between keeplock and general population inmates is that the former do not leave their cells for out-of-cell programs unless they are a part of mandatory educational programs and general population inmates spend more time out of their cells on weekends." *Lee v. Coughlin*, 26 F. Supp. 2d 615, 628 (S.D.N.Y. 1998).

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action in the United States District Court for the Southern District of New York on or about August 10, 2011. Dkt. No. 2. His original complaint named five defendants, all of whom were alleged to be employed at Shawangunk. Dkt. No. 2 at 1-2. Following the transfer of the action to this district on September 21, 2011, Senior District Judge Frederick J. Scullin, Jr., reviewed plaintiff's complaint and determined that a response was required only from two defendants, but permitted plaintiff an opportunity to file an amended complaint to cure the deficiencies identified with the claims asserted against the other three defendants. Dkt. No. 8 at 8-9. Upon review of an amended complaint subsequently filed by the plaintiff, it was accepted for filing by Judge Scullin solely as to defendants Langendorf and Nelson, the only two defendants named, and plaintiff's claims against the other three defendants were dismissed without prejudice. Dkt. No. 16 at 2-3.

Defendants Langendorf and Nelson subsequently moved to dismiss plaintiff's claims against them, arguing that they failed to state a cause of action upon which relief may be granted. Dkt. No. 21. As a result of a report and recommendation issued by me on June 12, 2013, and a subsequent order issued by Judge Scullin on July 15, 2013, all of plaintiff's

claims were dismissed with the exception of a retaliation cause of action asserted against defendant Langendorf. Dkt. Nos. 24, 28.

On May 28, 2014, following the close of discovery, defendant Langendorf moved for the entry of summary judgment dismissing plaintiff's remaining retaliation claim against him. Dkt. No. 42. Plaintiff has not responded to defendant's motion, which is now ripe for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Consequences of Plaintiff's Failure to Respond

Pursuant to local rule 7.1(b)(3), a party who fails to oppose a properly filed motion effectively consents to the granting of the relief sought. That rule provides as follows:

> Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

N.D.N.Y. L.R. 7.1(b)(3); *see also Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014) (holding that the district courts may enter summary

judgment in favor of the moving party where the non-moving party fails to respond in opposition, but not without first "ensur[ing] that each statement of material fact is support by record evidence sufficient to satisfy the movant's burden of production" and "determin[ing] whether the legal theory of the motion is sound").

In this case, plaintiff has not responded to defendant's motion. The motion was properly filed by defendant Langendorf, and, through his motion, he has met his burden of demonstrating entitlement to the relief requested. With respect to the question of whether defendant has met his burden, I note that his "burden of persuasion is lightened such that, in order to succeed, his motion need only be 'facially meritorious.'" *See Rodriguez v. Goord*, No. 04-CV-0358, 2007 WL 4246443, at *1 (Scullin, J., *adopting report and recommendation by* Lowe, M.J.) (finding that whether a movant has met its burden to demonstrate entitlement to a dismissal under local rule 7.1(b)(3) "is a more limited endeavor than a review of a contested motion to dismiss" (citing cases)).[6] Because defendant Langendorf has accurately cited both proper legal authority and evidence in the record supporting the grounds upon which his motion is based, and plaintiff has failed to respond in opposition to the motion, I find that

---

[6]     All unreported cases cited to in this report have been appended for the convenience of the *pro se* plaintiff.

defendant's motion is facially meritorious. *Jackson*, 766 F.3d at 194. Accordingly, I recommend that the court grant defendant's motion on this basis.[7]

B.  Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

---

[7]   Although a facial review of defendant's motion and plaintiff's failure to respond alone justifies the entry of summary judgment dismissing plaintiff's remaining claim, for the sake of completeness I will nonetheless analyze the motion on its merits.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

C.    Analysis of Plaintiff's Retaliation Claim

Plaintiff alleges that defendant Langendorf retaliated against him for filing sexual harassment complaints against Langendorf by issuing him a baseless misbehavior report. Dkt. No. 12 at 5. Defendant maintains that no reasonable factfinder could conclude, based upon the record now before the court, that the misbehavior report was issued in response to those complaints. Dkt. No. 42-3 at 6-7.

When a prison official takes adverse action against a prisoner, motivated by the inmate's exercise of a constitutional right, including the free speech provisions of the First Amendment, a cognizable section 1983 retaliation claim lies. *See Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). To prove unlawful retaliation, a plaintiff must establish that (1) he engaged in protected conduct, (2) the defendant took adverse action against him, and (3) there exists a causal connection between the protected activity and the adverse action. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 99-CV-2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3,

2003) (Sharpe, M.J.). If a plaintiff carries his burden, "[t]he burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (citing *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996)); *accord, Holland v. Goord*, 758 F.3d 215, 226 (2d Cir. 2014). "A defendant can meet this burden by demonstrating that there is no dispute that the plaintiff 'committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report.'" *Gayle*, 313 F.3d at 682 (quoting *Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998)).

In this case, plaintiff's amended complaint alleges that, as a result of the alleged sexual harassment by defendant Langendorf at his cell on April 5, 2011, and outside the barber shop on April 19, 2011, he filed complaints to DOCCS Chief of Investigations Fonda, Deputy Superintendent of Security Maly, and Deputy Commissioner and Inspector General Roy. Dkt. No. 12 at 4; Dkt. No. 2 at 16-17. Plaintiff further alleges that "as soon as [he] file[d] a complaint against [defendant] Langendorf[,] [he] received a false misbehavior report" from defendant Langendorf. Dkt. No. 12 at 4; Dkt. No. 2 at 19.

It is well-settled that filing a grievance is constitutionally protected conduct. *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001); *Graham*, 89 F.3d at 80. It is also clearly established that, where a corrections officer has filed a false misbehavior report against a prisoner in retaliation for the prisoner filing a complaint against that same corrections officer, such conduct can satisfy the adverse action prong of the relevant test. *See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) ("[The plaintiff] has sufficiently alleged . . . adverse action on the part of the defendants–the filing of false misbehavior reports[.]").  Plaintiff has therefore established two of the three elements required to support a cognizable retaliation cause of action.

Pivotal to plaintiff's retaliation claim, in this instance, is whether he can satisfy the third element by establishing the requisite causal connection between the protected activity and the adverse action – that is, that the protected conduct was a "substantial" or "motivating factor" in the defendant's decision to issue him a misbehavior report. *Mount Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. at 287; *Dillon*, 497 F.3d at 251. When a retaliation claim is based upon the filing of a misbehavior report, "[t]he difficulty lies in establishing a retaliatory motive." *Barclay v. N.Y.*, 477 F. Supp. 2d 546, 558 (N.D.N.Y. 2007) (Hurd, J.). "More than mere

conclusory allegations [regarding retaliatory motive] are required in order to survive a summary judgment motion." *Barclay*, 477 F. Supp. 2d at 558 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)). The "[t]ypes of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, a finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." *Barclay*, 474 F. Supp. 2d at 558; *see also Rivera v. Goord,* 119 F. Supp. 2d 327, 339 (S.D.N.Y. 2000).

Plaintiff claims that, during the eighteen months while he was confined at Attica, prior to the issuance of the disputed misbehavior report by defendant Langendorf, he did not receive any disciplinary complaints. Dkt. No. 12 at 4. At his disciplinary hearing, however, at which he was afforded the opportunity to present his case and confront defendant Langendorf and the evidence against him, plaintiff was found guilty of the offenses charged in the misbehavior report. Dkt. No. 42-2 at 8-13. Because plaintiff has not responded in opposition to defendant's motion for summary judgment, there is no record evidence suggesting that plaintiff did not, as asserted by defendant Langendorf, create a commotion on April 19, 2011, by yelling obscenties at the defendant, causing other inmates "to exit the sally port to see what the commotion was about." Dkt.

No. 42-2 at 3. According to the defendant, plaintiff's conduct forced him "to stop processing inmates through the metal detector and direct the inmates back into the sally port." *Id.* By virtue of plaintiff's failure to respond to the motion, he has admitted that the charges lodged in the misbehavior report by defendant Langendorf were not baseless and that the misbehavior report would have been issued to plaintiff even absent the alleged retaliatory intent. The conclusory allegations contained in plaintiff's amended complaint regarding defendant Langendorf's retaliatory motive are not sufficient to overcome the undisputed evidence set forth by the defendant. *See Houston v. Goord*, No. 03-CV-1412, 2009 WL 890658, at *12 (Suddaby, J., *adopting report and recommendation by* Peebles, M.J.) (finding that the plaintiff's allegations regarding the temporal proximity between his protected conduct and the defendants' adverse action was not sufficient to create a genuine dispute of material fact in light of all of the evidence submitted by the defendants, which included, *inter alia*, affidavits from the defendants denying retaliatory animus).

Given these circumstances, I find that no reasonable factfinder could conclude that defendant's issuance of a misbehavior report to plaintiff, on April 19, 2011, was motivated by plaintiff's complaints against him, rather

than his disruptive conduct on the day in question. I therefore recommend dismissal of plaintiff's remaining claim in this action.

IV.    SUMMARY AND RECOMMENDATION

The sole remaining cause of action in this case alleges retaliation against defendant Langendorf based upon his issuance of a misbehavior report to plaintiff. Defendant Langendorf has submitted uncontroverted evidence that the misbehavior report was issued based upon plaintiff's conduct on April 19, 2011, and not because plaintiff filed sexual harassment complaints against him. Accordingly, it is hereby respectfully

RECOMMENDED that defendant's summary judgment motion (Dkt. No. 42) be GRANTED, and that plaintiff's amended complaint (Dkt. No. 12) be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

_David E. Peebles_
David E. Peebles
U.S. Magistrate Judge

Date:        January 5, 2015
             Syracuse, New York

Not Reported in F.Supp.2d, 2007 WL 4246443 (N.D.N.Y.)

(Cite as: 2007 WL 4246443 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Jose RODRIGUEZ, Plaintiff,
v.
Glen S. GOORD, et al, Defendants.
No. 9:04-CV-0358 (FJS/GHL).

Nov. 27, 2007.
Jose Rodriguez, Willard, NY, pro se.

Andrew M. Cuomo, Attorney General of the State of New York, David L. Cochran, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

### DECISION AND ORDER

FREDERICK J. SCULLIN, Senior District Judge.

**\*1** The above-captioned matter having been presented to me by the Report-Recommendation of Magistrate Judge George H. Lowe filed November 6, 2007, and the Court having reviewed the Report-Recommendation and the entire file in this matter, and no objections to said Report-Recommendation having been filed, the Court hereby

**ORDERS,** that Magistrate Judge Lowe's November 6, 2007 Report-Recommendation is **ACCEPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS,** that Defendants' motion, pursuant to Local Rule 41.2(b), to dismiss for Plaintiff's failure to provide notice to the Court of a change of address, is **GRANTED;** and the Court further

**ORDERS,** that the Clerk of the Court enter judgment in favor of the Defendants and close this case.

**IT IS SO ORDERED.**

### REPORT-RECOMMENDATION

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court. Generally, Jose Rodriguez ("Plaintiff") alleges that, while he was an inmate at Oneida Correctional Facility in 2003 and 2004, ten employees of the New York State Department of Correctional Services ("Defendants") were deliberately indifferent to his serious medical needs, and subjected him to cruel and unusual prison conditions, in violation of the Eighth Amendment. (Dkt. No. 27 [Plf.'s Am. Compl.].) Currently pending is Defendants' motion to dismiss for failure to provide notice to the Court of a change of address, pursuant to Local Rule 41.2(b) of the Local Rules of Practice for this Court. (Dkt. No. 86.) Plaintiff has not opposed the motion, despite having been given more than six weeks in which to do so. Under the circumstances, I recommend that (1) Defendants' motion to dismiss be granted, and (2) in the alternative, the Court exercise its inherent authority to *sua sponte* dismiss Plaintiff's Amended Complaint for failure to prosecute and/or failure to comply with an Order of the Court.

### I. DEFENDANTS' MOTION TO DISMISS

Under the Local Rules of Practice for this Court, Plaintiff has effectively "consented" to the granting of Defendants' motion to dismiss, since (1) he failed to oppose the motion, (2) the motion was properly filed, and (3) Defendants have, through the motion, met their burden of demonstrating entitlement to the relief requested in the motion. L.R. 7.1(b)(3).

In particular, with regard to this last factor (i.e., that Defendants have met their burden of demonstrating entitlement to the relief requested), Defendants argue that their motion to dismiss should be granted because (1) Local Rule 41.2(b) provides that "[f]ailure to notify the Court of a change of address in accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4246443 (N.D.N.Y.)

(Cite as: 2007 WL 4246443 (N.D.N.Y.))

action," (2) on April 15, 2004, Plaintiff was specifically advised of this rule when (through Dkt. No. 5, at 4) the Court advised Plaintiff that "his failure to [promptly notify the Clerk's Office and all parties or their counsel of any change in his address] will result in the dismissal of his action," (3) on May 22, 2007, Plaintiff was released from the Willard Drug Treatment Center, (4) since that time, Plaintiff has failed to provide notice to the Court (or Defendants) of his new address, as required by Local Rule 10.1(b)(2), and (5) as a result of this failure, Defendants have been prejudiced in that they have been unable to contact Plaintiff in connection with this litigation (e.g., in order to depose him, as authorized by the Court on May 4, 2007). (Dkt. No. 86, Part 4, at 1-2 [Defs.' Mem. of Law].)

**\*2** Authority exists suggesting that an inquiry into the third factor (i.e., whether a movant has met its "burden to demonstrate entitlement" to dismissal under Local Rule 7.1[b][3] ) is a more limited endeavor than a review of a contested motion to dismiss.[FN1] Specifically, under such an analysis, the movant's burden of persuasion is lightened such that, in order to succeed, his motion need only be "facially meritorious." [FN2] Given that Defendants accurately cite the law and facts in their memorandum of law, I find that they have met their lightened burden on their unopposed motion. Moreover, I am confident that I would reach the same conclusion even if their motion were contested.

> FN1. *See, e.g., Hernandez v. Nash,* 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at \*7-8, 2003 WL 22143709 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before an unopposed motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*" [emphasis added; citations omitted]; *Race Safe Sys. v. Indy Racing League,* 251 F.Supp.2d 1106, 1109-10 (N.D.N.Y.2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3] ); *see also Wilmer v. Torian,* 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at \*2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1

[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 1997 U.S. Dist. LEXIS 16340, at \*2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello,* 95-CV-0989, 1996 U.S. Dist. LEXIS 15072, at \*3 (N.D.N.Y. Aug. 27, 1996) (Hurd, J.), *adopted by* 983 F.Supp. 595 (N.D.N.Y.1996) (Pooler, J.).

> FN2. *See, e.g., Hernandez,* 2003 U.S. Dist. LEXIS 1625 at \*8.

For these reasons, I recommend that the Court grant Defendants' motion to dismiss.

## II. *SUA SPONTE* DISMISSAL

Even if Defendants have not met their burden on their motion to dismiss, the Court possesses the inherent authority to dismiss Plaintiff's Amended Complaint *sua sponte* under the circumstances. Rule 41 of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a proceeding for (1) failure to prosecute the action and/or (2) failure to comply with the Federal Rules of Civil Procedure or an Order of the Court. Fed.R.Civ.P. 41(b).[FN3] However, it has long been recognized that, despite Rule 41 (which speaks only of a *motion* to dismiss on the referenced grounds, and not a *sua sponte* order of dismissal on those grounds), courts retain the "inherent power" to *sua sponte* "clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *see also Saylor v. Bastedo,* 623 F.2d 230, 238 (2d Cir.1980); *Theilmann v. Rutland Hospital, Inc.,* 455 F.2d 853, 855 (2d Cir.1972). Indeed, Local Rule 41.2(a) not only recognizes this authority but *requires* that it be exercised in appropriate circumstances. *See* N.D.N.Y. L.R. 41.2(a) ("Whenever it appears that the plaintiff has failed to prosecute an action or proceeding diligently, the assigned judge *shall* order it dismissed.") [emphasis added].

> FN3. Fed.R.Civ.P. 41(b) (providing, in pertinent part, that "[f]or failure of the plaintiff to prosecute or to comply with these rules or any

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4246443 (N.D.N.Y.)

(Cite as: 2007 WL 4246443 (N.D.N.Y.))

order of court, a defendant may move for dismissal of an action or of any claim against the defendant").

**A. Failure to Prosecute**

With regard to the first ground for dismissal (a failure to prosecute the action), it is within the trial judge's sound discretion to dismiss for want of prosecution.[FN4] The Second Circuit has identified five factors that it considers when reviewing a district court's order to dismiss an action for failure to prosecute:

FN4. *See Merker v. Rice,* 649 F.2d 171, 173 (2d Cir.1981).

[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard and [5] whether the judge has adequately assessed the efficacy of lesser sanctions.[FN5]

FN5. *See Shannon v. GE Co.,* 186 F.3d 186, 193 (2d Cir.1999) (affirming Rule 41[b] dismissal of plaintiff's claims by U.S. District Court for Northern District of New York based on plaintiff's failure to prosecute the action) [citation and internal quotation marks omitted].

**\*3** As a general rule, no single one of these five factors is dispositive.[FN6] However, I note that, with regard to the first factor, Rule 41.2 of the Local Rules of Practice for this Court provides that a "plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution." N.D.N.Y. L.R. 41.2(a). In addition, I note that a party's failure to keep the Clerk's Office apprised of his or her current address may also constitute grounds for dismissal under Rule 41(b) of the Federal Rules of Civil Procedure.[FN7]

FN6. *See Nita v. Conn. Dep't of Env. Protection,* 16 F.3d 482 (2d Cir.1994).

FN7. *See, e.g., Robinson v. Middaugh,* 95-CV-0836, 1997 U.S. Dist. LEXIS 13929, at \*2-3, 1997 WL 567961 (N.D.N.Y. Sept. 11, 1997) (Pooler, J.) (dismissing action under Fed.R.Civ.P. 41[b] where plaintiff failed to inform the Clerk of his change of address despite having been previously ordered by Court to keep the Clerk advised of such a change); *see also* N.D.N.Y. L.R. 41.2(b) ("Failure to notify the Court of a change of address in accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending action.").

Here, I find that, under the circumstances, the above-described factors weigh in favor of dismissal. The duration of Plaintiff's failure is some six-and-a-half months, i.e., since April 22, 2007, the date of the last document that Plaintiff attempted to file with the Court (Dkt. No. 85). Plaintiff received adequate notice (e.g., through the Court's above-referenced Order of April 15, 2004, and Defendants' motion to dismiss) that his failure to litigate this action (e.g., through providing a current address) would result in dismissal. Defendants are likely to be prejudiced by further delays in this proceeding, since they have been waiting to take Plaintiff's deposition since May 4, 2007. (Dkt. No. 84.) I find that the need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard in this action.[FN8] Finally, I have considered all less-drastic sanctions and rejected them, largely because they would be futile under the circumstances (e.g., an Order warning or chastising Plaintiff may very well not reach him, due to his failure to provide a current address).

FN8. It is cases like this one that delay the resolution of other cases, and that contribute to the Second Circuit's dubious distinction as having (among the twelve circuits, including the D.C. Circuit) the longest median time to disposition for prisoner civil rights cases, between 2000 and 2005 (9.8 months, as compared to a national average of 5.7 months). Simply stated, I am unable to afford Plaintiff with further special solicitude without impermissibly burdening the Court and unfairly tipping the scales of justice against Defendant.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4246443 (N.D.N.Y.)

(Cite as: 2007 WL 4246443 (N.D.N.Y.))

**B. Failure to Comply with Order of Court**

With regard to the second ground for dismissal (a failure to comply with an Order of the Court), the legal standard governing such a dismissal is very similar to the legal standard governing a dismissal for failure to prosecute. "Dismissal ... for failure to comply with an order of the court is a matter committed to the discretion of the district court." [FN9] The correctness of a dismissal for failure to comply with an order of the court is determined in light of five factors:

FN9. *Alvarez v. Simmons Market Research Bureau, Inc.,* 839 F.2d 930, 932 (2d Cir.1988) [citations omitted].

(1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.[FN10]

FN10. *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996) [citations omitted].

Here, I find that, under the circumstances, the above-described factors weigh in favor of dismissal for the same reasons as described above in Part II.A. of this Report-Recommendation. I note that the Order that Plaintiff has violated is the Court's Order of April 15, 2004, wherein the Court ordered Plaintiff, *inter alia,* to keep the Clerk's Office apprised of his current address. (Dkt. No. 5, at 4.) Specifically, the Court advised plaintiff that **"[p]laintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do same will result in the dismissal of this action."** (*Id.*) I note also that, on numerous previous occasions in this action, Plaintiff violated this Order, resulting in delays in the action. (*See* Dkt. Nos. 47, 48, 49, 50, 54, 59, 72, 78, 79 & Dkt. Entry for 12/15/06 [indicating that mail from the Court to Plaintiff was returned as undeliverable].)

**\*4** As a result, I recommend that, should the Court decide to deny Defendants' motion to dismiss, the Court exercise its authority to dismiss Plaintiff's Amended Complaint *sua sponte* for failure to prosecute and/or failure to comply with an Order of the Court.

**ACCORDINGLY,** for the reasons stated above, it is

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 86) be ***GRANTED%;*** and it is further

**RECOMMENDED** that, in the alternative, the Court exercise its inherent authority to *SUA SPONTE DISMISS* Plaintiff's Amended Complaint for failure to prosecute and/or failure to comply with an Order of the Court.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e)..

N.D.N.Y.,2007.

Rodriguez v. Goord
Not Reported in F.Supp.2d, 2007 WL 4246443 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Troy GARRETT, Plaintiff,
v.
Edward REYNOLDS, Superintendent, Mohawk Corr.
Facility; James A. Mance, Deputy Superintendent of
Programs; John O'Reilly,[FN1] Deputy Superintendent; J.
Burge, First Deputy; M. Maher, DSS; R. Centore,
Correctional Officer, Defendants.

> FN1. In this case, the defendants maintain and
> the docket confirms that defendant John O'Reilly
> has never been served. Service must be made
> upon a defendant within 120 days of filing the
> complaint or any claims against that defendant
> will be dismissed. See Fed.R.Civ.P. 4(m). The
> original complaint, which named O'Reilly, was
> filed on November 26, 1999, and the amended
> complaint was filed on July 13, 2001. However,
> O'Reilly was never served. Since this defendant
> has never been served, this court lacks
> jurisdiction over him, and this court recommends
> the dismissal of this defendant.

No. Civ.9:99CV2065NAMGLS.

Oct. 7, 2003.
Troy Garrett, Peekskill, NY, Plaintiff, pro se.

Hon. Eliot Spitzer, Attorney General State of New York,
Syracuse, NY, for the Defendants.

Maria Moran, Asst. Attorney General, of counsel.

REPORT-RECOMMENDATION

SHARPE, Magistrate J.
    I. *Introduction* [FN2]
    FN2. This matter was referred to the undersigned
    for a Report-Recommendation by the Hon.

Norman A. Mordue, United States District
Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and
Local Rule 72.3(c).

    *1 Plaintiff, *pro se* Troy Garrett filed an action under
42 U.S.C. § 1983 claiming that the defendants violated his
civil rights when they retaliated against him for his
activities as an IGRC representative by subjecting him to
verbal harassment, physical abuse and subsequently, a
transfer. Garrett also claims that the supervisory
defendants failed to properly investigate his complaints
and failed to train/supervise their employees. This court
recommends denying the motion for summary judgment in
part and granting it in part.

    II. *Procedural History*

    On July 13, 2001, Garrett filed an amended complaint
against the defendants claiming that they violated his civil
rights under the First, Sixth Eighth, and Fourteenth
Amendments.[FN3] On September 28, 2001, the defendants
filed a motion for summary judgment. On January 18,
2002, this court issued an order informing Garrett of his
obligation to file a response and extended his time to
respond for thirty days. On April 24, 2002, this court
granted an additional sixty days to respond to the
defendants' motion. Despite having been given multiple
opportunities to respond, Garrett has failed to file a
response.

> FN3. Although Garrett claims to be raising
> violations under the Sixth, Eighth, and
> Fourteenth Amendments, the only viable claim
> based on this court's interpretation of the
> complaint is under the First Amendment for
> retaliation.

    III. *Facts* [FN4]

> FN4. The facts are taken from the defendants'
> statement of undisputed material facts since
> Garrett failed to file a response.

    On June 17, 1999, Garrett filed a grievance against

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Officer Kelley for verbal harassment.[FN5] This grievance was denied by the Central Office Review Committee (CORC) on July 21, 1999. On March 19, 2000, Garrett filed a grievance claiming that defendant Burge used intimidation tactics. Defendant Reynolds investigated the grievance and it was denied based on a finding that no harassment occurred. Garrett appealed to the CORC and they denied the grievance on April 5, 2000. On April 10, 2000, defendant Centore wrote a misbehavior report against Garrett for creating a disturbance and employee harassment. On April 12, 2000, Lieutenant Manell presided over Garrett's Tier 2 disciplinary hearing and he was found guilty of both charges. He was given a 21 day recreation penalty, and loss of packages and commissary. However, his recreation penalty was suspended and deferred. Garrett appealed the determination and it was affirmed on April 19, 2000.

FN5. Not a party in this suit.

On April 17, 2000, Garrett filed a grievance against Centore for harassment. Burge denied his grievance on May 4, 2000, and subsequently, the CORC denied it. On May 12, 2000, Garrett sent a letter to Burge concerning further harassment by Centore. On May 16, 2000, Garrett filed another grievance against Centore for harassment. His grievance was denied on May 26, 2000. After Garrett appealed, his grievance was again denied by the CORC. On June 22, 2000, the Superintendent's Office received a letter from Garrett alleging that Centore threw a piece of paper with a picture of a plunger and the words "always gets the job done" into his cell. He wrote a grievance against Centore for harassment due to the paper that he threw into his cell. Burge forwarded the grievance to the CORC on August 10, 2000. The CORC accepted the grievance on August 30, 2000, in order to investigate.

**\*2** On June 23, 2000, the Inspector General's Office interviewed Garrett at the Mohawk Correctional Facility regarding his complaints of Centore. That same day, Captain Naughton filed an administrative segregation recommendation. On June 29, 2000, an administrative segregation hearing was held. On July 14, 2000, Garrett was transferred [FN6] to the Mid-State Correctional Facility.

FN6. The defendants suggest that Garrett has failed to exhaust his administrative remedies concerning his transfer. They claim that he agreed to the transfer and participated in the administrative hearing which resulted in his transfer. The issue of transfer will not be addressed in this Report-Recommendation because the court has insufficient information to determine whether he exhausted his remedies.

Finally, Garrett filed a claim alleging that his property was lost or damaged on October 8, 1999. However, he was paid $75.00 for this claim and he signed a release on December 13, 1999.

IV. *Discussion*

A. *Legal Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999). "When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the ... pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e) ], must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir.2000). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexford Holdings, Inc. v. Biderman,* 21 F.3d 522, 525 (2d Cir.1994)(alternation in original) (citation omitted). However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999).

Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U .S. 519, 520 (1972); *see Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)*(a court is to read a *pro se* party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990); *see LaFond v. General Physics Serv. Corp.,* 50 F.3d 165, 171 (2d Cir.1995).

**\*3** This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond,* 00 CIV. 3725, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001). More specifically, Local Rule 7.1(a)(3) of this court specifically provides that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Local Rule 7.1(a)(3) further requires that the "non-movant shall file a Statement of Material Fact which mirrors the movant's statement in matching numbered paragraphs and which set forth a specific reference to the record where the material fact is alleged to arise." The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot,* 00-CV-1178, 2002 WL 368534, at *2 (N.D.N.Y. March 1, 2002)(interalia citing *Bundy Am. Corp. v. K-Z Rental Leasing, Inc.,* 00-CV-260, 2001 WL 237218, at *1 (N.D.N.Y. March 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty America v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002). As long as the local rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. *Id.* at 470-71.

In this case, Garrett did not file a response to the motion for summary judgment. Consequently, this court will accept the properly supported facts contained in the defendants' 7.1 Statement (*Dkt. No. 49* ) as true for purposes of this motion.[FN7] With this standard in mind, the court now turns to the sufficiency of Garrett's claims.

> FN7. The court notes that this does not apply to the various conclusions of law contained in the defendants' 7.1 Statement.

B. *Eleventh Amendment*

In Garrett's complaint, he raises claims against the defendants in their official and individual capacities. The Eleventh Amendment provides that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Although the Amendment does not specifically prohibit suits against a state by its own citizens, the Supreme Court has consistently applied that immunity to such cases. *See Burnette v. Carothers,* 192 F.3d 52, 57 (2d Cir.1999)(citing *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974)). Moreover, it is well established that Eleventh Amendment immunity applies not only when a state is a named defendant, but when liability must be paid from state coffers. *See New York City Health & Hosp. Corp. v. Perales,* 50 F.3d 129, 134 (2d Cir.1995)(citing *Edelman,* 415 U .S. at 665); *Dawkins v. State of New York,* 93-CV-1298, 1996 WL 156764, at *2 (N.D.N.Y. Mar. 28, 1996).

**\*4** In this case, Garrett raises claims against the defendants in their official and individual capacities. Since the Eleventh Amendment bars official capacity claims against these state officers, this court recommends dismissal of Garrett's claims against the defendants in their official capacity.

C. *Retaliation*

In this case, Garrett claims that during the course of his appointment as an IGRC representative, he has been subjected to repeated acts of harassment, both verbal and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

physical, threatened with physical assaults, placed into disciplinary confinement in the SHU, and transferred.[FN8] The Second Circuit has held that retaliation against a prisoner for pursuing a grievance is actionable under § 1983. *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996). Moreover, the Second Circuit has recognized both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated. Thus, prisoners' claims of retaliation are examined with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10 (2d Cir.1983).

> FN8. This case turns on the interpretation of the complaint. Garret's complaint is not a model of clarity and as noted, he has failed to file a response to the motion for summary judgment. Nonetheless, a careful reading of Garrett's opening paragraph under the title "Facts" compels this court to interpret this complaint as one claiming retaliation for his activities and status as an IGRC representative.

In order for a plaintiff to prevail on a First Amendment retaliation claim, a plaintiff must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and, (3) that there was a causal connection between the protected speech and the adverse action. *See Dawes v. Walker,*[FN9] 239 F.3d 489, 492 (2d Cir.2001) (citation omitted) *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002). If Garrett makes these showings, DOCS may evade liability if it demonstrates that it would have disciplined or transferred him " 'even in the absence of the protected conduct." ' *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted).

> FN9. Dawes' complaint was dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

An inmate has a constitutional right to be protected from retaliation based upon his activities as an IGRC representative. *Alnutt v. Cleary,* 913 F.Supp. 160, 170 (W.D.N.Y.1996). However, a claim brought under "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003)(citing *Alnutt,* 913 F.Supp at 165-66)). Ordinarily, a claim for verbal harassment is not actionable under 42 U.S.C. § 1983. *Aziz Zarif Shabazz v. Picco,* 994 F.Supp. 460, 474 (S.D.N.Y.1998). Moreover, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Aziz Zarif Shabazz,* 994 F.Supp. at 474.

In this case, Garrett claims that defendant Centore harassed him for his activities as an IGRC representative. Garrett also claims that he was removed as an IGRC representative when he was transferred. In addition, Garrett claims that defendants Reynolds, Mance, Burger and Maher failed to properly investigate his allegations against Centore. Garrett claims that these defendants failed to properly investigate his claims in retaliation for his activities as an IGRC representative.

**\*5** More specifically, Garrett claims that Reynolds and Mance recalled IGRC passes for one day in order to interfere with an investigation inquiry into a correctional officer's conduct involving inmates who were left in the yard during inclement weather. Finally, Garrett claims that his property was destroyed while he was in the SHU.[FN10] Garrett filed grievances against Centore in April, May, and June of 2000. One of his complaints involved Centore throwing a folded piece of paper into his cell which had a picture of a plunger with the words "always gets the job done" on it. On June 23, 2000, he was placed in administrative segregation in the SHU. Three weeks later he was transferred.[FN11]

> FN10. However, the defendants provide the court with documents which show that he was paid $75.00 in settlement of this claim.

> FN11. The defendants maintain that Garrett failed to exhaust this claim. At this juncture, it is unclear whether or not he exhausted this claim. As such, this court cannot, as a matter of law, recommend dismissal because the court has insufficient information to determine this issue.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Viewing the facts in the light most favorable to Garrett, the non-moving party, this court cannot, as a matter of law, find that Garrett fails to state a claim for which relief can be granted. He claims that he was retaliated against for his activities as an IGRC representative. As noted, verbal harassment alone will not constitute a violation of a prisoner's constitutional rights but in this case, it appears that he was transferred for his activities as an IGRC representative. The defendants rely on numerous grievances which were denied by the CORC to show that their actions were proper. They also claim that Garrett has failed to show injury, however, at this juncture of the litigation with virtually no discovery in this case, this court cannot recommend dismissal as a matter of law.

D. *Personal Involvement*

It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)(*citation omitted* ). Since there is no respondeat superior liability, the defendant must be shown to have personal involvement in the alleged violation of rights. *Al- Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). Supervisory officials cannot be held liable under § 1983 solely for the acts of their subordinates. *See Monell v. Department of Social Serv.,* 436 U.S. 658, 690-695 (2d Cir.1978). However, a supervisory official can be held liable for constitutional violations if he or she: (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)).

Garrett contends that defendants Reynolds and Mance allowed staff members under their supervision to violate his rights. More specifically, Mance refused to properly investigate Garrett's complaints. Garrett also claims that defendant Burge refused to grant his request for redress against defendant Centore. Finally, Garrett claims that the defendants collectively failed to properly train and supervise their employees.

**\*6** The defendants contend that the claims against the supervisory defendants should be dismissed for lack of personal involvement. However, this court finds this contention without merit since it appears that all of the defendants were involved in the investigation process of Garrett's complaint and he accuses all of them of continuing the alleged constitutional violation by failing to properly investigate the grievances he filed. Accordingly, this court recommends denying the defendants' motion for summary judgment based on the lack of personal involvement.

WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED, that Garrett's claims against the defendants in their official capacity under the Eleventh Amendment should be dismissed since these claims are barred; and it is further

RECOMMENDED, that defendant O'Reilly be dismissed since he was never served; and it is further

RECOMMENDED, that the defendants' motion for summary judgment be denied in all other respects; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties by regular mail.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2003.

Garrett v. Reynolds
Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 890658 (N.D.N.Y.)
**(Cite as: 2009 WL 890658 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Tyrone HOUSTON, Plaintiff,
v.
Glenn S. GOORD, et al., Defendants.

No. 9:03-CV-1412 (GTS/DEP).
March 31, 2009.

Tyrone Houston, Brooklyn, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, Stephen M. Kerwin, Esq., Assistant At-
torney General, of Counsel, for Defendants.

***DECISION and ORDER***
Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court in this *pro se* prison-
er civil rights action are Defendants' motion for sum-
mary judgment (Dkt. No. 80), and United States Magi-
strate Judge David E. Peebles's Report-Recommendation
recommending that Defendants' motion be granted and
Plaintiff's Complaint be dismissed in its entirety (Dkt.
No. 85). Plaintiff has timely filed Objections to the Re-
port-Recommendation. (Dkt. No. 86.) For the reasons
set forth below, the Report-Recommendation is accep-
ted and adopted in its entirety, Defendants' motion is
granted and Plaintiff's Complaint is dismissed.

**I. RELEVANT BACKGROUND**

On November 21, 2003, Plaintiff filed this action
against twenty-two (22) individuals currently and/or
formerly employed by the New York State Department
of Correctional Services, at various correctional facilit-
ies. Generally, in his Complaint, Plaintiff alleges that
his rights under the First and Eighth Amendments were
violated when (1) certain Defendants had him trans-
ferred in retaliation for grievances that he had filed, (2)
certain Defendants issued false misbehavior reports
against him in retaliation for grievances that he had
filed, and (3) certain Defendants deprived him of the

opportunity to engage in outdoor exercise on two separ-
ate occasions. (*See generally* Dkt. No. 1.) FN1

> FN1. On September 30, 2005, all of the De-
> fendants except one filed their Answer to
> Plaintiff's Complaint. (Dkt. No. 58.) On
> November 28, 2005, Defendant Smith filed her
> answer to the Complaint. (Dkt. No. 59.)

On September 29, 2006, District Judge Lawrence E.
Kahn issued a Memorandum Decision and Order dis-
missing (1) Plaintiff's claims for equitable relief due to
Plaintiff's release from incarceration, which mooted this
claim, and (2) Plaintiff's claims against the CORC and
all of the individual defendants in their official capacit-
ies on Eleventh Amendment grounds. (Dkt. No. 69.)

On January 4, 2008, Defendants filed a motion for
summary judgment seeking dismissal of all of Plaintiff's
claims against them. (Dkt. No. 80.) Generally, Defend-
ants' motion is premised on the following three grounds:
(1) certain of Plaintiff's claims are procedurally barred
based upon his failure to exhaust available administrat-
ive remedies with regard to those claims (2) no reason-
able factfinder could conclude that the issuance of mis-
behavior reports or the transfer to different facilities
were *caused* by Plaintiff's filing of grievances; and (3)
no reasonable factfinder could conclude that Plaintiff
was subjected to cruel and unusual punishment based on
being denied certain exercise opportunities. (*Id.*) On
February 1, 2008, Plaintiff filed a response in opposi-
tion to Defendants' motion. (Dkt. No. 82.).

On March 11, 2009, Magistrate Judge Peebles is-
sued a Report-Recommendation recommending that De-
fendants' motion be granted, because (1) certain of
Plaintiff's claims were not properly exhausted, and (2)
no reasonable factfinder could rule in Plaintiff's favor
on any of his claims. (Dkt. No. 85.) Familiarity with the
grounds of the Report-Recommendation is assumed in
this Decision and Order. On March 20, 2009, Plaintiff
filed his Objections to the Report-Recommendation.
(Dkt. No. 86.)

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 890658 (N.D.N.Y.)
**(Cite as: 2009 WL 890658 (N.D.N.Y.))**

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review on Objection from Report-Recommendation

**\*2** When specific objections are made to a magistrate judge's report-recommendation, the Court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C) [FN2]. When only general objections are made to a magistrate judge's report-recommendation, the Court reviews the report-recommendation for clear error or manifest injustice. *See Brown v. Peters,* 95-CV-1641, 1997 WL 599355, at \*2-3 (N.D.N.Y.Sept.22, 1997) (Pooler, J.) [collecting cases], aff'd without opinion, 175 F.3d 1007 (2d Cir.1999). [FN3] Similarly, when a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error or manifest injustice. *See Batista v. Walker,* 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N .Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition [citations omitted]. After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

> FN2. On de novo review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1)(C). However, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its dis-

cretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate").

> FN3. *See also Vargas v. Keane,* 93-CV-7852, 1994 WL 693885, at \*1 (S.D.N.Y. Dec. 12, 1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by petitioner] ... is a general plea that the Report not be adopted ... [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636 ."), aff'd, 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996).

### B. Standard Governing Motion for Summary Judgment

Under Fed.R.Civ.P. 56, summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett,* 477 U.S. 317, 323-24 (1986). However, when the moving party has met this initial responsibility, the nonmoving party must come forward with "specific facts showing a genuine issue [of material fact] for trial." Fed.R.Civ.P. 56(e)(2).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Anderson,* 477 U.S. at 248. As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998) [citation omitted]; *see also* Fed.R.Civ.P.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

56(e)(2). As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts" [citations omitted]. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986).

**\*3** As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* [citation omitted].

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute-even if that nonmoving party is proceeding *pro se.*[FN4] (This is because the Court extends special solicitude to the *pro se* litigant, in part by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[FN5] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[FN6] For this reason, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to have been admitted where the nonmoving party has failed to properly respond to that statement[FN7]-even where the nonmoving party was proceeding *pro se* in a civil rights case.[FN8]

FN4. *Amnesty Am. v. Town of W. Hartford,* 288 F.3d 467, 470 (2d Cir.2002) [citations omitted]; *accord, Lee v. Alfonso,* No. 04-1921, 2004 U.S.App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g,* 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at \*12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak,* 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at \*1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y.2003) (Sharpe, M.J.) (granting mo-

tion for summary judgment); *Prestopnik v. Whelan,* 253 F.Supp.2d 369, 371-372 (N.D.N.Y.2003) (Hurd, J.).

FN5. *Krug v. County of Rennselaer,* 04-CV-0640, 2006 WL 2669122, at \*3 (N.D.N.Y. Sept. 18, 2006) (McAvoy, J.) ("When dealing with a *pro se* party, certain procedural rules apply so as to insure that the *pro se* litigant in not disadvantaged by the lack of legal training. In this regard, the Local Rules require that [a *pro se* party be informed of the consequences of failing to respond to a motion for summary judgment, before those consequences may be imposed]."); *see also Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996) ("This Court has also held that summary judgment should not be entered by default against a *pro se* plaintiff who has not been given any notice that failure to respond will be deemed a default.") [citations omitted]; *see also* Jessica Case, *"Pro Se Litigants at the Summary Judgment Stage: Is Ignorance of the Law an Excuse?"* 90 Ky. L.J. 701, 704, n. 24 (Spring 2001) ("The Second, Fourth, Seventh, Tenth, Eleventh, and D.C. Circuit Courts of Appeals mandate that notice of summary judgment requirements be given to *pro se* litigants.... The Ninth Circuit requires notice of summary judgment requirements for *pro se* prisoner litigants only.") [citations omitted].

FN6. *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *McKaskle v. Wiggins,* 465 U.S. 168, 184 (1984) ("Nor does the Constitution require judges to take over chores for a *pro se* [litigant] that would normally be attended to by trained counsel as a matter of course."); *Mohasco Corp. v. Silver,* 447 U.S. 807, 826 (1980)

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

("[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law [even when that strict adherence inures to the detriment of a *pro se* litigant]."); *Faretta v. California,* 422 U.S. 806, 834, n. 46 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) ( *"[P]ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.") [citation omitted]; *LoSacco v. City of Middletown,* 71 F.3d 88, 92 (2d Cir.1995) ("Although *pro se* litigants should be afforded latitude, ... they generally are required to inform themselves regarding procedural rules and to comply with them .... This is especially true in civil litigation.") [internal quotation marks and citations omitted]; *Edwards v. I.N.S.,* 69 F.3d 5, 8 (2d Cir.1995) ("[W]hile a *pro se* litigant's pleadings must be construed liberally, ... *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them .") [citations omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[T]he right [to benefit from reasonable allowances as a *pro se* litigant] does not exempt [the *pro se* ] party from compliance with relevant rules of procedural and substantive law.") [internal quotation marks and citations omitted].

FN7. Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L.R. 7.1(a)(3).

FN8. *See, e.g., Hassig v. N.Y.S. Dep't of Environmental Conservation,* 01-CV-0284, Decision and Order, at 7 (N.D.N.Y. filed March 4, 2004) (McAvoy, J.), *aff'd,* No. 04-1773, 2005 WL 290210 (2d Cir. Feb. 2, 2005); *Lee,* 2004 U.S. Dist. LEXIS 20746, at *12-13, 15, *aff'd,* No. 04-1921, 2004 U.S.App. LEXIS 21432; *Harvey v. Morabito,* 99-CV-1913, 2003 WL 21402561, at *1, 3-4 (N.D.N.Y. June 17, 2003) (Sharpe, M.J.), *adopted by* 99-CV-1913, Order, at 2-3 (N.D.N.Y. filed Jan. 15, 2004) (Munson, J.), *aff'd,* No. 04-1008, 115 F. App'x 521 (2d Cir. Dec. 23, 2004); *Krug,* 2006 WL 2669122, at *2-3; *Fox,* 2006 U.S. Dist. LEXIS 9147, at *2-3; *Singleton v. Caron,* 03-CV-0455, 2005 WL 2179402, at *3-4 (N.D.N.Y. Sept. 5, 2005) (Peebles, M.J.), *adopted by* 03-CV-0455, 2006 WL 2023000, at *3 (N.D.N.Y. July 18, 2006) (Sharpe, J.); *Govan,* 289 F.Supp.2d at 295; *Butler v. Weissman,* 00-CV-1240, 2002 WL 31309347, at *3 (N.D.N.Y. June 20, 2002) (Sharpe, M.J.), *adopted by* 00-CV-1240, Decision and Order, at 1-2 (N.D.N.Y. filed July 22, 2002) (Kahn, J.); *DeMar v. Car-Freshner Corp.,* 49 F.Supp.2d 84, 86 & n. 1 (N.D.N.Y.1999) (McAvoy, C.J.); *Costello v. Norton,* 96-CV-1634, 1998 WL 743710, at *1, n. 2 (N.D.N.Y. Oct. 21, 1998) (McAvoy, C.J.); *Squair v. O'Brien & Gere Eng'rs, Inc.,* 96-CV-1812, 1998 WL 566773, at *1, n. 2 (N.D.N.Y. Aug. 21, 1998) (Scullin, J.); *see also Monahan v. N.Y. City Dep't of Corr.,* 214 F.3d 275, 292 (2d Cir.2000) (discussing, in *pro se* civil rights case, district courts' discretion to adopt local rules like 7.1[a][3] "to carry out the conduct of its business").

## III. ANALYSIS

After carefully reviewing all of the papers in this action, including Magistrate Judge Peebles's Report-Recommendation and Plaintiff's Objections thereto, the Court rejects each of Plaintiff's Objections, and agrees with each of the conclusions stated in the Report-Recommendation. (*See* Dkt. Nos 85, 86.) Magistrate Judge Peebles employed the proper legal standards, accurately recited the facts, and reasonably applied the law to those facts. (*See* Dkt. No. 86.)

In particular, Magistrate Judge Peebles correctly determined that Plaintiff failed to exhaust some of his claims, as required by the Prison Litigation Reform Act, in that he failed to file grievances, and/or pursue these claims to completion, before bringing the claims to federal court.[FN9] Magistrate Judge Peebles also correctly determined that the only evidence that the misbehavior reports filed against Plaintiff were retaliatory is the fact that they were filed in close proximity to Plaintiff's grievances. However, this inference alone is not enough for Plaintiff to defeat summary judgment, in light of the fact that (1) he was found guilty of at least some of the charges lodged in seven of the nine misbehavior reports with which he takes issue, (2) these reports were issued by nine different corrections officers in four different prisons, and (3) all but one of the officers submitted an affidavit expressly denying retaliatory motivation.[FN10] In addition, regarding Plaintiff's claim that his numerous transfers to various prison facilities was done in retaliation for filing grievances, as Magistrate Judge Peebles explained, (1) Plaintiff has offered no evidence that he was transferred in retaliation for filing grievances, and (2) Plaintiff has a history of claiming retaliation for numerous adverse actions taken against him. As a result, these retaliation claims are dismissed.

FN9. The Court notes that a detailed recitation of the claims and Plaintiff's procedural errors are provided in Magistrate Judge Peebles's Report-Recommendation. (Dkt. No. 85, at 8-14.) Accordingly, the Court will not repeat this thorough analysis.

FN10. *See Williams v. Goord,* 111 F.Supp.2d 280, 290 (S.D.N.Y.2000) ("Although the temporal proximity of the filing of the grievance and the issuance of the misbehavior report is circumstantial evidence of retaliation, such evidence, without more, is insufficient to survive summary judgment.") (citing *Ayers v. Stewart,* No. 96-2013, 1996 WL 346049, at *1 [2d Cir.1999] ).

**\*4** Furthermore, as explained in Magistrate Judge Peebles' Report-Recommendation, Plaintiff's Eighth Amendment claims are without merit because (1) the

harm that he allegedly suffered as a result of being denied the opportunity to exercise outdoors for less than two weeks is *de minimis,* and (2) being forced to exercise in an area that is eight-feet-five inches by six-feet-nine inches in size, while confined in a SHU facility, is not a constitutional violation. *See, e.g., Cody v. Jones,* 895 F.Supp. 431, 441 (N.D . N.Y.1995) (McCurn, J.) (applying *Sandin* and concluding that no liberty interest was triggered through the failure of the prison to regularly accord plaintiff one hour of daily outdoor exercise for a period of several months); *Anderson v. Coughlin,* 757 F.2d 33, 34-35 (2d Cir.1985) ("[T]hough courts have played a helpful role in assisting prisoners and prison officials to negotiate mutually acceptable terms for the provision of exercise opportunities, as has occurred in this case, they have not found in the Eighth Amendment a broad license to require prison officials to meet all of the recreational standards that have been recommended by penologists.") .[FN11]

FN11. *See also Sostre v. McGinnis,* 442 F.2d 178, 187-92 (2d Cir.1971), *rev'd on other grounds, Sostre v. Oswald,* 404 U.S. 1049 (1972).

In his Objections to the Report-Recommendation, Plaintiff argues, *inter alia,* that his failures to fully exhaust his available administrative remedies with regard to certain of his claims was due to his being transferred to different facilities shortly after filing grievances, and that his efforts to inform Defendant Goord and Wardens of this issue "are sufficient to invoke the limited exceptions to the grievance requirement." (Dkt. No. 86.) In addition, Plaintiff appears to argue that the Report-Recommendation should not be adopted because of its failure to appreciate that the "personal involvement on [the] part of all Defendants [regarding his retaliation claims]" constitutes sufficient evidence of a conflict, thereby warranting denial of summary judgment. (Dkt. No. 86.)[FN12]

FN12. In addition, in his Objections to the Report-Recommendation, Plaintiff appears to argue, for the first time, that the Court lacks jurisdiction over his claims. The Court rejects this argument for a number of reasons, including

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 890658 (N.D.N.Y.)
**(Cite as: 2009 WL 890658 (N.D.N.Y.))**

the fact that (1) such a jurisdictional challenge is not timely, and (2) such a jurisdictional challenge flies in the face of Plaintiff's Complaint, which alleged that the Court had "jurisdiction over each of Plaintiff's claims."

With regard to Plaintiff's exhaustion claim, as an initial matter, the Court is not persuaded by Plaintiff's argument that his letters to Defendants Goord and Wardens created an exception to the exhaustion requirement.[FN13] This is because (1) administrative remedies were available to Plaintiff, who is extremely experienced in the inmate litigation process,[FN14] (2) Defendants have not waived the exhaustion defense, and (3) special circumstances do not exist which would excuse Plaintiff from complying with the procedural requirements.[FN15] However, even if the Court were persuaded that Plaintiff's letters created an exception to the exhaustion requirement, such a finding would not help Plaintiff withstand summary judgment on the claims at issue. This is because, while Magistrate Judge Peebles found that some of Plaintiff's retaliatory transfer claims were unexhausted, Magistrate Judge Peebles also found that all of Plaintiff's retaliatory transfer claims were unsupported by sufficient record evidence from which a reasonable factfinder could conclude that the transfers were caused by Plaintiff's filing of grievances (as opposed to being caused by legitimate, penological considerations).

FN13. "Under 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suits challenging prison conditions, including federal civil rights cases." *Chaney v. Koupash,* 04-CV-0136, 2008 WL 5423419, at *7 (N.D.N.Y. Dec. 30, 2008) (citing *Porter v. Nussle,* 534 U.S. 516, 524 (2002) [other citation omitted].). "While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that 'certain caveats apply.' " *Chaney,* 2008 WL 5423419, at *7 (citations omitted). "Exhaustion is generally achieved through the [Inmate Grievance Program]." *Id.* (citation omitted). "However, when inmates fail to follow the

IGP, a court must conduct a three-part inquiry to determine if such failure is fatal to their claims." *Id.* "A court must consider whether (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Id.* (citations omitted).

FN14. "Administrative remedies are unavailable when there is no possibility of relief for the action complained of." *Chaney,* 2008 WL 5423419, at *7 (citations and internal quotations omitted). "The test to determine the availability of an administrative remedy is an objective one asking whether 'a similarly situated individual of ordinary firmness' would have deemed it accessible." *Id.* (citation omitted). "Courts have found unavailability where plaintiff is unaware of the grievance procedures or did not understand it or where defendants' behavior prevents plaintiff from seeking administrative remedies." *Id.* (citations and internal quotations omitted).

FN15. *See, e.g., Carini v. Austin,* 06-CV-5652, 2008 WL 151555, at *4 (S.D.N.Y. Jan. 14, 2008) (noting that an inmate must point to "an affirmative act by prison officials that would have prevented him from pursuing administrative remedies, ... [because] his transfer to another facility is not a 'special circumstance' that excuses his failure to exhaust").

**\*5** Finally, with regard to Plaintiff's claim that a "conflict" existed (or exists) in this case, the Court rejects that argument. Plaintiff has not offered any evidence of such a conflict. The fact that District Judge Gary L. Sharpe issued a ruling in *Houston v. Leclaire,* 01-CV-0067, Decision and Order (N.D.N.Y. filed July 22, 2004) (Sharpe, J.) (denying, in part, defendants' motion for summary judgment requesting dismissal of

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 890658 (N.D.N.Y.)
**(Cite as: 2009 WL 890658 (N.D.N.Y.))**

Plaintiff's retaliation claim arising from the filing of false misbehavior reports against him, and the destruction of his legal materials, in 1999) in no way collaterally estops or otherwise precludes the Court from dismissing Plaintiff's claims in this current action due to a lack of supporting record evidence.[FN16] As a result, and for the reasons stated by Magistrate Judge Peebles in his Report-Recommendation, Plaintiff's retaliation claims with regard to the misbehavior reports are dismissed.

> FN16. To the extent that Plaintiff argues that there existed a conflict of interest resulting from his disciplinary hearing officers knowing each other, or knowing the correctional officers having charged Plaintiff with disciplinary charges, it is true that "[p]risoners have a constitutional right to have a fair and impartial hearing officer preside over their disciplinary hearings." *Chaney,* 2008 WL 5423419 at *7 (citing *Sira v. Morton,* 380 F.3d 57, 69 [2d Cir.2004] ). "However, the degree of impartiality required of prison officials does not rise to the level of that required of judges as it is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Id.* (citations and internal quotations omitted). "While the Supreme Court held 'that the requirements of due process are satisfied if some evidence supports the decision by the [hearing officer] ...,' the Second Circuit has held that the test is whether there was 'reliable evidence' of the inmate's guilt." *Id.* (citations omitted).

For all of these reasons, the Court grants Defendants' motion for summary judgment.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Peebles's Report-Recommendation (Dkt. No. 85) is *ACCEPTED* and *ADOPTED* in its entirety; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 80) is *GRANTED;* and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is *DISMISSED* in its entirety.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Tyrone Houston, a former New York State prison inmate who is proceeding *pro se* and *in forma pauperis,* has commenced this action pursuant to 42 U.S.C. § 1983, *inter alia,* alleging violation of his civil rights. In his complaint, plaintiff maintains that as a result of having been engaged in activity protected under the First Amendment to the United States Constitution, including filing grievances and commencement and pursuit of prior lawsuits, he was subjected by prison officials to a series of inter-prison transfers, the filing of false misbehavior reports, the imposition of unwarranted disciplinary confinement, and unfavorable program assignments. Plaintiff also complains of the deprivation of outdoor exercise, contending that the denial represented cruel and unusual punishment, in violation of his rights under the Eighth Amendment. Plaintiff's complaint seeks both equitable relief and the recovery of compensatory and punitive damages.

Currently pending before the court is a motion filed on behalf of the defendants seeking the entry of summary judgment dismissing each of plaintiff's claims. In support of their motion, defendants assert that certain of plaintiff's causes of action are procedurally barred, based upon his failure to exhaust available administrative remedies before filing suit, and that all of his claims are subject to dismissal on the merits, arguing that no reasonable factfinder could conclude that he was subjected to unlawful retaliation or cruel and unusual punishment. For the reasons set forth below, I recommend that defendants' motion be granted.

I. *BACKGROUND*[FN1]

> FN1. In light of the procedural posture of the case the following recitation is drawn from the record now before the court, with all inferences drawn, and ambiguities resolved, in favor of the plaintiff. *See Wells-Williams v. Kingsboro Psychiatric Ctr.,* No. 03-CV-134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007)

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(citations omitted).

**\*6** At the times relevant to his claims plaintiff Tyrone Houston, apparently also known as Tyrone Black, was a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS"). Plaintiff's claims, which are expansive in terms of both their substantive breadth and the time period involved, arise from incidents occurring while he was confined in various facilities operated by the DOCS including, the Mid-State Correctional Facility, the Mohawk Correctional Facility, the Marcy Correctional Facility, the Great Meadow Correctional Facility, the Downstate Correctional Facility, the Auburn Correctional Facility, the Five Points Correctional Facility, the Cayuga Correctional Facility, the Elmira Correctional Facility, and the Ogdensburg Correctional Facility.

During the period of his incarceration, plaintiff filed a series of grievances and commenced suits against various prison workers. Plaintiff claims that as a direct result of that activity he experienced recrimination, in the form of issuance of several false misbehavior reports, leading to procedurally flawed disciplinary hearings and ensuing unlawful disciplinary confinement in various facility special housing units ("SHUs"). Plaintiff also attributes the various inter-prison transfers which he experienced, including in October of 2000 to the Mohawk Correctional Facility in lieu of a facility closer to his place of residence, to retaliatory animus, in further response to his grievances and lawsuits. Plaintiff additionally asserts that while in disciplinary confinement, he was subject to a DOCS policy under which SHU inmates are ineligible for participation in outdoor exercise. As a result, plaintiff was unable to participate in such outdoor activities for an aggregate period of 222 days, extending intermittently from September of 2001 until mid-2003.[FN2]

> **FN2.** Each of these claims and their factual underpinnings will be discussed in more detail further on in this report.

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on November 21, 2003. Dkt. No. 1. As defendants, plaintiff's complaint names twenty-two present or past employees of the DOCS including the agency's commissioner, Glenn S. Goord, as well as the Central Office Review Committee (the "CORC"), which was sued as an entity, and asserts claims against the defendants in both their individual and official capacities.[FN3] *Id.* Issue was joined by the filing of answers on behalf of the majority of the defendants on September 30, 2005, and by defendant Dana C. Smith on November 28, 2005, generally denying the material allegations of plaintiff's complaint and interposing various affirmative defenses. Dkt. Nos. 58, 60.

> **FN3.** Plaintiff's claim against the CORC, as well as those asserted against the remaining defendants in their official capacities, were dismissed by order issued by Senior District Judge Lawrence E. Kahn, on September 29, 2006 (Dkt. No. 69), acting on a report and recommendation issued by me on August 28, 2006. Dkt. No. 67.

On January 4, 2008, following the completion of pretrial discovery, defendants moved for summary judgment dismissing plaintiff's complaint in its entirety. Dkt. No. 80. In their motion, defendants argue that portions of plaintiff's claims are procedurally barred, based upon his failure to exhaust available administrative remedies before commencing suit. Addressing the merits, defendants assert that plaintiff's claims lack factual support and that the record fails to contain evidence from which a reasonable factfinder could conclude that the adverse actions attributed by the plaintiff to retaliatory animus were in fact motivated by his protected activity. Defendants also contend that as a matter of law plaintiff's complaints regarding the denial of exercise do not implicate constitutional considerations. Plaintiff has since responded in opposition to defendants' motion in papers filed with the court on February 1, 2008. Dkt. No. 83.

**\*7** Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation to the assigned district judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).[FN4] *See*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

*also* Fed.R.Civ.P. 72(b).

> FN4. This matter was transferred from Judge Kahn to District Judge Glenn T. Suddaby on October 2, 2008. *See* Dkt. No. 84.

### III. *DISCUSSION*

#### A. *Summary Judgment Standard*

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82-83 (2d Cir.2004). A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law ...." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson* ). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. at 2511 n. 4; *Security Ins.,* 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than

mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process). When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137-38 (2d Cir.1998). Summary judgment is appropriately granted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *See Building Trades Employers' Educ. Ass'n v. McGowan,* 311 F.3d 501, 507-08 (2d Cir.2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

#### B. *Failure to Exhaust Remedies*

**\*8** In their motion defendants assert that, as a threshold matter, certain of plaintiff's claims are procedurally barred based upon his failure to exhaust available administrative remedies with regard to those claims.

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]" *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights actions. An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at \*5-6 (E.D.N.Y. Jan. 31, 2007). This limitation is intended to serve the dual pur-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

pose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record." *Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 914-15 (2007) (citations omitted); *see Woodford,* 548 U.S. at 91-92, 126 S.Ct. at 2386; *see also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532, 122 S.Ct. at 992 (citation omitted).

The failure of a prisoner to satisfy the PLRA's exhaustion requirement is not jurisdictional, but instead gives rise to a defense which must affirmatively be raised by a defendant in response to an inmate suit.[FN5] *Jones,* 127 S.Ct. at 918. In the event a defendant named in such an action establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal. *See Pettus v. McCoy,* No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 94-95, 126 S.Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies).

> FN5. In their answers, defendants have included an affirmative defense alleging plaintiff's failure to satisfy his exhaustion obligation. *See* Dkt. Nos. 58, ¶ 16 and 60, ¶ 16.

"Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." *Woodford,* 548 U.S. at 95, 126 S.Ct. at 2388; *see also Macias v. Zenk,* 495 F.3d 37, 43 (2d Cir.2007) (citing *Woodford* ). While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias,* 495 F .3d at 43 (quoting

*Johnson,* 380 F.3d at 697-98) (emphasis omitted).

**\*9** New York prison inmates are subject to an Inmate Grievance Program ("IGP") established by DOCS, and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson,* No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson,* 351 F.3d 606 (2d Cir.2003) and *Snider v. Melindez,* 199 F.3d 108, 112-13 (2d Cir.1999)). The IGP consists of a three-step review process. First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the incident.[FN6] 7 N.Y.C.R.R. § 701.5(a). The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance. *Id.* §§ 701.4(b), 701.5(b). If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision. *Id.* § 701.5(c). The third level of the process affords the inmate the right to appeal the superintendent's ruling to CORC, which makes the final administrative decision. *Id .* § 701.5(d). Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court. *Reyes v. Punzal,* 206 F.Supp.2d 431, 432 (W.D.N.Y.2002) (citing, *inter alia, Sulton v. Greiner,* No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

> FN6. The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances." 7 N.Y.C.R.R. § 701 .6(g)(1)(i)(a)-(b).

Without question the plaintiff, who by all accounts has frequently availed himself of New York's IGP while in DOCS custody, has filed grievances raising many of the issues forming the basis for his complaint in this action. The record now before the court, however, contains no indication that this is true with regard to all of Houston's claims. The only grievance which plaintiff claims to have lodged addressing the question of his many, allegedly retaliatory inter-prison transfers, for example, was filed on March 17, 2003. *See* Complaint (Dkt. No. 1) ¶ 46 and pp. 109-111.[FN7] Accordingly, it

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

does not appear that plaintiff has exhausted available administrative remedies with respect to inter-prison transfers effectuated after the filing of that grievance, including his transfers 1) on June 13, 2003, into the Riverview Correctional Facility; 2) on June 16, 2003, into the Gouverneur Correctional Facility; and 3) on August 15, 2003, into the Elmira Correctional Facility. Similarly, there is no indication in the record now before the court that plaintiff's alleged denial of outdoor exercise covering the period from September 15, 2001 through November 21, 2001, forming the basis for a portion of plaintiff's cruel and unusual punishment claim, *see* Complaint (Dkt. No. 1) ¶ 47, was grieved. While plaintiff did apparently file a grievance on July 29, 2003 regarding his confinement in the Gouverneur SHU beginning on June 17, 2003, *see* Complaint (Dkt. No. 1) at p. 120, there is no evidence of pursuit of that grievance through to completion.

> FN7. In support of their motion, defendants have offered a version of plaintiff's complaint, which is exceedingly comprehensive, together with the extensive exhibits attached, all paginated for ease of reference. *See* Kerwin Decl. (Dkt. No. 80-8) Exh. A. In this report and recommendation I will adopt defendants' pagination when citing to those materials.

**\*10** In light of these failures and the fact that plaintiff has not offered any evidence which would indicate that the grievance procedure was not available to him or otherwise form a proper basis for excusing the grievance requirement, I recommend that the portions of plaintiff's claims for which there was no grievance filed and pursued to completion be dismissed on this procedural basis.FN8

> FN8. In his memorandum in opposition to defendants' motion, plaintiff alleges, for the first time, that certain prison officials, identified as defendants DeBejian and G. Molnar, interfered with his grievances out of retaliatory animus. *See* Plaintiff's Memorandum (Dkt. No. 82) at pp. 11-12. This conclusory statement draws no evidentiary support from the record, and is not viewed by the court as sufficient to invoke the

limited exceptions by the Second Circuit in its group of decisions issued in 2004. *See, Johnson v. Testman,* 380 F.3d 691 (2d Cir.2004); *Hemphill v. New York,* 380 F.3d 680 (2d Cir.2004); *Giano v. Goord,* 380 F.3d 670 (2d Cir.2004); *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004); and *Ortiz v. McBride,* 380 F.3d 649 (2d Cir.2004). I note, moreover, that whether the *Hemphill* test survives intact following the Supreme Court's decision in *Woodford v. Ngo,* 54 U.S. 81, 126 S.Ct. 2378 (2006), has been a matter of some speculation. In one relatively recent decision a judge of another district within this Circuit concluded that at least the first two prongs of the *Hemphill* three part inquiry, requiring the court to assess whether administrative remedies were in fact "available" to prisoners and whether defendants should be estopped from raising the affirmative defense of non-exhaustion, retain continued vitality. *Amador v. Superintendents of Dep't of Correctional Services,* No. 03 Civ. 0650(KTD)(GWG), 2007 WL 4326747, at \*6-7 (S.D.N.Y. Dec. 4, 2007). I note that another judge of this court has similarly concluded that

> it appears that these decisions have **not** been overruled ... In [his] concurring opinion, Justice Breyer specifically noted that two circuits, the **Second** Circuit and Third Circuit, have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts(,) ...,"

> further buttressing the conclusion that the Second Circuit's *Hemphill* test retains vitality. *Miller v. Covey,* No. 9:05-CV 649, 2007 WL 952054, at \*3 (N.D.N.Y. Mar. 29, 2007) (*Emphasis in original* ).

### C. *Retaliation*

Plaintiff's complaint centers principally upon his claim of retaliation, which is comprised of two discrete components. First, plaintiff maintains that the issuance of various misbehavior reports, alleged by him to have contained false accusations, and resulting findings of

guilt following disciplinary hearings, were prompted by his having engaged in protected activity, including the filing of grievances and lawsuits. Additionally, plaintiff asserts that for the same retaliatory reasons he was excessively transferred among various prison facilities, including into some at remote locations from his place of residence. In their motion, defendants contend that the record fails to disclose the basis upon which a reasonable factfinder could conclude that the adverse actions upon which plaintiff's retaliation claims hinge were in fact prompted by retaliatory animus.

When adverse action is taken by prison officials against an inmate, motivated by the inmate's exercise of a right protected under the Constitution, including the free speech provisions of the First Amendment, a cognizable retaliation claim under 42 U.S.C. § 1983 lies. *See Franco v. Kelly,* 854 F.2d 584, 588-90 (2d Cir.1988). As the Second Circuit has repeatedly cautioned, however, such claims are easily incanted and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus; courts must therefore approach such claims "with skepticism and particular care." *Dawes v. Walker,* 239 F .3d 489, 491 (2d Cir.2001) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002); *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003) (same).

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that: 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action-in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977); *Dillon v. Morano,* 497 F.3d 247, 251 (2d Cir.2007); *Dawes,* 239 F.3d at 492 (2d Cir.2001). If the plaintiff successfully shoulders this burden, then to avoid liability the defendants must show by a preponderance of the evidence that

they would have taken action against the plaintiff "even in the absence of the protected conduct." *Mount Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. If taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (citations omitted).

**\*11** Analysis of retaliation claims thus requires thoughtful consideration of the evidence presented concerning the protected activity in which the inmate plaintiff has engaged and the adverse action taken against him or her, as well as evidence tending to link the two. When such claims, which ordinarily are exceedingly case specific, are alleged in only conclusory fashion, and are not supported by evidence establishing the requisite nexus between any protected activity and the adverse action complained of, the entry of summary judgment dismissing plaintiff's retaliation claims is warranted. *Flaherty,* 713 F.2d at 13.

It should also be noted that personal involvement of a named defendant in any alleged constitutional deprivation is a prerequisite to an award of damages against that individual under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). As is true of other types of claims, this principle applies to causes of action claiming unlawful retaliation. *See Abascal v. Hilton,* No. 04-CV-1401, 2008 WL 268366, at *10 (N.D.N.Y. Jan. 30, 2008) (Kahn, D.J. and Lowe, M.J.).

*1. False Misbehavior Report Claim*

In cases involving allegations of retaliation based on the filing of allegedly false misbehavior reports, "[t]he difficulty lies in establishing a retaliatory motive." *Barclay v. New York,* 477 F.Supp.2d 546, 558 (N.D.N.Y.2007). Mere conclusory allegations of such retaliatory motivation will not suffice to survive a sum-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

mary judgment motion; to establish retaliatory animus, which ordinarily must be shown circumstantially since direct evidence of such motivation is typically lacking, a plaintiff may cite such factors as "temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." *Id.* (citations omitted); *see also Rivera v. Goord,* 119 F.Supp.2d 327, 339 (S.D.N.Y.2000).

Plaintiff's complaint alleges the issuance of nine allegedly false misbehavior reports, each authored by a different corrections officer, between April 8, 2001 and June 9, 2003. Complaint (Dkt. No. 1) ¶¶ 13-29. In each instance plaintiff attributes the issuance to retaliatory motives, citing different protected activity, as follows:

| *Date of Issuance* | *Author* | *Alleged Protected Activity Precipitating Issuance* | *Disposition* |
| --- | --- | --- | --- |
| 4/8/01 | Van Slyke | Submission of grievance dated 4/12/01 against Van Slyke's girlfriend, identified only as "SHU Counselor".[9] | Dismissed (no hearing held) |
| 8/15/01 | Elliott | Grievances filed on 8/9/01 and and 8/12/01 [10] | Guilty (all counts) |
| 8/20/01 | Kelley | Filing of grievances (dates and content unspecified) | Guilty (two counts)/Not Guilty (one count) |
| 8/23/01 | Wurst | Filing of grievances and lawsuits against defendant Wurst's "buddies at Mo- | Guilty of all charges |

FN9. While the grievance for which plaintiff claims he was retaliated against in this count was filed on April 12, 2001, according to the exhibit attached to plaintiff's complaint, Houston contends that it was filed earlier and that there was a delay on the part of the IGRC in passing the complaint through for filing. *See* Houston Aff. (Dkt. No. 82) ¶ 4. While plaintiff's actual grievance complaints are annexed as exhibits in connection with other claims of retaliation, plaintiff did not include a copy of his handwritten grievance in this instance. It should be noted, however, that the handwritten complaints filed in other instances and the resulting formal IGRC sheet all bear the same filing dates. *See, e.g.,* Complaint (Dkt. No. 1) at pp. 19-21, 24-25, 59-61 and 116-18.

FN10. While plaintiff alleges having filed grievances on August 9, 2001 and August 12, 2001 against defendants Elliott and DeBejain, the record contains only the August 12, 2001 grievance. *See* Complaint (Dkt. No. 1) at ¶ 15 and pp. 20-21. Additionally, although plaintiff claims that the resulting false misbehavior report was issued on August 15, 2001 by both defendants Elliot and DeBejain, the report contains only Elliot's signature. *Id.* at p. 21.

| | | | |
|---|---|---|---|
| | | hawk" (dates and specifics not specified) | |
| 11/26/02 | Morse | Plaintiff "verbally complaining to [Morse's] supervisor about his racist behavior" (neither dates nor specifics provided) | Acquitted on all counts |
| 3/3/03 | Touron | "[Plaintiff's] exercise of freedom of information" (neither dates nor specifics provided) | Guilty on all counts |
| 3/22/03 | Shaver | Grievance filed on 3/12/03 | Guilty (two counts), Not Guilty (one count). |
| 5/29/03 [11] | Hammill | Written complaint dated 5/29/03 to defendant Smith re: defendant Hammill [submitted by plaintiff] | Guilty (all counts) |

26.

FN11. Plaintiff contends that this misbehavior report was issued on May 30, 2003, but backdated by one day. *See* Complaint (Dkt. No. 1) ¶

| | | | |
|---|---|---|---|
| 6/9/03 | Pirie | Pursuit of grievance appeal resulting in CORC decision dated 6/4/03 | Guilty (all counts); hearing result subsequently reversed on appeal to defendant Donald Selsky, Director of SHU/ Inmate Disciplinary Program |

**\*12** *Id.*

The only evidence offered by the plaintiff which could potentially support the finding of a nexus between an instance of protected activity alleged in his complaint and a corresponding misbehavior report is the inference to be drawn from the relevant chronology. It is true such an inference, flowing from a closeness in proximity between protected activity and the issuance of a misbehavior report can in certain instances suffice to avoid summary judgment dismissal of a retaliation claim. *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) citing *Flaherty v. Coughlin,* 713. F.2d 10, 14 (2d Cir.1983). As defendants note, however, in many

circumstances this alone is insufficient to avoid summary judgment. *Williams v. Goord,* 111 F.Supp.2d 280, 290 (S.D.N.Y.2000); citing *Ayers v. Stewart,* 1996 WL 346049, at \*1 (2d Cir.1999); *see also Ethier v. City of Cohoes,* No. 1:02 Civ. 1584, 2006 WL 1007780, \*7 (N.D.N.Y. April 18, 2006).

In this instance there are misbehavior reports issued which, taken in isolation, could give rise to a determination by a reasonable factfinder that the misbehavior report was issued in retaliation for protected activity. Taken together and considered in the light of all relevant facts, however, the record in this instance simply does not support the inference of such a connection. Prior to April of 2001, plaintiff had amassed a disciplinary

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

record which included twelve separate findings of guilt in connection with alleged violations between October, 1993 and July, 27, 1999. *See* Kerwin Decl. (Dkt. No. 80-8) Exh. B. The allegedly retaliatory misbehavior reports now in dispute were issued over a two-year period by nine different corrections workers, while plaintiff was incarcerated at four different prison facilities. With the exception of defendant Hammill, each of the individuals authoring the subject misbehavior reports has submitted an affidavit expressly denying having done so prompted by retaliatory motivation.[FN12] In seven of the nine instances, plaintiff was found guilty of at least some of the charges lodged, with an acquittal in one additional instance and one other misbehavior report having been dismissed for failure to conduct a timely disciplinary hearing. Given the totality of these circumstances, no reasonable factfinder could conclude that the issuance of the various misbehavior reports and resulting findings of guilty was prompted by retaliatory animus. I therefore recommend dismissal of this portion of plaintiff's retaliation claim.

> [FN12]. No explanation is offered for the failure to include an affidavit for that defendant.

**2. Prison Transfer Claim**

The second aspect of plaintiff's retaliation claim concerns his frequent transfer among prisons.[FN13] The record supports plaintiff's claim regarding the frequency of his prison transfers. Plaintiff was transferred among various New York prisons thirteen times between May 7, 2001 and August 15, 2003, as set forth below:

> [FN13]. It should be noted that this is not the first time the plaintiff has had occasion to raise the claim of retaliation associated with this inter-prison transfers. In another action also filed in 2003, in the Western District of New York, plaintiff's complaint included claims of retaliation based upon prison transfers; plaintiff's claims in that case were dismissed, on motion for summary judgment, by order issued by District Judge David G. Larimer. *Houston v. ZenZen,* No. 03-CV-6118 L, (N.D.N.Y. September 26, 2005). *See* Kerwin Decl. (Dkt. No. 80-8) Exh. M (Decision and Order). Significantly, among the defendants named in that action was defendant Knapp-David. *Id.* It therefore could well be that plaintiff's claims in this action alleging retaliatory inter-prison transfer are barred by claim preclusion, or at the very least issue preclusion, based upon Judge Larimer's determination and the resulting judgment. *See Hill v. Coca Cola Bottling Co.,* 786 F.2d 550, 552-53 (2d Cir.1986) and *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 455, 482 N.E.2d 63, 67 (1985).

| Date of Transfer | Transferee Facility |
| --- | --- |
| 5/7/01 | Mohawk Correctional Facility |
| 9/15/01 | Marcy Correctional Facility SHU |
| 11/21/01 | Downstate Correctional Facility SHU |
| 11/23/01 | Great Meadow Correctional Facility SHU |
| 11/27/01 | Downstate Correctional Facility SHU |
| 12/2/01 | Auburn Correctional Facility SHU |
| 12/5/01 | Five Points Correctional Facility |
| 7/11/02 | Cayuga Correctional Facility |
| 8/16/02 | Auburn Correctional Facility |
| 2/3/03 | Ogdensburg Correctional Facility |
| 6/13/03 | Riverview Correctional Facility |

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

6/17/03

8/15/03

**\*13** Complaint (Dkt. No. 1) ¶¶ 7-10, 32-46; Knapp-David Aff. (Dkt. No. 80-22) Exh. B. Citing some specific instances of protected activity, plaintiff alleges that all of these transfers were prompted by retaliatory motives on the part of prison officials. *See* Complaint (Dkt. No. 1), *id.*

Without question, prison officials retain significant flexibility and wide discretion in managing the corrections system and placing inmates appropriately. *See* N.Y. Correction Law §§ 23, 72 and 112(1); *see also Prins v. Coughlin,* 76 F.3d 504, 507 (2d Cir.1996) *citing Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538 (1976) (prisoner generally has no due process right to challenge a transfer from one facility to another). As the Supreme Court has noted, New York's statute governing prison transfers "imposes no conditions on the discretionary power to transfer, and we are advised by the State that no such requirements have been promulgated." *Montaye v. Haymes,* 427 U.S. 236, 243, 96 S.Ct. 2543 (1976).

While the discretion of prison officials to place and transfer prisoners is broad, it is not unfettered; when such a transfer is made out of purely retaliatory motivation, in response to constitutionally protected activity, a claim of unlawful retaliation under the First Amendment is established. *Meriwhether v. Coughlin,* 879 F.2d 1037, 1046 (2d Cir.1989); *Hohman v. Hogan,* 597 F.2d 490, 492-93 (2d Cir.1979).

In this instance plaintiff's allegations of retaliatory transfers appear to center upon defendants Knapp-David, LeClaire and Goord. *See* Complaint (Dkt. No. 1) ¶¶ 32, 35-42, 45 and pp. 18-19, 79-81, 88-89, 91-92, 94-95. Plaintiff apparently theorizes that these high ranking DOCS officials undertook a campaign of retaliatory transfers in order to punish him for his filing of grievances and lawsuits against various corrections workers assigned to the prison to which plaintiff was assigned.

Gouverneur Correctional Facility

Elmira Correctional Facility

In an affidavit given in support of defendants' motion, defendant Knapp-David, formerly the Director of Classification and Movement for the DOCS, explains the hub system implemented by the agency to designate the 63,500 inmates in the system and the process utilized to effectuate inmate transfers. Knapp-David Decl. (Dkt. No. 80-22) ¶¶ 2-7. That affidavit reflects that "transfers of inmates between hubs or transfer of maximum security inmates were approved and made by classification analysts on [Knapp-David's] staff when [she] was the Director of Classification and Movement .... As a routine matter [she] was not personally involved in inmate transfer decisions." FN14 *Id.* ¶ 3. In that declaration defendant Knapp-David denies both having any retaliatory motivation, and participating in the decisions to make the disputed transfers. *Id* . Since personal involvement is a constitutional violation is a pre-requisite to establishing liability, defendant Knapp-David is entitled to dismissal on this basis. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977).

> FN14. In her declaration, Knapp-David also explained that inmate transfers can be prompted by a number of factors, including required court appearances or the need for specialized medical treatment, additionally pointing out that on occasion when an inmate is moved between hubs, a transfer may include short term stays at various facilities along the way. Knapp-David Decl. (Dkt. No. 80-22) ¶ 9. Knapp-David further explained that this is the likely reason for certain transfers in rapid succession not necessarily reflected on plaintiff's inmate transfer history including, for example, the September 2001 transfer from Marcy to Great Meadow, with an intermediate stop at Downstate, and a return trip through Downstate with a final destination of Five Points, with only the Marcy to Five Points transfer having been noted on the plaintiff's transfer history. *See* Knapp-David Decl. (Dkt. No. 80-22) ¶ 9 and Exh. B.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*14** Aside from his sheer conjecture, plaintiff has offered no evidence from which a reasonable factfinder could determine that any of the cited prison transfers were ordered out of retaliation for plaintiff's filing of grievances and commencement of lawsuits, rather than resulting from legitimate, penological considerations. Given this and plaintiff's well documented history of claiming retaliation in connection with many adverse actions taken against him overtime by prison officials, I conclude that the entry of summary judgment dismissing this portion of plaintiff's retaliation claim is also warranted.FN15

> FN15. In a declaration given in support of defendants' motion, Attorney Stephen M. Kerwin, Esq. recounts his search for actions commenced by the plaintiff, revealing eleven civil cases commenced by Houston against DOCS employees, several of which include allegations of retaliation. *See* Kerwin Decl. (Dkt. No. 80-8) ¶¶ 5, 9-11.

D. *Cruel and Unusual Punishment*

The last element of plaintiff's complaint is focused upon the alleged denial of the opportunity to engage in outdoor exercise while confined to S-Blocks and at Ogdensburg. Complaint (Dkt. No. 1) ¶¶ 47-48. Defendants maintain that they are entitled to the entry of summary judgment dismissing this claim as well.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle* ). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement-the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference". *See Leach v. Dufrain,* 103 F.Supp.2d 542, 546 (N.D.N.Y.2000) (Kahn, J.) (citing *Wilson v. Seiter,* 501 U.S. 294, 297-98, 111 S.Ct. 2321, 2323-2324 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M .J.); *see also, generally, Wilson,* 501 U.S. 294, 111 S.Ct. 2321. Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1978; *Leach,* 103 F.Supp.2d at 546 (citing *Farmer* ); *Waldo,* 1998 WL 713809, at *2 (same).

Without question, prison inmates must be afforded a reasonable opportunity for exercise. *Anderson v. Coughlin,* 757 F.2d 33, 35 (2d Cir.1985); *see also Williams v. Greifinger,* 97 F.3d 699, 704 (2d Cir.1996) and *Sostre v. McGinnis,* 442 F.2d 178, 193 & n .25 (2d Cir.1971) (en banc), *rev'd on other grounds, cert. denied Sostre v. Oswald,* 404 U.S. 1049, 92 S.Ct. 11190 (1972). Not every deprivation of this opportunity, however, rises to a level of constitutional significance; instead, to sustain an Eighth Amendment claim a plaintiff must show that he or she was denied of all meaningful exercise for a substantial period of time. *See Davidson v. Coughlin,* 968 F.Supp. 121, 129 (S.D.N.Y.1997). When determining whether this showing has been made, a court may consider such relevant factors as 1) the duration of the deprivation; 2) its extent; 3) the availability of other out-of-cell activities; 4) the opportunity for in-cell exercise; and 5) the justification offered for the deprivation. *See Williams v. Goord,* 111 F.Supp.2d 280, 291 (S.D.N.Y.2000).

**\*15** Plaintiff's exercise claim is comprised of two components. First, he contends that when confined to an "S" block for disciplinary purposes he was not permit-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

ted to engage in outdoor exercise, but instead only permitted to exercise utilizing an outdoor recreation pen attached to his cell. *See* Complaint (Dkt. No. 1) ¶¶ 48 and p. 113. Secondly, plaintiff asserts that he was confined to his cell for twenty-four hours each day between March 22, 2003 and April 4, 2003, pending a hearing at the Ogdensburg Correctional Facility, and thus denied any meaningful opportunity to exercise during that period. (Dkt. No. 1) ¶ 49 and p. 116.

1. *"S" Block Confinement*

While confined in facility SHU's, plaintiff was restricted to an exercise area measuring eight feet five inches in width, six feet nine inches in depth, and with the ceiling height of twelve feet seven inches. Complaint (Dkt. No. 1) ¶¶ 47-48; Prack Aff. (Dkt. No. 80-30) ¶ 5. SHU exercise areas have three solid walls, with a fourth side made of woven rod security screen through which inmates can view the open surroundings. Prack Aff. (Dkt. No. 80-30) ¶ 5.

The relevant portions of plaintiff's complaint and exhibits describe standard SHU conditions of confinement, which have been found to pass constitutional muster. *See, e.g., Sostre v. McGinnis,* 442 F.2d at (outdoor exercise for one hour in small enclosed yard open to the sky consistent with Eighth Amendment); *Anderson,* 757 F.2d at 35) (holding that Eighth Amendment not violated when inmates confined to special housing unit were allowed one hour per day of outdoor exercise-with no access to indoor exercise area); *Young v. Scully,* Nos. 91 Civ. 4332, 91 Civ. 4801, 91 Civ. 6769, 1993 WL 88144, at *5 (S.D.N.Y. March 22, 1993) (holding that Eighth Amendment was not violated when inmate was deprived of exercise for periods lasting several days); and *Jordan v. Arnold,* 408 F. Supp 869, 876-877 (M.D.Pa.1976) (holding that Eighth Amendment not violated when inmates confined to special housing unit were allowed two hours of exercise per week). In this instance the court declines plaintiff's invitation to enter the arena of prison management, and instead recommends a finding that this portion of plaintiff's complaint fails to allege a cognizable constitutional deprivation.

2. *Denial of Exercise While at Ogdensburg*

The second element of plaintiff's cruel and unusual punishment claim relates to the denial of exercise for a period of thirteen days while awaiting a disciplinary hearing. *See* Complaint (Dkt. No. 1) and p. 116. In order to sustain a constitutional claim this cause of action must assert an "unquestioned and serious deprivation of basic human needs" or "depri[vation] of the minimal civilized measure of life's necessities. *Anderson,* 757 F.2d at 35. The denial of exercise for a period of thirteen days is, relatively speaking, *de minimis* and does not rise to a level sufficient to support a constitutional deprivation. *See Young v. Scully,* 91 Civ. 4332, 91 Civ. 4801, 91 Civ. 6768 and 91 Civ. 6769, 1993 WL 88144, at *5 (deprivation of exercise over several days found to be *de minimis* ); *Davidson v. Coughlin,* 968 F.Supp. 121, 128-131 (S.D.N.Y.1997) (holding that "temporary and sporadic deprivations of outdoor activity [for no longer than fourteen days in a row] do not fall below the minimum standards of the Eighth Amendment"); *see also Trammell v. Keane,* 338 F.3d 155 (2d Cir.2003); *Branham v. Meachum,* 77 F.3d 626, 630-31(2d Cir.1996) (finding that keeping inmate on lockdown and "full restraint" status without outdoor exercise for a period of approximately twenty-two days does not violate the Eighth Amendment).

**\*16** There appears to be another basis on which dismissal of this portion of plaintiff's complaint would be warranted. The deprivation of exercise while in Ogdensburg does not appear to be attributed to subjective indifference on the part of any of the named defendants to plaintiff's well being, but instead was the result of a facility procedure at Ogdensburg which was later amended following plaintiff's successful grievance regarding the matter. *See* Kurz Decl. (Dkt. No. 80-26) ¶ 9. Under these circumstances plaintiff has failed to establish the subject deliberate indifference on the part of any of the defendants toward his safety and well being. *Hathaway v. Coughlin,* 99 F.3d 550, 554 (2d Cir.1996) (charged official must act with sufficiently culpable state of mind that is equivalent to criminal recklessness); *see also Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994).

IV. *SUMMARY AND RECOMMENDATION*

The plaintiff, a frequent litigator and an inmate who over the period of his confinement with the DOCS accumulated an extremely poor disciplinary record, now complains alleging that nine misbehavior reports authored by nine separate corrections officers at four corrections facilities over a two year period, seven of which resulted of findings of guilt following disciplinary hearings, were issued out retaliatory motivation. Having carefully considered the record now before the court, I conclude no reasonable factfinder could agree that those misbehavior reports were issued for retaliatory purposes. Plaintiff further claims that various inter-prison transfers which he experienced over time were retaliatory, in response to his having filed grievances and lawsuits. Once again, the record fails to contain evidence from which a reasonable factfinder could draw this conclusion. Finally plaintiff contends that he was subjected to cruel and unusual punishment by the denial of adequate opportunities for exercise. Having carefully reviewed the record, I conclude that no reasonable factfinder could determine that he was in fact subjected to cruel and unusual punishment.

For these reasons, and additionally because certain of his claims are procedurally barred based upon his failure to exhaust available administrative remedies, I recommend dismissal of plaintiff's complaint in its entirety. It is therefore respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 80) be GRANTED, and that all plaintiff's claims in this action be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2009.
Houston v. Goord
Not Reported in F.Supp.2d, 2009 WL 890658 (N.D.N.Y.)

END OF DOCUMENT


Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

**C**
Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Larry TINSLEY, Plaintiff,
v.
Gary GREENE, Deputy Superintendent of Great
Meadow Correctional Facility; Jim Lanfear,
Maintenance Supervisor, Great Meadow Correctional
Facility; Gary Yule, Corrections Officer, Great Meadow
Correctional Facility; and David Roberts, Senior
Counselor, Great Meadow Correctional Facility,
Defendants.
**No. 95-CV-1765 (RSP/DRH).**

March 31, 1997.

Larry Tinsley, Pro Se.

Dennis C. Vacco, New York State Attorney General,
Darren O'Connor, Assistant Attorney General, of counsel,
for Defendants.

ORDER

POOLER, District Judge.

**\*1** The above matter comes to me following a
report-recommendation and order by Magistrate Judge
David R. Homer, duly filed on the 13th day of September,
1996. Dkt. No. 24. Following ten days from the service
thereof, the clerk has sent me the entire file, including any
objections thereto. Plaintiff Larry Tinsley filed objections.
Dkt. Nos. 25, 26.

In his report-recommendation, Magistrate Judge Homer
advises that Tinsley failed to establish or raise a genuine
issue of material fact regarding the nature of his

confinement. Report-recommendation, Dkt. No. 24, at
9-10. There is no dispute that prison officials confined
Tinsley to keeplock and loss of some privileges for 60
days after they conducted a search of his cell, found a
marijuana cigarette in the cell, and found Tinsley guilty of
possessing a controlled substance after a Tier III
disciplinary hearing. Tinsley's conviction and sentence
were affirmed on administrative appeal. In his lawsuit
under 42 U.S.C. § 1983, Tinsley raises several charges to
the manner in which defendants conducted the search and
disciplinary hearing. However, Tinsley failed to specify in
any manner that his punishment posed an "atypical and
significant hardship on [him] in relation to the ordinary
incidents of prison life." *Sandin v. Connor,* 515 U.S. 472,
----, 115 S.Ct. 2293, 1300, 132 L.Ed.2d 418, ---- (1995).
Without this showing, plaintiff failed to allege a
deprivation of his Fourteenth Amendment due process
liberty interest, and his civil rights claim must fail. *Id.*

In his objections to the report-recommendation, Tinsley
makes general attacks regarding the alleged bias of
Magistrate Judge David Homer and argues that the
magistrate judge has misconstrued his claims. Plaintiff
also asks me to reconsider defendants' summary judgment
motion and review plaintiffs memorandum opposing the
motion. However, Tinsley has not raised any allegation
regarding the nature of his punishment, which is the
threshold issue under *Sandin.* I have reviewed the entire
file in this matter, including plaintiff's many submissions,
and I find that he failed to raised any issue of fact to
support an alleged deprivation of his due process liberty
interests. Magistrate Judge Homer's thorough
report-recommendation is neither biased nor a
mischaracterization of plaintiffs claims.

For the foregoing reasons, it is therefore

ORDERED that the report-recommendation of September
13, 1996, is approved, and

ORDERED that plaintiffs' motion for default summary
judgment is denied as moot, and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

ORDERED that defendants' motion for summary judgment is granted, and it is further

ORDERED that the clerk serve a copy of this order upon the parties by regular mail.

IT IS SO ORDERED.

HOMER, United States Magistrate Judge.

REPORT-RECOMMENDATION AND ORDER [FN1]

> FN1. This matter was referred to the undersigned for report and recommendation by United States District Judge Rosemary S. Pooler pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

The plaintiff a New York State Department of Correctional Services (DOCS) inmate currently confined at the Great Meadow Correctional Facility (Great Meadow), brought this pro se action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants violated his rights under the Fourth and Fourteenth Amendments in connection with a search of his cell and ensuing disciplinary hearing. Plaintiff seeks compensatory and punitive damages as well as injunctive relief.

*2 Presently pending are defendants' motion for summary judgment (Docket No. 17), plaintiff's letter-memorandum requesting summary judgment by default (Docket No. 11), and plaintiff's motions for a pre-trial conference (Docket No. 20) and for appointment of counsel (Docket No. 21). For the reasons stated below, it is recommended that the defendants' motion be granted and that plaintiff's motions be denied.

## I. BACKGROUND

On October 30, 1995, while plaintiff was incarcerated at Great Meadow, defendant Greene received information from a confidential source that plaintiff was concealing escape materials. Defendant Greene ordered the search of plaintiff's prison cell. The search was executed by

Corrections Officer Rando and defendant Yule and was supervised by Sergeant Smith. No escape materials were found. However, the officers found a rolled cigarette in plaintiff's cell. The cigarette tested positive for marijuana. Plaintiff was placed in keeplock [FN2] and was given a contraband receipt for the cigarette that was removed from his cell.

> FN2. "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46 F.3d 189, 192 (2d Cir.1995); N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (1995).

Plaintiff was served with a misbehavior report which charged him with possession of a controlled substance. A Tier III disciplinary hearing [FN3] was commenced on November 3, 1995 before defendant Lanfear as the hearing officer. During the hearing, plaintiff claimed that defendant Greene failed to corroborate the reliability of the confidential informant, the search was improperly supervised, he did not receive the requisite contraband slip, defendants did not remove any contraband item from plaintiff's cell, and defendants failed to sign the misbehavior report. Plaintiff also objected when witnesses were not called in the order he had requested.

> FN3. DOCS regulations provide for three tiers of disciplinary hearings depending on the seriousness of the misconduct charged. A Tier III hearing, or superintendent's hearing, is required whenever disciplinary penalties exceeding thirty days may be imposed. N.Y. Comp.Codes R. & Regs. tit. 7, §§ 254.7(iii), 270.3(a) (1995); Walker v. Bates, 23 F.3d 652, 654 (2d Cir.1994), cert. denied, 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995).

At the conclusion of the hearing on November 7, 1995, defendant Lanfear found plaintiff guilty based upon the

statement in the misbehavior report submitted by C.O. Rando endorsed by C.O. Yule. Testimony during hearing by C.O. Yule verified the report and stated the substance

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

was found in Tinsley's cell. Testimony during hearing by Sgt. Sawyer stated he received the item found by C.O. Rando and tested same which proved positive for controlled substance. Testimony was considered during hearing by Tinsley.

Defs.' Statement Pursuant to Rule 7.1(f) (Docket No. 17), Ex. A, p. 16. Plaintiff was sentenced to confinement in keeplock for sixty days and loss of packages, commissary and telephone privileges for sixty days. Shortly after this action was commenced, plaintiff's conviction and sentence were affirmed on administrative appeal.

## II. SUMMARY JUDGMENT

### A. Legal Standard

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).* The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party. *Federal Deposit Ins. Corp. v. Giammettei, 34 F.3d 51, 54 (2d Cir.1994); see also Heyman v. Commerce and Industry Ins. Co., 524 F.2d 1317, 1320 (2d Cir.1975).* Once the moving party has provided sufficient evidence to support a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed.R.Civ.P. 56(e); *accord Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir.1994).*

**\*3** The trial court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmovant. *American Cas. Co. of Reading Pa. v. Nordic Leasing, Inc., 42 F.3d 725, 728 (2d Cir.1994); see also Eastway Construction Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir.1985).* The nonmovant may defeat summary judgment by producing specific facts showing that there is a genuine issue of material fact for trial. *Celotex Corp. v.*

*Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).*

### B. Discussion

The defendants move for summary judgment on the grounds that (1) plaintiff's due process allegations fail to state a claim, (2) plaintiff's hearing was conducted in accordance with constitutional requirements, (3) the search of plaintiff's cell did not violate any of plaintiff's constitutional rights, and (4) defendants are entitled to qualified immunity.

### 1. Due Process Liberty Interest

Plaintiff contends that his due process rights were violated because the November 3-7, 1995 disciplinary hearing was improperly executed, and as a result, he was wrongly confined to sixty days keeplock.[FN4] In their motion for summary judgment, defendants contend that under *Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995),* plaintiff lacked any liberty interest protected by the Due Process Clause.

> FN4. New York regulations permit placement in keeplock for both disciplinary and administrative reasons. These include, among others, punishment for misconduct and protective custody. N.Y. Comp.Codes R. & Regs. tit. 7, § 301.1-.7 (1995).

A due process claim as alleged by plaintiff will lie under section 1983 only where the alleged violation infringed a cognizable liberty interest. *Allison v. Kyle, 66 F.3d 71, 74 (5th Cir.1995).* Under *Sandin,* a court must first determine whether the deprivation of which an inmate complains merits the protections afforded by the Due Process Clause. A protected liberty interest

will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force. nonetheless imposes *atypical and*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

*significant hardship on the inmate in relation to the ordinary incidents of prison life.*

*Id.* at 2300 (emphasis added). The Court held that confinement of the plaintiff for thirty days in a segregated housing unit infringed no liberty interest protected by the Due Process Clause. *Id.* at 2302.

At first blush *Sandin* appeared to mark a radical change in the litigation of inmates' due process claims. It appeared to suggest that the number of sufficiently stated claims would be drastically reduced. *See Orellana v. Kyle,* 65 F.3d 29, 31-32 (5th Cir.1995), *cert. denied,* 516 U.S. 1059, 116 S.Ct. 736, 133 L.Ed.2d 686 (1996) ("it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status.... [T]he ambit of [inmates'] due process liberty claims has been dramatically narrowed.").

Indeed, several circuit courts have rejected prisoners' due process claims under *Sandin* where the deprivation complained of was solely confinement in segregated housing. *See, e.g., Pichardo v. Kinker,* 73 F.3d 612, 613 (5th Cir.1996) (indefinite confinement in administrative segregation for affiliation with gang not atypical and significant under *Sandin* ); *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir.1995), *cert. denied,* 517 U.S. 1196, 116 S.Ct. 1690, 134 L.Ed.2d 791 (1996) (segregation without more implicates no liberty interest); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir.1995)(placement in administrative segregation not atypical and significant in context of life sentence).

*4 Several judges in this district have adopted this position. *See Polanco v. Allan,* No. 93-CV-1498, 1996 WL 377074, at *2 (N.D.N.Y. July 5, 1996) (McAvoy, C.J.) (confinement in a special housing unit (SHU) for up to one year not protected by Due Process Clause); *Figueroa v. Selsky,* No. 91-CV-510 (N.D.N.Y. Oct. 5, 1995) (Scullin, J.) (seven and one-half months in SHU not protected); *Delaney v. Selsky,* 899 F.Supp. 923, 927 (N.D.N.Y.1995) (McAvoy, C.J.) (197 days in SHU not protected); *Ocasio v. Coughlin,* No. 94-CV-530 (N.D.N.Y. Feb. 5, 1996) (Scullin, J.) (180 days in SHU not protected); *Gonzalez v. Coughlin,* No. 94-CV-1119

(N.D.N.Y. Jan. 10, 1996) (Report-Recommendation of M.J. Hurd) (163 days in keeplock not protected), *adopted,* (N.D.N.Y. May 6, 1996) (Cholakis, J.), *appeal docketed,* No. 96-2494 (2d Cir. June 10, 1996); *Taylor v. Mitchell,* No. 91-CV-1445 (N.D.N.Y. Feb. 5, 1996) (Cholakis, J.) (sixty days in SHU not protected); *Cargill v. Casey,* No. 95-CV-1620, 1996 WL 227859, at *2 (N.D.N.Y. May 2, 1996) (Pooler, J.) (dismissing as frivolous complaint alleging due process violation resulting in keeplock confinement for thirty days). Under these cases, based solely on its duration, plaintiff's confinement in keeplock for sixty days would not constitute a cognizable liberty interest under *Sandin.*

Other circuits, however, have viewed *Sandin* less as a durational, bright line bar to statement of a claim than as an additional issue of fact for litigation. *See, e.g., Bryan v. Duckworth,* 88 F.3d 431, 433-34 (7th Cir.1996) (question of fact whether disciplinary segregation was atypical and significant under *Sandin* ); *Williams v. Fountain,* 77 F.3d 372, 374 n. 3 (11th Cir.1996) (noting *Sandin* decided by only 5-4 majority and holding that segregation for one year provided basis for assuming atypical and significant deprivation under *Sandin* ); *Gotcher v. Wood,* 66 F.3d 1097, 1101 (9th Cir.1995) (placement in disciplinary segregation presents issue of fact whether it constitutes an atypical and significant deprivation under *Sandin* ).

The Second Circuit appears generally to be following the Seventh, Ninth and Eleventh Circuits. The Second Circuit has not yet definitively addressed the effect of *Sandin* on its prior holdings. *See Rodriguez v. Phillips,* 66 F.3d 470, 480 (2d Cir.1995). It has recently held, however, that *Sandin* does apply retroactively and, it appears, that a plaintiff bears the burden of proving that the deprivation in question imposed an atypical and significant hardship. *See Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996); *Samuels v. Mockry,* 77 F.3d 34, 37-38 (2d Cir.1996); *see also Giakoumelos v. Coughlin,* 88 F.3d 56, 62 (2d Cir.1996) (dicta that whether confinement in SHU is "atypical and significant" under *Sandin* presents question of fact). One judge in this district has concluded from these cases that fact-finding is required to resolve whether a deprivation is atypical and significant. *Compare Silas v. Coughlin,* No. 95-CV-1526, 1996 WL 227857, at *1 (N.D.N.Y. April 29, 1996) (Pooler, J.) (denying motion to dismiss due process claim where plaintiff was confined in SHU for 182 days, holding that Second Circuit's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

interpretation of *Sandin* mandated further fact-finding as to nature of plaintiff's alleged deprivation from confinement), *with Cargill v. Casey, supra* (due process claim based on confinement in keeplock for thirty days dismissed as frivolous).

**\*5** Under these cases, consideration must be given to whether a plaintiff has established, or raised, a genuine question of fact concerning his disciplinary confinement. Here, plaintiff has raised no question of fact concerning his confinement in keeplock. Plaintiff has not alleged rare, unique or unusual hardships of the kind cited in *Sandin* as examples of atypical and significant deprivations. 515 U.S. at ----, 115 S.Ct. at 2300 (transfer to a mental hospital and involuntary administration of psychotropic drugs), or that detention in keeplock imposed a hardship on plaintiff because of his special, unique or unusual condition while incarcerated. *See Delaney v. Selsky,* 899 F.Supp. at 927-28 (question of fact whether confinement in SHU created atypical and significant deprivation for inmate who alleged such confinement caused back problems because of his unusual height of nearly seven feet).

Segregated confinement is a known and usual aspect of incarceration in the New York prison system. *See Sandin v. Conner,* 515 U.S. at ----, 115 S.Ct. at 2301 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). The existence of keeplock has been authorized by statute, N.Y. Correct. Law § 112(1) (McKinney 1987), and implemented by DOCS regulations. N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (1995). Those regulations describe the conditions and restrictions of confinement in keeplock. *Id.* at pts. 302-05. The deprivations are, therefore, part of the New York prison "regime ... to be normally expected" by one serving a sentence in that system. *Sandin v. Conner,* 515 U.S. at ----, 115 S. Ct. at 2302.

Moreover. confinement in keeplock or SHU may result not only from the imposition of discipline, as here. Inmates may also be placed in keeplock or SHU for reasons of administration, N.Y. Comp.Codes R. & Regs. tit. 7, § 301.4(b) (1995); protection, *id.* at § 301.5; detention, *id.* at § 301.3; reception, diagnosis and treatment, *id.* at pt. 306; or for any other reason. *Id.* at 301.7(a). The conditions for inmates confined in keeplock,

including plaintiff, are the same regardless of the reason for placement there. *Id.* at pts. 302-05.[FN5]

> FN5. Inmates confined for reasons of protection receive somewhat greater privileges. *See, e.g.,* N.Y. Comp.Codes R. & Regs. tit. 7, § 330.4 (1995) (three hours per day outside cell).

Inmates in the New York system have no right to be incarcerated in any particular institution, cell or block of cells, nor do they enjoy a right to be housed in the general prison population or to participate in any particular program offered at an institution. *Cf. Meachum v. Fano,* 427 U.S. 215, 226, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (no right to remain in particular prison created by state law); *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (right to good time credits created by state statute). Such matters are committed to the discretion of prison authorities. This grant of broad discretion to prison authorities comports with a principle rationale of *Sandin* that

federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.... Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims....

**\*6** 515 U.S. at ---- - ----, 115 S.Ct. at 2299-2300.

Here, plaintiff contends at best that his keeplock confinement was "atypical and significant" under *Sandin* because it subjected him to retaliation, caused closer monitoring by DOCS, affected his transfer to other institutions, and impaired his eligibility for certain prison programs. Pl. Mem. of Law at p. 21. These contentions are conclusory and unsupported in any way. They are also unsworn and unsigned. For these reasons alone, plaintiff's contentions should be rejected as failing to raise any issue of fact under *Sandin.*

On their merits as well, however, these contentions should be rejected. While there may be cases where confinement in keeplock might subject an inmate to retaliation from

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

other inmates or guards such that keeplock confinement imposed "atypical and significant" hardships, no such hardship has been demonstrated here by the non-specific, conclusory assertions of plaintiff. As to the contentions regarding plaintiff's monitoring status and his eligibility for transfer and prison programs, all concern matters for which plaintiff has no special rights or interests, all were known to follow from disciplinary confinement as a regular part of DOCS' regime, and plaintiff has asserted no hardship atypical or significant as to him concerning these matters.

For these reasons plaintiff has failed to meet his burden of demonstrating the existence of any factual issue under *Sandin.* Accordingly, defendants' motion on this ground should be granted.

2. Due Process

Defendants assert that, notwithstanding *Sandin,* plaintiff was not denied due process.

The Due Process Clause requires that an inmate faced with disciplinary confinement has a right to at least twenty-four hours advance notice of the charges against him and to be informed of the reasons for the action taken and the evidence relied upon by the hearing officer. In addition, an inmate has the right to call witnesses and present evidence in his defense "when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell,* 418 U.S. 539, 564-66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *McCann v. Coughlin,* 698 F.2d 112, 121-22 (2d Cir.1983). These rights implicitly include the right to make a statement in the inmate's defense and the right to marshal the facts. *See Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *see also Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986).

Where an inmate is illiterate or where the charges are unusually complex, the inmate is entitled to seek the assistance of another inmate or an employee. *Wolff v. McDonnell,* 418 U.S. at 570. The Second Circuit has extended this right, and directed that inmates who are confined pending a hearing be provided with some form of assistance. *Eng v. Coughlin,* 858 F.2d 889, 897-98 (2d Cir.1988). Corrections officials are required only to provide inmates with the opportunity to exercise their due process rights. *See, e.g., Maiid v. Henderson,* 533 F.Supp. 1257, 1273 (N.D.N.Y.), *aff'd,* 714 F.2d 115 (2d Cir.1982) ("although [the inmate] had the right to call witnesses at his hearing, there is no evidence in the record that he ever invoked this right").

**\*7** Here, plaintiff argues first that the hearing officer failed to call witnesses in the requested order. However, due process does not mandate that plaintiff be permitted to call his witnesses in a particular order.

Second, plaintiff alleges that the hearing officer failed to conduct an in camera inquiry into the original source of information on which the search was authorized to determine if that source was reliable. However, the issues at the hearing were the results of the search, not the reasons why the search was initiated. The hearing officer's decision did not rest in any part on the information from the confidential informant. Due process thus did not require inquiry into the reliability of the original information.

Third, plaintiff contends that although the original misbehavior report contains the signatures of both defendant Yule and Officer Rando, his copy reflects only defendant Yule's signature. However, an inmate has no right to receive a statement of charges signed by any particular official.[FN6]

> FN6. A misbehavior report is to be made by the employee who has observed the incident. Where another employee has personal knowledge of the facts, he shall, where appropriate, endorse his name on the other employee's report. N.Y. Comp.Codes R. & Regs. tit. 7, § 251-3.1(b) (1995). The misbehavior report here was signed by J. Rando and endorsed by G. Yules as an employee witness, and it is endorsed by the area supervisor. *See* Defs.' Statement Pursuant to Rule 7.1(f), Ex. A, p. 1, Inmate Misbehavior Report.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

Fourth, plaintiff claims that defendant Roberts failed to provide him with various documents plaintiff requested pursuant to New York's Freedom of Information Law after the disciplinary hearing concluded. This claim as well falls outside the scope of the Due Process Clause as described by the cases discussed above. Defendants' failure to provide the requested documents did not violate plaintiff's constitutional right.

Accordingly, defendants' motion should be granted on this ground as well. FN7

> FN7. Throughout his complaint and pleadings, plaintiff refers jointly to his right to due process/equal protection. The facts and arguments in plaintiff's complaint and pleadings point only to a due process claim. No facts or arguments relating to the Equal Protection Clause are asserted. Nevertheless, to the extent plaintiff's complaint is deemed to assert a claim for violation of the Equal Protection Clause, defendants' motion for summary judgment should be granted as to that claim as well.

3. Cell Search

Plaintiff alleges that the search of his cell on October 30, 1995 violated his Fourth Amendment protection against unreasonable searches and seizures. FN8 In *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Id.* at 526. Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights. *DeMaio v. Mann,* 877 F.Supp. 89, 95 (N.D.N.Y.1995) (Kaplan, J.). Plaintiff thus may assert no cause of action here based on an alleged violation of his Fourth Amendment rights. FN9 Defendants' motion for summary judgment as to claims regarding the search of plaintiff's cell should be granted.

> FN8. In his complaint plaintiff also appears to allege that the search violated his Fourteenth Amendment right to due process because he received a receipt for the seizure of the

marijuana five hours after the search was conducted and never received any report of the search. To the extent plaintiff asserts such a claim, summary judgment should be granted to the defendants for the reasons set forth in subsections 1 and 2 above.

> FN9. Nor can an inmate recover under section 1983 for intentional destruction of his personal property by a state employee, as long as the state provides a meaningful post-deprivation remedy. *Hudson v. Palmer,* 468 U.S. at 533. New York provides such a remedy in section 9 of the New York Court of Claims Act. *Smith v. O'Connor,* 901 F.Supp. 644, 647 (S.D.N.Y.1995). Plaintiff may pursue any claim regarding destruction of his personal property in state court.

4. Qualified Immunity

Defendants argue in the alternative that they are entitled to summary judgment on the ground of qualified immunity.

A government official is entitled to qualified immunity if his or her conduct did not violate "a clearly established" constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Wright v. Smith,* 21 F.3d 496, 500 (2d Cir.1994). The contours of the right must be established to the extent that a reasonable official would recognize his acts violated that right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The following factors must be considered to determine whether a right is clearly established:

**8** (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question, and (3) whether under pre-existing law a reasonable defendant official would have understood that his or her acts were unlawful.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). A determination in favor of a public officer based on qualified immunity is appropriate when, at the time the officer was acting, the right in question was not clearly established or, even if the right was established, it was not objectively reasonable for the official to recognize that his conduct violated the right. *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993); *Ying Jing Gan v. City of New York,* 996 F.2d 522 (2d Cir.1993).

Here, among other reasons, the defendants could not reasonably have known that the search of plaintiff's cell violated any of his Fourth Amendment rights or that plaintiff's due process rights were violated by the failure to call witnesses in the order requested by plaintiff. *Cf. Walker v. Bates,* 23 F.3d 652, 656-57 (2d Cir.1994), *cert. denied,* 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995) (prison disciplinary hearing officer entitled to qualified immunity in suit claiming violation of due process from denial of prisoner's right to call witnesses in disciplinary hearing); *Cookish v. Powell,* 945 F.2d 441, 449 (1st Cir.1991) (prison official entitled to qualified immunity from charge of violating prisoner's Fourth Amendment rights by conducting body cavity search in view of prison guards of opposite sex). Therefore, the defendants' motion on this ground should be granted.

### III. APPOINTMENT OF COUNSEL

Also pending is a renewed application by plaintiff for appointment of counsel (Docket No. 21). A review of the file in this matter reveals that the issues in dispute in this case are not overly complex. Further, there has been no indication that plaintiff has been unable to investigate the critical facts of this case. Finally, no special reason appears why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. Therefore, based upon the existing record in this case, appointment of counsel is unwarranted.[FN10]

FN10. Also pending is plaintiff's motion for a pre-trial conference and evidentiary hearing (Docket No. 23). This motion is untimely and is hereby denied. Plaintiff has also moved for summary judgment by default (Docket No. 11) in

response to defendants' request for an extension of time to answer the complaint. This extension was granted by order dated March 15, 1996 and defendants have answered. Accordingly, it is recommended that this motion be denied as moot.

### IV. CONCLUSION

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion for summary judgment be GRANTED; and it is further

RECOMMENDED that plaintiff's motion for summary judgment by default be DENIED; and it is hereby

ORDERED that plaintiff's renewed motion for appointment of counsel is DENIED without prejudice; and it is further

ORDERED that plaintiff's motion for a pre-trial conference and an evidentiary hearing is DENIED; and it is further

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon the parties to this action.

*9 Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1997.
Tinsley v. Greene

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.